1  Colbern C. Stuart III
   Email: Cole.Stuart@Lexevia.com
2  4891 Pacific Highway Ste. 102
   San Diego, CA 92110
3  Telephone: 858-504-0171
   Facsimile: 619-231-9143
4  In Pro Se

5  Dean Browning Webb (pro hac vice pending)
   Email: ricoman1968@aol.com
6  Law Offices of Dean Browning Webb
   515 E 39th St.
7  Vancouver, WA 98663-2240
   Telephone: 503-629-2176

8
   Attorney for Plaintiffs California Coalition for Families and Children, Inc. and
9  Lexevia, PC

10                    UNITED STATES DISTRICT COURT

11                 SOUTHERN DISTRICT OF CALIFORNIA

12

13 CALIFORNIA COALITION FOR          Case No.  13CV1944-~~DMS~~-BLM
   FAMILIES AND CHILDREN, et al.                    *CAB*
14

15                    Plaintiffs,

16                                                              **BY FAX**
         vs.
17                                   EX PARTE APPLICATION FOR
                                     LEAVE TO FILE AND/OR
18 SAN DIEGO COUNTY BAR              SUPPLEMENT MOTION FOR
   ASSOCIATION, a California         HARRASSMENT RESTRAINING
19 Corporation, et al,               ORDER (18 U.S.C. § 1514(b))
                                     PURSUANT TO FRCP RULE 65(b);
20                    Defendants.    DECLARATION OF COLBERN
                                     STUART IN SUPPORT
21

22

23

24                         **APPLICATION**

25

26
       Plaintiff Colbern C. Stuart hereby applies to this Court ex parte for leave to file
27
   an APPLICATION FOR TEMPORARY HARRASSMENT RESTRAINING
28

   APPLICATION FOR LEAVE TO FILE TRO                           13CV1944
                              -1-

                                                         **ORIGINAL**

ORDER pursuant to 18 U.S.C. § 1514(b) and FRCP Rule 65(b).  This Ex Parte Application is based upon this Combined Application/Declaration of Colbern Stuart, exhibits thereto, Plaintiff's Verified Complaint and all Exhibits thereto.

## FACTS/DECLARATION IN SUPPORT

I am Colbern Stuart, Plaintiff in this action. If called to testify as a witness I would testify truthfully as follows:

1. On Tuesday, August 20, 2013, I filed the Verified Complaint in this matter asserting 34 causes of action including violations of the Civil Rights Act of 1964 (42 U.S.C. § 1983 et seq.), the Racketeering and Corrupt Organizations Act of 1970 (RICO) (18 U.S.C. § 1961 et seq.), the Lanham Act (15 U.S.C. § 1152), and for relief under the Declaratory Judgment Act (28 U.S.C. § 2201) and the Witness Protection Act (18 U.S.C. § 1514), and supplemental state law claims.  (VERIFIED COMPLAINT).

2. Within the VERIFIED COMPLAINT, I requested that the Court, on its own motion, issue a Protective Order pursuant to 18 U.S.C. § 1514(b), based upon a pattern of HARRASSMENT AND ABUSE (as that term is defined and used in the VERIFIED COMPLAINT) by Defendants therein.  These allegations include a physical assault, extortion, late night telephone "gun-cock" and death threats, demanding a bribe, false reporting of child abuse to extort funds, and predatory competitive behavior, detailed at paragraphs 124 – 374 of the VERIFIED COMPLAINT, and the August 21, 2013 Press Release entitled "FAMILIES FIGHTING BACK: California Parents File Federal Racketeering Lawsuit against Family Court Judges; Charge Criminal Extortion, Bribery, Abuse of Office" (PRESS RELEASE)(Ex. 46 attached hereto and incorporated herein).

3. Based on this history of HARRASSMENT AND ABUSE, and out of concern for my safety, the safety of Plaintiffs' witnesses, and our common efforts and ability to

APPLICATION FOR LEAVE TO FILE TRO                                    13CV1944
-2-

continue this and other legal actions free of further HARASSMENT AND ABUSE, I requested that the Court exercise its discretion to issue, on its own motion, a Temporary Restraining Order pursuant to 18 U.S.C. 1514(b) at paragraphs 386-391 of the VERIFIED COMPLAINT, incorporated herein by reference.

4. As of today, Monday, August 26, 2013, I have not served any Defendant with the Summons and Complaint.  However, on Sunday, August 25, 2013, I received an unsolicited letter dated August 23, 2013 from Ms. Kristine Nesthus, Court Counsel for Defendant Superior Court of the County of San Diego (SCSDC).  (Ex. 47 attached hereto).  Ms. Nesthus represents to write on behalf of Defendants TRENTACOSTA, ALKSNE, WOHLFEIL, and SCHALL.[1]

5. Ms. Nesthus asserts that she and/or one or more of the defendants she writes on behalf of have received the Summons and VERIFIED COMPLAINT, and/or became aware of its existence in this Court's PACER electronic filing system and on the Internet.  She objects to the VERIFIED COMPLAINT existing in such locations because the VERIFIED COMPLAINT, in asserting this Court's personal jurisdiction

---

[1] Ms. Nesthus also appears to write on behalf of other, unnamed parties which she variously identifies as "other judicial officers of the Court" and "all defendants." Because no Defendant has been served or made an appearance at this stage, I am uncertain as to who she represents, and therefore herein and for convenience only refer to Ms. Nesthus' "clients" as Defendants TRENTACOSTA, ALKSNE, WOHLFEIL, and SCHALL, though the case is likely otherwise.

APPLICATION FOR LEAVE TO FILE TRO                                    13CV1944

-3-

over several parties in this action including these defendants, specifies their places of residence within this District.  Ex. 47.

6.  Ms. Nethus asserts that publication of the VERIFIED COMPLAINT containing Defendants' places of residence is a violation of Cal. Gov't C. § 6254.21(c)(A) and (E) (the "California Public Records Act" or CPRA), which provide in pertinent part:

6254.21.

…

(c) (1)

(A) No person, business, or association shall publicly post or publicly display on the Internet the home address or telephone number of any elected or appointed official if that official has made a written demand of that person, business, or association to not disclose his or her home address or telephone number.

…

(E) For purposes of this paragraph, "publicly post" or "publicly display" means to intentionally communicate or otherwise make available to the general public.

7.  Asserting these provisions, Ms. Nesthus demands that I "IMMEDIATELY":

A. Remove "from the above websites, and the internet generally, any and all information concerning the residential addresses and telephone numbers of the aforementioned judges…"

B. Remove the same for "any other judicial officers of the Court;"

APPLICATION FOR LEAVE TO FILE TRO                               13CV1944

1

2

C. Remove the same from PACER "because the complaint is available on

3

PACER, Government Code section 6254.21 requires you to take immediate steps

4

to remove this information from PACER." and

5

6

D. That "you are hereby advised that you are prohibited from further transmitting

7

this information 'to any other person, business, or association, through any other

8

medium."

9

10

8.  Her letter concludes "Be assured that the Court will take all necessary legal

11

actions to remedy this situation and ensure the safety of its judicial officers."

12

## DISCUSSION

13

I hereby seek leave to file a Motion and/or Supplement the pending Motion for

14

Temporary Harassment Protective Order (TRO) in the VERIFIED COMPLAINT.

15

As detailed in the original Motion in the VERIFIED COMPLAINT at paragraphs

16

386-391, Defendants, including SCHALL, ALKSNE, and WOHLFEIL, have

17

participated directly or indirectly in ongoing illegal retaliatory and obstructive

18

HARRASSMENT AND ABUSE, including my April 15, 2010 ASSAULT detailed

19

in the VERIFIED COMPLAINT, as well as the ongoing harassment and intimidation

20

explained elsewhere in the VERIFIED COMPLAINT and in the PRESS RELEASE.

21

I explain below that I take Ms. Nesthus' letter to be an illegal threat in continuation of

22

that pattern, necessitating this emergency application.

23

24

I am seeking the TRO on three grounds:

25

26

1. I am incapable of complying with Ms. Nesthus's demands;

27

2. Ms. Nethus's demands are not well-grounded in law; and

28

APPLICATION FOR LEAVE TO FILE TRO                          13CV1944

-5-

3. Ms. Nethus' demands appear to be a pretext for ongoing illegal HARRASSMENT AND ABUSE in the obstruction of this litigation and the DUE ADMINISTRATION OF JUSTICE.[2]

*1. Inability to Comply*:  I cannot accomplish all that Ms. Nesthus' demands. The Court is aware that I appear pro se in this action.  As such I have no privileges to file or control documents within the Court's electronic filing system.  Mr. Webb is similarly unlicensed in this state and District.  He intends on filing an application pro hac vice shortly but presently has no similar ability.

The VERIFIED COMPLAINT was filed in person in this Court's clerk's office and has not been served on any Defendant.  Any copy that exists currently on PACER was, I assume, scanned and distributed into PACER by the clerk.

Because we did not anticipate Ms. Nesthus' pre-service demand, we are not yet fully able to comply.  As such, I cannot "remove all references to such information from PACER" as Ms. Nesthus demands.

Similarly, I cannot remove "from the above websites, and the internet generally, any and all information concerning the residential addresses and telephone numbers of the aforementioned judges..." as Ms. Nesthus demands.  I am an editor of the two websites referenced in Ms. Nesthus's letter—CCFC's Facebook page and WordPress Blog, only the later of which contains a copy of the VERIFIED COMPLAINT.  I can remove that link.  With some effort, I can also redact the addresses of the parties she identifies, though I remain uncertain as to which defendants her demands speak for.

_____

[2] Capitalized terms are used herein to incorporate the same meaning as ascribed to them in the VERIFIED COMPLAINT.

APPLICATION FOR LEAVE TO FILE TRO                          13CV1944

However, as I have no control over "the internet generally" I cannot comply with that portion of her demand.   As of 10:15 p.m. Sunday, August 25, 2013, the VERIFIED COMPLAINT containing the residential addresses of several Defendants has been viewed over 119,296 times, and this number is progressing at a rate of about 20,000 views per day.  I obviously have no control over what happens to copies once they are downloaded from CCFC's website.

*2. Ms. Nesthus' Demands are not well-grounded in law:*  Even if I could control the VERIFIED COMPLAINT as Ms. Nesthus accuses, I believe the authority Ms. Nesthus relies on to pose her demand is invalid.

The California Government Code section cited above and in Ms. Nesthus' letter, Cal. Gov't C. § 6254.21 purports to prohibit speech based on content (the address and phone number of public officials).  As such, under the caselaw discussed below, the statute is unconstitutional on its face and therefore unenforceable.

The U.S. Supreme Court recently articulated the test for determining whether a state statute impermissibly infringes on freedom of speech.  In *U.S. v. Alvarez*, 567 U.S. ____ (2012)(No. 11-210), the Court reaffirmed the longstanding principle that state statutes prohibiting speech based on content thereof *are presumed invalid*.  The Court in *Alvarez* explained:

> [A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U. S. 564, 573 (2002) (internal quotation marks omitted). As a result, the Constitution "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." *Ashcroft v. American Civil Liberties Union*, 542 U. S. 656, 660 (2004). In light of the substantial and expansive threats to free expression posed by content-

APPLICATION FOR LEAVE TO FILE TRO                                    13CV1944

-7-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

based restrictions, this Court has rejected as "startling and dangerous" a "free-floating test for First Amendment coverage . . . [based on] an ad hoc balancing of relative social costs and benefits." *United States v. Stevens*, 559 U. S. ___, ___ (2010) (slip op. at 7). Instead, content-based restrictions on speech have been permitted, as a general matter, only when confined to the few "'historic and traditional categories [of expression] long familiar to the bar,'" *Id.,* at ___ (slip op., at 5) (quoting *Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd.*, 502 U. S. 105, 127 (1991) (KENNEDY, J., concurring in judgment)). Among these categories are advocacy intended, and likely, to incite imminent lawless action, see *Brandenburg v. Ohio*, 395 U. S. 444 (1969) (per curiam); obscenity, see, e.g., *Miller v. California*, 413 U. S. 15 (1973); defamation, *see, e.g., New York Times Co. v. Sullivan*, 376 U. S. 254 (1964) (providing substantial protection for speech about public figures); *Gertz v. Robert Welch, Inc.*, 418 U. S. 323 (1974) (imposing some limits on liability for defaming a private figure); speech integral to criminal conduct, *see, e.g., Giboney v. Empire Storage & Ice Co.*, 336 U. S. 490 (1949); so-called "fighting words," see *Chaplinsky v. New Hampshire*, 315 U. S. 568 (1942); child pornography, see *New York v. Ferber*, 458 U. S. 747 (1982); fraud, see *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U. S. 748, 771 (1976); true threats, see *Watts v. United States*, 394 U. S. 705 (1969) (per curiam); and speech presenting some grave and imminent threat the government has the power to prevent, see *Near v. Minnesota ex rel. Olson*, 283 U. S. 697, 716 (1931), although a restriction under the last category is most difficult to sustain, see *New York Times Co. v. United States*, 403 U. S. 713 (1971) (per curiam). These categories have a historical foundation in the Court's free speech tradition. The vast realm of free speech and thought always

APPLICATION FOR LEAVE TO FILE TRO                          13CV1944

protected in our tradition can still thrive, and even be furthered, by adherence to those categories and rules.

The Court continued:

In addition, when the Government seeks to regulate protected speech, the restriction must be the "least restrictive means among available, effective alternatives." *Ashcroft*, 542 U. S. at 666 . . . .

Section 6254.21 appears to be a content-based restriction on free speech. It identifies the speech it proscribes by reference to the content of the speech—the telephone number and address of "an elected or appointed official." Residence information regarding a public official is expressive for several reasons. A politician's place of residence identifies how to reach him or her to express political opinions, pleasure or displeasure with performance, his or her voting district and office eligibility, neighborhood, style of living, political inclinations, personal affiliations, and a wide variety of relevant information about the official's fitness, character, and identity, which for elected officials are always relevant.[3]  As such, the CPRA section asserted is content-based restriction on free speech, and therefore presumed invalid.

---

[3] See, *Sullivan*, infra.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Under the test articulated in *Alvarez*, a statute imposing a content-based restriction on free speech may be resurrected from the presumption of invalidity only if the party attempting to enforce the statute can prove that the statute:

A. Falls "within any of the historic and traditional categories [of expression] long familiar to the bar" *and*

B. Is the "the "least restrictive means among available, effective alternatives." *Id.*

The burden of resurrecting section 6254.21 from the presumption of invalidity rests on the parties asserting it.  Such an achievement in this case seems dubious.

A. Section 6254.21, part of the California Public Records Act of 1968 (CPRA) as amended in 2004, appears not to fall within any of the "historic and traditional categories of expression long familiar to the bar."  The CPRA act of 1968 was enacted long after the ratification of the First Amendment, and of course could not have been contemplated as an exception by the Constitution's Framers.  Otherwise I am personally unaware of any "historic and traditional" exception to free speech for disclosure on the Internet of a public official's home address and suspect that a proper historical inquiry would yield exactly the opposite conclusion.

Further, the interests protected by the CPRA are not of the type that could overcome the *Alvarez* presumption of invalidity.  Section 6250 of the Act describes the relevant interest underlying the Act:

> 6250.  In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.

APPLICATION FOR LEAVE TO FILE TRO                                        13CV1944
-10-

At best, the statute pits one well-recognized first amendment right (expression concerning public figures) against a separate *personal* "implied" right—privacy. Thus, the CPRA protects a *personal privacy interest* that is simply not identified as an *Alvarez* 'historic and traditional" exception to the relevant bright line presumption of invalidity.

Ms. Nesthus' assertion would therefore seem to be that her clients' *personal* privacy interests as expressed in the CPRA trump my fundamental First Amendment expression rights regarding public officials as articulated by *Alvarez* and the long tradition of free speech jurisprudence that precedes it.  Yet this "comparative" analysis was explicitly rejected by the *Alvarez* Court.  As articulated by Justice Kennedy, any analysis consisting of a "balancing" between competing First Amendment rights would represent a "startling and dangerous" "free-floating test for First Amendment coverage . . . [based on] an ad hoc balancing of relative social costs and benefits." *Alvarez* at __; (quoting *United States v. Stevens*, 559 U. S. ____, ___ (2010))

Further, while one would acknowledge a *private person's* interest in maintaining confidential information in confidence, the CPRA's prohibition against posting the location of a public official's residence is inconsistent with the broad protections for speech regarding *public officials*.  Indeed, publication of information—*even private information*—about public officials enjoys the highest level of first amendment protection.  See, *New York Times v. Sullivan*, 376 U.S. 254 (1964) (describing laws prohibiting free discussion of facts relating to public officials as "a nullity, as absolute and as palpable as if Congress had ordered us to fall down and worship a golden image."); *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978)(protecting publication of *confidential records* of judicial discipline proceedings).  There is also little doubt that the judges and other defendants Ms. Nesthus' represents fall within the broad categories of "men of fortitude" expected to

APPLICATION FOR LEAVE TO FILE TRO                         13CV1944
-11-

receive and withstand intense public scrutiny and criticism, including scrutiny of their lifestyles, neighborhoods, and places of abode. *Craig v. Harney*, 331 U.S. 367 at 376.

Over a century[4] of reasoning *from judges themselves* establishes that judges and prosecutors are *uniquely* proper subjects of the intense public scrutiny to which all public officials are generally subject, and that restrictions on speech about judges are permitted only in the case of "clear and present danger of obstruction of justice." *Sullivan, Harney*, supra; see also *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478 (1991); *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979); *Skokos v. Rhoades*, 440 F.3d 957 (8th Cir. 2006); *Jensen v. Wagner*, 603 F.3d 1182 (10th Cir. 2010); *Kalina v. Fletcher*, 522 U.S. 118 (1997); *Malley v. Briggs*, 475 F.3d 335 (1986); *Lampton v. Diaz*, 639 F.3d 223; *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012); *Richardson v. Fleming*, 651 F.2d 366, 373 (5th Cir. 1981); *Connick v. Thompson*, 131 S.Ct. 1350 (2011); *Carter v. City of Philadelphia*, 181 F.3d 339 (3rd Cir. 1999); *Vierria v. California Highway Patrol*, 644 F.Supp.2d 1219 (E.D. CA 1219);  *U.S. v. Angelilli*, 660 F.2d 23 (2d Cir. 1981).

Ms. Nesthus asserts that the act of filing the COMPLAINT including the addresses of judges Trentacosta, Wohlfeil, Alksne, and Schall "constitutes a serious threat to

---

[4] "The section's purpose was to provide redress for the deprivation of civil rights. It was recognized that certain members of the judiciary were instruments of oppression, and were partially responsible for the wrongs to be remedied. The parade of cases coming to this Court shows that a similar condition now obtains in some of the States. Some state courts have been instruments of suppression of civil rights. The methods may have changed; the means may have become more subtle; but the wrong to be remedied still exists." *Pierson v. Ray*, 386 U.S. 547 (1967)(discussing the Ku Klux Klan act of 1871, the predecessor to the section 1983 litigation that is one focus of this litigation.).

APPLICATION FOR LEAVE TO FILE TRO                    13CV1944

their safety as well as their family members." She provides no facts beyond the assertion. Without more, it's difficult to agree that identification of a judge's address in the due course of filing a Complaint—in the same way that all civil Defendants are required to be identified—poses a special threat to a judge or their family. I see no likelihood that publication of the home address of any defendant herein by itself establishes a "clear and present danger" to the judge, and as Ms. Nesthus' has not asserted such a claim under Cal. Gov't C. § 6254.21(b), she would appear to agree.

Moreover, regardless of the merits of the issue, the burden of establishing the validity of a content-based statute lies with the party asserting its validity. No party has at this stage even attempted to do so.

As such, and for this reason alone, CPRA section 6254.21 is facially invalid, and Ms. Nesthus's demand is not substantially grounded in law.


B. In addition, the CPRA proscription against disclosure "on the internet" appears not to be the "least restrictive means" for protecting the privacy interest asserted. See *Aschcroft*, *Alvarez*, supra. The address, telephone, and even email contact information for Judges Trentacosta, Schall, Wohlfeil, and Alksne are available from numerous sources, including the county registrar of voters, online election campaign financing forms, online and hard-copy phone books, public address databases, credit records, public campaign funding filings, tax records, and a wide variety of other publically-available sources. I can personally testify that finding these home addresses and abundant other personal data was no challenge.

Given that ease, it would be hard to articulate a credible claim that the horse, being long ago out of the barn, is suddenly at large when it appears in court. Far less restrictive means for protecting such information—if it is protectable—exist, including perhaps Ms. Nesthus' clients' own ability to control to whom they disclose such information. The choice to become a public official and exercise the enormous

APPLICATION FOR LEAVE TO FILE TRO                    13CV1944
-13-

powers of such office involves sacrifices to many personal interests, including privacy. Even if a balancing of interests analysis were permissible, whatever constitutional injury occasioned by an undesirable disclosure of a place of residence as part of a legal filing seems miniscule when compared with the "bright line" protections afforded free speech regarding public officials as part of an ordinary course litigation filing in a civil action.

   3. *Demand as a pretext for further HARASSMENT AND ABUSE*:  I am concerned that Ms. Nesthus is asserting this demand as a pretext for further HARASSMENT AND ABUSE for the following reasons:


   (i) Defendants' demand is consistent with the pattern of HARRASSMENT AND ABUSE perpetrated by the very judicial officials Ms. Nesthus' objects on behalf of;
   (ii) Defendants' demand is not well-grounded in fact or law, and
   (iii) the unveiled threatening tone of Ms. Nesthus' conclusion that I "be assured..." that she will "ensure the safety" of court personnel from what she characterizes as threats to personal safety posed by a residence identification in a civil lawsuit.


It is anticipated that Ms. Nesthus will attempt to continue the ongoing frustration of the plaintiffs' FFRRESA and DUE COURSE OF JUSTICE in this matter or otherwise frustrate this Courts' jurisdiction by abusing legal process in other courts or this one.  Ms. Nesthus' reflexive conclusion that an ordinary course civil filing represents to her clients "a serious threat to their safety as well as their family members" and accompanying threat to "be assured" she will act "to take all necessary legal action to remedy this situation and ensure the safety of its judicial officers" is itself instructive.  Ordinary litigants—and every party to this case no more or less than ordinary—don't react in this way.  It is precisely this style of behavior that led to this lawsuit, and that this lawsuit is intended to redress.

APPLICATION FOR LEAVE TO FILE TRO                                    13CV1944

As the gravamen of this lawsuit is a history of illegal abuse of process by these very defendants, a serious risk for further illegal HARASSMENT AND ABUSE is immediately present.  Notably, Ms. Nesthus did not seek a stipulation to withdraw and redact prior to her demand and threat to seek redress; would she have done so reasonably such would readily have been granted.  Instead she prefers an escalation tactic of specious demand and threat to formal process intended—it is respectfully submitted—to continue Defendants' pattern of illegal HARASSMENT AND ABUSE.

*4. General Order 550:*  Ms. Nesthus also asserts that the VERIFIED COMPLAINT is in violation of this Court's General Order 550(1)(h)(5).  I disagree.  That Order provides:

> h. Privacy
>
> Unless otherwise ordered by the court, parties must refrain from including, or must partially redact where inclusion is necessary, the following personal identifiers from all pleadings and documents filed with the court, including exhibits thereto:
>
> …
>
> 5. Home address. In criminal cases, if a home address must be included only the city and state should be listed.

Though Racketeering is a federal crime, and Plainitffs have asserted 34 indictable federal offenses in the VERIFIED COMPLAINT, I cannot agree that this is yet a "criminal case" in the ordinary understanding of that term.

APPLICATION FOR LEAVE TO FILE TRO                    13CV1944
-15-

**Benefits and Burdens Weigh In Favor of a TRO**

The burdens of the granting a HARASSMENT TRO under 18 U.S.C. § 1514 on all parties are insignificant as Defendants have no legitimate interest to further HARRASSMENT AND ABUSE and obstruction of the DUE COURSE OF JUSTICE.  The requested TRO requires that Defendants abandon extra-judicial HARASSMENT AND ABUSE and proceed according to law in this courthouse, which is the exclusive venue with jurisdiction for all claims. This Court has exclusive jurisdiction over the federal law questions asserted in the VERIFIED COMPLAINT, supplemental jurisdiction over state law claims, and is at least as well-suited to protect the relevant interests of all parties and the broader DUE ADMINISTRATION OF JUSTIE as any county Superior Court, or any other forum in which Defendants may seek relief.

Refusing the TRO would injure Plaintiff's present rights to access justice in this forum, intimidate and harass parties and witnesses, interfere with counsel, as well as interfere with this Courts' present jurisdiction.  The burdens on me and my witnesses are significant—as detailed in the VERIFIED COMPLAINT and the PRESS RELEASE, we have already been subject to devastating threats, intimidation, and illegal obstruction, frustrating the DUE ADMINISTRATION OF JUSTICE in this and other matters, injuring our professional property, reputation, and personal well-being.  In further support I hereby tender three witnesses, who at this point wish to remain unnamed, to these facts should the Court so command.

Appeasement by inaction of Defendants' pattern of intimidation will exacerbate the wrongs already of record, irreparably harming Plaintiffs in this action and other federal proceedings. As any attempt to frustrate the jurisdiction of this Court would pose serious and irrevocable injury by further intimidation, HARASSMENT AND ABUSE, equitable relief is warranted.  I respectfully request the Court's assistance in

APPLICATION FOR LEAVE TO FILE TRO                    13CV1944

assuring that the DUE ADMINISTRATION OF JUSTICE initiated by Plaintiffs years ago be permitted to proceed in this courthouse.

## CONCLUSION

Based on the foregoing, I hereby request leave to file and/or hereby supplement the existing Motion for Harassment Temporary Restraining Order pursuant to FRCP Rule 65(b) on these and the grounds asserted in the VERIFIED COMPLAINT at paragraphs 386 et seq.

I declare under penalty of perjury of the laws of the United States the foregoing to be true and correct.

DATED: August 26, 2013                     By: /s/ _Colbern C. Stuart_

                                           Colbern C. Stuart, III, President,
                                           California Coalition for Families and
                                           Children
                                           in Pro Se

*California Coalition for Families and Children, et al. vs.*
*San Diego County Bar Association, et al,*

United States District Court, Southern District of California
Exhibits to Complaint

# Exhibit 46

## California Parents File Federal Racketeering Lawsuit against Family Court Judges; Charge Criminal Extortion, Bribery, Abuse of Office

August 20, 2013 -- San Diego, CA – In its continuing campaign to end the harassment, fraud, and abuse rampant in California State Family Courts, a parents' rights group, the California Coalition for Families and Children, has filed a lawsuit today in federal court charging the San Diego County courts, social workers, divorce attorneys, and psychologists with federal criminal racketeering.

"The abuses of parents and children by Family Courts, social workers, and family law attorneys have harmed parents and children for far too long.  We intend to end that abuse." says CCFC President Colbern Stuart.  "Family court is designed by its makers to be probably the most dangerous life event parents and children can endure.  It enables and profits from every inhumane instinct known to man—greed, hate, resentment, fear—resulting in abundant cash flow for the divorce industry and a fallout of parent and children's misery."

"And behind the curtain of this machine of misery we've uncovered its cause—the multi-billion dollar divorce industry, populated by judges, attorneys, and a machinery of tax-dollar fed "judicial administrators," social workers that George Orwell would marvel at."

"We've been delivering that message kindly for years now, yet the tide keeps rising on families in crisis.  We've appealed to the county courts, state and local politicians, state judicial oversight bodies, United States Representatives, and just plain old human dignity, but the harassment and abuse of parents and children has only increased.  A resort to federal court intervention in the widespread criminal collusion in state government was the next logical step."

"It's time to recognize Family Court for what it is—a corporate crime ring raiding parents and children of financial and psychological well-being, and devouring our children's futures.  And its not just divorce lawyers—its judges, "judicial administrators," psychologists, cops and prosecutors—people we should be able to trust—in a modern day criminal cabal using county courtrooms and sheriff's deputies as the machinery of organized crime."  Say Stuart.  "Since state officials' hands are too deep into the cookie jar to stop their own abuse, we're seeking the assistance of federal oversight."

CCFC has been active in past years uncovering fraud and abuse of families and children in state courts, including the consumer fraud case of Dr. Stephen Doyne, the most notable child custody evaluator in San Diego.  "They not only let Doyne run wild for years, they actively protected his abuse of parents and children.  In my mind, the industry is a godless abomination" says Stuart.  "One of our parents who challenged Doyne and lost was ordered—by the same court that employs Doyne—to pay Doyne's attorneys fees—over $380,000—for calling out his undisputed fraud.  It's outrageous, and its going to stop."

CCFC's Complaint details both civil and criminal charges.  "We've alleged over 34 specific federal crimes in the complaint, and we're turning our evidence over to the F.B.I. and U.S. Attorney for further investigation."  Says Stuart.

The Complaint is available online through CCFC's Facebook page at www.facebook.com/ccfconline. Quotes:


"The present-day suffering of so many parents and children has and is being wrought within a larger system characterized by a widespread institutional failure of—indeed contempt for—the rule of law."

"California legal institutions such as family courts and the legal community, professional institutions such as the state bar and psychology boards, and criminal justice institutions have in the recent decade gradually combined to cultivate a joint enterprise forum in which widespread "family practice" exceptions to the rule of law are not only tolerated, but increasingly encouraged.  Professional behavior that would only a few years ago be recognized as unethical, illegal, or otherwise intolerable by American legal, psychological, law enforcement, or social work professionals has increasingly achieved acceptance—indeed applause—from institutional interests which benefit from a joint enterprise enforcing the unwritten law of "who you know is more important than what you know."

"In this lawless behavior's most crass infestation, California Superior Court Family Division judges are regularly heard to announce, in open court, "I *am* the law" and proceed to act accordingly with impunity, indifference, and *without shame*."

"The effect on parents and children seeking social support within this coalescing "family law" forum has not been as advertised by courts and professionals—a new healing—but instead *a new affliction*: an 'imposed disability' of de rigueur deprivation of fundamental rights in the name of 'therapeutic jurisprudence' funded by converting college funds into a bloated ministry of the bar leaving families and their children with mere crumbs of their own success."


The case centers on the April 15, 2010 assault of CCFC's President, Cole Stuart, at the San Diego County Bar Association meeting of family court judges and attorneys.  Stuart was attending the meeting of family court judges and attorneys on behalf of CCFC.  SDCBA recognized Stuart as the President of the Parents' Rights group and ordered fifteen armed bar association security to tackle him, handcuff him, and throw him out.

According to Stuart, around ten CCFC parents and children attended the seminar to advance their reform efforts and send a message of "doctor, heal thyself."  The San Diego County Bar Association meeting of judges and attorneys chose a theme critical of their own clients: calling them "Litigants Behaving Badly."  CCFC chose a counter-theme: CCFC parents and children carried signs stating "JUDGES BEHAVING BADLY; if YOU don't follow the law, why would WE?"

"Judge Judy may be entertaining daytime television for some, but that indignity has no place in our justice system—even in what they consider to be "low-brow" family court.  Yet many family court judges regularly administer such obnoxious 'renegade' justice every day, in open defiance of the rule of law.  'Sober as a judge' these days has a whole new meaning."  Says Stuart—"I've been a successful lawyer for 18 years and seen both excellence and failure, but I've never been ashamed of my profession until the days I walked out of family court."  "I decided then that this lawless rolling train wreck of shame to my profession and harm to my community must stop.  And for that inspiration, they sent me to jail."

CCFC and Stuart are suing SDCBA and the dozen judges and lawyers who organized the seminar.  "They were well aware of our intent to be present at the Seminar--and had fifteen Sheriff's Deputies and a paddy wagon waiting to welcome us when we arrived.  We had been in court to seek sanctions against them in the morning, then they assault me that very evening."

According to the CCFC Complaint: "Family Courts, including judges, blame "Litigants Behaving Badly" for harms enabled—indeed largely manufactured—by the Domestic Dispute Industry's own longstanding predatory commercial practices. CCFC saw the "Litigants Behaving Badly" theme as part of the self-delusional propaganda engaged in by so many [divorce industry] members who, rather

than recognizing the harm their industry enables and "healing themselves", instead blame their own clients, who, quite true, do regularly abuse process, their loved ones, and even themselves—in perfect compliance with [divorce industry] instructions."

The lawsuit alleges that divorce lawyers illegally conspire with judges to steal from parents as part of a racketeering criminal enterprise—and brings over 30 claims of federally-indictable crime. "Civil rights violations, fraud, and obstruction of justice are federal crimes—even for judges."

The lawsuit seeks to hold judges and courts personally responsible for overseeing the crime committed by the attorneys and social workers in their courtroom. "Judges have a legal and ethical duty to 'ensure rights' under the judicial canons of conduct. It's just not possible that intelligent lawyers like judges don't understand exactly what goes on in their courtrooms, yet they allow it to continue. In CCFC's opinion, this judicial collusion is far more serious crime than even the fraud of divorce attorneys themselves" says Stuart.

CCFC has filed a motion for a protective order preventing the San Diego Defendants from harassing them "Since they've known about CCFC and its reform toward the more humane family dispute resolution solutions we offer, they've treated us as enemies of the state. When we thought we'd be welcomed, or at least heard, we've instead become targets of prosecution and terrorist threats--They assaulted me, harassed our members including threatening "gun cock" and death threat late night phone calls, attacked our businesses, professional licenses, and threatened to jail and extort us with further crime. It's outrageous that our own government allows this to happen, and we're asking the federal court to protect our members as we pursue the civil and criminal charges against the courts."

A complete set of filings and exhibits is available from CCFC's Facebook page at www.Facebook.com/ccfconline

About: CCFC is a nonprofit organization of parents-both men and women-who have experienced marital dissolution proceeding in San Diego, Orange, or Los Angeles Counties, Our members are professionals or others who are highly motivated to improving governmental and justice system process addressing domestic relations, parentage, custody, and abuse.

CCFC seeks to promote the health and success of all families--parents and children equally and alike. We perceive that parents and children presently lack effective and independent advocates within government and the civil and criminal justice system, and as such their rights and interests are regularly compromised in favor of the institutionalized interests of others, including government, private attorneys and professional service providers, and the enormous domestic dispute industry.

CCFC organizers, officers, and affiliates are professionals dedicated to improving social, governmental, and justice system processes concerning domestic relations, child rearing, parenting, constitutional law, child custody, and domestic violence. Many of CCFC's members are mothers, fathers, and children who have withstood abundant hardship resulting from the current practices of what is generally described as the "Family Law Community." These injuries and insults include fraudulent, inefficient, harmful, and even dangerous services; an institutionalized culture of indifference to "clearly-established" liberties; insults to the autonomy and dignity of parents and children; extortion, robbery, abuse, and more, delivered at the hands of eager operators within the divorce industry.

*California Coalition for Families and Children, e al. vs.*
*San Diego County Bar Association, et al,*

United States District Court, Southern District of California
Exhibits to Complaint

# Exhibit 47



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN DIEGO**

SAN DIEGO COUNTY COURTHOUSE
220 W. BROADWAY
PO BOX 120128
SAN DIEGO, CA 92101

August 23, 2013

(VIA FACSCIMILE, E-Mail and U.S. Mail)

Colbern C. Stuart III
4891 Pacific Highway, Suite 102
San Diego, CA 92110

Dean Browning Webb
Law Offices of Dean Browning Webb
515 E. 39th Street
Vancouver, WA 98663-2240

RE:  **DEMAND FOR IMMEDIATE REMOVAL OF PERSONAL INFORMATION**
     **OF JUDICIAL OFFICERS FROM THE INTERNET – GOVERNMENT**
     **CODE SECTION 6254.21**

Dear Messrs. Stuart and Webb,

It has come to the attention of the Superior Court of California, County of San Diego
("Court") that you have recently filed an action in federal district court naming the Court and
several judicial officers as defendants—California Coalition for Families and Children v. San
Diego County Bar Association, Case No. 13 CV 1944.  In the complaint you have provided the
residential addresses of Presiding Judge Trentacosta and Judges Schall, Alksne and Wohlfeil.
You have also posted a copy of the complaint on the internet, at
http://croixsdadsblog.wordpress.com/2013/08/20/parents-and-children-fighting-back-ccfc-v-san-
diego-county-bar-association-et-al/ and also at https://www.facebook.com/CCFCONLINE.

Your conduct in posting the personal information of the aforementioned judges on the
internet constitutes a serious threat to their safety as well as their family members.  Pursuant to
Government Code section 6254.21, subdivision (c)(1)(A) and (E)(3), the Court demands that you
IMMEDIATELY remove from the above websites, and the internet generally, any and all
information concerning the residential addresses and telephone numbers of the aforementioned
judges, as well as any other judicial officers of the Court.  Further, because the complaint is
available on PACER, Government Code section 6254.21 requires you to take immediate steps to
remove this information from PACER.

United States District Court, Southern District of California General Order 550, Section
1(h)(5) prohibits parties from including home addresses in any pleadings or documents filed with
the court.  Your conduct in providing the residential addresses of the Court's judicial officers, as
well as other defendants, constitutes a violation of this General Order.  Accordingly, the Court

August 23, 2013
Page 2

demands that you immediately take steps to remove the personal residence information of *all defendants* from the complaint and the court file.

Pursuant to Government Code section 6254.21, subdivision (c)(1)(D)(ii), you are hereby advised that you are prohibited from further transmitting this information "to any other person, business, or association through any other medium."

Be assured that the Court will take all necessary legal actions to remedy this situation and ensure the safety of its judicial officers.

Sincerely,

Kristine P. Nesthus, Esq.
Court Counsel