# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COALITION FOR FAMILIES AND CHILDREN, LEXEVIA, PC, COLBERN C. STUART, <br><br> Plaintiffs, <br><br> vs. <br><br> SAN DIEGO COUNTY BAR ASSOCIATION, et al., <br><br> Defendants. | CASE NO. 13-cv-1944-CAB (BLM) <br><br> ORDER |

This matter came before the court on December 19, 2013 for a hearing on the Superior Court defendants' motion to dismiss [Doc. No. 16] and motion for sanctions [Doc. No. 23][1]; the motion to dismiss of defendants Commission on Judicial Performance, Brad Battson, and Lawrence J. Simi [Doc. No. 22]; and on plaintiffs' motion to strike [Doc. No. 19.]  This order memorializes matters discussed at the hearing.  To the extent this written order conflicts with anything said at the hearing, this written order governs.

For the reasons set forth below, the motions to dismiss are granted in part and

---

[1] The "Superior Court defendants" are (1) Superior Court of California, County of San Diego; (2) Honorable Robert J. Trentacosta, Presiding Judge of the Superior Court; (3) Michael M. Roddy, Executive Officer of the Superior Court; (4) the Honorable Lisa Schall; (5) the Honorable Lorna A. Alksne; (6) the Honorable Christine K. Goldsmith; (7) the Honorable Jeannie Lowe (ret.); (8) the Honorable William H. McAdam, Jr.; (9) the Honorable Edlene C. McKenzie; and (10) the Honorable Joel R. Wohlfeil. [Doc. No. 16-1 at 9.]

denied in part. The court denies both the Superior Court defendants' motion for sanctions and plaintiffs' motion to strike.

## BACKGROUND

Plaintiffs Colbern C. Stuart, California Coalition for Families and Children ("California Coalition"), and Lexevia, PC filed their complaint on August 20, 2013. [Doc. No. 1.] Stuart is a co-founder, the president, and the Chief Executive Officer of California Coalition. [*Id.* ¶ 105.] Stuart also founded Lexevia, a professional law corporation, in 2008. [*Id.* ¶ 107.]

Plaintiffs assert approximately 36 claims against 49 defendants purportedly involved in San Diego's family-law community, including judges, lawyers, law firms, psychologists, social workers, and various state and municipal entities. On August 26, 2013, the court sealed the complaint because plaintiffs had listed the home addresses of several judges.

The complaint totals 175 pages, with an additional 1156 pages in exhibits and numerous acronyms of plaintiffs' invention.[2] Plaintiffs do not begin setting forth specific factual allegations as to defendants' challenged conduct until page 57, paragraph 113.

Though the complaint lacks focus, plaintiffs' claims appear to arise mainly out of two events: an April 2010 San Diego County Bar Association ("SDCBA") seminar and plaintiff Colbern Stuart's divorce proceedings. The factual allegations as to these events follow.

---

[2] The court, for its own reference, created the following non-exhaustive key of plaintiffs' many acronyms: "CRCCS: civil rights civil and criminal statutes; DDI: domestic dispute industry; DDIA: domestic dispute industry advocates; DDICE: domestic dispute industry criminal enterprise; DDI-FICE: domestic dispute industry forensic investigator criminal enterprise; DDI-IACE: domestic dispute industry intervention advocate criminal enterprise; DDIJO: domestic dispute industry judicial officers; DDIL: domestic dispute industry litigants; DDIPS: domestic dispute industry professional services; DDISO: domestic dispute industry security officers; DDISW: domestic dispute industry social workers; DVILS: domestic violence intervention legislative scheme; FFR: federal family civil and other rights; FFRESSA: federal family rights reform, exercise, support, and advocacy; FLC: family law community; FL-IACE: family law intervention advocate criminal enterprise; SAD: schemes and artifices to defraud; SD-DDICE: San Diego domestic dispute industry criminal enterprise; TCE: target community estates."

### 1. The SDCBA Seminar

The San Diego County Bar Association hosted a seminar on April 15, 2010, with the theme: "Litigants Behaving Badly–Do Professional Services Really Work?" [Doc. No. 1 ¶¶ 114-16.] Members of plaintiff California Coalition learned of the seminar in advance and decided to organize a demonstration outside the seminar to engage professionals involved with the family law community. [*Id.* ¶¶ 117-19, 123.] California Coalition created pamphlets and signs to display at the seminar, adopting the counter-theme: "Judges Behaving Badly–If You Don't Follow The Law, Why Would We?" [*Id.* ¶ 118-19.] Defendants learned of California Coalition's intention to demonstrate outside the seminar prior to the event. [*Id.* ¶ 124.]

California Coalition members arrived early at the seminar and peacefully distributed pamphlets to attendees. [*Id.* ¶¶ 124-127.] Plaintiff Stuart did not gather outside with other California Coalition members but instead entered the seminar. [*Id.* ¶ 127.] At the time of the seminar, Stuart was a member of the SDCBA, and he had purchased admission through the SDCBA's online store. [*Id.*] About 100 legal professionals attended the seminar. [*Id.* ¶ 129.] In addition, approximately 15 uniformed Sheriff's deputies were present and moved closer to Stuart once he selected a seat. [*Id.*]

The seminar began with introductory remarks by Family Law Division Supervising Judge Lorna Alksne. [*Id.* ¶ 130.] After about two minutes of speaking, however, Judge Alksne announced that she needed to take a break "so we can straighten something out." [*Id.*] Judge Alksne then walked to the back of the conference room and conferred with several defendants. [*Id.* ¶¶ 131, 132.] Soon two security officers employed by defendant Off Duty Officer, Inc. approached Stuart, confirmed that he was Colbern Stuart, and then asked Stuart to leave the seminar. [*Id.* ¶ 133.] Stuart refused. [*Id.*] The two security guards then went back to the huddle and soon returned with two Sheriff's deputies. [*Id.* ¶ 135.] When Stuart again refused to leave, the men "forced Stuart to stand, grabbed his arms, forced his hands behind his back, and handcuffed

him. They searched his person, emptied his pockets, seized his property . . . [and] forcibly led Stuart out of the seminar in front of dozens of [his] professional colleagues." [*Id.* ¶ 135.]

The officers released Stuart outside of the SDCBA building and told him he could not return. [*Id.* ¶ 135.] The seminar reconvened, and several SDCBA panel speakers then joked that Stuart "got what he asked for . . . let's see if that gets them any publicity." [*Id.*]

2. Stuart's Divorce

On about September 12, 2008, and based on the recommendations of defendants Sharon Blanchet and Judge Wohlfeil, plaintiff Stuart hired defendant Doyne, Inc. to mediate his divorce. [Doc. No. 1 ¶¶ 216, 232, 237, 238.] Judge Wohlfeil oversaw the Stuart dissolution until December 2008, when the matter was transferred to defendant Judge Schall. [*Id.* ¶ 240.]

Doyne, Inc. made various representations in its contract with Stuart, for instance that the mediation process would be completed "in a month or two" and that fees and expenses would not exceed the initial $5,000 retainer. [*Id.* ¶¶ 217(F), (G).] Stuart asserts that Doyne, Inc. breached the contract in June 2009 by, among other things, extending the mediation for a longer period than was agreed to, filing false reports with San Diego County's child protective services alleging that Stuart had "held his son upside down over a balcony," and causing Stuart to lose custody of his son. [*Id.* ¶ 220.] As a result, on about March 1, 2009, Stuart terminated Doyne's services. [*Id.* ¶ 221.] Stuart alleges that, in retaliation, Doyne attempted to extort money from Stuart and made false statements in a hearing relating to Stuart's son. [*Id.* ¶ 224.] In addition, in May 2009, Doyne telephoned Stuart at his home and requested that Stuart pay Doyne for services he falsely claimed to have provided. [*Id.* ¶ 225.]

As referenced above, plaintiffs assert approximately 36 causes of action arising variously under 42 U.S.C. §§ 1983, 1985, and 1986, the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, the Declaratory Judgment Act, and

the common law. The Superior Court defendants filed their motion to dismiss on September 30, 2013. [Doc. No. 16.] The Commission on Judicial Performances moved to dismiss on November 14, 2013. [Doc. No. 22.] Ten more motions to dismiss were subsequently filed and scheduled for hearing on January 24, 2014. [Doc. Nos. 48, 49, 50, 51, 52, 53, 54, 62, 67, 73. ] As set forth below, however, the court dismisses the entire complaint and therefore deems those latter ten motions withdrawn.

## DISCUSSION

A. Plaintiffs California Coalition and Lexevia

Plaintiffs California Coalition and Lexevia are each identified in the complaint as corporations. [*Id.* ¶¶ 100, 107.] Corporations must appear in court through an attorney. *D-Deam Ltd. P'Ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004); CivLR 83.3(k). Here, the title page of plaintiffs' complaint indicates that Dean Browning Webb is the attorney for plaintiffs California Coalition and Lexevia, and that Mr. Webb's pro hac vice is pending. [Doc. No. 1 at 1.] In addition, the complaint's signature page again lists Mr. Webb as attorney for California Coalition and Lexevia, and above his name contains an "/s/" symbol and signature line. Nonetheless, since the complaint's filing on August 20, 2013, neither Mr. Webb nor any other attorney has entered an appearance for California Coalition or Lexevia. Further, counsel for the Superior Court defendants informs in a declaration:

> On August 26, 2013, I received a voice mail message from Mr. Webb. In his message, Mr. Webb informed me that Mr. Stuart used his name on the Complaint without his permission. Mr. Webb confirmed this information to me in subsequent telephone conversations and indicated that he intended to call the federal Clerk of Court's office to advise that office that he had not agreed to represent plaintiffs in this case.

[Doc. No. 16-3 ¶ 4.]

No counsel appeared for California Coalition or Lexevia at the motions hearing held December 19, 2013. Because plaintiffs California Coalition and Lexevia do not appear through counsel, the court **DISMISSES** their claims without prejudice.

B.    Plaintiff Colbern Stuart

The court also **DISMISSES** plaintiff Stuart's claims without prejudice for failure to comply with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, plaintiffs violate Rule 8(a)(2) in at least three ways.

First, because plaintiffs assert most of their claims on behalf of all three plaintiffs, neither the court nor defendants can distinguish Stuart's asserted harm from the corporations'. *See, e.g.*, Doc. No.1 ¶¶ 148, 150, 157, 161, 171, 175, 179, 183, 190, 192, 204, 206, 208, 215, 347, 349, 352, 354, 356, 358, 360, 366, 368, 370, 372, 374, 385 ("As an actual and proximate result, PLAINTIFFS have been HARMED.") Because the corporations have been dismissed for failure to obtain counsel, and the complaint does not identify the individual harm Stuart suffered for each claim, Stuart does not set forth plain statements of his claims showing that he is entitled to relief.

Second, Stuart fails to clearly identify each separate claim for relief. Count One, for instance, is labeled:

> Illegal Search, Seizure, Assault, Battery, Arrest, and Imprisonment
> Deprivation of Constitutional Rights Under Color of State Law
> 42 U.S.C. 1983
> U.S. Const. 1st, 4th, 5th, 6th, 7th, 8th, 14th Amend.
> Supplemental State Claims
> Against Defendants
> SDCBA, ODO, DDISO, DOES 1-15, GORE, DDIJO DOES1-50, SAC, SIMI, BATSON

[Doc. No. 1 ¶ 141.] The court cannot discern just how many separate state and federal claims Stuart intends to assert here. Further, Stuart fails to connect his factual allegations to the numerous causes of action identified. If Stuart sincerely means to assert that defendants violated his First, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment rights, he must identify the factual allegations that support each alleged violation.

Finally, while dismissal on the basis of length or verbosity alone is inappropriate, *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1130 (9th Cir. 2008), the Ninth

Circuit has affirmed dismissal on Rule 8 grounds where the complaint is "argumentative, prolix, replete with redundancy, and largely irrelevant;" *McHenry v. Renne*, 74 F.3d 1172, 1177-80 (9th Cir. 1996); "verbose, confusing and conclusory," *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981); or where it is "impossible to designate the cause or causes of action attempted to be alleged in the complaint," *Schmidt v. Herrmann*, 614 F.2d 1221, 1223 (9th Cir. 1980).

Here, plaintiffs' complaint totals 175 pages, with an additional 1156 pages in exhibits, substantially exceeding the length of complaints considered in Ninth Circuit cases that have affirmed dismissal on Rule 8 grounds.[3] Further, while length alone is not grounds for dismissal, plaintiffs' complaint here is confusing, redundant, conclusory, and buries its factual allegations in pages of generalized grievances about the family courts. The prolixity and inscrutability of plaintiffs' complaint is unduly prejudicial to defendants, who face "the onerous task of combing through [plaintiffs' lengthy complaint] just to prepare an answer that admits or denies such allegations and to determine what claims and allegations must be defended or otherwise litigated." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). Further, plaintiffs' complaint is unmanageable for the court. As the Ninth Circuit noted in *McHenry*:

> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. [The judge] then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case[s] who follow the rules, as well as defendants in the case in which the prolix pleading is filed. "[T]he rights of litigants awaiting their turns to have other matters resolved must be considered...." *Nevijel*, 651 F.2d at 675; *Von Poppenheim*, 442 F.2d [1047, 1054 (9th Cir. 1971).]

*McHenry*, 84 F.3d at 1180.

The court therefore **DISMISSES** plaintiff Stuart's claims for failure to comply

---

[3] *See McHenry*, 84 F.3d at 1174 (53 pages); *Hatch*, 758 F.2d at 415 (70 pages); *Nevijel*, 651 F.2d at 674 (48 pages); and *Schmidt*, 614 F.2d at 1224 (30 pages).

with Rule 8. Dismissal is without prejudice and with leave to amend, with the following exceptions. The court **DISMISSES WITH PREJUDICE** Stuart's claims against the defendant judges for damages arising out of judicial acts within the jurisdiction of their courts. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). The court also **DISMISSES WITH PREJUDICE** Stuart's claims against the Commission on Judicial Performance and against its officials, Simi and Battson, to the extent the latter are sued for damages in their official capacity. U.S. Const. Amend XI; *Ricotta v. California*, 4 F. Supp. 2d 961, 976 (S.D. Cal. 1998); Cal. Const. Art. IV, § 18(H).

In composing his amended complaint, Stuart must heed the statute of limitations for Section 1983 and Section 1985 claims brought in this court, which is generally two years. *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007); *McDougal v. County of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991) (§ 1985 claims are governed by the same statute of limitations as § 1983 claims.) "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *Action Apartment*, 509 F.3d at 1026-27. Here, Stuart's claims appear to arise primarily out of two events: the April 15, 2010 San Diego County Bar Association seminar and his dissolution mediation before defendant Doyne, Inc., which concluded in about November 2009. [Doc. No. 1 ¶¶ 24, 241.] These claims therefore appear barred by the statute of limitations. To the extent Stuart contends that equitable tolling should apply, he must set forth specific allegations in his amended complaint to support such a theory.

## CONCLUSION

The motions to dismiss of the Superior Court and Commission on Judicial Performance defendants [Doc. Nos. 16, 22] are granted in part and denied in part. The complaint is dismissed without prejudice. Plaintiff Stuart has leave to file an amended complaint no later than **Thursday, January 9, 2014**. Stuart may assert claims only on his behalf and should be wary of the immunity and statute-of-limitation issues

1 addressed above.  Though Stuart appears *pro se*, the court notes that he formally was
2 a licensed member of the California bar with a complex litigation practice.  [Doc. No.
3 1 ¶ 102.] It is anticipated that Stuart has the requisite knowledge and training to submit
4 a complaint that complies with Rule 8 and appropriately and coherently identifies his
5 causes of action and the specific defendants he alleges liable for his asserted damages
6 without unnecessary verbiage, argument, and rhetoric.

7      The court denies plaintiffs' motion to strike and the Superior Court's motion for
8 sanctions.  [Doc. Nos. 19, 23.]  Finally, the court deems withdrawn the remaining
9 motions to dismiss.  [Doc. Nos. 48, 49, 50, 51, 52, 53, 54, 62, 67, 73. ]

10 **IT IS SO ORDERED.**

12 DATED:  December 23, 2013

14 **CATHY ANN BENCIVENGO**
United States District Judge