Colbern C. Stuart III
E-Mail: Cole.Stuart@Lexevia.com
4891 Pacific Highway Ste. 102
San Diego, CA 92110
Telephone: 858-504-0171
Facsimile: 619-231-9143
In Pro Se

Dean Browning Webb (pro hac vice pending)
Email: RICOman1968@aol.com
Law Offices of Dean Browning Webb
515 E 39th St.
Vancouver, WA 98663-2240
Telephone: 503-629-2176

Eric W. Ching, Esq. SBN 292357
5252 Balboa Arms Dr. Unit 132
San Diego, CA 92117
Phone: 510-449-1091
Facsimile: 619-231-9143

Attorneys for Plaintiff California Coalition for Families and Children, PBC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COALITION FOR FAMILIES AND CHILDREN., a Delaware Public Benefit Corporation, and COLBERN C. STUART, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN DIEGO COUNTY BAR ASSOCIATION, a California Corporation; WILLIAM D. GORE, an individual, COUNTY OF SAN DIEGO, a municipal entity; SUPERIOR COURT OF SAN DIEGO COUNTY, a municipal entity; ROBERT J. TRENTACOSTA, an individual; MICHAEL RODDY, an individual; JUDICIAL COUNCIL, a municipal entity; STEVEN JAHR, an individual; ADMINISTRATIVE OFFICE OF THE COURTS, a municipal entity; TANI G. CANTIL-SAKAUYE, an individual; | Case No. 3:13-cv-1944 CAB BLM<br>Judge Cathy Ann Bencivengo<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871 (42 U.S.C. §§ 1983, 1985, 1986);<br><br>2. RACKETEERING AND CORRUPT ORGANIZATIONS ACT OF 1970 (18 U.S.C. § 1962);<br><br>3. FALSE ADVERTISING (15 U.S.C. § 1125);<br><br>3. DECLARATORY JUDGMENT (28 U.S.C. § 2201);<br><br>4. MOTION FOR HARASSMENT PROTECTIVE ORDER (18 U.S.C. § 1514(b))<br><br>DEMAND FOR JURY TRIAL |

-1-

1  COMMISSION ON JUDICIAL
PERFORMANCE, a municipal entity;
2  LAWRENCE J. SIMI, an individual;
BRAD BATSON, an individual;
3  NATIONAL FAMILY JUSTICE
CENTER ALLIANCE, a California
4  Corporation; LISA SCHALL, an
individual; LORNA ALKSNE, an
5  individual; OFF DUTY OFFICERS,
INC., a business entity of unknown
6  form; CHRISTINE GOLDSMITH, an
individual; JEANNIE LOWE, an
7  individual; WILLIAM MCADAM, an
individual; EDLENE MCKENZIE, an
8  individual; JOEL WOHLFEIL, an
individual; MICHAEL GROCH, an
9  individual; EMILY GARSON, an
individual; JAN GOLDSMITH, an
10  individual; CITY OF SAN DIEGO, a
municipal entity; CHUBB GROUP OF
11  INSURANCE COMPANIES, a
corporation; KRISTINE P. NESTHUS,
12  an individual; BRIAN WATKINS, an
individual; KEN SMITH, an individual
13  MARILOU MARCQ, an individual;
CSB-INVESTIGATIONS, an entity of
14  unknown form; CAROLE BALDWIN,
an individual; LAURY BALDWIN, an
15  individual; BALDWIN AND
BALDIWN, a California professional
16  corporation; LARRY CORRIGAN, an
individual; WILLIAM
17  HARGRAEVES, an individual;
HARGRAEVES & TAYLOR, PC, a
18  California Professional Corporation;
TERRY CHUCAS, an individual;
19  MERIDITH LEVIN, an individual;
ALLEN SLATTERY, INC., a
20  California Corporation, a Corporation;
JANIS STOCKS, an individual;
21  STOCKS & COLBURN, a California
professional corporation; DR.
22  STEPHEN DOYNE, an individual;
DR. STEPHEN DOYNE, INC., a
23  professional corporation; SUSAN
GRIFFIN, an individual; DR. LORI
24  LOVE, an individual; LOVE AND
ALVAREZ PSYCHOLOGY, INC., a
25  California corporation; ROBERT A.
SIMON, PH.D, an individual;
26  AMERICAN COLLEGE OF
FORENSIC EXAMINERS
27  INSTITUTE, a business entity of
unknown form; ROBERT O'BLOCK,
28  an individual; LORI CLARK
VIVIANO, an individual; LAW

-2-

OFFICES OF LORI CLARK
VIVIANO, a business entity of
unknown form; SHARON
BLANCHET, an individual;
ASHWORTH, BLANCHET,
KRISTENSEN, &
KALEMENKARIAN, a California
Professional Corporation; MARILYN
BIERER, an individual; BIERER AND
ASSOCIATES, a California
Professional Corporation; JEFFREY
FRITZ, an individual; BASIE AND
FRITZ, a professional corporation, and
DOE Defendants herein enumerated,

                    Defendants.

Plaintiffs, California Coalition for Families and Children, Inc., and Colbern C. Stuart allege as follows:

# I. JURISDICTION

1.  This Court has jurisdiction pursuant to the following statutes:

    a. Federal Question Jurisdiction: Title 28 United States Code § 1331;

    b. Federal Regulation of Commerce Jurisdiction: Title 28 United States Code § 1337;

    c. Federal Supplemental Jurisdiction: Title 28 U.S.C. 1367(a);

    d. Federal Declaratory Judgment Act of 1946: Title 28 United States Code §§ 2201-2202;

    e. Federal Supplemental Jurisdiction:  Title 28 United States Code §§ 1367(a)-(b);

    f. Section 1964(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") Title 18 United States Code §§ 1964(a), (b), (c), and (d);

    g. RICO 18 U.S.C. § 1965(a), (b), and (d); and

    h. Rules 57 and 65 of the Federal Rules of Civil Procedure; and

    i. The general legal and equitable powers of this Court.

2. Venue is proper under 28 U.S.C. § 1391(b) as one or more Defendants are located or reside in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' Claims occurred in this District.

## II. PARTIES

3. Plaintiff Colbern C. Stuart III (STUART) is a citizen of the United States and at all times relevant hereto a citizen of the state of California, an attorney at law licensed and admitted to practice in the states of California, Arizona, and Nevada, and certain United States District Courts therein, President and CEO of Plaintiff CALIFORNIA COALITION, residing and doing business in this District.

4. Plaintiff California Coalition for Families and Children, PBC (CALIFORNIA COALITION) is a Delaware public benefit corporation doing business in this District.

5. Defendant San Diego County Bar Association (SDCBA) is a corporation organized and existing under the laws of the State of California, doing business in this District. Defendants SDCBA DOE 1 and SDCBA DOE 2 are employees and agents of SDCBA whose names are unknown.

6. Defendant William D. Gore (GORE) is the Sherriff of San Diego County residing and doing business in this District. He is sued in his individual and official capacities.

7. Defendant County of San Diego (COUNTY OF SAN DIEGO) is a municipal entity existing within this District and doing business as the County of San Diego. Defendants COUNTY OF SAN DIEGO DOE 1 is an employee and agents of COUNTY OF SAN DIEGO whose name is unknown.

8. Defendant Superior Court, County of San Diego (SAN DIEGO SUPERIOR COURT) is a "beneath State level" municipal entity chartered under and doing business in the County of San Diego and this District.

9. Defendant Hon. Robert J. Trentacosta (TRENTACOSTA) is the former chief executive officer and Presiding Judge of San Diego Superior Court residing and doing business in this District. He is sued in his individual and official capacities.

-4-

10.   Defendant Michael Roddy (RODDY) is the Court Executive Officer for the SAN DIEGO SUPERIOR COURT residing and doing business in this District.  He is sued in his individual and official capacities.

11.   Defendant Judicial Council (JUDICIAL COUNCIL) is a "beneath State-level" entity overseeing the administrative functions of California courts, including the SAN DIEGO SUPERIOR COURT, doing business in this District.

12.   Defendant Steven Jahr (JAHR) is the Administrative Director of the Administrative Office of the Courts, chief policymaker and director for all County court operations statewide, including those within this District.  He is sued in his individual and official capacities.

13.   Defendant Administrative Office of the Courts (AOC) is a "beneath State-level" entity, operating and overseeing operations within the SAN DIEGO SUPERIOR COURT within this District.

14.   Defendant Tani G. Cantil-Sakauye (CANTIL-SAKAUYE) is the Chief Justice of the California Supreme Court and head executive of Defendants ADMINISTRATIVE OFFICE OF THE COURTS, and JUDICIAL COUNCIL doing business in this District.  She is sued in her individual and official capacities.

15.      Defendant Lawrence J. Simi (SIMI) is the former Chairperson for the Commission on Judicial Performance residing in San Francisco, California, and at relevant times performing acts in this this District as the Chairperson for the Commission On Judicial Performance and performing certain *ultra vires* acts in this District.  He is sued in his individual capacity.

16.      Defendant Brad Battson (BATTSON) is an individual employed as an investigator for the Commission On Judicial Performance.  BATTSON at times herein mentioned was an agent and employee of the Commission on Judicial Performance addressing the DDIJO COMPLAINTS I and II and performing certain *ultra vires* acts in this District.  He is sued in his individual capacity.

-5-

17.   Defendant National Family Justice Center Alliance (ALLIANCE) is a California Corporation doing business in this District at 707 Broadway, Suite 700, San Diego, CA.

18.   Defendant Hon. Lisa Schall (SCHALL) is a judge of the SAN DIEGO SUPERIOR COURT residing and doing business in this District, and at all times relevant herein exercised jurisdiction within the Family Law Division of the SAN DIEGO SUPERIOR COURT in this District.  She is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, and oversees jurisdiction only in San Diego County.  She is sued in her individual and official capacities.

19.   Defendant Hon. Lorna Alksne (ALKSNE) is a judge of the SAN DIEGO SUPERIOR COURT residing in this District. At all times relevant herein she was the supervising judge for the Family Division of the SAN DIEGO SUPERIOR COURT doing business in this District.  She is sued in her individual and official capacities.

20.   Defendant Off Duty Officers Inc. is a business organization of unknown form doing business at all relevant times within this District.  Defendants ODO DOES 1 and 2 are unknown employees of Defendant ODO (collectively "ODO").  At all relevant times herein, ODO acted under contract with one or more other defendants, including SDCBA and SAN DIEGO SUPERIOR COURT to provide security services at the April 15, 2010 SDCBA SEMINAR within this District.

21.   Defendant Hon. Christine Goldsmith (C. GOLDSMITH) is a judge of the SAN DIEGO SUPERIOR COURT, and at all times relevant herein exercised jurisdiction within the Family Law Division.  She is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, and oversees jurisdiction only in San Diego County.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and SAN DIEGO SUPERIOR COURT. She is sued in her individual and official capacities.

22.   Defendant Hon. Jeannie Lowe (LOWE) is a judge of the SAN DIEGO SUPERIOR COURT, and at all times relevant herein exercised jurisdiction within the Family Law Division.  She is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, and oversees jurisdiction only in San Diego County.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and SAN DIEGO SUPERIOR COURT. She is sued in her individual and official capacities.

23.   Defendant Hon. William McAdam (McADAM) is a judge of the SAN DIEGO SUPERIOR COURT, and at all times relevant herein exercised jurisdiction within the Family Law Division.  He is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, and oversees jurisdiction only in San Diego County.  He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and SAN DIEGO SUPERIOR COURT.  He is sued in his individual and official capacities.

24.   Defendant Hon. Edlene McKenzie (McKENZIE) is a judge of the SAN DIEGO SUPERIOR COURT, and at all times relevant herein exercised jurisdiction within the Family Law Division.  She is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, and oversees jurisdiction only in San Diego County.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and SAN DIEGO SUPERIOR COURT.  She is sued in her individual and official capacities.

25.   . Defendant Hon. Joel Wohlfeil (WOHLFEIL) is a judge of the SAN DIEGO SUPERIOR COURT residing and at all times relevant herein exercising jurisdiction within the Family Law Division of the SAN DIEGO SUPERIOR COURT within this District.  He is an elected official by the citizens of San Diego County, receives all

1 compensation from San Diego County, and oversees jurisdiction only in San Diego
2 County.  He was an organizer and panel member of the SDCBA SEMINAR working
3 for or on behalf of the SDCBA and at all times relevant herein acted as an agent of
4 Defendants SDCBA and SAN DIEGO SUPERIOR COURT.  He is sued in his
5 individual and official capacities.

6 26.   Defendant Hon. Michael Groch (GROCH) is a judge of the SAN DIEGO
7 SUPERIOR COURT residing and at all times relevant herein exercising jurisdiction
8 within the SAN DIEGO SUPERIOR COURT within this District.  He is an elected
9 official by the citizens of San Diego County, receives all compensation from San Diego
10 County, and oversees jurisdiction only in San Diego County.  He is sued in his
11 individual and official capacities.

12 27.   Defendant Emily Garson (GARSON) is an Assistant City Attorney within the
13 San Diego City Attorney's Office, an employee of the City of San Diego, and residing
14 and doing business in this District.  She is sued in her individual and official capacities.

15 28.   Defendant Jan Goldsmith (J. GOLDSMITH) at all times herein mentioned was
16 the City Attorney for the City of San Diego, an employee of the City of San Diego, and
17 residing and doing business in this District.  He is sued in his individual and official
18 capacities.

19 29.   Defendants City of San Diego (CITY OF SAN DIEGO) is a municipal entity
20 chartered in the County of San Diego, California, at all relevant times operating the
21 Office of the City Attorney of San Diego, employer of J. GOLDSMITH and GARSON.

22 30.   Defendant Chubb Group of Insurance Companies is a business entity of
23 unknown form doing business in this District providing liability insurance and Claims
24 representation services for Defendant SDCBA and on information and belief one or
25 more other STUART ASSAULT COORDINATOR Defendant.

26 31.   Defendant Kristine P. Nesthus, Esq. (NESTHUS) is employed as Court Counsel
27 and Director, Legal Services, for Defendant SAN DIEGO SUPERIOR COURT and
28 COUNTY OF SAN DIEGO, residing and doing business in this District.  She is an

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

agent of each judicial officer Defendant named herein and RODDY.  She is sued in her individual and official capacities.

32.   Defendant Brian Watkins (WATKINS) is employed as an Officer of the California Highway Patrol residing in the State of California, doing business in the City of San Francisco, and performing acts within this District.  At relevant times he acted as an agent of NESTHUS, and certain judicial defendants herein.  He is sued in his individual and representative capacities.

33.   Defendant Ken Smith (SMITH) is a Detective for Defendants COUNTY OF SAN DIEGO, working in the San Diego County Sheriff's Department under the supervision and control of Defendant GORE, residing and performing acts in this District.  He was at all relevant times acting as an agent for Defendant NESTHUS. He is sued in his individual and official capacities.

34.   Defendant Marilou Marcq (MARCQ) is an individual residing in this District and doing business for Defendant CSB-Investigations within this District.  She was at all relevant times acting as an agent for Defendants NESTHUS and SMITH.  She is sued in her individual and official capacities.

35.   Defendant CSB-Investigations (CSB INVESTICATION) is an entity of unknown form located and performing acts in this District.

36.   Defendant Carole Baldwin (C. BALDWIN) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and Baldwin & Baldwin.

37.   Defendant Laury Baldwin, CLS-F (L. BALDWIN) is an attorney at law licensed to practice within the State of California residing and doing business in this District. He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and Baldwin & Baldwin.

38.   Defendant Baldwin & Baldwin is a professional law corporation licensed to conduct business as a law firm within this District.

39.   Defendant Larry Corrigan, M.S.W. (CORRIGAN) is a family law professional licensed to practice within the State of California residing and doing business in this District.  He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendant SDCBA.

40.   Defendant William Hargreaves, CLS-F (HARGRAEVES) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and Hargraeves & Taylor, LLP.

41.   Defendant Harfraeves & Taylor, LLP is a professional law corporation licensed to conduct business as a law firm within this District.

42.   Defendant Terry Chucas, Esq.  (CHUCAS) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendant SDCBA.

43.   Defendant Meredith Levin, CLS-F (LEVIN) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and Allen, Slattery, Inc.

44.   Defendant Allen, Slattery, Inc. is a professional law corporation licensed to conduct business as a law firm within this District.

45.   Defendant Janis Stocks, CLS-F (STOCKS) is an attorney at law licensed to practice within the State of California residing and doing business providing forensic

-10-

psychology and child custody evaluation/mediation services in this District.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and Defendant Stocks & Colburn.

46.   Defendant Stocks & Colburn is a business entity of unknown form not licensed to conduct business as a law firm within this District.

47.   Defendant Dr. Stephen Doyne, Ph.D. (DOYNE) is a psychologist licensed to practice within the State of California, residing and doing business providing forensic psychology and child custody evaluation/mediation services in this District.  He is regularly referred business by Defendant SAN DIEGO SUPERIOR COURT and performs work in conjunction with, on behalf of, at the request of, or on referral from other Defendants, including Defendants SAN DIEGO SUPERIOR COURT, ABC&K, FRITZ, BIERER, VIVIANO, and LOVE.  In such capacities he operates as an agent thereof.  He was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and DOYNE, INC.  He is sued in his individual and official capacities.

48.   Defendant Stephen M. Doyne, a Psychological Corporation, (DOYNE, INC.) is at all times relevant herein a professional corporation licensed to do business providing forensic psychology and child custody evaluation/mediation services within this District. Defendants Doyne and DOYNE INC. shall collectively be referred to hereafter as DOYNE, INC.

49. Defendant Susan Griffin, M.S. (GRIFFIN) is a family law community professional licensed to practice within the State of California, residing and doing business providing forensic psychology and child custody evaluation/mediation services in this District.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA.

-11-

50.   Defendant Lori Love, Ph.D. (LOVE) is a psychologist licensed to practice within the State of California, providing forensic psychology and child custody evaluation/mediation services and residing and doing business in this District.  She is regularly referred business by Defendant SAN DIEGO SUPERIOR COURT and performs work in conjunction with, on behalf of, at the request of, or on referral from other Defendants, including Defendants SAN DIEGO SUPERIOR COURT, ABC&K, FRITZ, BIERER, VIVIANO, and DOYNE INC.  In such capacities she operates as an agent thereof.  She was an organizer and panel member of the SDCBA SEMINAR working for or on behalf of the SDCBA and at all times relevant herein acted as an agent of Defendants SDCBA and defendant Love & Alvarez Psychology, Inc.  She is sued in her individual and official capacities.

51.   Defendant Love & Alvarez Psychology, Inc. (LOVE INC) is a professional corporation providing forensic psychology and child custody evaluation/mediation services within this district.

52.   Defendant Robert A. Simon, Ph.D. (SIMON) is a psychologist licensed to practice within the State of California, residing and doing business providing forensic psychology and child custody evaluation/mediation services in this District.  At all times relevant herein he acted as an agent of SDCBA.

53.   Defendants American College of Forensic Examiners, American College of Forensic Examiners International (ACFEI) is a Missouri corporation with a principle place of business of at 2750 E. Sunshine St., Springfield, MO.  ACFEI advertises and promotes itself as "the largest forensic science membership association, forensics education, credentials, courses, training and membership for forensics examiners" and conducts such business in this District, including conspiring with other Defendants hereinto commit a substantial portion of the acts complained of herein in this District.

54.   Defendant Robert O'Block is the founder, President, and CEO of ACFEI and Publisher of periodical publication entitled The Forensic Examiner sold in this District.  He is a resident of the State of Missouri and at all times relevant herein was doing

business selling the above products and services in this District.  Defendants O'Block and ACFEI shall collectively be referred to as "ACFEI, INC."

55.   Defendant Lori Clark Viviano, CFLS-F (VIVIANO) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  At all times relevant herein, she acted as an agent of Defendant The Law Office of Lori Clark Viviano.

56.   Defendant The Law Office of Lori Clark Viviano is a professional law corporation licensed to conduct business as a law firm within this District, VIVIANO and The Law Offices of Lori Clark Viviano will be hereafter referred to as VIVIANO, INC.

57.   Defendant Sharon Blanchet, CLS-F (BLANCHET) is an attorney at law licensed to practice within the State of California residing and doing business in this District. At all times relevant herein, she acted as an agent of Defendant ABC&K.

58.   Defendant ABC&K is a professional law corporation licensed to conduct business as a law firm within this District.  Defendants AB&K and BLANCHET will hereinafter be collectively referred to as BLANCHET.

59.   Defendant Marilyn Bierer, CLS-F (BIERER) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  At all times relevant herein, she acted as an agent of Defendant Bierer and Associates.

60.   Defendant Bierer & Associates is a professional law corporation licensed to conduct business as a law firm within this District.  Defendants Bierer & Associates and BIERER will hereinafter be collectively referred to as BIERER.

61.   Defendant Jeffrey Fritz, CLS-F (FRITZ) is an attorney at law licensed to practice within the State of California residing and doing business in this District.  At all times relevant herein, he acted as an agent of Defendant Basie & Fritz.

62.   Defendant Basie & Fritz is a professional law corporation licensed to conduct business as a law firm within this District.

63.   Collectively, the above-referenced defendants, operating full or part time as part of a broader "Family Law Community" of professionals, institutions, entities, practices, methods, products and services and its ancillary arms shall hereafter be referred to as the Domestic Dispute Industry (DDI).  Litigants within the Domestic Dispute Industry, including STUART and those similarly situated, are hereafter referred to as Domestic Dispute Industry Litigants (DDIL).

## III. BACKGROUND

### Plaintiffs' Social and Political Reform

64.   CALIFORNIA COALITION is organized and dedicated to improving social, governmental, and justice system process concerning domestic relations, child rearing, parenting, constitutional law, child custody, and domestic violence. Many of CALIFORNIA COALITION'S members are mothers, fathers, and children who have withstood abundant hardship resulting from the current practices of what is generally described as the "Family Law Community."   These injuries and insults include fraudulent, inefficient, harmful, and even dangerous services; an institutionalized culture of deliberate indifference to—indeed contempt for—"clearly-established" liberties; insults to the autonomy and dignity of parents and children; and extortion, robbery, and abuse founded upon such illegal color of law crime, delivered at the hands of eager institutional operators within the Family Law Community.

65.   CALIFORNIA COALITION has expressed its perception that the present-day suffering of so many parents and children has and is being wrought within a larger system characterized by a widespread institutional failure of the rule of law. CALIFORNIA COALITION has endeavored to deliver the message that the present family law system increasingly ignores the supremacy of the Constitution and the laws of the United States in depriving U.S. Citizens within California of rights, privileges, and immunities under United States law.

-14-

66.   California legal institutions such as family courts and the legal community, professional institutions such as the state bar and psychology boards, and criminal justice institutions have in the recent decade gradually combined to cultivate a joint enterprise forum in which widespread "family practice" exceptions to the rule of law are not only tolerated, but increasingly encouraged.  Professional behavior that would only a few years ago be recognized as unethical, illegal, or otherwise intolerable by American legal, psychological, law enforcement, or social work professionals has increasingly achieved acceptance—indeed applause—from institutional interests which benefit from a joint enterprise enforcing the wisdom of "who you know is more important than what you know."

67.   In this lawless behavior's most crass infestation, California Superior Court Family Division judges are regularly heard to announce, *in open court*, "I *am* the law" and proceed to act accordingly with impunity, indifference, and *without shame*.

68.   The effect on parents and children seeking social support within this coalescing "family law" forum has not been as advertised by courts and professionals—a new healing—but instead a *new affliction*: an "imposed disability" of *de rigueur* deprivation of fundamental rights in the name of "therapeutic jurisprudence" coercively subsidize by converting college funds into a bloated ministry of the bar leaving families and their children with mere crumbs of their own success.

69.   Plaintiffs have organized to confront the State of California's dispossession of law and reason by engaging those within the Domestic Dispute Industry who administer the decay—family court judges.   An astonishingly vast judicial administrative bureaucracy, domestic dispute industry attorneys, psychologists, and other professionals whose nearly imperceptible deliberate indifference to the creeping deprivations of parental rights is leaving the family cupboard nearly bare.

70.   Plaintiffs' efforts on behalf of parents and children have included increasing public and governmental awareness of family rights, representing and supporting parents and children in exercising and enforcing such rights, lobbying state and federal

-15-

1   policymakers to improve protections for federal rights under state law, and undertaking

2   litigation, complaints, or other formal and informal engagements with state and federal

3   authorities to assert, exercise, communicate regarding, educate, inform, establish and

4   defend such rights with the goal of enabling parental autonomy and empowerment

5   through reform state of California domestic dispute laws, practices, and institutions.

6   ("ENGAGEMENT")

7                            **Family Federal Rights**

8   71.   Plaintiffs have been active in supporting and advocating for well-established

9   United States law securing parents' and children's *unique* civil rights, of association,

10  speech, privacy, autonomy, and due process clearly established through decades of

11  federal jurisprudence.   Such rights shall hereafter be denominated "Family Federal

12  Rights", or "FFR."

13  72.   Plaintiffs' exercise, enforce, support and advocate for Family Federal Rights

14  includes support and advocacy for the institutions, laws, and entities of the United

15  States that protect, uphold, and defend Family Federal Rights against state intrusion.

16  Though the Family Federal Rights are well-recognized under federal (and state) laws,

17  it has been Plaintiffs' collective experience that within the state of California the

18  Family Federal Rights are frequently ignored by those exercising jurisdiction over

19  parents and families, including Defendants and the entities of which they are associates

20  and members.   Notwithstanding that such state actors may legally exercise their

21  enormous powers only when according to law, and notwithstanding that such actors

22  enjoy limited immunities only when they exercise such powers legally, state of

23  California color of law actors regularly wander far off the reservation to inflict unjust,

24  irrational, and often heinous crimes against civil liberty.

25  73.   Plaintiffs have acted to end these trespasses and redress the grievances of those

26  offended.   These efforts have included support and advocacy for the supremacy of the

27  Constitution and laws of the United States vis-à-vis relevant sections of California

28

Family and Penal codes, including the Domestic Violence Intervention Legislative Scheme ("DVILS") identified in Exhiibt 1.

74.   Plaintiffs have advocated for, supported, sought to educate, exercise, and enforce the Family Federal Rights and for the institutions and processes of the United States upholding, protecting, and defending the same.  Plaintiffs' reform efforts have been specifically directed to bringing California's domestic relations law and practice into compliance with the protections afforded to all United States citizens under federal institutions, laws, and practice.

75.   Plaintiffs' protected legal, social, political, and commercial activities toward reform, support and advocacy described above shall hereafter be referred to as FEDERAL FAMILY RIGHTS REFORM, EXERCISE, SUPPORT, AND ADVOCACY, or "**FFRRESA**".

### FFRESSA Engagement in Support and Advocacy
### for United States Representatives

76.   Plaintiffs have actively engaged the institutional representatives of the United States in their FFRRESA.

77.   This activity includes federal election support, lobbying, and coordination with Senator Barbara Boxer's Office in San Diego and Washington, DC, Senator Diane Feinstein's Offices in Washington, D.C., Senator Harkin's Offices in Washington, DC, United States Representatives Darrell Isa, Duncan Hunter, Juan Vargas, Scott Peters, and Susan Davis.  Plaintiffs have ENGAGED on these issues with the United States Department of Justice, the Ninth Circuit Court of Appeals.  See Ex. 1. Plaintiffs have undertaken similar reform ENGAGEMENT with California state representatives Gov. Arnold Schwarzenegger, Gov. (and attorney general) Jerry Brown, Assemblywomen Karen Bass, Fiona Ma, Assemblyman Nathan Fletcher, Lynn Daucher, Tim Donnelley, State Assembly reform candidate Peter Thotham, County supervisor candidate John Van Doorn, opposing Defendant GORE's and WHOLFEIL'S election campaigns and

1  supporting that of opponents of Defendants herein; ENGAGED Bonnie Dumanis,

2  Attorney General Kamala Harris, Chief Justices Tani Cantil-Sakauye and Ronald M.

3  George, Dennis Hollingsworth, Diane Jacobs, Bill Lockyear, Jerry Sanders, Bob

4  Filner, as well as direct communications with all Defendants herein.  Ex. 1, 2, 20.

5  78.  *FFRRESA Engagement in Reform of Color of State Law Actors*:  Plaintiffs'

6  FFRRESA has included numerous ENGAGEMENTS with state and federal authorities

7  to attempt to enforce FFRRESA reforms on California laws and institutions, including

8  identification,    publication,    accusation,    formal    and    informal    complaints,

9  ENGAGEMENT, litigation, and collaborative remedy of the illegal activities of the

10  Domestic Dispute Industry. These efforts include:

11  79.  *Domestic Dispute Industry Judicial Official ("DDIJO") Complaint I*: In

12  November, 2009, STUART contacted the United States Attorney's Office for the

13  Southern District of California to report violations of the Family Federal Rights by by

14  SCHALL, DOYNE, and WOHLFEIL.

15  80.  STUART detailed numerous deprivation of rights, abuse of process, abusive

16  behavior and remarks from the bench, a long history of three prior admonishments by

17  Defendant Commission on Judicial Performance including a 2008 conviction for

18  drunken driving, a persistent pattern of refusals to adhere to state and federal minimum

19  due process standards in STUART'S case and several others known publically, illegal,

20  unnoticed, and unreasonable searches and seizure of STUART and STUART'S

21  property inside the a courtroom, and generally extreme and outrageous demeanor.

22  81.  The U.S. Attorney's Office advised STUART as follows:

23      A. That the DDIJO COMPLAINT I allegations could be violations of

24      federal law, but that because the matters were "not all that serious"

25      STUART should proceed instead with the California Commission on

26      Judicial Performance (Commission on Judicial Performance), a California

27      entity with jurisdiction to investigate and enforce standards, rules, and laws,

28      including violations of federal law, regarding a state judicial official's

-18-

behavior;

B. That the Commission on Judicial Performance had jurisdiction to investigate and discipline STUART's complaints under both state and federal law, and was obligated to report any violations of federal criminal law to federal authorities;

C. That if Stuart filed a complaint with both the U.S. Attorney's Office and the Commission on Judicial Performance, the U.S. Attorney's Office would not take action until the complaint to the Commission on Judicial Performance's Office was "exhausted";

D. That the Commission on Judicial Performance was the "first step in the process."  The U.S. Attorney's Office advised Stuart that he could, if he wished, file a complaint with the U.S. Attorney and the Grand Jury, but that because the facts did not indicate "anything serious", the U.S. Attorney would likely not act;

E. That if STUART was unsatisfied with the Commission on Judicial Performance's response, he could pursue the same complaint directly with the U.S. Attorney or F.B.I. and rely on the documentation, evidence, facts, and testimony provided to the Commission on Judicial Performance.

82.   Though STUART disagreed that the behavior he described was "not serious," he obeyed the instructions of the U.S. Attorney's Office, contacting the Commission on Judicial Performance to continue prosecution of the DDIJO COMPLAINT I in the Commission on Judicial Performance Offices.   The Commission on Judicial Performance representative advised STUART that because DOYNE was not an elected

-19-

or appointed judicial official, the Commission on Judicial Performance had no jurisdiction to hear Complaints regarding him. The Commission on Judicial Performance further advised that since STUART'S Complaint regarding WOHLFEIL was related to DOYNE, and because SCHALL was the party primarily involved in the allegations of civil rights deprivations concerning DOYNE, that a complaint regarding WOHLFEIL would not be appropriate.  The Commission on Judicial Performance advised STUART to deliver a written description of his complaint regarding only SCHALL.

83.   STUART did so, detailing violations by SCHALL. Stuart also detailed facts relating to DOYNE and WOHLFEIL'S potential involvement in violations of the Family Federal Rights and Civil Rights Criminal and Civil Statutes.   STUART submitted the complaint to the Commission on Judicial Performance and copies thereof to the United States Attorney's Office, the Grand Jury of the United States District Court for the Southern District of California, the Internal Revenue Service, all of California's representatives in the United States House of Representatives and the United States Senate, and the Federal Bureau of Investigation (hereafter be referred to as the "FEDERAL LAW ENFORCEMENT OFFICERS").

84.   STUART provided a copy of the DDIJO COMPLAINT I to numerous San Diego Superior Court judicial officers, including all then-sitting Family Division officers, supervising Judge Kenneth So, the San Diego Daily Transcript, the San Diego Union Tribune, a number of state and federal media outlets, parenting groups, and related entities.

85.   During the investigation of DDIJO COMPLAINT I, STUART continued to interact with the FEDERAL LAW ENFORCEMENT OFFICERS, including at or around the time of the STUART ASSAULT, and continues today.

86.   *DDIJO COMPLAINT II*: In October, 2012, STUART supplemented his prior DDIJO COMPLAINT I with more extensive detail regarding SCHALL, WOHLFEIL, AND DOYNE, INC., and asserting additional allegations against Defendants

-20-

1   ALKSNE, C. GOLDSMITH, and GROCH.   STUART submitted the DDIJO

2   COMPLAINT II to the FEDERAL LAW ENFORCEMENT OFFICERS regarding

3   many of the allegations as asserted herein.

4   87.   STUART delivered a copy of DDIJO COMPLAINT II to the FEDERAL LAW

5   ENFORCEMENT OFFICERS, the public, and various media outlets.

6   88.   STUART has continued to interact with the FEDERAL LAW ENFORCEMENT

7   OFFICERS regarding the DDIJO COMPLAINTS through the date of filing of this

8   Action.

9   89.   *DOYNE INC. COMPLAINT I*: In May, 2008, and June, 2013, STUART filed

10   complaints with the California Board of Psychology regarding DOYNE and DOYNE,

11   INC detailing substantially the same allegations regarding DOYNE and DOYNE INC.

12   herein.

13   90.   *DOYNE, INC. COMPLAINTS II-IV*: Plaintiffs have filed, assisted, coordinated,

14   advocated for, and supported others in further complaints and lawsuits regarding

15   DOYNE and DOYNE, INC.

16   91.   *FFRRESA Engagement with Local, State, and United States Representatives*:

17   CALIFORNIA COALITION has also undertaken FFRRESA ENGAGEMENT with

18   the City of San Diego and the National Family Justice Center Alliance (ALLIANCE)

19   in a Notice and Demand to Cease and Desist (Exhibit 1) from actions in violation of

20   the Family Federal Rights.  CALIFORNIA COALITION has delivered the Notice and

21   Demand package, including abundant evidence of violations of the Civil Rights

22   Criminal and Civil Statutes, to FEDERAL LAW ENFORCEMENT OFFICERS,

23   including The United States Attorney and Grand Jury for this District, the United States

24   Department of Justice, including Ms. Bea Hanson and Mr. Eric Holder, the Federal

25   Bureau of Investigation, the Ninth Circuit Court of Appeals, as well as state color of

26   law administrative defendants with jurisdiction over such matters, including

27   Defendants ADMINISTRATIVE OFFICE OF THE COURTS, JUDICIAL

28   COUNCIL, CANTIL- SAKAUYE, ALKSNE, C. GOLDSMITH, WOHLFEIL,

1   TRENTACOSTA, SAN DIEGO SUPERIOR COURT, and COUNTY OF SAN

2   DIEGO. Ex. 1.

3   92.   *Other CALIFORNIA COALITION Federal Engagement*:  CALIFORNIA

4   COALITION organizers and affiliates have become involved as witnesses and

5   potential parties in reporting violations of the Civil Rights Criminal and Civil Statutes

6   to several FEDERAL LAW ENFORCEMENT OFFICERS.  In August, 2011, Dr.

7   Tadros spoke with Ms. Laura O'Farrell of the Federal Bureau of Investigations to report

8   possible deprivations of the Family Federal Rights described more fully in the attached

9   exhibits.  In 2007 Ms. Eileen Lasher began interacting with Assistant United States

10  Attorneys Mssrs. Jason Forge and Michael Wheat of the United States Attorney's

11  Office for the Southern District of California regarding allegations of racketeering

12  operation of the Superior Court of the County of San Diego, specifically including

13  RODDY, ALKSNE, and other Family Division judges, for intentionally abusing

14  process and extorting funds from families in state family court proceedings in violation

15  of the Civil Rights Criminal and Civil Statutes.  Ms. Lasher has provided detailed

16  information to these LAW ENFORCEMENT OFFICERS regarding bribery, extortion,

17  fraud, abuse of process, and deprivation of civil rights pursuant to the Civil Rights

18  Criminal and Civil Statutes and California State bribery and extortion statutes.  In 2004

19  Ms. Lasher provided similar details to Officer John McCahal of the NYPD Federal

20  Task Force in three separate meetings.  Officer McCahal referred the matter to the

21  Federal Bureau of Investigation, whereupon Ms. Lasher personally and through her

22  attorney provided details to the United States Attorney for the Southern District of New

23  York regarding similar crimes.  Dr. Tadros has also met with the Federal Bureau of

24  Investigation's Ms. Laura O'Farrell regarding similar issues.

25  93.   Ms. Lasher has met with Deputy District Attorney for the County of San Diego,

26  Mr. Damon Mosler and Mr. Brian Ahearn of the San Diego Police Department Internal

27  Affairs Office to provide similar information regarding the violation of the Civil Rights

28  Criminal and Civil Statutes criminal activity described above.  Plaintiffs have assisted,

-22-

represented, advised, and advocated on behalf of CALIFORNIA COALITION affiliates in these and many similar FFRRESA Engagements.

94. At the time of the STUART ASSAULT, STUART, CALIFORNIA COALITION member Dr. Emad Tadros and Eileen Lasher and other CALIFORNIA COALITION members were in ongoing communications and FFRRESA with the FEDERAL LAW ENFORCEMENT OFFICERS, UNITED STATES REPRESENTATIVES, including Senator Barbara Boxer, and Defendants ADMINISTRATIVE OFFICE OF THE COURTS internal affairs representatives Eric Pulido and John Judnich, SAN DIEGO SUPERIOR COURT, RODDY, Commission on Judicial Performance, to provide information, documents, assistance, testimony, and evidence of violation of the Civil Rights Criminal and Civil Statutes.

95. CALIFORNIA COALITION affiliate Emad Tadros has become involved in interstate consumer fraud litigation in District Courts in this state and in Missouri with Defendants ACFEI.

96. On information and belief, state and FEDERAL LAW ENFORCEMENT OFFICERS have and continue to investigate Plaintiffs' allegations under the Civil Rights Criminal and Civil Statutes toward presentment to a grand jury, indictment, and prosecution under federal law.

97. The above-described activities of Plaintiffs' and their affiliates in exercise of their rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article I, §§ 2(a), 3(a), and 26 of the Constitution of the State of California in interaction and cooperation with FEDERAL LAW ENFORCEMENT OFFICERS, and state law enforcement officers, including the prosecution of this Action, constitutes attendance as a witness or party at proceedings, giving of evidence, documents, records, objects, or other testimony given or any record, document, any information relating to the commission or possible commission of a violation of law, or otherwise regarding Plaintiffs' FFRRESA and related matters to the FEDERAL LAW ENFORCEMENT OFFICERS in pursuit of investigation, presentation,

-23-

indictment, prosecution, redress, reform, and punishment of Defendants shall hereafter be referred to as the DUE ADMINISTRATION OF JUSTICE.

### Plaintiffs' Commercial Purposes

98. *CALIFORNIA COALITION*: California Coalition for families and Children is a public benefit corporation educating, supporting, protecting, and promoting parents' and children's rights and interests which are presently under- or misrepresented by existing marketplace or government institutions, particularly in domestic dispute and child custody matters. Since 2008 CALIFORNIA COALITION has assisted mothers, fathers, and children in defending and supporting family autonomy in relations with one another and government interests with related jurisdiction. CALIFORNIA COALITION is active in protecting, empowering, and promoting parents and children through education, community support, lobbying, litigation, and public and private entity awareness.

99. Recognizing the widespread deprecation to tens of thousands of victim parents and children wrought by California's unchecked operation of its uniquely pernicious Domestic Dispute Industry in violation of the FFR, CALIFORNIA COALITION'S commercial activities have been directed toward educating, empowering, supporting, and representing parents and children to withstand and eventually reverse this well-armed invidious bureaucratic menace eroding parents' and children's welfare.

100. CALIFORNIA COALITION has advanced public and governmental awareness of the underserved needs of the "Domestic Relations Class" including defending parents against numerous alarming deprivations of parents' and children's financial interests by the steamroller public-private enterprise Domestic Dispute Industry. CALIFORNIA COALITION works closely with national parenting organizations such the National Parents Organization, ACFC, and Up To Parents to provide healthy, safe, and legal counseling, resources, representation, services, and support alternatives to traditional domestic dispute services.

101. *LEXEVIA*: At all times relevant hereto Lexevia, PC was a professional law corporation founded by STUART in 2008.  As of April 15, 2010 it included STUART and three members. Lexevia's primary practice areas include intellectual property, licensing, consumer fraud counseling and litigation, child protection regulation, privacy laws, technology, life science, software, Internet and new media matters, and digital copyright and e-mail "spam" regulation. Lexeiva's lawyers have spoken to numerous industry groups and written on related topics.

102. Lexevia's public interest or pro bono engagements have included numerous Civil Rights and Constitutional Law matters, including representation of CALIFORNIA COALITION and numerous parents affiliated therewith.  STUART founded Lexevia in 2008 after practicing for thirteen years as a partner or associate at international firms. Ex. 24; www.lexevia.com.

103. On January 2, 2014, CALIFORNIA COALIITON acquired all property and rights of Lexevia, PC and asserts the same herein.

**Business Development Activities of Plaintiffs**

104.  In furtherance of Plaintiffs' FFRRESA and COMMERCIAL PURPOSES, in 2008 Plaintiffs established and began growing independent parent-child-oriented private support networks and services to share resources, improve awareness, advance joint social, political, and legal goals, protect and promote the independent interests of families and children in domestic dispute matters, develop superior, more efficient, safer, and legal alternatives to traditional family law practices, and to improve the visibility of parent-child interests to legal institutions including policymakers, law enforcement, and courts.  Recognizing abundant opportunity to fill a demand for more efficient, safe, and legal services within the family law community, CALIFORNIA COALITION'S early business development efforts focused on gaining intelligence about the Domestic Dispute Industry to better understand the existing business structures and thereon reform and/or influence and build more efficient, effective, safe, and legal services for parents and children who have *no effective advocates* in the

-25-

present industry. These goals include improving professional standards of care for DDI professionals—including lawyer, professional service providers, judicial officials, social workers, law enforcement, and others, providing consumer-oriented legal and government services, inform and improve industry governance, improve licensing, certification, discipline, oversight standards, from consumer (parents' and children's) perspectives, and develop or assist in developing superior service products to compete in that healthier environment.

105. In furtherance of the COMMERCIAL PURPOSES, Plaintiffs have undertaken the following business development activities:

    a. Studies of the "closed society" of the multi-billion dollar Domestic Dispute Industry (DDI) both from "outside" and "inside" to observe and understand the DDI "money flow" from Domestic Dispute Industry Litigants, to Domestic Dispute Industry professionals, attorneys, judicial officers, and law enforcement;

    b. Identification of existing industry-wide fraud schemes and artifices, including consumer fraud, Lanham Act violations, bribery, "kickbacks", invidious discrimination, unchecked abuse of power, nepotism, illegal conduct, and general inefficiency;

    c. Identification of the Domestic Dispute Industry "dealmakers"; the structure of its commercial relationships and networks between lawyers, service providers, judicial officials, and their agents and affiliates;

    d. Contribute to the ongoing analysis of the Domestic Dispute Industry to prepare legal actions to restrain the Domestic Dispute Industry operatives from violations of law providing it with unfair competitive advantages;

    e. Contribute to preparation of competitive business models to better serve DDI clients with more efficient, less expensive, less disruptive, ethical and legal services, including law, social/governmental parenting support and dispute resolution services;

-26-

f.  Development of personal and professional networks at events such as the SDCBA SEMINAR to convert "traditional" Domestic Dispute Industry agents to CALIFORNIA COALITION'S healthier, safer, more efficient, and legal alternative business models;

g.  Promote parent/child (consumer) awareness of rights and options in holding existing "black hat" Domestic Dispute Industry affiliates to their PROFESSIONAL DUTIES, and developing strategies for development and promotion of competitive services and increased self-regulation of professionals to level the playing field for "white hat" competitors such as CALIFORNIA COALITION, LEXEVIA, Up To Parents, and other "white hat" Family Law Community members which chose to adopt safer, healthier, more efficient, and legal business models;

h.  Develop understanding and awareness of existing "free" resources presently discouraged by DDICE affiliates such as court-sponsored mediation, expert services, and ordinary adjudication; to understand the causes of the common perception that divorce is "inevitably" brutalizing, unfair, and expensive;

i.  Obtain awareness useful to state and federal authorities in discipline and reform of the DDI operatives, through the DUE ADMINISTRATION OF JUSTICE;

j.  Obtain awareness useful to CALIFORNIA COALITION in its activism, social justice, and justice system FFRRESA;

k.  Advance Lexevia's marketable legal expertise in representing CALIFORNIA COALITION, parents, and DDI victims through potential individual actions, class actions, civil rights, racketeering, or other lawsuits under the Civil Rights Criminal and Civil Statutes adverse to the Domestic Dispute Industry (Ex. 1);

l.  Advance CALIFORNIA COALITION'S and LEXEVIA's knowledge and divisibility within the DDI as part of a foundation for building improved domestic dispute service models for citizens in domestic disputes, including

-27-

1  social, financial, psychological, faith-based, and criminal justice system
2  capabilities such as those presently operated by CALIFORNIA COALITION
3  affiliate "Up To Parents".

4  106. Plaintiffs' FFRRESA, COMMERCIAL PURPOSES, and BUSINESS
5  DEVELOPMENT ACTIVITIES shall hereinafter be collectively referred to as
6  Plaintiffs' **PUBLIC BENEFIT ACTIVITY**.

7

8  ## IV. COMMON ALLEGATIONS

9  107. This matter arises out of Defendants' criminal and tortious interference with and
10  retaliation for Plaintiffs PUBLIC BENEFIT ACTIVITY and DUE
11  ADMINISTRATION OF JUSTICE. Defendants are owners, associates, participants,
12  collaborators, affiliates, benefactors, associates of entities providing "traditional"
13  professional, legal, social, and government services as part of the Domestic Dispute
14  Industry. They have acted aggressively and illegally against Plaintiffs to commit
15  criminal and civil violations of Plaintiffs' state and federal rights, obstruct justice,
16  abuse process, interfere with existing and prospective business relations, and commit
17  civil and criminal violations federal law as detailed herein.

18  ### The SDCBA ENGAGEMENT

19  108. As part of Plaintiffs' PUBLIC BENEFIT ACTIVITY, Plaintiffs have sought
20  opportunities to ENGAGE Family Law Community professionals and clients to raise
21  awareness of the ongoing unsafe, inefficient, and illegal activity and harm to clients
22  being caused by the Family Law Community, and to influence Defendants toward
23  adoption of safer, more efficient, and legal "white hat" alternatives to Family Law
24  Community practices such as those advanced by PLATINTIFFS. In furtherance of
25  those goals Plaintiffs have initiated and/or coordinated numerous ENGAGEMENTS
26  with Family Law Community members, including Defendants.

27  109. One such ENGAGEMENT occurring on April 15, 2010 at the San Diego County
28  Bar Association building at 1333 7th Avenue, San Diego, California is a central subject

-28-

1  of this litigation.  In February, 2010, CALIFORNIA COALITION members learned of

2  a Seminar to be hosted by SDCBA for various San Diego Family Law Community

3  professionals. The Seminar was advertised to thousands of Family Law Community

4  professionals and was to feature a panel of speakers including:

5  110. Family Court Division judicial officials ALKSNE, C. GOLDSMITH,

6  WOHLFEIL, LOWE, McADAM, McKENZIE, Family Law Community legal industry

7  professionals C. BALDWIN, L. BALDWIN, CHUCAS, Family Law Community

8  behavioral sciences professionals CORRIGAN, DOYNE, GRIFFIN, HARGRAEVES,

9  LEVIN, LOVE, and STOCKS, as well as numerous other domestic dispute industry

10  professionals ("SDCBA SEMINAR").

11  111. The advertising brochure announcing the Seminar and soliciting attendees

12  identified the Seminar theme as "Litigants Behaving Badly—Do Professional Services

13  Really Work?" is attached hereto as Ex. 26.

14  112. Though startled by the Family Law Community's attack on its own client base,

15  CALIFORNIA COALITION thought they had some answers to the Family Law

16  Community's question, and viewed the Seminar as an opportunity to engage key

17  members of the Family Law Community and their clients to offer answers.

18  CALIFORNIA COALITION saw the SDCBA SEMINAR as an excellent opportunity

19  to raise awareness of CALIFORNIA COALITION'S FFRRESA, the Federal Family

20  Civil Rights, ongoing violations of the Family Federal Civil Rights and rights of action

21  under the Civil Rights Criminal and Civil Statutes, promote CALIFORNIA

22  COALITION alternatives to what it regarded as illegal, harmful business practices of

23  the Family Law Community, and continue CALIFORNIA COALITION'S PUBLIC

24  BENEFIT ACTIVITIES.

25  113. Plaintiffs determined to use the SDCBA SEMINAR to engage the Family Law

26  Community to advance CALIFORNIA COALITION'S PUBLIC BENEFIT

27  ACTIVITIES.   Plaintiffs and their affiliates sought to communicate one of

28  CALIFORNIA COALITION'S central messages that the Family Law Community,

including judges, blame "Litigants Behaving Badly" (their own clients) for harms enabled—indeed largely manufactured—by the Family Law Community's own longstanding commercial practices of abusing process, their loved ones, and even themselves—in perfect compliance with certain Family Law Community professionals' instructions.

114. CALIFORNIA COALITION saw the "Litigants Behaving Badly" theme as part of the self-delusional propaganda engaged in by Family Law Community members who, rather than recognizing the harm they themselves enable instead blame their own clients for following instructions.

115. To communicate an answer to the DDI's question "Do Professional Services Really Work?", CALIFORNIA COALITION adopted a Counter-theme: "JUDGES BEHAVING BADLY—IF YOU DON'T FOLLOW THE LAW, WHY WOULD WE?" CALIFORNIA COALITION created promotional pamphlets and exhibits to distribute, and large "poster"-sized signage to display, and organized volunteers to participate in the SDCBA ENGAGEMENT. True and correct copies of the signage are attached as Ex. 28.

116. CALIFORNIA COALITION scheduled the ENGAGEMENT to coincide with the SDCBA SEMINAR in front of the SDCBA Bar Building to enable maximum impact for the JUDGES BEHAVING BADLY MESSAGE, and continue developing knowledge, networks, contacts, and intelligence to advance CALIFORNIA COALITION'S FFRRESA and BUSINESS DEVELOPMENT with key Family Law Community members.

### The STUART ASSAULT

117. On information and belief each STUART ASSAULT COORDINATOR Defendant received CALIFORNIA COALITION'S press releases announcing the ENGAGEMENT ahead of the Seminar. Ex. 27. A true and correct copy of an article identifying a "spike" in downloads of the CALIFORNIA COALITION Press Release by STUART ASSAULT COORDINATOR Defendants is attached at Exhibit 30.

118. STUART ASSAULT COORDINATOR Defendants also knew or had reason to know of the CALIFORNIA COALITION FFRRESA by virtue of CALIFORNIA COALITION'S past ENGAGEMENT, and FFRRESA.

119. CALIFORNIA COALITION members arrived early to the Engagement with signs and brochures. (Exs. 28, 29)  As attendees arrived, including family court judges, attorneys, industry professionals, and clients, they could easily see CALIFORNIA COALITION members peacefully carrying signs, walking on the sidewalks in front of the SDCBA building and through the crosswalks intersecting 7th and B. Streets.

120. The ENGAGEMENT was peaceful.  Pamphlets were distributed as attendees entered the building, establishing professional relationships valuable to CALIFORNIA COALITION and LEXEVIA's commercial interests.  Numerous contacts were added to CALIFORNIA COALITION'S network, ideas and business contact information exchanged.  No conflict, disruption, obstruction, or breach of the peace occurred.

121. STUART did not participate in the ENGAGEMENT, but did attend SDCBA SEMINAR.  His intent on attending the SEMINAR was to focus on gaining knowledge in order to advance Plaintiff's PUBLIC BENEFIT ACTIVITY.  STUART was then a member of SDCBA and regular attendee at SDCBA events.  A week prior to the SEMINAR he purchased admission through SDCBA'S online store as an SDCBA member in the way he has numerous times before (STUART-SDCBA CONTRACT).

122. STUART entered the Seminar as a normal attendee, signed his name where it was pre-printed on a form at the "pre-registration" table at the front door and received a pre-printed name badge.

123. STUART entered the SDCBA's "Daniel Broderick Room" where nearly one hundred prominent San Diego divorce lawyers, judges, psychologists, and service providers were gathered, chose a seat and awaited quietly for the Seminar to begin.  He maintained a normal professional demeanor—he was not seeking and did not exercise FFRRESA at the Seminar, but only to gather information about how the judges, attorneys, and professional service providers conducted their affairs, marketed

-31-

services, formed and maintained relationships, and made money in support of the DUE ADMINISTRAITON OF JUSTICE and PUBLIC BENEFIT ACTIVITY. He was dressed professionally, spoke to no one, and attended the Seminar like any other attendee.

124. Also in attendance at the Seminar were approximately fifteen uniformed armed Sheriff's Deputies spread in a uniformly-spaced perimeter along the walls of the room (SDSD DOES 1-15). Shortly after STUART selected his seat, the Sheriff's Deputies changed their perimeter to positions nearer to STUART along the walls, effectively surrounding STUART. Each deputy was watching STUART closely.

125. The Seminar began with introductory remarks by Family Law Division supervising judge ALKSNE. However, after only about two minutes of speaking, ALKSNE announced an abrupt break, apologizing that she needed a break "so we can straighten something out." One or more of the SDCBA Defendants had signaled or otherwise drew the attention of Defendant ALKSNE to alert her of STUART's presence and that the plan to eject STUART (described below) was underway.

126. ALKSNE left the podium, walked to the back of the conference room, and began speaking in a huddle of several other defendants, including several Sheriff's Deputies, two ODO employee security guards, and two or three other persons who appeared to be SDCBA agents or Seminar attendees.

127. The group conferred for several minutes, looking in STUARTS' direction and referencing his presence with nods, glances, and gestures. It was apparent that the group was discussing STUART. STUART remained seated quietly during the unscheduled break.

128. After consulting with ALKSNE and others, two employees of defendant ODO (ODO DOES 1 and 2) and two Sheriff's Deputies (SDSD DOES 1 and 2) approached STUART where he was seated. One of the men, ODO DOE 1, asked STUART if he was "Colbern Stuart." STUART acknowledged his identity. The man then asked STUART to accompany him to leave the Seminar.

129. STUART declined and inquired why he was being asked to leave. The man reiterated that the SDCBA wanted him to leave.  STUART again refused, stating that he had purchased a ticket and was intent on attending the entire Seminar.  STUART asked if he was breaking any laws or interfering with the Seminar in any way. The man replied "no."  STUART politely again expressed his desire and intent to remain attending the entire Seminar.

130. The man then informed STUART that if he did not leave voluntarily that they would forcibly eject him.  STUART objected, again stating that he intended to remain. The four men then returned to where the others were "huddled" several feet away.  The group again conferred with similar references and gestures toward STUART.

131. Within moments, ODO DOES 1 and 2 and SDSD DOES 1 and 2 again approached STUART, who continued to sit quietly awaiting the resumption of the Seminar.  ODO DOE 1 again asked STUART to leave. STUART again refused.  ODO 1 and 2 then forced STUART to stand, grabbed his arms, forced his hands behind his back, and handcuffed him.  They searched his person, emptied his pockets, and seized his property, consisting of a notebook, reading glasses, a mobile phone, pen, spare change, CALIFORNIA COALITION and LEXEVIA business cards, and a wallet.

132. ODO DOES 1 and 2 forcibly led STUART out of the SEMINAR in front of dozens of STUART's professional colleagues including one of his law partners, fellow bar members, lawyers, judges, professional service providers, clients, employees, and law enforcement officers.

133. ODO DOES 1 and 2 released STUART outside of the SDCBA building and informed him he was not free to return.

134. The Seminar re-convened immediately after STUART'S removal.  According to Plaintiffs' witnesses present at the SEMINAR, several SDCBA panel speakers joked during the Seminar "I guess he got what he asked for" and "let's see if that gets them any publicity."  They made puns about STUART and CALIFORNIA COALITION as "THE Litigants Behaving Badly", calling STUART and CALIFORNIA COALITION

a "bunch of borderlines" "crazy parents" and stating "that's why we have to do what we do."

135. At all times relevant hereto, STUART behaved REASONABLY (to be defined as "lawfully, with due care, dutifully, with probable cause"), was unarmed, calm, and did not pose a disturbance of the peace, or threat of death or injury to Defendants or other attendees.

136. STUART was unarmed, non-threatening, rightfully present, and in compliance with all laws at all times.

137. Prior to the STUART ASSAULT, no Defendant possessed a search or arrest warrant for STUART.

138. Defendants had no probable cause to believe STUART was armed, dangerous, carrying contraband, or in possession or evidence of a crime, and upon the illegal search found that he was not.

139. Prior to the STUART ASSAULT, STUART had violated no laws in any Defendant's presence, and no Defendant had any knowledge of STUART'S having violated any law in or out of their presence.

140. Defendants collaborated before and during the SEMINAR to coordinate the STUART ASSAULT with the ENGAGEMENT in order execute it to retaliate for the DDIJO COMPLAINTS, the DOYNE COMPLAINTS, maximize the intimidating and terrorizing effect of the assault of CALIFORNIA COALITION'S leader on CALIFORNIA COALITION members, the DUE ADMINISTRATION OF JUSTICE, PUBLIC BENEFIT ACTIVITIES, and FFRRESA.

**STUART ASSAULT COORDINATION: General Allegations**

141. The STUART ASSAULT was coordinated by agreement among these named Defendants possessing and disseminating common knowledge, awareness, power, and motive, as follows.

-34-

142. Each Defendant to each Claim in Count 1 below, prior to the STUART ASSAULT, was or became aware of one or more of:

    a. The STUART-SDCBA CONTRACT;

    b. The ENGAGEMENT;

    c. STUART'S attendance at the SEMINAR and involvement with the ENGAGEMENT;

    d. STUART'S affiliation with each of his co-Plaintiffs;

    e. The DUE ADMINISTRATION OF JUSITCE; and

    f. Plaintiffs' PUBLIC BENEFIT ACTIVITIES.

143. Each Defendant to each Claim of Count 1 below considered Plaintiffs' PUBLIC BENEFIT ACTIVITIES to be a threat to traditional Family Law Community persons, institutions, businesses, and enterprises, including those identified in the ENTERPRISE ALLEGATIONS herein.

144. Soon after learning of the ENGAGEMENT, each Defendant to each Claim of Count 1 below communicated and agreed with one or more other Defendant to Count 1 to affiliate and support or participate in the STUART ASSAULT, as more fully described in each Claim below.

### General Allegations Re: Intent

145. Each act of each Defendant was undertaken with the specific intent to: support, permit, facilitate, encourage, affiliate with, and collaborate with one or more other Defendant in joint purpose, effort, via each ENTEPRRISE and CONSPIRACY alleged herein.

146. Each act of each Defendant was intended to CUPLAPLY retaliate for, obstruct, deter, hinder delay, oppress, and deprive Plaintiffs' rights, privileges, and immunities, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITIES.

147. Certain actions of Defendants are described in this Complaint were undertaken (a) CULPABLY, to be defined as one or more of the following: maliciously, criminally, in bad faith, without probable cause, recklessly, knowingly, unjustifiably,

1 brutally and offensive to human dignity, fraudulently, oppressively, wantonly, in

2 premeditation, deliberately indifferent, with the specific intent to deprive others of

3 constitutional rights, privileges or immunities of others, in intentional furtherance of

4 conspiracy; and/or (b) UNREASONABLY, to be defined as without due care.

5 148. On information and belief, STUART ASSAULT COORDINATOR Defendants,

6 and each of them, intentionally collaborated before the SEMINAR to coordinate the

7 STUART ASSAULT with the ENGAGEMENT in order to retaliate for the DDIJO

8 COMPLAINTS, the DOYNE COMPLAINTS, maximize the terrorizing effect of the

9 assault of CALIFORNIA COALITION'S leader on CALIFORNIA COALITION

10 members and affiliates, the DUE ADMINISTRATION OF JUSTICE, PUBLIC

11 BENEFIT ACTIVITIES, and FFRRESA.

12

13 **V. CHARGING ALLEGATIONS: CIVIL RIGHTS**

14 **COUNT 1**

15 **STUART ASSAULT**

16 **42 U.SC. § 1983 and Cal. Const. art. I, § 26**

17 149. This Count and each Claim herein assert deprivations of constitutional rights

18 under color of law pursuant to 42 U.SC. § 1983 and Cal. Const. art. I, § 26 against

19 Defendants as indicated per Claim.

20 150. Each act alleged in this and each Count of this First Amended Complaint was

21 performed under color of law.

22 151. Pursuant to Article I § 26 of the California Constitution, no Defendant acting

23 under color of law has discretion to perform any act inconsistent with Article I §§ 2, 3,

24 7, and 13 of the California Constitution.

25 152. Defendants SDCBA, ODO, ODO DOES 1 and 2, SDSD DOES 1-15, C.

26 GOLDSMITH, ALKSNE, SCHALL, LOWE, McADAM, McKENZIE, WOHLFEIL,

27 L. BALDWIN, C. BALDWN, CHUCAS, CORRIGAN, DOYNE, DOYNE INC.,

28

GRIFFIN, HARGRAEVES, LEVIN, LOVE, SIMON, STOCKS and BIERER shall hereafter be referred to as STUART ASSAULT COORDINATORS.

<div align="center">

**Claim 1.1**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against ODO, ODO DOES 1 and 2**

</div>

153. This is a Claim by STUART against Defendants ODO and ODO DOES 1 and 2, for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

154. All prior paragraphs are re-alleged and incorporated as if set forth in full.

155. ODO was the security firm hired by Defendants SDCBA to provide security for the SDCBA SEMINAR.  ODO assigned at least two agents or employees to perform security services at the SEMINAR.  The ODO agents' or employees' names are unknown and shall be referred to as ODO DOES 1 and 2,

156. Defendants ODO and ODO DOES 1 and 2 are agents and employees of Defendants SDCBA.

157. In the STUART ASSAULT, ODO DOES 1 and 2 grabbed STUART'S arms, forced him to stand, handcuffed him, drug, shoved, and forced him out of the SEMINAR causing STUART physical injury, including bruising on his wrists, and arms, and soreness in his arms and torso.

158. In performing the acts attributed to them, ODO DOES 1 and 2 used, threatened, and attempted to use unreasonable and excessive force upon STUART despite STUART'S lack of physical resistance, in deprivation of STUART's liberty interest to be free from excessive, unreasonable, or unnecessary force under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article I §§ 7(a) and 26 of the Constitution of the State of California ("EXCESSIVE FORCE").

159. After handcuffing him, Defendants unreasonably searched STUART without warrant or probable cause, emptied each of his pockets, seized his documents and other property, and seized his body in deprivation of his right to be secure in his person,

<div align="center">-37-</div>

papers, and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States, and Article I §§ 13 and 26 of the Constitution of the State of California ("SEARCH AND SEIZURE").

160. Upon seizing STUART, Defendants at no time advised STUART of any crime he was accused of committing in deprivation of his right to be notified of all charges against him secured by the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and Article I, §§7(a) and 26 of the Constitution of the State of California ("PROCEDURAL DUE PROCES").

161. In so acting, Defendants intended and did deprive, retaliate for, oppress, and chill STUART'S PUBLIC BENEFIT ACTIVITIES, rights to freedom of speech, expression, privacy, and association, secured by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article I, §§ 2(a), 3(a), and 26 of the Constitution of the State of California ("EXPRESSION, PRIVACY, and ASSOCIATION");

162. In so acting, Defendants did deprive, interfere with, impede, hinder, delay, and oppress STUART'S past, ongoing, and future FFRRESA and DUE ADMINISTRATION OF JUSTICE secured by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States and Article I, §§ 2(a), 3(a), and 26 of the Constitution of the State of California ("ACCESS TO JUSTICE");

163. In so acting, Defendants were aware of STUART'S status as a member and advocate for each of the EQUAL PROTECTION CLASSES and acted intending to deprive STUART of his rights as a such in violation to his rights to the equal protection of the laws secured by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I §§ 7(b) and 26 of the Constitution of the State of California ("EQUAL PROTECTION");

164. In inflicting the STUART ASSAULT abusively, violently, and in front of dozens of professional colleagues, clients, law and business partners, and existing and potential business associations as elsewhere detailed, Defendants injured and assaulted, and

-38-

1  intentionally, oppressively, and maliciously humiliated, embarrassed, and defamed

2  STUART as detailed more fully elsewhere, constituting a deprivation of STUART'S

3  right not to be subjected to cruel and unusual punishment under the Fifth, Eighth, and

4  Fourteenth Amendments to the Constitution of the United States and Article I §§ 17

5  and 26 of the Constitution of the State of California ("CRUEL AND/OR UNUSUSAL

6  PUNISHMENT").

7    165. In so acting, Defendants CULPABLY and UNREASONABLY breached one or

8  more PROFESSIONAL DUTIES, causing foreseeable injury to STUART in

9  deprivation of STUART'S right to not be deprived of life, liberty, or property without

10  due process of law secured by the Fifth and Fourteenth Amendments to the Constitution

11  of the United States and Article I §§ 7(a) and 26 of the Constitution of the State of

12  California ("SUBSTANTIVE DUE PROCESS").

13    166. Defendants performed the acts attributed to them in agreement and coordination

14  with one or more other Defendants as elsewhere detailed.

15    167. As an actual and foreseeable result, Plaintiffs have been deprived of state and

16  federal constitutional rights, damaged, and injured in a nature and amount to be proven

17  at trial.

18                              **Claim 1.2**

19            **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

20                       **Against SDSD DOES 1-15**

21    168. This is a Claim by STUART against Defendants SDSD DOES 1-15 for

22  deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const.

23  art. I, § 26 and Cal. Const. art. I, § 26.

24    169. All prior paragraphs are re-alleged and incorporated as if set forth in full.

25    170. SDSD DOES 1 and 2 are two unknown deputies of the San Diego Sheriff's

26  Department employed by Defendant COUNTY OF SAN DIEGO, working at all times

27  relevant to this Count under the direct and indirect supervision, policies, power, and

28

control of Defendants GORE and COUNTY OF SAN DIEGO, and as the agents of SDCBA and each judicial officer STUART ASSAULT COORDINATOR.

171. SDSD DOES 1 and 2 were two members of a larger team of approximately 15 unknown Sheriff's Deputies who shall be referred to as SDSD DOES 1-15, also employed by Defendant COUNTY OF SAN DIEGO, also working at all times relevant to this Count under the direct and indirect supervision, direction, power, and control of Defendant GORE, and as the agents of SDCBA and each judicial officer STUART ASSAULT COORDINATOR.

172. On information and belief, SDSD DOES 1 and 2 were supervisors and higher-ranking Sheriff's Deputies with the direct ability and power to control, direct, and supervise SDSD DOES 3-15 in each of the acts attributed to them herein.

173. On information and belief, SDSD DOES 1-15 had the power and ability as deputized peace officers to prevent or aid in preventing each illegal act of their co-Defendants ODO, ODO DOES 1 and 2, ALKSNE, each STUART ASSAULT COORDINATOR, and SDCBA alleged herein to be a violation of any law, including violation of Plaintiffs' rights, privileges, and immunities under the Constitution of the United States and the Constitution of the State of California.

174. In performing the actions in the STUART ASSAULT and this Count 1, SDSD Does 1-15 CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

175. In performing the actions in the STUART ASSAULT and this Count 1, SDSD Does 1-15 subjected or caused to be subjected STUART to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

**Claim 1.3**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against ALKSNE**

176. This is a Claim by STUART against ALKSNE for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 and Cal. Const. art. I, § 26.

177. All prior paragraphs are re-alleged and incorporated as if set forth in full.

178. ALKSNE was at relevant times a Judge of the SAN DIEGO SUPERIOR COURT, an employee of Defendant COUNTY OF SAN DIEGO, a STUART ASSAULT COORDINATOR, and an agent of SDCBA.

179. On information and belief, in performing the acts attributed to her in the STUART ASSAULT, ALKSNE acted as a supervisor, director, and principal of Defendants SDSD DOES 1-15, ODO, ODO DOES 1 and 2, SDCBA, SDCBA DOE 1, and each STUART ASSAULT COORDINATOR, in their activities elsewhere described.

180. On information and belief, Defendant ALKSNE collaborated with SDCBA, SAN DIEGO SUPERIOR COURT, COUNTY OF SAN DIEGO, each STUART ASSAULT COORDINATOR, to plan and participate in the SDCBA SEMINAR ("PLANNING AND DELIVERY").

181. On information and belief, the PLANNING AND DELIVERY of the SDCBA SEMINAR included having some influence and control of:

a.  Selection of speaker panel members;

b.  Selection of topics and subject matter;

c.  Selection of content, message, lessons, instruction, guidance, and direction;

d.  Preparation and selection of written materials;

e.  Seminar timing, location, and date;

f.  Coordination with Defendants SDCBA, ODO, GORE, SAN DIEGO SUPERIOR COURT, COUNTY OF SAN DIEGO, for security at the

-41-

SEMINAR, including input into specific instructions for the behavior of SDSD DOES 1-15 and ODO DOES 1 and 2;

g. Preparation for and response to the ENGAGEMENT and STUART'S attendance at the SEMINAR;

h. Planning, direction, and control in the STUART ASSAULT, including communicating with SDSD DOES 1-15, ODO, ODO DOES 1 and 2, and GORE to coordinate the presence of SDSD DOES 1-15 and ODO DOES 1 and 2 at the Seminar.

182. On information and belief, prior to the SEMINAR, Defendant ALKSNE met or communicated with each STUART ASSAULT COORDINATOR, RODDY, TRENTACOSTA, SAN DIEGO SUPERIOR COURT and others before the SDCBA SEMINAR to conduct or participate in the PLANNING AND DELIVERY of the Seminar.

183. In performing the actions in the STUART ASSAULT and this Count, ALKSNE CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

184. In committing the actions as alleged in the STUART ASSAULT and this Count 1, ALKSNE, in collaboration and agreement with each other STUART ASSAULT COORDINATOR, subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

185. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

**Claim 1.4**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**SDCBA, SDCBA DOE 1**

186. This is a Claim by STUART against Defendants SDCBA and SDCBA DOE 1 for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

187. All prior paragraphs are re-alleged and incorporated as if set forth in full.

188. SDCBA was at all times relevant to this Claim the conductor, organizer, host, promoter, and owner or lessee of the real property at which the SDCBA SEMINAR and STUART ASSAULT occurred.

189. SDCBA DOE 1 is a female Caucasian, approximately 5'4", with auburn hair, on information and belief an administrative agent or employee of SDCBA, with responsibilities including coordinating the Seminar, directing Seminar attendees, the STUART ASSAULT COORDINATOR, the sign-in desk, ODO, ODO DOES 1 and 2, and SDSD DOES 1-15.

190. SDCBA, through its agents and employees, participated in the PLANNING AND DELIVERY for the SDCBA SEMINAR, including:

    a. Acting as a lead entity in preparation, publication, and distribution of the LITIGANTS BEHAVING BADLY BROCHURE (Ex. 26);

    b. Coordinating ticket purchases, payments, attendee lists and name badges, sign-in sheets, correspondence lists, and all SEMINAR-related communications;

    c. Contracting, hiring, coordinating, supervising, and directing Defendants ODO, ODO DOES 1 and 2, and each of their agents and employees;

    d. Coordinating with Defendants RODDY, SAN DIEGO SUPERIOR COURT, and each STUART ASSAULT COORDINATOR regarding their attendance, materials, and message;

1     e.  Providing customer service, promotion, and coordination with SDCBA

2         SEMINAR attendees, including many members of the Family Law Community

3         and ENTERPRISES described herein;

4     f.  Preparation and delivery of SEMINAR-related written materials.

5     g.  Coordinating with Defendants ODO, ODO DOES 1 and 2, GORE, SDSD

6         DOES 1-15 regarding security with respect to the ENGAGEMENT and

7         STUART ASSAULT.

8  191. SDCBA DOE 1 was present at the check-in desk when STUART arrived at the

9  SEMINAR.  She directed STUART to sign in next to his pre-printed name on a sign-

10  in list.  SDCBA DOE 1 asked to see STUART'S identification, confirmed his identity,

11  and handed him a name badge.

12  192. On information and belief, after STUART entered the SEMINAR and was

13  identified by various STUART ASSAULT COORDINATOR as detailed elsewhere,

14  SCBA DOE 1 exited the SDCBA building where the SEMINAR was being conducted,

15  to where the ENGAGEMENT was occurring in front of the SDCBA building.

16  193. SDCBA DOE 1 alerted one or more San Diego Police Department Officers

17  (SDPD) who were present at the ENGAGEMENT, on information and belief, at the

18  request of one or more STUART ASSAULT COORDINATORS to watch the

19  ENGAGEMENT.

20  194. On information and belief, in response to this STUART ASSAULT

21  COORDINATOR request, SDPD had dispatched a "paddy-wagon" and several SDPD

22  officers to the ENGAGEMENT.  The "paddy wagon" circled the block around the

23  SDCBA building repeatedly during the ENGAGEMENT.  CALIFORNIA

24  COALITION members at the ENGAGEMENT were intimidated and frightened in

25  their ENGAGEMENT by the presence of a "mass-arrest" law enforcement vehicle

26  circling the ENGAGEMENT.

27  195. SDCBA DOE 1 requested one or more SDPD officers to enter the SDCBA

28  SEMINAR BUILDING to remove STUART.  On information and belief, SDPD

1 responded with an inquiry of whether STUART was causing a disturbance, damage, or

2 injury inside.  SDCBA DOE 1 replied in the negative.  SDPD asked if STUART was

3 trespassing, SDCBA DOE 1 replied in the negative.  SDPD then informed SDCBA

4 DOE 1 that they could not enter the building or remove STUART from the building as

5 they had no authority or probable cause to do so.  SDCBA DOE 1 then returned to the

6 SEMINAR.

7   196. CALIFORNIA COALITION members spoke with SDPD thereafter to inquire

8 of the conversation with SDCBA DOE 1.   SDPD informed CALIFORNIA

9 COALITION members that SDCBA DOE 1 had advised that several people inside of

10 the SEMINAR were upset with STUART'S presence and had asked them to remove

11 STUART.   SDPD told CALIFORNIA COALITON members that SDPD could not

12 remove or arrest STUART as he was not committing any crime, and they were not

13 authorized to enter the building.

14   197. CALIFORNIA COALITION members were concerned and frightened that

15 SDPD'S dispatch of a "paddy wagon" indicated they were intent on arresting all

16 protesters.  Several CALIFORNAI COALITION members asked if SDPD had any

17 intent to arrest them, or the members were giving cause for arrest. SDPD replied in the

18 negative, stating to the effect of "You're being great protesters."   CALIFORNIA

19 COALITION MEMBERS were somewhat relieved, but were quelled in their

20 ENGAGEMENT activities.  Sensing trouble, several members immediately left the

21 ENGAGEMENT out of fear of repercussion.

22   198. On information and belief, upon her return to the SDCBA SEMINAR, SDCBA

23 DOE 1 alerted SDSD DOES 1 and 2 and possibly others, ODO DOES 1 and 2,

24 ALKSNE, and possibly other STUART ASSAULT COORDINATORS in some way,

25 causing ALKSNE to take the unplanned break in the SEMINAR previously described,

26 and beginning the STUART ASSAULT.

27   199. In performing the actions in the STUART ASSAULT and this Count, SDCBA

28 DOE 1 CULPABLY and UNREASONABLY breached one or more PROFESSIONAL

-45-

DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of Plaintiffs' rights to SUBSTANTIVE DUE PROCESS.

200. In performing the actions in the STUART ASSAULT and this Count, SDCBA DOE 1 subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

201. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

<div align="center">

**Claim 1.5**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against C. GOLDSMITH**

</div>

202. This is a Claim by STUART against Defendant C. GOLDSMITH for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

203. All prior paragraphs are re-alleged and incorporated as if set forth in full.

204. Defendant C. GOLDSMITH at all times relevant to this Count and Claim was a Judge of the SAN DIEGO SUPERIOR COURT, employed by Defendant COUNTY OF SAN DIEGO, and a STUART ASSAULT COORDINATOR.

205. On information and belief, Defendant GOLDSMITH was a collaborator with SDCBA, SAN DIEGO SUPERIOR COURT, GORE, and SDSD DOES 1 and 2, and possibly other STUART ASSAULT COORDINATORS in the PLANNING AND DELIVERY of the SDCBA SEMINAR.

206. On information and belief, Defendant GOLDSMITH met with each STUART ASSAULT COORDINATOR and others before the SDCBA SEMINAR in response to the ENGAGEMENT and STUART'S planned attendance at the SEMINAR, and to prepare for the STUART ASSAULT.

207. On information and belief, prior to the SEMINAR, GOLDSMITH communicated with other STUART ASSAULT COORDINATORS of her knowledge of:

  a. STUART, gained through her role as a judge of SAN DIEGO SUPERIOR COURT Family Division;

  b. CALIFORNIA COALITION and its members and affiliates;

  c. PLAINITFFS' FFRRESA and DUE ADMINISTRATION OF JUSTICE;

  d. Her participation in and awareness of a DVILS ORDER she issued relating to STUART STUART's dissolution proceeding;

  e. Her involvement in a criminal action relating to STUART being handled by the San Diego City Attorney's Office, described more fully below as *People v. Stuart*.

208. On information and belief, at the SDCBA SEMINAR, C. GOLDSMITH communicated with other STUART ASSAULT COORDINATORS of STUART'S planned attendance, and assisted to identify STUART'S location to other STUART ASSAULT COORDINATORS.

209. Upon STUART's arrival inside the SDCBA SEMINAR, C. GOLDSMITH physically pointed out STUART to indicate his presence to other STUART ASSAULT COORDINATORS, including ALKSNE, DOYNE, LOVE, SDCBA DOE 1, and SDSD DOES 1 and 2.  As she sat at the panel table in the front of the room, she glared at him, shaking her head in what appeared to be a scowl of disapproval.

210. In performing the actions in the STUART ASSAULT and this Count 1, C. GOLDSMITH CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

211.  In performing the actions described in this Count 1 with each other Defendants as alleged, C. GOLDSMITH,  subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE;

1  SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION;
2  ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL
3  PUNISHMENT.

4  212. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged,
5  and injured as elsewhere alleged.

**Claim 1.6**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against Defendants DOYNE, DOYNE, INC.**

9  213. This is a Claim by STUART against DOYNE and DOYNE, INC. for deprivation
10  of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

11  214. All prior paragraphs are re-alleged and incorporated as if set forth in full.

12  215. DOYNE at all times relevant to this Count was a psychologist and notorious
13  "black hat" member of the Family Law Community practicing as a custody evaluator,
14  mediator, coordinator, and forensic psychologist in conjunction with the SAN DIEGO
15  SUPERIOR COURT, employed by Defendant DOYNE, INC., a member of the speaker
16  panel of the SDCBA SEMINAR and agent of SDCBA, and a STUART ASSAULT
17  COORDINATOR.

18  216. DOYNE was collaborators with SDCBA, SAN DIEGO SUPERIOR COURT,
19  one or more other STUART ASSAULT COORDINATORS, ALKSNE, GORE, and
20  one or more of SDSD DOES 1-15, in the PLANNING AND DELIVERY of the
21  SDCBA SEMINAR.

22  217. On information and belief, DOYNE communicated and met with each STUART
23  ASSAULT COORDINATOR and others before the SDCBA SEMINAR in response
24  to the ENGAGEMENT, STUART'S attendance, and prepare for the STUART
25  ASSAULT.

26  218. On information and belief, DOYNE and DOYNE INC. communicated with the
27  STUART ASSAULT COORDINATORS of his knowledge of STUART,
28  CALIFORNIA COALITION and its members and affiliates, Plaintiffs' FFRRESA, the

-48-

1   DOYNE COMPLAINTS, the DUE ADMINISTRATION OF JUSTICE, and his

2   participation in STUART's dissolution proceeding.

3   219. In so doing, on information and belief DOYNE disclosed confidential

4   knowledge of STUART and CALIFORNIA COALITION members and affiliated

5   including confidential client/patient knowledge, of STUART, CALIFORNIA

6   COALITION, and its members.

7   220. DOYNE, LOVE, and BLANCHET were centerpieces of CALIFORNIA

8   COALITION'S social and political JUDGES BEHAVING BADLY criticism in the

9   posters which every attendee viewed entering the Seminar. DOYNE saw these

10   messages upon entering and determined to increase his efforts in and affiliation with

11   the plan to retaliate against STUART, CALIFORNIA COALITION, and its members

12   and affiliates. Ex. 28.

13   221. On information and belief, DOYNE assisted GOLDSMITH, ALKSNE, and

14   other STUART ASSAULT COORDINATORS by alerting other STUART ASSAULT

15   COORDINATORS of STUART's planned attendance, assisting to identify STUART

16   to other STUART ASSAULT COORDINATORS, and notify other STUART

17   ASSAULT COORDINATORS of his presence and location at the SEMINAR.

18   222. Upon STUART's arrival inside the SDCBA SEMINAR, DOYNE

19   communicated with other STUART ASSAULT COORDINATORS seated around him

20   at the speaker panel table at the front of the room with gestures, words, and nods toward

21   STUART to identify STUART'S location.   Upon STUART'S seating at the

22   SEMINAR, DOYNE starred at STUART, arms crossed, appearing irritated and angry

23   at STUART.

24   223. In performing the actions in the STUART ASSAULT and this Count 1, DOYNE

25   CULPABLY and UNREASONABLY breached one or more PROFESSIONAL

26   DUTIES, causing reasonably foreseeable constitutional deprivation to PLAINITFFS

27   in violation of Plaintiffs' rights to SUBSTANTIVE DUE PROCESS.

28

-49-

224.  In performing the actions described in this Count 1 with each other Defendants as alleged, DOYNE,  subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

225. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

<div align="center">

**Claim 1.7**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against Defendants LOVE, LOVE, INC.**

</div>

226. This is a Claim by STUART against Defendants LOVE and LOVE, INC. for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

227. All prior paragraphs are re-alleged and incorporated as if set forth in full.

228. LOVE at all times relevant to this Count was a psychologist practicing in the Family Law Community as a custody evaluator, mediator, coordinator, and forensic psychologist in conjunction with the SAN DIEGO SUPERIOR COURT, employed by Defendant LOVE AND ALVAREZ, a member of the speaker panel of the SDCBA SEMINAR, and a STUART ASSAULT COORDINATOR.

229. On information and belief, LOVE was a collaborator with SDCBA, SAN DIEGO SUPERIOR COURT, and STUART ASSAULT COORDINATORS, in the PLANNING AND DELIVERY of the SDCBA SEMINAR.

230. On information and belief, LOVE met with one or more other STUART ASSAULT COORDINATORS before the SDCBA SEMINAR to prepare for and respond to the ENGAGEMENT, STUART'S attendance, and plan action in the STUART ASSAULT.

<div align="center">

-50-

</div>

231. On information and belief, Defendants LOVE communicated with other STUART ASSAULT COORDINATORS of her knowledge of STUART, CALIFORNIA COALITION and its members and affiliates, Plaintiffs' FFRRESA, DUE ADMINISTRATION OF JUSTICE, and her participation in STUART's dissolution proceeding, disclosing their knowledge, including confidential client/patient knowledge, of STUART, CALIFORNIA COALIITON, and its members.

232. On information and belief, LOVE assisted GOLDSMITH and other STUART ASSAULT COORDINATORS at the SDCBA SEMINAR in coordinating the STUART ASSAULT by alerting other STUART ASSAULT COORDINATORS of STUART's planned attendance, assisting to identify STUART to other STUART ASSAULT COORDINATORS, and notifying other STUART ASSAULT COORDINATORS of his presence and location at the SEMINAR.

233. Upon STUART's arrival inside the SDCBA SEMINAR, LOVE communicated with other STUART ASSAULT COORDINATOR to identify STUART'S location, indicated in his direction, and starred at him.

234. In performing the actions in the STUART ASSAULT and this Count 1, LOVE CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

235.  In performing the actions described in this Count 1 with each other Defendants as alleged, LOVE,  subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

236. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

**Claim 1.8**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against Defendants BIERER, BIERER AND ASSOCIATES**

237. This is a Claim by STUART against Defendants BIERER and BIERER AND ASSOCIATES for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

238. All prior paragraphs are re-alleged and incorporated as if set forth in full.

239. Defendant BIERER at all times relevant to this Count 1 was a practicing attorney and notorious "black hat" member of the Family Law Community, in conjunction with the SAN DIEGO SUPERIOR COURT, employee, owner, and agent of Defendant BIERER AND ASSOCIATES, an attendee of the SDCBA SEMINAR, and a STUART ASSAULT COORDINATOR.

240. On information and belief, BIERER met with one or more STUART ASSAULT COORDINATORS and other SEMINAR attendees, before the SDCBA SEMINAR to specifically respond to the ENGAGEMENT, STUART'S attendance, and prepare for the STUART ASSAULT.

241. On information and belief, BIERER communicated with other STUART ASSAULT COORDINATORS of her knowledge of STUART, CALIFORNIA COALITION and its members and affiliates, Plaintiffs' PUBLIC BENEFIT ACTIVITIES, DUE ADMINISTRATION OF JUSTICE, and her participation in STUART's dissolution proceeding, including confidential attorney/client confidences and other confidential information gained through her representation as counsel for Ms. Lynn Stuart.

242. On information and belief, BIERER assisted ALKSNE, GOLDSMITH and other STUART ASSAULT COORDINATORS at the SDCBA SEMINAR in coordinating the STUART ASSAULT by alerting other STUART ASSAULT COORDINATORS of STUART's planned attendance, assisting to identify STUART, and to notify each

-52-

other STUART ASSAULT COORDINATOR of his presence and location at the SEMINAR.

243. BIERER, upon seeing STUART sit at a location near her at the SEMINAR, recognized him, startled, jumped from her seat and hurried to the rear of the room to speak with another person who appeared to be a SEMINAR organizer or employee of the SDCBA, possibly SDCBA DOE 1.  The two spoke in apparent urgency about STUART, indicating toward STUART, and altered to communicate similarly with one or more SDSD DOES.

244. Immediately thereafter, the SDSD DOES began to change their perimeter positions to surround STUART as described above.

245. BIERER returned to the aisle where her seat was located near STUART, but did not sit, instead standing at the end of the aisle, arms crossed, facing STUART.  She alternated between staring at STUART with a scowl, and exchanging glances and head nods with panel members including DOYNE, GOLDSMITH, and ALKSNE, in what appeared to be silent communication recognizing and alerting to STUART's presence. She remained standing during the STUART assault, never returning to her seat even as the Seminar speakers spoke.

246. After STUART was handcuffed during the STUART ASSAULT, BIERER approached STUART with what appeared to STUART to be a smile.  She remained smiling as he was lead from the SEMINAR.

247. On information and belief, after STUART was assaulted and ejected from the SEMINAR, BIERER made joined a group of attendees including DOYNE and other STUART ASSAULT COORDIANTORS speaking about STUART and CALIFORNIA COALITION and its members.  They commented that CALIFORNIA COALITION and STUART were "all crazy" and "a bunch of borderlines."  BIERER joked with others that CALIFORNIA COALITION members are "THE Litigants Behaving Badly."  The members of the group commented to the effect of "that's why we have to do what we do."

248. In performing the actions in the STUART ASSAULT and this Count 1, BIERER CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

249.  In performing the actions described in this Count 1 with each other Defendants as alleged, BIERER,  subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

250. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

<div align="center">

**Claim 1.9**

**Retaliation**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against Defendants WOHLFEIL, SCHALL**

</div>

251. This is a Claim by STUART against Defendants Wohlfeil and Schall for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 by efforts to retaliate against Plaintiffs for DDIJO COMPLAINT I and the DUE ADMINISTRATION OF JUSTICE in the STUART ASSAULT.

252. All prior paragraphs are re-alleged and incorporated as if set forth in full.

253. On information and belief, Defendants SCHALL, WOHLFEIL were or became aware of the DDIJO COMPLAINTS I and II between the time period in which the complaints were made and the STUART ASSAULT.

254. On information and belief, upon learning of DDIJO COMPLAINT I, WOHLFEIL and SCHALL determined to retaliate against STUART for making of the Complaint and publishing of the same to others.

<div align="center">

-54-

</div>

255. On information and belief, WOHLFEIL and SCHALL learned of the SDCBA ENGAGEMENT and STUART'S planned attendance before the SEMINAR.

256. Upon learning of the SDCBA ENGAGEMENT, each judicial officer, including WOHLFEIL and SCHALL, and DOYNE recognized the ENGAGMENT to be an opportunity to retaliate against PLAINITFFS for their involvement in PUBLIC BENEFIT ACTIVITIES, DDIJO and DOYNE COMPLAINTS, and the DUE ADMINISTRATION OF JUSTICE.

257. On information and belief WOHLFEIL and SCHALL:

   a.  Participated the PLANNING AND DELIVERY of the SDCBA SEMINAR;

   b.  Alerted or communicated with one or more other person or entity to share knowledge of one or more of Plaintiffs' PUBLIC BENEFIT ACTIVITIES, and the ENGAGEMENT, STUART'S planned attendance at the SDCBA SEMINAR;

   c.  Coordinated with activities of others, including each other STUART ASSAULT COORDINATORS, relating to the STUART ASSAULT; and

   d.  Communicated or coordinated with each STUART ASSAULT COORDINATOR, SDCBA, SDCBA DOE 1 and possibly other SDCBA agents or employees, including CHUBB (described more fully below),  ODO Defendants, and SDSD DOES 1-15 about the STUART ASSAULT both before and after the STUART ASSAULT;

258. Through such activities, WOHLFEIL and SCHALL influenced their co-defendants to this Count to assist in retaliation, intimidation, harassment, chilling, and undue influence of PLAINITFFS in the DDIJO COMPLAINTS, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITIES.

259. In performing the actions in the STUART ASSAULT and this Count 1, WOHLFEIL and SCHALL CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional

deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

260.  In performing the actions described in this Count 1 with each other Defendants as alleged, WOHLFEIL and SCHALL,  subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

261.  As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

### Claim 1.10

### Retaliation

### 42 U.S.C. § 1983 and Cal. Const. art. I, § 26

### DOYNE, DOYNE, INC.

262. This is a Claim by STUART against Defendants DOYNE, DOYNE, INC for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

263. All prior paragraphs are re-alleged and incorporated as if set forth in full.

264. On information and belief, DOYNE was or became aware of the DOYNE COMPLAINTS I-IV and DUE ADMINISTRATION OF JUSTICE between the time period in which the complaints were made and the STUART ASSAULT.

265. On information and belief, upon learning of each DOYNE COMPLAINT, and the DUE ADMINISTRATION OF JUSTICE, DOYNE determined to retaliate against one or more Plaintiff for their involvement with the same or publishing the same to others.

266. On information and belief, DOYNE learned of the SDCBA ENGAGEMENT and STUART'S intended presence before the SEMINAR.

-56-

267. Upon learning of the ENGAGEMENT DOYNE understood the ENGAGMENET to be an opportunity to retaliate against PLAINITFFS for their PUBLIC BENEFIT ACTIVITIES, speech regarding the DOYNE COMPLAINTS, and to further the DOYNE TERRORISM, extortion, and retaliation as elsewhere alleged.

268. DOYNE also saw the engagement as an opportunity to retaliate for, deter, impede, and unduly influence all Plaintiffs' PUBLIC BENEFIT ACTIVITEIS, and the DUE ADMINISTRATION OF JUSTICE.

269. On information and belief, prior to the STUART ASSAULT, DOYNE:

   a. Participated in the PLANNING AND DELIVERY of the SDCBA SEMINAR;

   b. Alerted or communicated with one or more other Defendants to share knowledge of one or more of Plaintiffs' PUBLIC BENEFIT ACTIVITIES, and the ENGAGEMENT, STUART'S planned attendance at the SDCBA SEMINAR, and shared or coordinated with activities of others, including each other STUART ASSAULT COORDINATOR, relating to the STUART ASSAULT;

   c. Communicated or coordinated with each STUART ASSAULT COORDINATOR, SDCBA, SDCBA DOE 1 and possibly other SDCBA agents or employees, ODO Defendants, and SDSD DOES 1-15 about the STUART ASSAULT both before and after the STUART ASSAULT;

   d. Communicated and coordinated with one or more of SAN DIEGO SUPERIOR COURT, TRENTACOSTA, RODDY, and DDIJO DOES 1-10 regarding their responses to the ENGAGEMENT, Plaintiffs PUBLIC BENEFIT ACTIVITIES, the DUE ADMINISTRATION OF JUSTICE, the DDICE and other CRIMINAL and civil CONSPIRACIES in order to facilitate the STUART ASSAULT.

270. Through such activities, DOYNE influenced his co-defendants to this Count to assist in retaliation, intimidation, harassment, and undue influence of PLAINITFFS in

the DDIJO COMPLAINTS, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITES.

271. In performing the actions in the STUART ASSAULT and this Count 1, DOYNE CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

272.  In performing the actions described in this Count 1 with each other Defendants as alleged, DOYNE subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

273. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

<div align="center">

**Claim 1.11**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against Defendant Gore**

</div>

274. This is Claim by STUART against GORE for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for planning, supervising and implementing the STUART ASSAULT and acts of others in violation of PLAINTIFS' rights, privileges and immunities.

275. GORE is "elected by the residents of San Diego County, is the chief executive of the department. He manages seven major detention facilities as well as eight major patrol stations, four patrol substations, a crime laboratory and an array of support operations necessary to provide full law enforcement coverage for the County of San Diego."  GORE is sued in his individual and official capacities.

276. In such capacities GORE oversees, administers, prepares, and implements all policies, practices, procedures, and operations of all SDSD facilities, including policies

<div align="center">-58-</div>

1 and procedures regarding "court security and related services," including judicial staff

2 and facilities security policies, practices, procedures and operations complained of

3 herein.

4 277. STUART and CALIFORNIA COALITION members have been vocal

5 opponents of GORE as Sheriff of San Diego County, publishing articles and generating

6 support against his brutality in present office, prior to his service as San Diego's

7 Sheriff, and in his abusive policies regarding parents and children within San Diego

8 County.

9 278. On information and belief, GORE was aware of such speech and political

10 activities, and acted at all times herein with the intent to retaliate, deprive, interfere

11 with, and oppress such activities in deprivation of CALIFORNIA COALITION'S and

12 STUART'S rights to SPEECH, ASSOCIATION, and PRIVACY; ACCESS TO

13 JUSTICE; and SUBSTANTIVE DUE PROCESS.

14 279. On information and belief, GORE was contacted by one or more STUART

15 ASSAULT COORDINATOR prior to the SDCBA SEMINAR, notified of

16 CALIFORNIA COALITION, STUART, the ENGAGMENT, and informed of

17 STUART ASSAULT COORDINATORS' intent to respond to the ENGAGEMENT

18 and STUART ASSAULT at the SEMINAR.

19 280. On information and belief, GORE responded to such contact by organizing or

20 altering an existing security detail for the SDCBA SEMINAR of his deputy sheriffs by

21 the following acts:

22    a. Changing the number of deputies to the approximately 15 who attended;

23    b. Advising one or more of his deputies or their supervisors of details regarding

24       STUART, CALIFORNIA COALITION, LEXEVIA, FFRRESA, DDIJO

25       COMPLAINTS I and II and STUART ASSAULT COORDINATORS'

26       opinions, beliefs, or positions relating to such activities;

27    c. Advising his deputies to assist and oversee the STUART ASSAULT;

28

-59-

d. Assisting and coordinating with other agencies, including the CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, and the CITY ATTORNEY DEFENDANTS to plan for the STUART ASSAULT;

e. Instructing his deputies to act under the direction of the STUART ASSAULT COORDINATOR in the STUART ASSAULT;

f. Otherwise supervising and participating in the planning for the STUART ASSAULT.

281. On information and belief, at all times mentioned in this First Amended Complaint GORE has been aware of his co-defendants' acts relating to STUART and CALIFORNIA COALITION, their response to the DDIJO COMPLAINTS, the DUE ADMINISTRATION OF JUSTICE, and Plaintiffs' PUBLIC BENEFIT ACTIVITIES.

282. At all relevant times GORE was the supervisor of each SDSD Defendant with the power and ability to influence and control each.

283. In performing these actions, GORE CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS.

284. In performing the actions described in this Count 1 with each other Defendants as alleged, GORE, subjected STUART or caused him to be subjected to deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; PROCEDURAL DUE PROCESS; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; CRUEL AND/OR UNUSUSAL PUNISHMENT.

285. As an actual and foreseeable result, PLAINITFFS have been deprived, damaged, and injured as elsewhere alleged.

**Claim 1.12**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against all STUART ASSAULT COORDINATOR Defendants,**

286. This a Claim by STUART against all STUART ASSAULT COORDINATOR Defendants for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for implementing, maintaining, and participating in the SDCBA SEMINAR and STUART ASSAULT in violation of PLAINTIFS' rights, privileges and immunities.

287. All prior paragraphs are re-alleged and incorporated as if set forth in full.

288. On information and belief, each STUART ASSAULT COORDINATOR:

    a. Participated in the PLANNING AND DELIVERY of the SDCBA SEMINAR;

    b. Alerted or communicated with one or more other Defendants to share knowledge of one or more of the DDIJO and DOYNE COMPLAINTS, Plaintiffs' PUBLIC BENEFIT ACTIVITIES, the DUE ADMINISTRATION OF JUSTICE, the ENGAGEMENT, STUART'S planned attendance at the SDCBA SEMINAR;

    c. Shared information and or coordinated with activities with others, including each other STUART ASSAULT COORDINATOR, relating to the STUART ASSAULT;

    d. Communicated or coordinated with each STUART ASSAULT COORDINATOR, SDCBA, SDCBA DOE 1 and possibly other SDCBA agents or employees, including CHUBB (described below),  ODO Defendants, and SDSD DOES 1-15 about the STUART ASSAULT both before and after the STUART ASSAULT;

289. On information and belief, before the SEMINAR, each Defendant was aware of PLAINTITFFS' relationship with the ENGAGEMENT, their activities in the DUE ADMINISTRATION OF JUSTICE, their status as members and/or advocates for each

of the EQUAL PROTECTION CLASSES, and their ongoing and past PUBLIC BENEFIT ACTIVITIES.

290. In performing the acts and omissions attributed to them in this Complaint, each STUART ASSAULT COORDINATOR intended to hinder, impede, oppress, thwart, censor, chill, prevent, and retaliate for the same.

291. Defendants intentionally chose a time and place to conduct the STUART ASSAULT to embarrass, humiliate, and inflict maximum injury to Plaintiffs in the course of their PUBLIC BENEFIT ACTIVITIES by orchestrating the assault to occur in front of dozens of Plaintiffs' professional colleagues, judges, STUART'S law partners and collaborators, and clients.

292. Each Defendant was motivated in such activity to protect their interests in their offices, occupations, and property.

293. Each Defendant was also motived to inhibit competition by each Plaintiff and their PUBLIC BENEFIT ACTIVITIES.

294. Defendants inflicted the above-described injury on Plaintiffs while formally assembled under color of law as judges, peace officers, officers of the court, and their agents, while bearing the color of their honorable titles, regalia, and designations of authority, including judicial robes, uniforms, armory, and badges of authority, and exercised the same in all activities alleged.

295. With the potential exception of SDSD DOES 1-15, no act alleged in this Count was an authorized exercise of power under any charter, constitution, regulation, or law.

296. No act alleged against any judicial officer STUART ASSAULT COORDINATOR is a judicial act, or an act intimately associated with the criminal judicial process.

297. In performing the actions alleged in this Count and the STUART ASSAULT, the STUART ASSAULT COORDINATOR Defendants and each of them, in CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL DUTIES, subjected STUART and caused him to be subjected to deprivation of his

1  rights, privileges, and immunities relating to SEARCH AND SEIZURE;
2  SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION,
3  PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and
4  CRUEL AND/OR UNUSUSAL PUNISHMENT.

5  298. In performing the actions alleged in this Count and the STUART ASSAULT,
6  the STUART ASSAULT COORDINATOR Defendants and each of them, in
7  CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL
8  DUTIES, subjected and caused to be subjected CALIFONIA COALITION, its owners,
9  members and affiliates, and Lexevia, PC, its owners, partners, agents, and clients, to
10 deprivation of their rights, privileges, and immunities relating to SEARCH AND
11 SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS;
12 EXPRESSION, PRIVACY, and ASSOCIATION; and ACCESS TO JUSTICE.

13 299. As an actual and foreseeable result of the acts of each Defendant to each Claim
14 in this Count 1, PLAINITFFS have been damaged, deprived, and injured in their person
15 and property in a manner and amount to be proven at trial.

16 **Claim 1.13**

17 **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

18 **Chilling**

19 **Against SAC Defendants by CALIFORNIA COALITION and STUART**

20 300. This a Claim by STUART and CALIFORNIA COALITION against all
21 STUART ASSAULT COORDINATOR Defendants by CALIFORNIA COALITION,
22 its members and affiliates, and STUART, for deprivation of rights under color of law
23 pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for planning and participating
24 in the STUART ASSAULT in violation of PLAINTIFS' rights, privileges and
25 immunities, causing "chill" of existing and further protected activity.

26 301. All prior paragraphs are re-alleged and incorporated as if set forth in full.

27

28

302. Defendants were aware of the CALIFORNIA COALITION'S and STUART'S FFRRESA, PUBLIC BENEFIT ACTIVITIES, and ENGAGEMENT before the SDCBA SEMINAR.

303. Defendants disfavored these Plaintiffs' PUBLIC BENEFIT ACTIVITIES; Plaintiffs' "JUDGES BEHAVING BADLY" MESSAGE, the DUE ADMINISTRATION OF JUSTICE, and Plaintiffs' ongoing FFRRESA.

304. Defendants' organized and committed the STUART ASSAULT to deprive, intimidate, thwart, retaliate for, and chill the same ("CHILL").

305.  Plaintiffs and others at or aware of the STUART ASSAULT were CHILLED; frightened, intimidated, demoralized, thwarted, and emotionally traumatized by Defendants' activities.

306. As an actual and foreseeable result, CALIFORNIA COALITION, STUART, and their members and affiliates have since been deterred, intimidated, deprived, or abandoned further PUBLIC BENEFIT ACTIVITY, and DUE ADMINISTRAITON OF JUSTICE, dissembled, disassociated, avoided interactions with one another.

307. STUART'S clients, professional colleagues, and affiliates at or aware of the STUART ASSAULT who previously had high opinions of CALIFORNIA COALITION and STUART, and provided or referred PLAINTIFS significant business opportunities, stopped associating with, providing or referring such opportunities out of fear of reprisal by Defendants.

308. In performing the actions described in this Count and the STUART ASSAULT, the STUART ASSAULT COORDINATORS and each of them, in CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL DUTIES, have subjected CALIFORNIA COALIITON, its members and affiliates, or caused them to deprivation of their rights, privileges, and immunities relating to SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; and ACCESS TO JUSTICE.

309. As an actual and foreseeable result of the acts of each Defendant to this Count 1, STUART and CALIFORNIA COALITION, its members and affiliates, have been deprived, damaged, and injured in their persons and property in a manner and amount to be proven at trial.

## COUNT 2

### California State Law Claims

This is a Count against STUART ASSAULT COORDINATORS consisting of supplemental Claims under California state law and a single Claim under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 based thereon.

### Claim 2.1

### Assault and Battery; Cal. Bus. & Prof.C. § 17200

310. This is a Claim by STUART against the STUART ASSAULT COORDINATORS and each of them for assault and battery and unfair competition under Cal. Bus. & Prof.C. § 17200

311. All prior paragraphs are re-alleged and incorporated as if set forth in full.

312. Defendants in the STUART ASSAULT CULPABLY and UNREASONABLY assaulted, battered, threatened and intimidated STUART, causing interference with existing and prospective contractual relations as alleged in the STUART ASSAULT above, an constituting an unfair business practice.

313. As an actual and foreseeable result, Plaintiffs have been damaged and injured in a nature and amount to be proven at trial.

### Claim 2.2

### Breach of Contract, Covenant of Good Faith and Fair Dealing

### Against SDCBA

314. This is a Claim by STUART for breach of contract and covenant of good faith and fair dealing under California state law and 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 based upon the STUART-SDCBA CONTRACT.

315. All prior paragraphs are re-alleged and incorporated as if set forth in full.

-65-

316. In committing the STUART ASSAULT, Defendant SDCBA UNREASONABLY and CULPABLY deprived STUART of his rights under the STAURT-SDCBA CONTRACT without cause, notice, justification, or abatement, thereby breaching the contract.

317. Based on Defendant SDCBA's participation in the STUART ASSAULT, ENTERPRISES, and other CULPABLE acts alleged herein, its acts in breach of contract were in bad faith, malicious, fraudulent, and oppressive, in breach of the covenant of good faith and fair dealing.

318. As an actual and foreseeable result, STUART has been damaged or injured in a nature and amount to be proven at trial.

<div align="center">

**Claim 2.3**

**Wrongful Inducement to Breach Contract,**

**Covenant of Good Faith and Fair Dealing**

**Against STUART ASSAULT COORDINATOR Defendants**

</div>

319. This is a Claim by STUART for wrongful inducement to breach contract, breach of covenant of good faith and fair dealing, wrongful interference with prospective contractual relations, and defamation against all STUART ASSAULT COORDINATOR Defendants under California State law and 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

320. All prior paragraphs are re-alleged and incorporated as if set forth in full.

321. Defendants and each of them were aware of the STUART-SDCBA CONTRACT and the covenant of good faith and fair dealing attendant thereto, prior to the STUART ASSAULT, and by their UNREASONABLE and CULPABLE actions in breach of one or more PROFESSIONAL DUTIES expected and intended their actions to cause the breach thereof.

322. As an actual and foreseeable result, SDCBA did UNREASONABLY and CULPABLY breach the SDCBA-STUART CONTRACT and covenant of good faith

<div align="center">-66-</div>

and fair dealing attendant thereto, causing STUART damages and injuries in a nature and amount to be proven at trial.

### Claim 2.4

### Interference with Economic Relations

### Against STUART ASSAULT COORDINATOR Defendants

323. This is a Claim by STUART and CALIFORNIA COALITION for wrongful interference with existing and prospective economic relations, and defamation against all STUART ASSAULT COORDINATOR Defendants under California state law and 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

324. STUART ASSAULT COORDINATOR Defendants knew or should have known of Plaintiffs' PUBLIC BENEFIT ACTIVITIES and STUART'S profession and POSITION UNDER THE UNITED STATES, and the existing and potential economic relations present at the SDCBA SEMINAR.

325. STUART ASSAULT COORDINATOR Defendants knew or should have known that committing each act in the STUART ASSAULT would wrongfully interfere with such relations.

326. Defendants knew or should have known that causing or contributing to the STUART ASSAULT would damage STUART, and cause resulting business income loss to LEXEVIA.

327. In performing the acts ascribed to them in the STUART ASSAULT and Count 1, Defendants to this Count 2 actually and proximately caused LEXEVIA to suffer lost business opportunities, revenue, and goodwill in a nature and amount to be proven at trial.

328. Defendants knew or should have known that causing or contributing to the STUART ASSAULT would damage STUART, and cause resulting injury and loss to California Coalition for Families and Children.

329. In performing the acts ascribed to them in the STUART ASSAULT and Count 1, Defendants to this Count 2 actually and proximately caused PLAINITFFS to suffer

-67-

lost business opportunities, revenue, and goodwill in a nature and amount to be proven at trial.

330. As an actual and foreseeable result, Plaintiffs have been deprived, damaged and injured in a nature and amount to be proven at trial.

<p style="text-align:center"><strong>Claim 2.5</strong></p>

<p style="text-align:center"><strong>Defamation</strong></p>

331. This is Claim by STUART against all STUART ASSAULT DEFENDANTS by virtue of the defamatory and extreme and outrageous nature of their conduct, causing severe mental distress and constitutional deprivation thereby.

332. All prior paragraphs are re-alleged and incorporated as if set forth in full.

333. In performing the acts ascribed to them in the STUART ASSAULT and each Claim of Counts 1 and 2, Defendants, and each of them, knew or should have known that STUART was an attorney maintaining dozens of business, personal, and professional relationships in San Diego since 1991.

334. Defendants further knew or should have known that the acts of assaulting, and statements insulting, accusing, and humiliating STUART as described above in front of dozens of his professional colleagues, clients, and judges would defame and injure his reputation, cause him severe emotional distress, loss of business opportunities, and resulting loss of income, and jeopardize STUART'S law practice and license.

335. In light of said knowledge and other facts alleged herein, each Defendant's actions in each Claim of Count 1 and the STUART ASSAULT defamed and injured STUART'S reputation.

336. All statements and acts causing such injury to STUART were false, misleading, and unjustified.

337. As an actual and foreseeable result, STUART has been damaged and injured in a nature and amount to be proven at trial.

**Claim 2.6**

**Intentional Infliction of Emotional Distress**

338. This is Count by STUART against each STUART ASSALT DEFENDANT for injury by virtue of the defamatory and extreme and outrageous nature of their conduct, causing severe mental distress and constitutional deprivation thereby.

339. All prior paragraphs are re-alleged and incorporated as if set forth in full.

340. In performing each acts ascribed to them in the STUART ASSAULT and each Claim of Count 1, each Defendant intended to cause, or acted in reckless disregard of the likelihood of causing and did cause STUART extreme emotional distress.

341. As an actual and foreseeable result of the STUART ASSAULT and each Defendant's actions in each Claim of Count 1, STUART has in fact suffered severe emotional distress and resulting loss to business opportunities and income.

**Claim 2.7**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Inducement to Breach Contract, Covenant of Good Faith and Fair Dealing**

342. This is a Claim by STUART against STUART ASSAULT COORDINATOR Defendants for deprivation of SUBSTATNIVE DUE PROCESS by virtue of each prior Claim in this Count pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

343. All prior paragraphs are re-alleged and incorporated as if set forth in full.

344. Defendants and each of them were aware of Plaintiffs and their affiliates, PLAITNIFFFS' PUBLIC BENEFFIT ACTIVIES and the STUART-SDCBA CONTRACT prior to the STUART ASSAULT.

345. Defendants, and each of them, CULPABLY planned, coordinated, communicated, and cooperated with SDCBA to induce and affect the STUART ASSAULT knowing and intending the same to be a breach of the SDCBA CONTRACT and covenants thereto.

346. In committing each act alleged in each Claim of this Count, each Defendant intended and expected to further the purposes of each ENTERPRISE which the

-69-

1  Defendant is affiliated with, including all "racketeering activity" of those
2  ENTERPRISES as that term is defined in 18 U.S.C. § 1961(1).  As such, each act
3  alleged in each Claim herein constitutes an act "involving" the predicate crimes of
4  kidnapping, robbery, bribery, and extortion alleged in Racketeering Counts.

5  347. In committing each act as described in this Count, STUART ASSAULT
6  COORDINATOR Defendants deprived PLAINITFFS of rights relating to SEARCH
7  AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and
8  ASSOCIATION; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL
9  PUNISHMENT.

10  348. As an actual and foreseeable result of the STUART ASSAULT and each
11  Defendant's actions in each Claim of Count 1, STUART has in fact suffered severe
12  emotional distress and resulting loss to business opportunities and income.

13

14  **COUNT 3**

15  **Malicious Prosecution, Obstruction of Justice**

16  **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

17  349. This is a Count by STUART against GARSON, J. GOLDSMITH, C.
18  GOLDSMITH  (CITY ATTORNEY DEFENDANTS), GROCH, SDCBA DOE 2,
19  CHUBB DOE 1, and the STUART ASSAULT COORDINATORS for deprivation of
20  rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26. This
21  Count sets forth a series of related crimes of abuse of color of law authority and legal
22  process to impose duress, undue influence, retaliation, and oppression on Plaintiffs.
23  These acts include obstruction of justice, malicious prosecution, perjury, prosecutorial
24  misconduct, kidnapping, and extortion under state and federal law, and form the factual
25  basis of PLAINTIFFS' Claims to several Racketeering Counts, and tolling by duress,
26  fraud, and undue influence.

27  350. The General Allegations to this Count identify both immune and non-immune
28  acts.  The Claims of this Count are based only on the non-immune acts.  Other acts are

-70-

1   relevant to legal issues not relevant to the claims of this Count such as racketeering

2   activity, fraud, duress and undue influence, to which immunity is not a defense.

3   351. For all actions relevant to this Count, CITY ATTORNEY DEFENDANTS,

4   SDCBA, and CHUBB, and each of them, acted under color of law to interfere with,

5   deter, deprive, and retaliate for Plaintiffs' exercise of rights, privileges, and immunities

6   under the Constitution of the United States and the Constitution of the State of

7   California.

8   352. In performing each act attributed to them in this Count, CITY ATTORNEY

9   DEFENDANTS were bound under the following PROFESSIONAL DUTIES:

10  CONSTITUTIONAL (non-discretionary), and REASONABLE CARE.

11

12  **GENERAL ALLEGATIONS TO COUNT 3**

13  **The SDCBA Claim and Demand**

14  353. Shortly after the STUART ASSAULT, on about April 22, 2010, STUART

15  delivered a letter to Defendant SDCBA and its then-President, Mr. Patrick L. Hosey,

16  demanding compensation for the injuries STUART suffered in the STUART

17  ASSAULT (the "CLAIM AND DEMAND").

18  354. The CLAIM AND DEMAND outlined facts consistent with those set forth in

19  the STUART ASSAULT allegations above.

20  355. In about May, 2010, STUART received a letter in response to the CLAIM AND

21  DEMAND from a representative, agent, and employee of Chubb Group of Insurance

22  Companies ("CHUBB"), identifying CHUBB as the insurance carrier and Claim

23  representative for SDCBA.

24  356. CHUBB'S representative is unknown and will hereafter be referred to as

25  CHUBB DOE 1.  CHUBB is the employer and principal of CHUBB DOE 1, and by

26  virtue of the respondeat superior is liable for all acts of CHUBB DOE 1.  CHUBB and

27  CHUBB DOE 1 will hereafter be collectively referred to as "CHUBB."

28

-71-

357. Defendants' records will reflect that CHUBB'S letter summarily denied SDCBA'S liability for the STUART ASSAULT with no specific explanation. That letter now in Defendants' possession will reflect that the only "defense" CHUBB'S representative asserted was asserting was that if STUART moved forward with any Claim, CHUBB and SDCBA would be asserting that STUART committed a "criminal trespass" at the April 15, 2010 SEMINAR.

358. STUART was puzzled by the letter. He promptly contacted the CHUBB representative by phone to discuss the CLAIM AND DEMAND and CHUBB'S denial based solely on a "criminal trespass" theory.

359. The CHUBB representative stated that he represented "all parties" and that STUART should direct all Claims for any injury relating to the STUART ASSAULT to him. He refused to identify what other "parties" he represented, stating only "I'm handling the Claim for all parties."

360. The CHUBB representative admitted the basic facts of the STUART ASSAULT, but claimed that STUART was not legally present at the SEMINAR. He claimed that SUTART was a "criminal trespasser."

361. STUART explained that he was not a "criminal trespasser," but a paying attendee. He explained that he was ejected in retaliation for protected free speech activity, not for trespassing.

362. The CHUBB representative categorically denied that STUART was authorized to be present at the SEMINAR *at any time*.

363. The CHUBB representative made several misrepresentations: He denied that STUART had purchased admission to attend the SEMINAR, that STUART was rightfully at the SEMINAR, that STUART was in possession of a pre-printed name-badge, that STUART'S name had appeared on a pre-printed sign-in sheet prepared before the SEMINAR, and that STUART signed in as any normal attendee on a sign-in sheet that was then certainly in SDCBA's possession. Defendants' records will reflect that these Claims are false.

364. STUART inquired further about the statement that CHUBB's "insureds" intended to "prosecute" a Claim for *criminal* trespass.  STUART stated that SDCBA was a private corporation and that it could not "prosecute" any criminal matter, and asked if the CHUBB representative was referring to a *civil* "counterclaim" for damages caused by trespass.  The CHUBB representative confirmed that he intended exactly what he had stated—a *criminal* "prosecution" as opposed to a *civil* "counterclaim."

365. STUART inquired if CHUBB was asserting that he caused any personal injury or property damage in the ENGAGEMENT or at the SEMINAR.  The representative laughed and quipped "not unless you call a bunch of angry judges 'damage.'"

366. STUART was not amused. He pressed further whereupon the CHUBB representative responded that if STUART continued to pursue the CLAIM AND DEMAND, CHUBB's "insureds" were "considering prosecution" of *criminal* trespass charges.  He stated to the effect of "I suggest you drop it."

367. STUART understood the representative to be making a threat to coordinate criminal prosecution for a demonstrably false charge of "criminal trespass" to "counter" a civil CLAIM AND DEMAND, by virtue of the common interests of SDCBA and the STUART ASSAULT COORDINATOR judicial officials in deterring STUART'S nominal $10,000,000 CLAIM AND DEMAND.  He further understood the CHUBB representative to be advising that SDCBA and others had or were in process of fabricating or destroying evidence to fabricate a "criminal trespass" prosecution to "Counter" the CLAIM AND DEMAND.

368. Recognizing the scope of the dispute had expanded beyond a mere civil issue into what appeared to be a manufactured prosecution for criminal trespass to thwart the CLAIM AND DEMAND, STUART became intimidated and frightened by what he considered to be a very real threat to his personal security. The CHUBB representative indicated what appeared to be a conspiracy between CHUBB, SDCBA, and one or more of the STUART ASSAULT COORDINATORS, including powerful San Diego judicial officials.  Such officials also maintained jurisdiction over STUART'S then-

1  pending family law matter, criminal matter, and any case in San Diego County in which

2  STUART was a party or counsel.

3  369. On information and belief, CHUBB insured or was on tender to defend more

4  STUART ASSAULT COORDINATORS than just SDCBA, including one or more

5  judicial officers named herein. CHUBB recognized that STUART'S CLAIM AND

6  DEMAND—nominally for $10,000,000—represented a serious threat to CHUBB's

7  insureds, additional insureds, and other parties.

8  370. On information and belief, at some point between the April 15, 2010 STUART

9  ASSAULT and STUART'S telephone call to CHUBB, CHUBB was in process of

10  collaborating with SDCBA an one or more other STUART ASSAULT

11  COORDINATORS in conspiracy and ENTERPRISE to thwart a sizable CLAIM AND

12  DEMAND by any available means.

13  371. On information and belief, CHUBB was also aware of Plaintiffs' PUBLIC

14  BENEFIT ACTIVITIES and DUE ADMINISTRATION OF JUSTICE, including the

15  STUART ASSAULT COORDINATOR Defendants' hostility to such activity.

16  CHUBB'S representative therefore acted in conspiracy and ENTERPRISE to protect

17  CHUBB'S own interests, the interests of its insureds and their affiliates to oppress and

18  impede the CLAIM AND DEMAND, and impose further HARASSMENT and

19  ABUSE of Plaintiffs.

20  372. In doing so, CHUBB and SDCBA imposed duress, intimidation, fear, and

21  oppression which did in fact cause STUART to cease pursuing the CLAIM AND

22  DEMAND, FFRRESA, the DUE ADMINISTRATION OF JUSTICE, and initiation of

23  this Action.

24  **Prosecutorial Misconduct of Assistant City Attorney Emily GARSON**

25  373. On about March 24, 2010, on information and belief, San Diego Assistant City

26  Attorney Ms. Emily Garson (GARSON), made out a perjurous complaining witness

27  declaration based on falsified or altered evidence, causing STUART to be charged with

28  several misdemeanor violations of Cal. Pen.C. § 653m(a) (harassing by electronic

-74-

communication) and (b) (repeated harassing by electronic communication), and one alleged misdemeanor violation of Cal.Pen.C. § 646.9(a) (stalking).  The case GARSON initiated is identified as *People of the State of California v. Colbern Stuart*, San Diego Superior Court Case No. M104094DV ("*People v. Stuart*").

374. The evidence of STUART'S crime has been kindly provided to this Court by counsel for Ms. Stuart at Doc. No. 48-14.  The emails therein are impolite, rude, and indeed contain vulgarities.  Yet unlike the sworn declaration that utilized those emails to initiate a retaliatory criminal prosecution and solicit a sentence of four years, the emails are not, and cannot be, crimes.  See, *U.S. v. Alvarez*, 567 U.S. ___, 132 S.Ct. 2537 (2012).

375. GARSON lacked probable cause to initiate the *People v. Stuart* matter.  Her sworn declarations as a complaining witness in doing so are crimes—felonies under federal law—several and severe.  STUART has endured years in persecution as a result of such outrageous behavior.  He re-appears today to redress those acts for himself and, he prays, thousands of others who have suffered similar and even more outrageous insults, violations, deprivations, and injuries under the indecency of those who today occupy offices of honor, yet who regularly debase those offices while driven by motives no one, perhaps not even they themselves, could honor.

376. Such behavior was intended to retaliate, obstruct, and deprive STUART of rights, privileges and immunities under state and federal Constitutions, constituting numerous misdemeanors under federal law.   STUART'S subsequent arrests, imprisonment, injury, and severe mental distress constitute numerous serious felonies under state and federal law, as detailed fully below.

377. GARSON'S acts in investigating, manipulating evidence, witnesses, and the San Diego Superior Court, and initiating the  prosecution of the *People v. Stuart* matter constitute CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL DUTIES, and have foreseeably resulted in deprivations of STUART'S clearly-established rights under the First Amendment to the Constitution

-75-

of the United States.  Such acts are not immune from criminal accountability, and those on which the Claims of this Count are based, are not immune from civil.

378.  These acts of GARSON will be referred to as GARSON PERJURY ONE.

379.  On about April 6, 2010, GARSON caused to be filed a second perjurous Declaration In Support of Arrest Warrant relating to *People v. Stuart* containing similar false statements and misrepresentations based upon the same purported evidence.  This documents is filed, though not authenticated, in this matter at Dkt#16-1, Ex. "A."

380.  The acts of GARSON in relation to the Declaration in Support of Arrest Warrant shall be referred to as GARSON PERJURY TWO.

381.  On information and belief, GARSON collaborated, agreed, affiliated, and conspired with her boss, San Diego City Attorney and former San Diego Superior Court Family Division judge Jan Goldsmith, and her boss's wife, sitting Family Division judge, and instant Defendant Christine Goldsmith, in such activities.  On information and belief, C. Goldsmith and J. Goldsmith supervised, directed, encouraged, facilitated, and tolerated GARSON PERJURY ONE and TWO to interfere with and retaliate for Plaintiffs' PUBLIC BENEFIT ACTIVITIES and the DUE ADMINISTRATION OF JUSTICE.

382.  On information and belief, GARSON, J. GOLDSMITH, and C. GOLDSMITH did so with the knowledge and support of SCHALL and WOHLFEIL, all of whom acted with the specific intent to retaliate against STUART for the DDIJO COMPLAINTS I and II against them.

383.  Defendants C. GOLDSMITH, J. GOLDSMITH, GARSON, SCHALL, and WOHLFEIL will hereafter be referred to as "CITY ATTORNEY DEFENDANTS."

384. Based upon GARSON PERJURY ONE and TWO, CITY ATTORNEY DEFENDANTS caused STUART to be imprisoned without probable cause causing a false imprisonment for approximately 10 hours by agents of GORE.  At the time STUART was imprisoned by GORE, GORE knew or should have known of the

-76-

1  perjurious and retaliatory nature of the CITY ATTORNEY DEFENDANTS' acts

2  (FALSE IMPRISONMENT 1).

3  385. STUART became aware of the charges in the *People v. Stuart* matter in late

4  April, 2010.  STUART perceived the charges to be illegal actions to retaliate for, deter,

5  and oppress Plaintiffs from pursuing PUBLIC BENEFIT ACTIVITIES, the CLAIM

6  AND DEMAND, and the DUE ADMINISTRATION OF JUSTICE.

7  386. STUART became intimidated, frightened, and oppressed as a result of CITY

8  ATTORNEY DEFENDANTS' illegal activities, and refrained from pursuing the

9  CLAIM AND DEMAND, DUE ADMINISTRATION OF JUSTICE, PUBLIC

10  BENEFIT ACTIVITES, and this Action.

11  **Prosecutorial Misconduct in *People v. Stuart***

12  387. In about June or July, 2010, STUART appeared for arraignment on the above-

13  referenced misdemeanor charges relating to *People v. Stuart*.

14  388. STUART requested his attorney to discuss the case with the prosecutor

15  representing the CITY ATTORNEY DEFENDANTS to determine the basis for the

16  charges.  STUART'S attorney approached the Assistant City Attorney prosecuting the

17  matter, on information and belief Ms. GARSON, to initiate discussions.

18  389. After a few minutes of discussion, STUART'S attorney returned and explained

19  to STUART to the effect that GARSON was "really pissed off on this one."  He stated

20  that GARSON was angry for "something you did at a bar association meeting."

21  STUART recognized this as the STUART ASSAULT and the same "criminal trespass"

22  charge that SDCBA'S insurance carrier had made.   STUART explained the

23  circumstances of the STUART ASSAULT to his attorney, who was unable to draw any

24  conclusions.

25  390. STUART'S attorney advised that the GARSON stated she was intending to add

26  more charges. Based on his conversation with GARSON, he surmised and advised

27  STUART that GARSON was intending to "bump it up to a felony."   STUART'S

28  attorney advised STUART to the effect of "they're going to throw everything they can

-77-

1   at you on this one." STUART understood the "everything" to mean charging STUART

2   for a felony relating to ENGAGEMENT based on the same charge that CHUBB had

3   made as "criminal trespass." A further status conference was scheduled to permit

4   GARSON to amend the criminal complaint with more charges.

5   391. Sensing that the CITY ATTORNEY DEFENDANTS were using the threat of a

6   felony or "criminal trespass" charge as an intimidation tactic retaliate against STUART

7   for his CLAIM AND DEMAND, the DDIJO COMPLAINTS, DUE

8   ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITIES, on two

9   occasions between about May 1, 2010 and February, 2011, STUART contacted

10   GARSON by telephone, requesting that GARSON drop all charges in exchange for

11   STUART'S backing off of the DUE ADMINISTRATION OF JUSTICE, the CLAIM

12   AND DEMAND, and PUBLIC BENEFIT ACTIVITIES. GARSON refused to return

13   STUART'S telephone overtures. On information and belief, GARSON's notes or other

14   documents related to the *People v. Stuart* matter will reflect these communications.

15   392. At a subsequent status conference STUART was arrested immediately upon

16   appearing in court illegally and without probable cause as a foreseeable consequence

17   of the GARSON PERJURY ONE and TWO, causing a false imprisonment for

18   approximately 12 hours in the custody of GORE, who knew or should have known of

19   the malicious and retaliatory nature of the prosecution and arrest (FALSE

20   IMPRISONMENT 2).

21   393. After he was illegally imprisoned, STUART'S attorney conferred with

22   GARSON about the case and charges. He advised STUART, who was in custody, to

23   the effect of "They're adding more charges for stalking and harassment" and that the

24   charges related to "something about the bar association." He had few details but asked

25   STUART to explain his understanding of the email exchanges and bar association

26   events.

27   394. STUART summarized the events of the "annoying email" exchanges between

28   him and his ex-wife, and the SDCBA ENGAGEMENT and SEMINAR, including the

-78-

CLAIM AND DEMAND and the CHUBB "criminal trespass" threat. The attorney indicated to the effect that "653m is unconstitutional" but that prosecutors "still charge it to get you to agree to a protective order." He advised that "they never seek jail time on these."

395. After further conversations with GARSON, the attorney returned to advise STUART that the City Attorney's Office was taking an unusually hard line on the case. He advised GARSON would be seeking to add new stalking charges as a felony.

396. STUART understood the "new charges" to relate to the threat of a "criminal trespass" and/or "felony stalking" "CounterClaim" originally made by CHUBB. Because he was under ongoing prosecution for an illegal charge against protected speech, and threatened with additional illegal charges STUART was intimidated and frightened to take any action to assert the CLAIM AND DEMAND, DUE ADMINISTRATION OF JUSTICE, or further PUBLIC BENEFIT ACTIVITY.

397. On information and belief, while STUART was in custody GARSON requested and received leave to add several additional misdemeanor charges, but no felony stalking charge.

398. In or about December, 2010-January, 2011, Stuart attended a pre-trial conference in the *People v. Stuart* matter. He was once again arrested immediately upon appearing. The arrest was without probable cause and a foreseeable consequence of the GARSON PERJURY ONE and TWO, causing a false imprisonment for approximately 10 hours in the custody of GORE, who knew or should have known of the malicious and retaliatory nature of the prosecution and arrest (FALSE IMPRISONMENT 3).

399. STUART'S attorney, Mr. Solomon Chang, advised consistent with prior attorneys that the City Attorney's Office and GARSON were taking an unusually hard line in the case, and still seeking to add additional charges. Mr. Chang indicated the additional charges would include what he described as "felony stalking" charges.

STUART understood these charges to relate to the bar association false "criminal trespass" theory.

400. STUART'S attorney inquired if GARSON would be willing to negotiate to dismiss the charges in exchange for backing off the CLAIM AND DEMAND, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITIES.   Mr. Chang advised he would speak with GARSON.  He did so, and returned, advising "no way" and to the effect "they want you to serve time on this one" and "you really made them angry."  He asked for more details about the ENGAGEMENT, and STUART ASSAULT.  STUART shared the details, and Mr. Chang advised caution—to "wait and see" whether the City Attorney would be adding felony charges, or leaving the charge as several misdemeanors.

401. STUART was released from imprisonment the following day.  He thereafter remained in fear that the CITY ATTORNEY DEFENDANTS would add manufactured charges based upon the "criminal trespass" and "bump it up" to a charge for "felony stalking."

402. On the first day of the *People v. Stuart* trial in late February, 2010, before jury selection the assigned trial judge Michael GROCH placed STUART under "house arrest" illegally and without probable cause as a foreseeable consequence of the GARSON PERJURY ONE and TWO, causing a false imprisonment of approximately one week (FALSE IMPRISONMENT 4).  STUART was not charged, arraigned, or prosecuted for any crime.

403. GROCH ordered that STUART could avoid being jailed through trial only if he rented a hotel room in downtown San Diego and did not travel beyond the hotel and the downtown County courthouse.  GROCH denied STUART'S request to return to his home in Los Angeles during the week-long trial to gather clothing and toiletries. GROCH did not advise STUART of any charges or violation of law.  Such acts, though possibly immune from civil suit, constitute "monstrous" felony criminal violations of STUART'S rights relating to SEARCH AND SEIZURE, PROCEDURAL and

SUBSTANTIVE   DUE   PROCESS,   and   CRUEL   AND/OR   UNUSUAL PUNISHMENT.

404. Mr. Chang failed to object or seek hearing on the illegal arrest, explanation of charge, or other remedy for STUART'S arrest and "house arrest" sentence, advising only to the effect "I told you, they're pissed."  STUART immediately purchased a hotel room for the entire week, and was forced to purchase several suits, shirts, ties, undergarments and toiletries to last through the week-long trial.

405. On information and belief, the *People v. Stuart* matter was GROCH'S first trial since being appointed from the District Attorney's Office four months earlier, and also on information and belief his last.  GROCH was transferred to the Superior Court's Family Law Division shortly after the *People v. Stuart* criminal matter, where he remains.

406.  On the first day of trial, before jury selection, Mr. Chang again advised to the effect that Assistant City Attorney GARSON was "holding" additional charges for felony stalking relating to the "bar association."

407.  STUART advised Chang that he could testify as to the bar association events to prove they were not "stalking" but free speech activity.  Chang told STUART "you can't testify in this case," explaining that they City Attorney would be able to elicit testimony relating to the ENGAGEMENT and bring more serious charges accusing such acts as a pattern of "felony stalking" in addition to whatever charges the City Attorney was then "holding."

408.  STUART protested that such charges would be unfounded. Chang politely agreed, but advised "they might still bring the stalking charges as a felony" and that STUART would "have to take your chances with a jury and on appeal" and "you're looking at a lot more time for a felony."  As a result of the fear of being charged with "felony stalking", STUART did not testify at trial on his own behalf.

409. Each charge for "annoying or threatening electronic communications" under Cal. Pen.C. § 653m(a) and (b) carries a maximum sentence of six months in County

-81-

jail.  The statute prohibits "electronic communications" that use "obscene language or address to the other person any threat to inflict injury to the person or property of the person."  Cal. Pen.C. § 653m(a).

410.  GARSON apparently charged each email sent by STUART in the exchange between STUART and his ex-wife from September, 2009 and February, 2010 as a separate misdemeanor offense.  According to GARSON's closing argument at trial, if STUART used a "curse word" in his email, GARSON charged the email as an "obscene language" under the statute.  STUART used several "curse words" which were clearly insults, though clearly not threatening or "obscenity" under controlling United States Supreme Court and Supreme Court  of the State of California precedent.  GARSON also charged the entire group of emails as a single misdemeanor "stalking" charge under Cal. Pen.C. § 646.9 (stalking).  Doc. No. 48-14.

411.  STUART requested that Chang move to dismiss the criminal complaint on grounds that the statute it is brought under imposes unconstitutionally overbroad and vague restrictions on free speech, as "annoying" communications may not be criminalized.  STUART also requested that Mr. Chang move to dismiss the case on the grounds that the email conversations were protected speech as they were neither threatening nor obscene under clearly established U.S. Supreme Court and Ninth Circuit Court of Appeals precedent, and that a motion seeking judgment as a matter of law on the uncontested evidence would be appropriate.  *See, U.S. v. Alvarez*, 567 U.S. ___, 132 S.Ct. 2537 (2012).

412.  Mr. Chang agreed, and advised STUART he would make such a motion.  Yet thereafter Mr. Chang failed to do so, instead raising the arguments—arguments on a question of law—in closing argument to the jury.  GARSON successfully objected to the tactic.  Mr. Chang failed to make a further motion to the Court, and the constitutional issues were not adjudicated.

413. Mr. Chang's failure to properly assert the constitutional defense is inexplicable behavior for faithful, competent counsel.  On information and belief, GARSON unduly

-82-

influenced Mr. Chang, then a junior attorney on information and belief in his first trial, to forbear on asserting the constitutional defenses in order to impose duress, intimidation, and fear to impede and delay STUART'S CLAIM AND DEMAND and DUE ADMINISTRATION OF JUSTICE, and this Action.

414. On information and belief, GARSON collaborated, agreed, affiliated, and conspired with her boss, City Attorney and former family division judge Jan Goldsmith, other STUART ASSAULT COORDINATORS, and other ENTERPRISE PERSONS, including Mr. Goldsmith's wife, sitting Family Division judge, and instant Defendant Christine Goldsmith, in such activity.

### *People v. Stuart* Trial and Execution of Sentence

415. GARSON prosecuted the *People v. Stuart* trial on by then over 40 misdemeanor charges under 653m and a single misdemeanor stalking charge which combined all of the emails into a single charge of a "pattern" for stalking.  Such a "double" charge was, on information and belief, illegal.  Mr. Chang failed to object even after STUART so requested.

416. On March 1, 2011, STUART was acquitted of the single misdemeanor stalking charge and about twenty of the misdemeanor "annoying email" charges.

417. On March 1, 2011 GROCH sentenced STUART to seventeen *consecutive* terms of 180 days each—apparently at six months per "curse word"—for a total sentence of 1530 days (4.25 years) as follows:

    a.  180 days in immediate custody of GORE;

    b.  1350 days (3.75 years) in further custody, "suspended"—conditioned upon STUART'S obedience to an illegal protective order and other conditions;

    c.  Three years unsupervised probation.

418. On information and belief, in imposing the sentence GROCH was aware of the CLAIM AND DEMAND, STUART ASSAULT, Plaintiffs' PUBLIC BENEFIT ACTIVITIES, the DUE ADMINISTRATION OF JUSTICE, DDIJO COMPLAINTS

1  and imposed a cruel and unusual sentence to retaliate, impede, harass, and oppress

2  STUART from initiating this Action.

3  419. On information and belief, GROCH did so in participation or operation of and

4  in agreement and affiliation with the CITY ATTORNEY DEFENDANTS and in

5  participation with one or more ENTERPRISES and conspiracies identified herein.

6  420. After sentencing, STUART'S attorney, Mr. Chang, advised STUART that he

7  "better lay off whatever you were doing" and to "not piss these guys off again."  He

8  failed to advise STUART of his right to stay execution of the misdemeanor sentence

9  by filing an immediate appeal.  Based upon such failure, STUART did not do so.

10  421. As a result of Mr. Chang's failure to advise to seek appeal, STUART was

11  illegally imprisoned as a foreseeable consequence of the GARSON PERJURY ONE

12  and TWO, causing a false imprisonment in the custody of GORE, who knew or should

13  have known of the malicious and retaliatory nature of the prosecution and arrest, for

14  approximately 90 days. (FALSE IMPRISONMENT 5).

15  422. STUART served 90 days, and was released under the "suspended sentence"

16  terms, a DVILS ORDER, and other extensive conditions on about May 15, 2011.

17  423. The conditions of STUART'S suspended sentence included a DVILS ORDER,

18  including deprivations of STUART'S free speech, expression, association, travel,

19  privacy, and due process, including prohibitions against free speech and access to

20  justice in violation of one or more Civil Rights Criminal and Civil Statutes.

21  424. The sentence left 3.75 years "suspended" over STUART to be imposed upon

22  violation of a broad-ranging DVILS ORDER.

23  425. As a result of the looming suspended sentence, history of abuse of process by

24  GARSON and GROCH, and illegal DVILS ORDER, STUART was placed under

25  additional duress and in fear of reprisal for taking any action adverse to Defendants

26  herein, including prosecution of the CLAIM AND DEMAND, PUBLIC BENEFIT

27  ACTIVITIES, CLAIM AND DEMAND, and DUE ADMINISTRATION OF

28

1 JUSTICE, preventing STUART from undertaking any action adverse to present

2 defendants, including this Action.

**Malicious Prosecution Within California State Bar**

4   426. Shortly after his release from illegal imprisonment in May, 2011, STUART was

5 contacted by the State Bar of California regarding an action that had been initiated

6 relating to his law license.  STUART contacted the State Bar and spoke with a State

7 Bar investigator assigned to the case, Case No. 10-C-03559, one Mr. Radigan.  Mr.

8 Radigan advised STUART that GARSON had contacted the State Bar to report

9 STUART for misconduct.

10   427. The State Bar investigator shared details of his conversations with GARSON,

11 advising STUART to the effect that "you've really stirred up some anger down there"

12 and that GARSON demonstrated unusual animus toward STUART.  He advised that

13 GARSON had claimed that STUART was "harassing judges" referring specifically to

14 the SDCBA ENGAGEMENT and the DDIJO COMPLAINT I regarding SCHALL.

15 Mr. Radigan repeated Ms. GARSON'S use of a number of extremely derogatory

16 insults, epithets, and vile language inappropriate for repetition here.  He was oddly

17 delighted with Ms. GARSON'S vitriol and rather perversely intrigued at what had

18 enlivened her so.

19   428. Mr. Radigan stated that GARSON had pressed him aggressively to invoke

20 disciplinary proceedings, but that she was the only complaining witness.  He stated that

21 Ms. Stuart was not a complainant and would not be a witness.  He stated to the effect

22 that because of GARSON'S involvement in the criminal prosecution and lack of any

23 attorney-client relationship injury, GARSON was "not the best witness," but that she

24 was nevertheless insisting that the State Bar pursue discipline.

25   429. STUART explained the details of the SDCBA ENGAGEMENT, STUART

26 ASSAULT, PUBLIC BENEFIT ACTIVITIES, and the email exchanges with his ex-

27 wife to Mr. Radigan.  Mr. Radigan indicated he had read certain relevant emails and

28 read or heard details about the STUART ASSAULT, ENGAGEMENT, and PUBLIC

-85-

BENEFIT ACTIVITIES.  He indicated that he personally didn't believe any of the activities warranted discipline, but that GARSON's aggressive pursuit of the matter compelled him to continue the matter.  He advised STUART, "put something on file and this should go away." On information and belief, Mr. Radigan's notes, from which he read to STUART during their telephone conversation, will reflect these conversations, including Ms. GARSON'S defamatory, perjurous, and insulting statements.

430. STUART on about October, 2011, delivered a written response to the State Bar explaining his political activity, the STUART ASSAULT, the email exchanges, giving his defense, and requesting dismissal of all charges.  STUART did not receive a further response from the State Bar.

431. On information and belief, GARSON alone initiated the State Bar proceeding and illegally induced Mr. Radigan and possibly other State Bar employees to pursue a groundless investigation and prosecution of STUART within the State Bar to retaliate, intimidate, harass, and oppress him relating to the CLAIM AND DEMAND, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITY.   On information and belief, GARSON collaborated, agreed, affiliated, and conspired with each CITY ATTORNEY Defendant in such activity.

432. Because of the pending charges from the State Bar being aggressively pursued by MS. GARSON, the looming four year "suspended sentence", the vague DVILS ORDERS, GARSON's connection to them and demonstrated willingness to commit felony crimes to persecute STUART, after his first conversation with Mr. Radigan STUART was further intimidated and fearful of reprisal from CITY ATTORNEY DEFENDANTS.   He refrained from pursuing the CLAIM AND DEMAND, DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITES under the additional fear of jeopardizing his law license.

**Arrest Under Suspended Sentence**

433. On April 10, 2012, STUART was arrested while paying a parking ticket at a police substation in Manhattan Beach, CA, based on a bench warrant for his arrest out of San Diego Superior Court.

434. On information ad belief, the warrant was issued based upon another false declaration by GARSON asserting that STUART had violated the terms of his suspended sentence.

435. STUART was transported to San Diego where he was arraigned.   On information and belief, based upon GARSON'S third perjurous complaining witness declaration.   GARSON charged STUART with violating the "suspended sentence" based on several Internet "blog" posts STUART made criticizing the San Diego City Attorney's Office's handling of the *People v. Stuart* matter, and regarding the CITY ATTORNEY DEFENDANTS' only witness to that matter—Ms. Stuart.  (GARSON PERJURY 3).

436. Mr. Greg Turner represented STUART at the "suspended sentence" hearing. Before hearing Mr. Turner advised that he had "never heard of a case" imposing an actual jail sentence of four years for a petty "speech" misdemeanor like 653m.  Mr. Turner's specific comment was "they give felony drug dealers less time than this." After conversations with GARSON and GROCH, Mr. Turner later advised to the effect that "they're really out to get you!"

437. Mr. Turner relayed from GARSON that the City Attorney's only witness in the "suspended sentence" imposition hearing would be STUART'S ex-wife, Ms. Stuart. At hearing, Ms. Stuart testified under oath that she was "working for the F.B.I." to investigate STUART for "harassing" judges and based on his Internet comments regarding the City Attorney.  Defendants' records and transcripts will reflect that Ms. Stuart testified under oath that she was participating in an "investigation" with the F.B.I. and the City Attorney involving potential federal criminal charges against STUART.

-87-

438. None of the City Attorney's witness testimony was relevant to any issue in the case charging STUART with violation of a protective order for his political criticism of the City Attorney's Office illegal prosecution.

439. Nor was it true. After his May 15, 2013 release, STUART learned in September, 2013, that Ms. Stuart's testimony under oath and under guidance of Ms. GARSON— was entirely false.  In truth Ms. Stuart was in May, 2012 collaborating with F.B.I. Special Agent Keith Slotter on a television news periodical Ms. Stuart was then developing entitled "San Diego's Most Wanted—the F.B.I. Files" which featured short news pieces on ongoing local "most wanted" criminal investigations handled by the F.B.I.'s office located within this District.  A description of this publicity collaboration is located at http://www.rotarycluboflajolla.com/september-24-2013-speakers-keith-slotter-lynn-stuart-crime-see-tv-really-happens/.

440. Ms. Stuart had a "public relations" relationship with Agent Slotter through that show.  On information and belief, Ms. Stuart at no time was participating in any "investigation" of STUART with the F.B.I., and no such investigation ever existed.

441. Nevertheless, Ms. Stuart's perjurious allegations elicited at hearing by GARSON that STUART was the subject of an F.B.I. investigation relating to "harassment" of judges intimidated, frightened, and oppressed STUART, causing additional duress, and impeding his pursuit of this Action, PUBLIC BENEFIT ACTIVITIES, and the DUE ADMINISTRATION OF JUSTICE.  On information and belief, GARSON, J. GOLDSMITH, and Ms. Stuart intended this oppressive effect by coordinating Ms. Stuart's false testimony at the May, 2012 hearing. (GARSON PERJURY 4).

442. Defendants' records will also reflect that at the June 2012 "suspended sentence" violation hearing, GARSON introduced printed Internet pages containing STUART'S comments about GARSON's and J. GOLDSMITH'S competence and integrity relating to the *People v. Stuart* matter.  Based solely on STUART'S protected free speech Internet commentary regarding GARSON, J. GOLDSMITH, and STUART'S ex-wife,

1    GARSON requested the maximum imposition of the entire three and a half years

2    remaining in the "suspended sentence."

3    443. GROCH found STUART in violation of the conditions of his "suspended

4    sentence" based solely on STUART'S Internet speech and imposed about 999 days of

5    the 1350 days remaining in the "suspended sentence." Defendants' records and hearing

6    transcript will reflect that the only evidence presented against STUART were non-

7    threatening social and political commentary made on the Internet criticizing the City

8    Attorney's illegal prosecution, and Ms. Stuart's perjury therein.

9    444. In addition to the suspended sentence, Defendants' records and court transcripts

10   will reflect that GROCH issued a third DVILS ORDER to STUART purporting to

11   prohibit him from all speech, and even *thought,* about Ms. Stuart, Ordering STUART:

12   "*She does not exist to you.*"   STUART remains at jeopardy under such decree until

13   May, 2022.

14   445. 18 U.S.C. § 242 provides:

15       Whoever, under color of any law, statute, ordinance, regulation, or custom,

16       willfully subjects any person in any State, Territory, Commonwealth,

17       Possession, or District to the deprivation of any rights, privileges, or immunities

18       secured or protected by the Constitution or laws of the United States, or to

19       different punishments, pains, or penalties, on account of such person being an

20       alien, or by reason of his color, or race, than are prescribed for the punishment

21       of citizens, shall be fined under this title or imprisoned not more than one year,

22       or both; and if bodily injury results from the acts committed in violation of this

23       section or if such acts include the use, attempted use, or threatened use of a

24       dangerous weapon, explosives, or fire, shall be fined under this title or

25       imprisoned not more than ten years, or both.

26   446. GROCH'S Order and GARSON'S numerous acts of punishment and

27   prosecution of protected speech commentary against the City Attorney, and

28   GARSON'S perjury and subornation of perjury constitute deprivations of STUART'S

-89-

rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and related provisions of the Constitution of the State of California.   Whether shielded from civil accountability or otherwise, the felonies represent a deplorable pattern of contempt of law.    They are also RICO predicate crimes under 18 U.S.C. § 1961(1)(A) and (B), as detailed below.

447. On information and belief, GARSON sought to impose these deprivations knowing such to be criminal violations of STUART'S constitutional rights in order to punish, retaliate, obstruct justice, and CHILL STUART from further criticism of the her, her boss, the City Attorney's office, and all other Defendants herein, and to intimidate, harass, and oppress STUART from pursuing the CLAIM AND DEMAND, this Action, the DUE ADMINISTRATION OF JUSTICE, and PUBLIC BENEFIT ACTIVITIES.

448. After the sentencing in June, 2012, STUART'S attorney Mr. Greg Turner advised STUART that the sentence and prosecution of the case was the most "bizarre" he had ever heard of in over twenty years of practice.  He advised that the sentence was illegal and suggested an appeal, but advised that such would not achieve relief by the time STUART had served his three year sentence.

449. STUART did file such an appeal, which was pending as of August 20, 2013.

450. At conclusion of his engagement, Mr. Turner digested his advice from his several days of work on the case, including relaying his several off-the-record interactions with GARSON and Judge GROCH.  Turner stated to the effect that "you better not blink an eye or they'll go after you again."  Turner also advised of his "off the record" conversation with GARSON and GROCH, on information and belief in an informal teleconference between the three prior to the suspended sentence hearing. Turner advised that he was "passing along" what Turner represented to be Judge GROCH'S "strong suggestion" that STUART leave the State of California and return to his boyhood home in Arkansas immediately upon his release.

451. On information and belief, GARSON and GROCH used Turner as a conduit and device to impose fear, retaliation, intimidation, duress, undue influence to impede STUART'S bringing this Action, cause him to leave this District, County, and State of California, and further deprive him of rights privileges and immunities secured under the Constitutions of the United States and the State of California.

452. STUART was and in fact remains intimidated, oppressed, fearful, and under duress from GARSON's and Judge GROCH'S illegal activity.

453. STUART was imprisoned by GORE, who knew or should have known of the malicious and retaliatory nature of the prosecution until release on May 15, 2013.  Such constitutes a false imprisonment for approximately fourteen months (FALSE IMPRISONMENT 6).

454. In order to permit Defendants to satisfy their due diligence obligations under Fed.R.Civ.P. 11(b)(3) and (4) in responding to the Fist Amended Complaint, PLAINITFFS hereby waive all attorney-client communication privilege with regard to Mssrs. Turner and Chang, and invite Defendants to confirm these allegations directly.

**GARSON's Misconduct at December 7, 2012 Early Release Hearing**

455. On December 7, 2012, after STUART had been illegally imprisoned under the "suspended sentence" charges since April 10, 2012, STUART appeared before GROCH to petition for early release.  GARSON appeared for the City Attorney's Office to oppose early release.

456. The only evidence GARSON offered at hearing was a document she claimed to have obtained from the State Bar of California on the same day—December 7, 2012—which indicated that STUART had been disbarred just the day before, on December 6, 2012.

457. Defendants' records and transcripts will reflect that GARSON presented the State Bar document to the Court, advising to the effect that "since he's no longer employable as a lawyer" she was requesting the Court deny STUART early release.

1    STUART had not been aware of the status of the State Bar prosecution while he was

2    in jail and was unable to respond.

3      458. Defendants' records and court transcripts will reflect that GARSON argued that

4    STUART's "unemployability" made him "at risk" to "repeat his offense"—the

5    "offense" being comments on the Internet regarding the City Attorney and STUART'S

6    ex-wife.   Based solely on this argument, GROCH denied STUART early release,

7    extending his incarceration another five months until May 15, 2013.   At the time

8    GROCH ruled in the matter, he was aware of DDIJO COMPLAINTS I and II,

9    implicated him in violations of federal law.

10     459. On information and belief, after STUART spoke with Mr. Radigan in about

11   October, 2011, GARSON induced further prosecution of the State Bar matter knowing

12   that STUART was incarcerated and unable to defend himself.   GARSON did so to

13   force STUART'S disbarment in order to facilitate her arguments at the early release

14   hearing that STUART posed a "risk" for further crime because of his "employability"

15   and to further retaliate, intimidate, harass, and oppress STUART for and from pursuing

16   the CLAIM AND DEMAND, this Action, the DUE ADMINISTRATION OF

17   JUSTICE, and PUBLIC BENEFIT ACTIVITIES.

18     460. On information and belief, GARSON collaborated, agreed, affiliated, and

19   conspired with the CITY ATTORNEY DEFENDANTS and GROCH in such activity.

20         **Duress and Undue Influence by Successive Illegal DVILS ORDERS**

21     461. From on about March 4, 2010 until May 15, 2013 STUART remained at

22   jeopardy, illegally imprisoned for, and under execution of sentence relating to the

23   illegal, malicious, and fraudulent charges against his free speech, including charges for

24   which he was acquitted, or threatened with prosecution but never charged.

25     462. In April, 2010, STUART was served with two illegal DVILS ORDERS, one

26   relating to his family law matter and a second to STUART'S 653m criminal matter.

27     463. On information and belief, the family law DVILS ORDER was obtained several

28   months earlier upon the illegal advice and direction given by Defendant SAN DIEGO

-92-

SUPERIOR COURT's Family Law Facilitator's Office and ALLIANCE, using illegal forms provided by Defendant JUDICIAL COUNCIL at the SAN DIEGO SUPERIOR COURT'S Family Law Facilitator's Office, and issued by Defendant C. GOLDSMITH while knowing of and in retaliation for Plaintiffs' PUBLIC BENEFIT ACTIVITY and DUE ADMINISTRATION OF JUSTICE.

464. These DVILS ORDERS are themselves illegal and unconstitutionally vague and overbroad.  The several DVILS ORDERS are founded on a form prepared and made "mandatory" by Defendant Judicial Council; form CR-160.  These orders placed illegal restrictions on STUART's rights of free speech, free association, free travel, due process, and numerous other rights under the United States and State of California Constitutions, under penalty of further imprisonment.   Their preparation, use, enforcement, and "mandatory" nature are illegal deprivations of several constitutional rights.

465. STUART remained at jeopardy and under execution of sentence relating to the illegal conditions of both the family law and criminal matter DVILS ORDERS and subsequent related orders up through the present day.  He will remain at jeopardy for two existing illegal DVILS ORDERS until about May, 2015 and May 29, 2022.

466. As an intended or a reasonably foreseeable result of these actions of Defendants, STUART has been reasonably fearful, intimidated, frightened, deceived, and thereby under duress and undue influence to exercise his rights to bring this Action sufficient to equitably extend or toll the running of any statute of limitations on all Claims.  *Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1356, 19 Cal. Rptr. 2d 320, 323 (1993); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1101 (C.D. Cal. 2009).

**467.** The events in this Section shall collectively be referred to as the **MALICIOUS PROSECUTION**.  The CITY ATTORNEY DEFENDANTS' role in them shall be referred to as the **PROSECUTORIAL MISCONDUCT.**

**Claim 3.1**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against CHUBB, CHUBB DOE 1**

468. This is a Claim by STUART against CHUBB and it's unknown Claims representative, CHUBB DOE 1, for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for its response to the CLAIM AND DEMAND, and its role in the CITY ATTORNEY DEFENDANTS' and STUART ASSAULT COORDINATORS' response to the CLAIM AND DEMAND, foreseeably leading to the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE IMPRISONMENTS.

469. All prior paragraphs are re-alleged and incorporated as if set forth in full.

470. At all times herein mentioned, CHUBB was acting as an agent or employee of SDCBA and on information and belief each STUART ASSAULT COORDINATOR in all acts relating to the CLAIM AND DEMAND.  In such capacity, CHUBB acted under color of law.

471. On information and belief, in responding to the CLAIM AND DEMAND, CHUBB collaborated with STUART ASSAULT COORDINATORS and  CITY ATTORNEY DEFENDANTS in the MALICIOUS PROSECUTION, and FALSE IMPRISONMENTS by providing or generating false or misleading information, testimony, documents and other evidence to other Defendants, precipitating acts in the MALICIOUS PROSECUTION, and foreseeably causing the FALSE IMPRISONMENTS and other subsequent events.

472.  In committing the acts as described in this Count 2, CHUBB CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, including the duty of good faith and fair dealing available to Claimant beneficiaries of property and liability insurance policies written in California, causing foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS, and extreme mental distress.

473. In performing the actions in this Count 2, CHUBB subjected STUART or caused him to be subjected to the PROSECUTORIAL MISCONDUCT, FALSE IMPRISONMENTS, and MALICIOUS PROSECUTION, constituting a deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

474. As an actual and foreseeable result, STUART has been deprived, damage, and injured in a nature and amount to be proven at trial.

<div align="center">

**Claim 3.2**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against GARSON**

</div>

475. This is a Claim by STUART against GARSON for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for her non-immune functions in the CITY ATTORNEY DEFENDANTS' response to the CLAIM AND DEMAND, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, GARSON PERJURY, and FALSE IMPRISONMENTS.

476. All prior paragraphs are re-alleged and incorporated as if set forth in full.

477. At all times herein mentioned each CITY ATTORNEY Defendant was acting under color of law.

478. In committing the acts as described in this Count, GARSON CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, causing reasonably foreseeable constitutional deprivation to STUART in violation of STUART'S rights to SUBSTANTIVE DUE PROCESS, as follows:

    a.  Committing acts in GARSON PERJURY ONE, TWO, AND THREE;

    b.  Initiating or participating in FALSE IMPRISONMENTS 1-6;

    c.  Committing non-immune acts in the PROSECUTORIAL MISCONDUCT, including all interactions with the State Bar, attempt to coerce STUART to

<div align="center">-95-</div>

1    leave this District and State, and initiation of the May, 2012 suspended

2    sentence prosecution.

3    479. In performing the actions in this Claim 2.2, above, GARSON subjected

4    STUART or caused him to be subjected to the obstruction of the CLAIM AND

5    DEMAND, the MALICIOUS PROSECUTION, PROSECUTORIAL

6    MISCONDUCT, and FALSE IMPRISONMENTS, constituting a deprivation of rights,

7    privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE

8    DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and

9    ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL

10   AND/OR UNUSUSAL PUNISHMENT.

11   480. As an actual and foreseeable result, STUART has been deprived, damage, and

12   injured in a nature and amount to be proven at trial.

13   **Claim 3.3**

14   **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

15   **Against J. GOLDSMITH**

16   481. This is a Claim by STUART against J. GOLDSMITH for deprivation of rights

17   under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for his non-

18   immune functions in the response to the CLAIM AND DEMAND, MALICIOUS

19   PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE

20   IMPRISONMENTS.

21   482. All prior paragraphs are re-alleged and incorporated as if set forth in full.

22   483. J. GOLDSMITH was at relevant times the supervisor of GARSON and on

23   information and belief a direct and indirect participant in each act setting in motion

24   each injury and constitutional deprivation described in Claim 2.2.

25   484. In performing the actions and omissions in this Count, J. GOLDSMITH

26   breached one or more PROFESSIONAL DUTIES and subjected STUART or caused

27   him to be subjected to the obstruction of the CLAIM AND DEMAND, the

28   MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE

-96-

IMPRISONMENTS, constituting a deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

485. As an actual and foreseeable result, STUART has been deprived, damage, and injured in a nature and amount to be proven at trial.

<div align="center">

**Claim 3.4**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against C. GOLDSMITH**

</div>

486. This is a Claim by STUART against C. GOLDSMITH for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for her non-immune functions in the response to the CLAIM AND DEMAND, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE IMPRISONMENTS.

487. All prior paragraphs are re-alleged and incorporated as if set forth in full.

488. C. GOLDSMITH was at all times the wife of J. GOLDSMITH, and on information and belief a complaining witness in conjunction with GARSON and J. GOLDSMITH in the GARSON PERJURY ONE, and all other acts alleged regarding GARSON and J. GOLDSMITH.

489. In performing the actions in this Count, C. GOLDSMITH breached one or more PROFESSIONAL DUTIES and subjected or caused to be subjected STUART to the obstruction of the CLAIM AND DEMAND, the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE IMPRISONMENTS, constituting a deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

<div align="center">-97-</div>

490. As an actual and foreseeable result, STUART has been deprived, damaged, and injured in a nature and amount to be proven at trial.

**Claim 3.5**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against GROCH**

491. This is a Claim by STUART against GROCH for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for his non-immune functions in MALICIOUS PROSECUTION.

492. All prior paragraphs are re-alleged and incorporated as if set forth in full.

493. The exercise of judicial authority by GROCH in the attempt to coerce, induce, or wrongfully persuade STUART to leave this District, the state of California, and return to live in Arkansas after his release from imprisonment was not a judicial act, and was undertaken under color of law. As such, these acts are not immune, but were in *coram non judice*.

494. On information and belief, GROCH'S actions were undertaken with knowledge of STUART'S PUBLIC BENEFIT ACTIVITIES, the DUE ADMINISTRATION OF JUSTICE, the CLAIM AND DEMAND, and with the intent to oppress, impede, frustrate, and retaliate for the same.

495. In committing each act alleged in this Count, GROCH acted CULPABLEY and UNREASONABLY, in agreement, collaboration, and conspiracy with GARSON and each other CITY ATTORNEY Defendant in furtherance of the purposes of the STUART ASSAULT COORDINATORS, and in affiliation with one or more ENTERPRISES.

496. In performing these actions, GROCH subjected or caused to be subjected STUART to the obstruction of the CLAIM AND DEMAND, the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and FALSE IMPRISONMENTS, constituting a deprivation of rights, privileges, and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS;

-98-

1  PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION;

2  ACCESS TO JUSTICE; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL

3  PUNISHMENT.

4    497. As an actual and foreseeable result, STUART has been deprived, damaged, and

5  injured in a nature and amount to be proven at trial.

6  <p align="center">**Claim 3.6**</p>

7  <p align="center">**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**</p>

8  <p align="center">**Chilling**</p>

9    498. This a Claim by STUART and CALIFORNIA COALITION, its members and

10  affiliates against all CITY ATTORNEY DEFENDANTS for deprivation of rights

11  under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for all **non-**

12  **immune** acts of the MALICOUS PROSEUCITON, PROSECUTORIAL

13  MISCONDUCT, and CLAIM AND DEMAND, in violation of PLAINTIFS' rights,

14  privileges and immunities.

15    499. All prior paragraphs are re-alleged and incorporated as if set forth in full.

16    500. Each Defendant to this Claim was aware of the CALIFORNIA COALITION'S

17  and STUART'S FFRRESA, PUBLIC BENEFIT ACTIVITIES, and ENGAGEMENT

18  before each event in the MALICIOUS PROSECUTION and PROSECUTORIAL

19  MISCONDUCT.

20    501. Defendants disfavored these Plaintiffs' PUBLIC BENEFIT ACTIVITIES;

21  Plaintiffs' "JUDGES BEHAVING BADLY" MESSAGE, the DUE

22  ADMINISTRATION OF JUSTICE, and Plaintiffs' ongoing FFRRESA.

23    502. Defendants' organized, committed, and participated in the STUART

24  ASSAULT, MALICIOUS PROSECUTION, and response to the CLAIM AND

25  DEMAND to deprive, intimidate, thwart, and retaliate for the same.

26    503. Plaintiffs and others at or aware of the   MALICIOUS PROSECUTION,

27  PROSECUTORIAL MISCONDUCT were frightened, intimidated, demoralized, and

28  emotionally traumatized by Defendants' activities.

<p align="center">-99-</p>

504. By the MALICIOUS PROSECUTION, and PROSECUTORIAL MISCONDUCT, Defendants CHILLED Plaintiffs and their affiliates from further PUBLIC BENEFIT ACTIVITIES and other rights of SPEECH, ASSOCIATION, ACCESS TO JUSTICE, and SUBSTANTIVE DUE PROCESS.

505. As an actual and foreseeable result, CALIFORNIA COALITION, STUART, and their members and affiliates have since been deterred, intimidated, deprived, or abandoned further PUBLIC BENEFIT ACTIVITY, FFRRESA, and DUE ADMINISTRATION OF JUSTICE, dissembled, disassociated, and avoided interactions with one another, causing Plaintiffs lost business opportunities and revenue.

506. STUART'S and CALIFORNA COALITION'S members, clients, and affiliates at or aware of the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT who previously had high opinions of CALIFORNIA COALITION and STUART, and provided or referred PLAINTIFS significant business opportunities, stopped associating with, providing or referring such opportunities out of fear of reprisal by Defendants.

507. In performing the actions described in this Count and the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT, the STUART ASSAULT COORDINATORS and each of them, in CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL DUTIES, have subjected STUART and CALIFORNIA COALITON, its members and affiliates, or caused them to be subjected to deprivation of their rights, privileges, and immunities relating to SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; and ACCESS TO JUSTICE.

508. As an actual and foreseeable result of the acts of each Defendant to this Claim, STUART and CALIFORNIA COALITION, its members and affiliates, have been CHILLED, deprived, damaged, and injured in their persons and property in a manner and amount to be proven at trial.

-100-

**COUNT 4**

**Obstruction of Justice**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against NESTHUS Defendants**

509. This is a Count against Defendants NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE, GROCH, NESTHUS DOES 1-100, SMITH, MARCQ, CSB-INVESTIGATIONS, WATKINS (NESTHUS Defendants) for obstruction of justice relating to events subsequent to the filing of this Action, constituting deprivations of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

**NESTHUS Obstruction of Justice**

**Nesthus Threat One**

510. Subsequent to the August 20, 2013 filing of the original Complaint in this matter, on Sunday, August 25, 2013, NESTHUS delivered to STUART and CALIFORNIA COALITION a letter identifying herself as "Court Counsel" and "Director, Legal Services" for Defendant SAN DIEGO SUPERIOR COURT. (Ex. 47).

511. NESTHUS represented to write on behalf of Defendants TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, "all judicial officers" and "all Defendants" to this Action.

512. NESTHUS asserted that she and those she wrote on behalf of received the Summons and original Complaint (ORIGINAL COMPLAINT) in this matter soon after it was filed, but before it was served, on about August 20-23, 2013. NESTHUS further Claimed to have become aware of its existence in this Court's ECF filing system through the PACER service. She also claimed to have become aware of the ORIGINAL COMPLAINT on the Internet.

513. NESTHUS objected to the ORIGINAL COMPLAINT existing in such locations and demanded its' immediate "removal."

514. NESTHUS Claimed that publication of the ORIGINAL COMPLAINT containing Defendants' places of residence to be a violation of Cal. Gov't C. § 6254.21(c)(A) and (E) (the "California Public Records Act" or CPRA),

515. Asserting these provisions, NESTHUS demanded that STUART and CALIFORNIA COALITION "IMMEDIATELY":

a. Remove "from the above websites, and the internet generally, any and all information concerning the residential addresses and telephone numbers of the aforementioned judges…"

b. Remove the same for "any other judicial officers of the Court;"

c. Remove the same from PACER "because the complaint is available on PACER, Government Code section 6254.21 requires you to take immediate steps to remove this information from PACER." and

d. That "you are hereby advised that you are prohibited from further transmitting this information 'to any other person, business, or association, through any other medium."

516. NESTHUS' letter concluded "Be assured that the Court will take all necessary legal actions to remedy this situation and ensure the safety of its judicial officers."

517. As a courtesy, STUART complied with NESTHUS' demands to the extent he was able.

**Nesthus Threat Two**

518. On August 26, 2013, STUART received a communication from the account representative for Plaintiffs' attorney service, Mr. David Pierce of Janney and Janney, of San Diego California.   Mr. Pierce told STUART that he had received a telephone call from NESTHUS "looking for you" (STUART).

519. Mr. Pierce stated that NESTHUS stated she represented all judges of the SAN DIEGO SUPERIOR COURT in which Janney and Janney performs regular business. NESTHUS further accused Janney and Janney of acting as a law firm representing

1   Plaintiffs and illegally, and harassing judges in violation of the above provisions.  Mr.

2   Pierce described NESTHUS' manner as rude, threatening, and aggressive.

3   520. Mr. Pierce was shaken, intimidated, confused, and frightened, by NESTHUS'

4   call.  He immediately contacted STUART, stating "I can't proceed with things this

5   way" and asked STUART to find another attorney service to handle all future filings

6   on behalf of Plaintiffs

7   521. STUART has worked with Janney and Janney and Mr. Pierce for over fifteen

8   years and had never seen Mr. Pierce unsteadied in his profession of attorney services,

9   which requires regular involvement in heated litigation.

10   522. STUART contacted Mr. Pierce to explain that NESTHUS was incorrect—no

11   Plaintiff had identified Janney and Janney as a law firm or counsel, but that NESTHUS

12   was making false accusations based upon what Mr. Pierce knew—that Plaintiffs were

13   using Janney and Janney's physical address as an agent for service of process.

14   523. Mr. Pierce recognized this agreement with Plaintiffs and was relieved, though

15   still intimidated, frightened, and reluctant to continue his work on behalf of Plaintiffs

16   in the case.  He requested that STUART request that NESTHUS refrain from further

17   unprofessional contact with his office.

18                                   **Nesthus Threat Three**

19   524. On about August 27, 2013, NESTHUS delivered an email to STUART advising

20   STUART that certain unredacted copies of the ORIGINAL COMPLAINT continued

21   to exist on the Internet.  It was apparent from the NESTHUS email that NESTHUS was

22   sharing information and resources with Defendants SMITH, WATKINS, and MARCQ

23   (see below), as they all identified exactly the same files in each of their

24   communications.

25   525. NESTHUS demanded, in threatening tones, that STUART remove all links too

26   these versions of the unreadacted ORIGINAL COMPLAINT.

27   526. As a courtesy, STUART complied with NESTHUS' demand.

28

**Smith/Marcq Demand**

527. On about August 28, 2013, Plaintiffs received a communication from the Internet hosting service Wordpress forwarding a communication from Detective Ken. Smith (SMITH), an employee of SDSD and COUNTY OF SAN DIEGO.  In this communication Detective Smith stated that he was "investigating a crime of CA Government Code 6254.21, Posting appointed officials' personal information on the Internet."

528. Detective SMITH stated that information posted at CALIFORNIA COALITION'S online public resource site www.croixsdadsblog.wordrpess.com contained illegal content.  Detective SMITH email stated:

> The article deals with a civil case filing by Colbern Stuart and the California Coalition for Families and Children. Within this lawsuit between pages 7 and 14, there are 4 San Diego Superior Court Judges' home addresses listed, as well as the Chief Judge in Sacramento, CA. We are in the process of serving Mr. Stuart a demand to take down this information

> Can you please remove this information from this page in order to assist us in protecting our Superior Court Judges.

529. The addresses in Detective SMITH'S email resolve at pages on which Plaintiffs' ORIGINAL COMPLAINT in this matter were then located.

530. Detective SMITH'S email was also identified as "c/o" one "Marilu Marcq, Sergeant, CSB-Investigations, 222 West C Street, Suite 7, San Diego, CA 92101." (MARCQ).  On information and belief Detective SMITH was collaborating with MARCQ and CSB-INVESTIGATIONS in these efforts.

531. On about this same date Plaintiffs received numerous other communications from CALIFORNIA COALITION members and affiliates who received similar threats

on information and belief from WATKINS, SMITH, MARCQ, and CSB-INVESTIGATIONS working with or on behalf of NESTHUS, and possibly other Defendants to this action.

532. Between August 23 and September 10, 2013, Plaintiffs received approximately seven additional emails or phone calls from entities with whom Plaintiffs maintained professional relationships relating to family court reform. These entities advised that they had received communications from Detective SMITH and/or WATKINS similar to the above threats.

533. These clients, members, and affiliates were intimidated, frightened, and deterred in their publication of the ORIGINAL COMPLAINTS, and in their relations and support of Plaintiffs.

534. As a courtesy, Plaintiffs advised or cooperated in removing the ORIGINAL COMPLAINT from public locations, and offered a redacted version of the ORIGINAL COMPLAINT in replacement in order to keep the public advised of Plaintiffs' PUBLIC BENEFIT ACTIVITIES and progress in this Action.

535. Many CALIFORNIA COALITION members and affiliates simply abandoned all contact with CALIFORNAI COALITION and STUART, and refused to replace the ORIGINAL COMPLAINT with a redacted version.  Dozens of CALIFORNIA COALITION members and affiliates have as a result ceased all relations with Plaintiffs out of fear and intimidation by these Defendants' actions and fear for further reprisal.

**Watkins/Smith Demand**

536. On about September 3, Plaintiffs' Internet services provider Wordpress forwarded a substantially identical email from Officer Brian Watkins (WATKINS) of California Highway Patrol's San Francisco office.  In this email Officer WATKINS wrote:

> I'm writing you this email to inform you of the posting of personal information of judicial officers on your website. The person posting the aforementioned

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

information is Colbern Cox Stuart AKA Cole Stuart. Mr. Stuart is an active blogger and has posted personal residential addresses of members of the California judiciary. This includes Supreme Court Chief Justice Tani Cantil-Sakauye. Please note that posting the Chief Justice's personal residence information poses a serious risk to her personal security as well as to the safety of her family members. Please be aware that Mr. Stuart has initiated a federal law suit against members of the San Diego Superior Court and the California Supreme Court. Please get back with us at your earliest convenience and let us know what we need to provide you/and or your legal department to rectify this matter as soon as possible.

537. On September 19, 20113, Wordpress forwarded a second communication from Detective Ken SMITH alleging as follows:

Revisiting the filing by Mr. Stuart on his blog site and in regards to the linked pdf file here:
http://croixsdadsblog.files.wordpress.com/2013/08/ccfc-v-sdcba-verified-complaint-and-cover-sheet-for-filing.pdf
or possibly here
http://croixsdadsblog.files.wordpress.com/2013/08/ccfc-v-sdcba-verified-complaint-and-cover-sheet-for-filing.pdf

This is yet another UN-REDACTED version, which still has all the Judicial addresses. It is being pointed to from a site that is NOT controlled by your company, however, I am contacting them as well. The link for that blog is here

http://www.unhappygrammy-grandparentsblog.blogspot.com/2013/08/families-fighting-back-rico-lawsuit-on.html

-106-

If you click on the photo in that article, it points to the un-redacted copy on your (Stuart's) server.

This is probably an oversight by the posting entity HOWEVER, it is STILL AGAINST THE LAW per 6254.21 GC to post this information. Can you please remove it until the offending party redacts it?

538. As a courtesy, Plaintiffs collaborated with CALIFORNIA COALITION affiliate "Unhappy Grammy" to remove the link to the ORIGINAL COMPLAINT. "Unhappy Grammy" has declined all further contact with Plaintiffs out of fear and intimidation for further reprisal.

539. On information and belief, NESTHUS' acted at all times in collaboration with and under the direction of Defendants RODDY and TRENTACOSTA, and in collaboration with all other NESTHUS Defendants.

<div align="center">

**Claim 4.1**

**Obstruction of Justice**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

</div>

540. This is a Claim against NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE, GROCH, NESTHUS DOES 1-100, for deprivation of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 constituting Obstruction of Justice.

541. By virtue of the actions of Defendants, and each of them, detailed in the Nesthus Threat One, Defendants have deprived or caused deprivation to PLAINITFFS of rights to SPEECH, PRIVACY, and ASSOCIATION; SEARCH AND SEIZURE; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS, causing deprivation, damage, and injury in a nature and amount to be determined at trial.

**Claim 4.2**

**Obstruction of Justice**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

542. This is a Claim against NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE, GROCH, NESTHUS DOES 1-100, for deprivation of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

543. By virtue of the actions of Defendants, and each of them, detailed in the Nesthus Threat Two, Defendants have deprived or caused deprivation to PLAINITFFS of rights to SPEECH, PRIVACY, and ASSOCIATION; SEARCH AND SEIZURE; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS, causing deprivation, damage, and injury in a nature and amount to be determined at trial.

**Claim 4.3**

**Obstruction of Justice**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

544. This is a Claim against NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE, GROCH, NESTHUS DOES 1-100, SMITH, MARCQ, CSB-INVESTIGATIONS, WATKINS for deprivation of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

545. By virtue of the actions of Defendants, and each of them, detailed in the Nesthus Threat Three, Defendants have deprived or caused deprivation to PLAINITFFS of rights to SPEECH, PRIVACY, and ASSOCIATION; SEARCH AND SEIZURE; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS, causing deprivation, damage, and injury in a nature and amount to be determined at trial.

1

2

3

**Claim 4.4**

**Obstruction of Justice**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

4  546. This is a Claim against NESTHUS, RODDY, TRENTACOSTA, ALKSNE,

5  WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE,

6  GROCH, NESTHUS DOES 1-100, SMITH, MARCQ, CSB-INVESTIGATIONS for

7  deprivation of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

8  547. By virtue of the actions of Defendants, and each of them, detailed in the

9  Smith/Marcq Demand, Defendants have deprived or caused deprivation to

10  PLAINITFFS of rights to SPEECH, PRIVACY, and ASSOCIATION; SEARCH AND

11  SEIZURE; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS, causing

12  deprivation, damage, and injury in a nature and amount to be determined at trial.

13

14

15

**Claim 4.5**

**Obstruction of Justice**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

16  548. This is a Claim against NESTHUS, RODDY, TRENTACOSTA, ALKSNE,

17  WOHLFEIL, SCHALL, C. GOLDSMITH, LOWE, MCADAM, MCKENZIE,

18  GROCH, NESTHUS DOES 1-100, SMITH, MARCQ, CSB-INVESTIGATIONS,

19  WATKINS (NESTHUS Defendants) for deprivation of rights under 42 U.S.C. § 1983

20  and Cal. Const. art. I, § 26.

21  549. By virtue of the actions of Defendants, and each of them, detailed in the

22  Smith/Watkins Demand, Defendants have deprived or caused deprivation to

23  PLAINITFFS of rights to SPEECH, PRIVACY, and ASSOCIATION; SEARCH AND

24  SEIZURE; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS, causing

25  deprivation, damage, and injury in a nature and amount to be determined at trial.

26  550. As an actual and foreseeable result of the acts of each Defendant to each Claim

27  in this Count, STUART and CALIFORNIA COALITION, its members and affiliates,

28

1  have been deprived, damaged, and injured in their persons and property in a manner

2  and amount to be proven at trial.

### COUNT 5

**Obstruction of Justice, Deprivation of Rights Under Color of Law**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against BATTSON, SIMI**

7  551. This is a Count against BATTSON and SIMI, for their *ultra vires* acts under

8  color of law constituting deprivations of rights privileges and immunities under 42

9  U.S.C. § 1983 and Cal. Const. art. I, § 26.  Defendants' acts and failures include

10  creating and maintaining illegal policies, rules, and customs, causing and permitting a

11  culture of deliberate indifference, failure to train, breach of PROFESSIONAL

12  DUTIES, and failure to act in a special relationship, foreseeably causing constitutional

13  deprivation as elsewhere alleged.

14  552. Defendant BATTSON was at relevant times employed as an "investigator" for

15  the Commission on Judicial Performance and is an agent thereof, at times authorized

16  to perform certain activities, except at such times as he was acting *ultra vires* to the

17  scope of authority of his office, in CULPABLE and UNREASONABLE breach of one

18  or more PROFESSIONAL DUTIES, in criminal and civil conspiracy, or in violation

19  of Plaintiffs' rights under the Constitution of the State of California.

20  553. On information and belief, Defendant SIMI was at relevant times the

21  Chairperson of the Commission on Judicial Performance, at times authorized to

22  perform certain activities under the Commission, except in such times as he was acting

23  *ultra vires*, beyond the scope of authority in his office, in CULPABLE and

24  UNREASONABLE breach of one or more PROFESSIONAL DUTIES, in criminal

25  and civil conspiracy, or in violation of Plaintiffs' rights under the Constitution of the

26  State of California.

27  554. In performing all acts attributed to them in this Count, BATTSON and SIMI

28  were bound under the following PROFESSIONAL DUTIES: CONSTITUTIONAL

(non-discretionary), SUPERVISORIAL, FIDUCIARY, SPECIAL RELATIONSHIP, CREATION OF DANGER, SOCIAL WORKER and REASONABLE CARE. Said duties include duties to assure others within their power and control abide by their duties.

555. BATTSON'S authorized activities include investigating Plaintiff STUART'S complaints to the Commission on Judicial Performance ("DDIJO COMPLAINTS" I and II) regarding Defendants SCHALL, ALKSNE, WOHLFEIL, C. GOLDSMITH, and GROCH.

556. SIMI's authorized activities included supervising BATTSON, and acting as lead policymaker for the Commission on Judicial Performance.

557. BATTSON and SIMI functioned at all times under color of law and only in an administrative capacity. At no relevant time has either BATTSON or SIMI functioned as an attorney representing the Commission.

<div align="center">

**Claim 5.1**

**Illegal Line-Drawing**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against BATTSON, SIMI**

</div>

558. This is a Claim for deprivation of rights under color of law for BATTSON and SIMI'S unauthorized rulemaking to permit illegal judicial conduct, causing foreseeable constitutional injury to Plaintiffs as elsewhere alleged.

559. All prior paragraphs are re-alleged and incorporated as if set forth in full.

<div align="center">

**BATTSON and SIMI'S "Line Drawing" Duties**

</div>

560. BATTSON'S and SIMI'S duties and responsibilities include "oversight, supervision, training, supervision, and discipline over judges of California's superior courts and the justices of the Court of Appeal and Supreme Court." Their duties and responsibilities also include the power and duty to discipline, control, or influence "former judges for conduct prior to retirement or resignation." They also "share

<div align="center">

-111-

</div>

authority with the superior courts for the oversight of court commissioners and referees."

561. BATTSON and SIMI'S "authority is limited to investigating allegations of judicial misconduct and, if warranted, imposing discipline." "Judicial misconduct usually involves conduct in conflict with the standards set forth in the Code of Judicial Ethics. After investigation, and in some cases a public hearing, the commission may impose sanctions ranging from confidential discipline to removal from office."

562. Under such authority, BATTSON and SIMI have a role in creation, maintenance, and enforcement of rules governing the behavior of County judges, including judicial officer Defendants herein.

563. In this role BATTSON, SIMI, and others exercise "line-drawing" power—the power to define which general categories of judicial behavior warrant discipline.  This "line drawing" power includes the power to direct or influence other Commission employees in which laws, rules, cannons, and state and federal constitutional provisions the other Commission employees will enforce against judicial officer behavior, and which the other Commission employees will not.

564. As such, these Defendants' rulemaking and enforcement influence gives them the power, though not the authority, to permit unconstitutional conduct by refraining from discipline of it, and to discipline judicial conduct which is not a violation of any law.  Such power foreseeably influences judicial behavior toward litigants, including Plaintiffs herein.

565. These "line-drawing" roles of BATTSON and other COMMISSION employees are described in detail in a publication entitled *Disciplining the Professional Judge*, 88 Cal.L.Rev. 1233, S. Sankar, (2000) (hereafter "*Professional Judge*").  Pages 1237-1247, 1256-1267, 1269-1279 are incorporated herein by reference as if set forth in full.

566. In addition to their PROFESSIONAL DUTIES, BATTSON and SIMI are bound by special duties in the performance of their job responsibilities in drawing lines. Those "line-drawing duties" include the duty to draw and only enforce lines which are

consistent the mandates and restrictions which govern the behavior of those whom they have the power and ability to influence or control, including all provisions of the Construction of the United States and the Constitution of the State of California.  Cal. Const. art. I, § 26.

567. Any CULPABLE or UNREASONABLE failure to draw lines consistent with the laws that govern judicial behavior constitutes a violation of BATTSON'S and SIMI'S PROFESSIONAL DUTIES.  Such breaches causing reasonably foreseeable injury constitutes a deprivation of SUBSTANTIVE DUE PROCESS, and perhaps other deprivations, to the person or entity injured.

568. Relevant to this litigation, the laws under which the BATTSON, SIMI, and others exercise line-drawing control include those identified in the Constitution of the United States, the Constitution of the State of California, the California Code of Judicial Ethics, Civil Rights Criminal and Civil Statutes, as well as those laws and rules identified as JUDICAL PROFESSIONAL DUTIES, CONSTITUTIONAL PROFESSIONAL DUTIES, and oaths of office of judicial officers.

569. Pursuant to their own PROFESSIONAL DUTIES under the Constitution of the State of California Article I, § 26, BATTSON and SIMI have no discretion to draw lines inconsistent with these laws, rules, codes, oaths, and cannons governing judicial officials.

570. By their power and ability to draw lines, BATTSON, SIMI, and other Commission employees exercise significant control over behavior of County judges in California jurisdictions.  Because many acts of judges are uniquely immunized or insulated from ordinary civil acCountability, BATTSON, SIMI, and other Commission employees represent the only true influence to enforce—or fail to enforce—laws and duties governing judicial behavior.

571. Civil rights immunity is not a defense to discipline by the Commission or its employees.

572. As "judge cops," BATTSON'S and SIMI'S policies, habits, and customs have profound effect on judicial behavior. *Professional Judge* at 1270-1279.

573. BATTSON and SIMI'S failure to draw lines faithful to laws and the PROFESSIONAL DUTIES derived therefrom effectively abrogates those laws and judicial offer PROFESSIONAL DUTIES thereunder, as no other effective means for enforcing such duties exists.

574. BATTSON and SIMI have no discretion to abrogate the Constitution of the United States or the State of California, or any other law, rule, or legislation.

575. As such, BATTSON and SIMI may not draw lines permitting conduct inconsistent with mandatory and prohibitory CONSTITUTIONAL, or JUDICIAL DUTIES. Any "line-drawing" act or failure to act inconsistent with these DUTIES is *ultra vires* to the constitutional authority of their own offices, and therefore not undertaken in an "official capacity."

576. On information and belief, BATTSON and SIMI have participated in line-drawing in such a way as to effectively and illegally abrogate many laws imposing CONSTITUIONAL and JUDICIAL DUTIES on County judicial officers in California jurisdictions, thereby giving express and implied permission to violate those laws.

577. In so doing, BATTSON and SIMI have caused or contributed to conditions in which judicial officers are unrestrained by the laws, duties, and responsibilities of their offices and constitutional restrictions on their acts.

578. Such conditions have foreseeably lead to a culture of deliberate indifference which precipitated the illegal acts of the judicial officers as described in the STUART ASSAULT, MALICIOUS PROSECUTION, NESTHUS OBSTRUCITON OF JUSTICE, RACKETEERING, and elsewhere throughout this Complaint.

579. As an actual and foreseeable result of Defendants' line-drawing to abrogate CONSTITUIONAL and JUDICIAL DUTIES governing judicial officer defendants herein, STUART and CALIFORNAI COALITION have been deprived and injured as elsewhere alleged of rights, privileges, and immunities relating to SEARCH AND

-114-

SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; ACCESS TO JUSTICE; EXPRESSION, PRIVACY, and ASSOCIATION; and EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

580. As an actual and foreseeable result, STUART has been deprived, damage, and injured in a nature and amount to be proven at trial.

<div align="center">

**Claim 5.2**

**Obstruction of Justice**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against BATTSON and SIMI**

</div>

581. This is a Claim for deprivation of rights under color of law for BATTSON and SIMI'S facilitation and toleration of illegal obstruction of justice creating a widespread culture of deliberate indifference causing foreseeable obstruction of justice and retaliation, constituting constitutional injury to PLAINITFFS as elsewhere alleged.

582. All prior paragraphs are re-alleged and incorporated as if set forth in full.

583. The power and duty to discipline judges includes the duty to protect the process and rights of citizens for doing so.  Causing or allowing interference with such processes or afterward in retaliation constitutes a CULPABLE and UNREASONABLE breach of BATTSON and SIMI'S PROFESSIONAL DUTIES, foreseeably resulting in constitutional deprivations of the complaining citizens and others thereby subject to retaliation or chilled out of fear of same.

584. Such deprivations of rights of citizens to utilize the complaint process relate to rights, privileges and immunities to EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS.  Such interference shall hereafter be referred to as "OBSTRUCTION OF JUSTICE."

585. BATTSON, SIMI, and other Commission on Judicial Performance employees are uniquely empowered and therefore bound to protect California litigants' rights under state and federal law to petition the Commission and its employees for grievances against such officers; speak freely about judicial officers and their misconduct both

<div align="center">-115-</div>

within and outside of the Commission's processes; seek and obtain unfettered, unimpeded, and safe access to such processes; maintain privacy in relation to commission matters and investigations; and preserve procedural and substantive due process rights through their management of complaints, discipline, and protection of witnesses and parties to that process.

586. The failure to enact, maintain, policies and practices which assure the integrity of the complaint process foreseeably leads to opportunity and actual retribution by judges who, attune to BATTSON, SIMI, and others' impotence to protect their witnesses, creates an environment of deliberate indifference and inadequate protection of witnesses in the judicial oversight process.  As a result, judicial officers have received a "green light" to retaliate against complaining litigants in manners similar to those alleged herein.

587. SIMI and BATTSON are aware that judicial officials are keenly sensitive to public criticism, including complaints by citizens.  *Professional Judges* at 1278-79. They are also aware that County judges have substantial, often unfettered, discretion to abuse legal process and obstruct justice to retaliate with immunity against citizens who make complaints against a County judge should the complaint be revealed to the judge.  *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 835 (1978); *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719 (1980).

588. On information and belief, BATTSON and SIMI are aware of numerous prior incidents of OBSTRUCTION OF JUSTICE by judicial officers within their power and duty to control, including each judicial officer herein, some of which are similar to the acts of the STUART ASSAULT COORDINATORS, CITY ATTORNEY DEFENANTS, GROCH, and NESTHUS Defendants described above.

589. On information and belief, BATTSON, SIMI, and others maintain policies, practices, habits and customs permitting the ability of judges to retaliate successfully, thereby inhibiting, and impeding exercise of litigants, including PLAINITFFS,' rights. Such policies consist, inter alia, of (1) inadequate investigation of original complaints

brought by litigants who are dramatically disfavored in the proportion of investigations undertaken by BATTSON, SIMI, and others and (2) Inadequate discipline for interference and retaliation; and (3) inadequate and assurances and protections to litigants during the complaint process to assure complaints are properly treated, including advising litigants of the availability of the available means to protect them and discipline judicial officers who retaliate.

590. BATTSON and SIMI are further aware that litigants face unequal risks for retaliation due to unequal discipline for litigant complaints in comparison with complaints by government lawyers. Published Commission statistics show that as little as 2% of all complaints by litigants are acted upon, meaning that litigants who make such complaints remain at jeopardy within the jurisdiction of the judicial official and/or his colleagues, and therefore subject to retribution.  By contrast, approximately 50% of complaints by government prosecutors or other judges themselves are acted upon.

591. Such inequality inflicts a deprivation of state and federal Constitutional rights to Equal Protection on litigants, including Plaintiffs herein.

592. BATTSON and SIMI are also aware that County judges regularly refuse to recuse themselves in cases in which they have obvious conflicts of interest, including conflicts due to complaints filed by litigants appearing before them.

593. Under BATTSON and SIMI'S habituated tolerance for judicial misconduct, disregard of ethical canons and constitutional restrictions on abuse of authority, the mere act of identifying a litigant in an investigation subjects her to jeopardy by officer complained of or the officer's colleagues acting in lockstep sympathy.

594. That failure, combined with BATTSON'S and SIMI'S impotence to swiftly punish the same in deterrence, makes the act of entrusting a complaint to BATTSON and SIMI at outrageous risk of constitutional injury by county judicial officers behaving as a steerage-fare gallery of feckless *petit-tyran,* perversely immunized under the honor of patriots to indulge frolic, whimsy, and caprice.  What shame a profession of reason today endures.

595. BATTSON and SIMI, by virtue of their awareness of the ongoing DUE ADMINISTRATION OF JUSTICE and ENGAGEMENTS, had a duty to protect Plaintiffs in the DDIJO COMPLAINTS and DUE ADMINISTRATION OF JUSTICE—either by effectively protecting Plaintiffs' and their members' identity, or, if not possible, by otherwise assuring that retribution against such citizens is met with swift deterring discipline.

596. BATTSON and SIMI'S creation, tolerance, and failures to correct such conditions within their power and duty to influence or control constitutes a CULPABLE and UNREASONABLE breach of their PROFESSIONAL DUTIES to all litigants foreseeably injured by such retaliatory behavior, including all PLAITIFFS herein, and thereby a deprivation of SUBSTANTIVE DUE PROCESS.

597. In responding to the DDIJO COMPLAINT I, BATTSON alerted WOHLFEIL and SCHALL to the DDIJO COMPLAINT I soon after STUART made it, identifying STUART sufficiently to permit SCHALL and WOHLFEIL to recognize STUART as the source of the COMPLAINT.

598. BATTSON knew or should have known that by identifying STUART in such a way, and by virtue of his and SIMI'S policy and practice of failing to protect the disciplinary process from obstruction by judges and their agents, he was subjecting STUART to retaliation by these judicial officers and their co-conspirators of the judicial officer COMPLAINTS I and II, including each judicial officer Defendant herein.

599. Such acts of walking STUART into immediate jeopardy caused STUART fear and distress, causing him to refrain from subjecting himself to further illegal retribution in accessing courts and practicing his profession within the jurisdiction of the SAN DIEGO SUPERIOR COURT where he has practiced since 1995, resulting in substantial loss of income, revenue, and.  He has further been deprived of rights to pursue his interests in the family law matter from which the DDIJO COMPLAINT I arose, resulting in severe emotional distress.

600. BATTSON and SIMI'S acts and failures to act have also foreseeably led to the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, NESTHUS OBSTRUCITON OF JUSTICE, and RACKETEERING.

601. BATTSON and SIMI'S failures in responding to the history of complaints against judicial defendants herein, including DDIJO COMPLAINTS I and II, have thereby deprived STUART and CALIFORNIA COALITION and its members of rights, privileges and immunities relating to EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE; and SUBSTANTIVE DUE PROCESS as elsewhere alleged.

602. As an actual and foreseeable result, PLAINITFFS have been deprived, damage, and injured in a nature and amount to be proven at trial.

## Claim 5.3

### Failure to Discipline Judicial Defendants

### 42 U.S.C. § 1983 and Cal. Const. art. I, § 26

### Against BATTSON, SIMI

603. This is Claim against BATTSON and SIMI for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 due to failure to supervise, discipline, and oversee certain San Diego County judicial officials, creating a culture of deliberate indifference causing foreseeable constitutional injury to Plaintiffs as elsewhere alleged.

604. All prior paragraphs are re-alleged and incorporated as if set forth in full.

605. Through their interactions with STUART ASSAULT COORDINATOR Defendants and those complaining about them, BATTSON and SIMI are aware of allegations of numerous prior deprivations of litigant rights under the Constitutions of the United States and the State of California of each Defendant.

606. Such awareness includes the history of disciplinary matters for Defendant SCHALL and WOHLFEIL detailed above and in DDIJO COMPLAINTS I and II, as

<div align="center">-119-</div>

1  well as on information and belief numerous other complaints or disciplinary matters

2  regarding other named judicial officer Defendants, including the numerous criminal

3  acts of each judicial officer Defendant and each unnamed co-conspirator/enterprise

4  affiliate judicial officer identified herein.

5  607. On information and belief, such history of crimes includes violations of one or

6  more Civil Rights Criminal and Civil Statutes, including deprivation of civil rights

7  under color of law and obstruction of justice in retaliating against complaining litigants

8  for protected activity, including protected activity relating to complaints regarding

9  judicial officers.

10  608. In response to such history of complaints, on information and belief BATTSON

11  and SIMI have CULPABLY and UNREASONABLY breached one or more of their

12  own PROFESSIONAL DUTIES in failing to properly investigate, pursue, discipline,

13  influence, oversee, and supervise each judicial officer Defendant herein.

14  609. Such failures to discipline are evidenced in BATTSON and SIMI'S failure to

15  impose any discipline on SCHALL, DOYNE, WOHLFEIL, ALKSNE, C.

16  GOLDSMITH, and GROCH for deprivations of STUART'S clearly-established rights

17  under the Constitution of the United States and the Constitution of the State of

18  California, as detailed in the DDIJO COMPLAINTS I and II, each Count herein, and

19  in STUART'S subsequent complaints relating to such officers beginning in May and

20  June, 2011, again in September, 2012 - January, 2013, and up through an including the

21  present Action.  On information and belief, this deafening silence continues to this day.

22  610. By virtue of BATTSON and SIMI'S failures to properly discipline each such

23  judicial official for past acts, BATTSON and SIMI have CULPABLY caused or

24  permitted a culture of widespread deliberate indifference to the rights of litigants within

25  the jurisdiction of County judicial officers including each judicial Defendant herein.

26  611. Such a culture of deliberate indifference has foreseeably caused or permitted

27  each individual judicial officer defendant herein to commit the illegal acts described

28  throughout this Complaint, constituting deprivations of STUART's rights relating to

SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; ACCESS TO JUSTICE; EXPRESSION, PRIVACY, and ASSOCIATION; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

612. As an actual and foreseeable result, STUART has been deprived, damage, and injured in a nature and amount to be proven at trial.

<div align="center">

**Claim 5.4**

**42 U.S.C. §1983 and Cal. Const. art. I, § 26**

**Against BATTSON and SIMI**

</div>

613. This is a Claim against BATTSON and SIMI for deprivation of rights under color of law based upon the same facts alleged against them under racketeering Claims for Relief 3-18.

614. Plaintiff re-alleges and incorporates by reference RICO Counts for Relief 3-15.

615. In performing each acts attributed to them in Racketeering Counts 3-18, BATTSON and SIMI have CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, foreseeably depriving STUART and CALIFORNIA COALITION, its members and affiliates, of rights relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT.

616. As an actual and foreseeable result, Plaintiffs have been deprived, damaged, and injured in a nature and amount to be proven at trial.

1

**Claim 5.5**

2

**Obstruction of Justice**

3

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

4

**Against BATTSON, SIMI**

5   617. This is a Claim against BATTSON for deprivation of rights under color of law

6   pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 due to failure to protect

7   STUART and CALIFORNIA COALITION members in the complaint process,

8   creation of danger, breach of special relationships, and obstruction of justice, causing

9   foreseeable constitutional injury to Plaintiffs rights as elsewhere alleged.

10   618. In or about May, 2011, STUART contacted BATTSON to expand the scope of

11   DDIJO COMPLAINT I regarding SCHALL and WOHLFEIL to include facts relating

12   to the MALICIOUS PROSECUTION in the *People v. Stuart* matter.  See Section VI,

13   infra.

14   619. BATTSON stated that he had not completed his investigation regarding DDIJO

15   COMPLAINT I and would consider any additional information STUART provided.

16   620. STUART did so, and detailed a number of the facts described in the

17   MALICIOUS PROSECUTION.   STUART advised BATTSON that other

18   CALIFORNIA COALITION members wished to contact BATTSON to share their

19   experience at the STUART ASSAULT and resulting CHILL.

20   621. BATTSON responded that he had received several such complaints, and asked

21   "aren't they afraid they're going to know they complained?"

22   622. STUART communicated BATTSON'S comment to CALIFORNIA

23   COALITION members and affiliates who, as a result, became concerned for their own

24   safety and ability to ACCESS JUSTICE, further CHILLING their DUE

25   ADMINISTRATION OF JUSTICE and PUBLIC BENEFIT ACTIVITIES.

26   623. BATTSON and SIMI are aware that litigants face serious risks for filing judicial

27   complaints, and as such have duties to act to prevent harm by the dangers they create,

28

-122-

by special fiduciary and other relationships, and to prevent obstruction of justice, in such relationships.

624. Yet BATTSON and SIMI regularly as a policy or habit, and in the case of Plaintiffs have CULPABLY and UNREASONABLY failed to protect their witnesses with whom they have a special relationship and fiduciary duties, and CULPABLE and UNREASONALE failures to discipline illegal judicial behavior in retaliation.

625. These breaches of PROFESSIONAL DUTIES have CHILLED and set in motion the reasonably foreseeable deprivations of STUART and CALIFORNIA COALITION'S rights to SPEECH, ASSOCIATION, AND PRIVACY and ACCESS JUSTICE as elsewhere alleged.

<div align="center">

**Claim 5.6**

**Deprivation of Equal Protection**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against BATTSON, SIMI**

</div>

626. This is Claim against SIMI and BATTSON for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 for implementing, maintaining, and enforcing policies and practices in violation of PLAINTIFS' rights, privileges and immunities to EQUAL PROTECTION, causing foreseeable injury to Plaintiffs as elsewhere alleged.

627. All prior paragraphs are re-alleged and incorporated as if set forth in full.

628. On information and belief, BATTSON and SIMI'S rule-making responsibilities include power and influence to discriminate on the basis of categories or classes of litigants, Claims, or judicial officials.

629. On information and belief, BATTSON and SIMI create and maintain policies, rules, and practices discriminating against each of the EQUAL PROTECTION CLASSES, and giving special exceptions to family court judges with jurisdiction over litigants within the EQUAL PROTECTION CLASSES.

630. On information and belief, this unequal treatment is motivated by invidious discrimination against the EQUAL PROTECTION CLASSES.

631. On information and belief, this unequal treatments results in complaints from litigants within the EQUAL PROTECTION CLASSES being prejudicially adjudged as less credible, viable, or important.  Such judgments are based on invidious prejudices that family court litigants are "litigants behaving badly," a "bunch of borderlines," "angry about everything" lack credibility, importance, or legitimacy, or otherwise inferior or unequal to other litigants.  See Exs. 1, 2; EQUAL PROTECTION CLASSES infra.

632. For similar reasons, litigant complaints against Family Court judges are treated differently because of what has been described as a "Domestic Relations Exception" to the Constitution of the United States and Constitution of the State of California.

633. Despite such error, BATTSON and SIMI, along with other present Defendants, abide the misconception in their practices, effectively discriminating against complaints alleging constitutional deprivations by Family Court judges, behaving by word or deed as if family court litigants have fewer constitutional rights to offend.

634. Such a policy and practice constitutes deprivation of PLAINITFFS' rights, privileges, and immunities relating to EQUAL PROTECTION, and has inflicted foreseeable injury to Plaintiffs as members of each EQUAL PROTECTION CLASS as elsewhere described.

635. As an actual and foreseeable result of the acts and omissions of Defendants BATTSON and SIMI described hereinabove, Plaintiffs have been deprived, damages, and injured as elsewhere alleged in a nature and amount to be proven at trial.

**COUNT 6**

**Supervisory Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

636. This is a Count containing Claims against Defendants who maintain supervisory power and responsibility over other Defendants (SUPERVISING DEFENDANTS). The Claims of this Count allege injury under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 caused by breach of those duties foreseeably causing deprivation of rights, damage, and injury.

637. Each SUPERVISING DEFENDANT at all times was under the following SUPERVISORY DUTIES:

    a.  *Policy and Rulemaking*: Powers and duties to create, modify, and maintain policies, rules, and restrictions to govern subordinates in compliance with all laws and each SUPERVISING DEFENDANT's and each of their subordinate's PROFESSIONAL DUTIES.

    b.  *Train*: Duties to prepare subordinates for foreseeable risks of causing constitutional deprivation which the subordinate could not be expected to anticipate, and duties to continue and update such training to accommodate known errors and changes in laws and circumstances;

    c.  *Oversight*: Powers and duties to oversee, communicate and interact with, direct, train, and guide subordinates to assure their acts are in accordance with law and each subordinate's PROFESSIONAL DUTIES.

    d.  *Enforcement*: Each SUPERVISING DEFENDANT had duties to enforce policies, and all laws and restrictions relating to their subordinate's PROFESSIONAL DUTIES through discipline and if necessary termination.

638. Each supervisor further was at all times bound under the following PROFESSIONAL DUTIES: CONSTITUTIONAL, SOCIAL WORKER, FIDUCIARY, and at certain times elsewhere alleged, CONTRACTUAL and THERAPEUTIC/QUASI-THERAPEUTIC.

-125-

639. On information and belief, each SUPERVISING DEFENDANT knew or should have known of:

      A. Prior disregard of PROFESSIONAL DUTIES and laws, and deprivation of rights by their subordinates named herein;

      B. The breaches of PROFESSIONAL DUTIES and laws and deprivation of rights among their subordinates as alleged herein;

      C. The DDIJO and DOYNE COMPLAINTS;

      D. Plaintiffs' FFRRESA, the DUE ADMINISTRATION OF JUSTICE, CLAIM AND DEMAND, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and NESTHUS OBSTRUCTION OF JUSTICE;

      E. Each Scheme and Artifice to Defraud, ENTERPRISE, and CRIMINAL CONSPIRACY alleged under the RICO ALLEGATIONS infra.

640. On information and belief, each SUPERVISING DEFENDANT had further specific knowledge of prior acts by their subordinates, supervisors and/or trainees causing constitutional injury similar to that complained of by Plaintiffs.

641. Knowing of these facts, each SUPERVISING DEFENDANT had a duty to investigate, remedy, correct, discipline, re-train, and/or terminate those over whom they had the power to influence or control to conform the behavior of those they supervised to law.

642. In CULPABLE and UNREASONABLE breach of one or more SUPERVISORY DUTIES, each SUPERVISING DEFENDANT implemented customs, policies, or practices that created unreasonable risks that subordinates would perpetrate the constitutional injuries elsewhere complained of by Plaintiffs, including:

    a. Directing, rewarding, encouraging, or acting with deliberate indifference to the actions of subordinates which led to Plaintiff's constitutional injuries;

b. Failing to change the customs, practices, or policies, or employ corrective practices for subordinates, after having knowledge of actual or threatened constitutional injury; and

c. Facilitating, acquiescing to, endorsing, or ratifying HARRASMENT AND ABUSE.

643. Each SUPERVISING DEFENDANT UNREASONABLY and CULPABLY failed to implement remedial measures to prevent further constitutional injuries to Plaintiffs and those similarly situated.

<div align="center">

**Claim 6.1**

**Supervisor Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against SDCBA DOE 2**

</div>

644. This is a Claim for failure to supervise against the head official of SDCBA, believed at times relevant to this Action to be Patrick L. Hosey, for failure to oversee his subordinates as alleged below.

645. All prior paragraphs are re-alleged and incorporated as if set forth in full.

646. At all relevant times, Defendant SDCBA DOE 2 maintained SUPERVISORY DUTIES to oversee subordinate Defendants SDCBA DOE 1, ODO, ODO DOES 1 and 2, each STUART ASSAULT COORDINATOR, SDSD DOES 1-15 with regard to the STUART ASSAULT, CLAIM and DEMAND, and those segments of the Family Law Community which SDCBA provides services as elsewhere alleged, including the SD-DDICE, and DDI-FICE criminal ENTERPRISES.

647. On information and belief, SDCBA DOE 2 CULPABLY and UNREASONABLY failed to perform one or more SUPERVISORY DUTY over his or her subordinates, foreseeably causing or permitting the subordinate's acts as elsewhere alleged in the STUART ASSAULT, CLAIM AND DEMAND, and RACKETEERING, causing deprivation of rights of SUBSTANTIVE DUE PROCESS.

<div align="center">

-127-

</div>

648. By virtue of the CULPABLE and UNEASONABLE beaches of PROFESSIONAL DUTIES by each subordinate as elsewhere alleged, each SUPERVISING DEFENDANT has breached one or more SUPERVISORY DUTIES, directly and indirectly depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

<center>

**Claim 6.2**

**Supervisor Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against COUNTY OF SAN DIEGO DOE 1**

</center>

649. This is a Claim for failure to supervise against the head official of COUNTY OF SAN DIEGO, an unknown individual sued herein as COUNTY OF SAN DIEGO DOE 1, for failure to oversee his subordinates as alleged below.

650. All prior paragraphs are re-alleged and incorporated as if set forth in full.

651. Defendant COUNTY OF SAN DIEGO DOE 1 maintains administrative supervisory duties over Defendants GORE, SDSD DOES 1-15, all members of the County of San Diego Sheriff's Department (SDSD), all SAN DIEGO SUPERIOR COURT employees who are not judicial officials (including numerous unnamed employees in Family Law Facilitators Offices), RODDY, and all professionals affiliated with the SUPERIOR COURTS' "forensic psychology" services, including DOYNE, DOYNE, INC., LOVE, LOVE, INC., SIMON, and all judicial officials in administrative capacity and when not performing judicial acts.

652. On information and belief, COUNTY OF SAN DIEGO DOE 1 maintains and implement policies and practices governing qualifications, training, discipline, and oversight of each subordinate.

653. Said policies and practices include those relating to forensic psychologists, child custody evaluators, parent coordinators, guardians ad litem, the Family Law Facilitator Offices including personnel, and paperwork therein and including those identified in the DDI-IACE ENTERPRISE, the operations of services relating to forensic

<center>-128-</center>

psychology in San Diego Superior Courts, including those identified in the DDI-FICE ENTERPRISE, in San Diego as it operated through the SAN DIEGO SUPERIOR COURT, and Defendants DOYNE, DOYNE INC., LOVE, LOVE, INC. and SIMON.

654. On information and belief, COUNTY OF SAN DIEGO DOE 1 CULPABLY and UNREASONABLY failed to perform his or her own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY over his or her subordinates, setting in motion the subordinate's acts as elsewhere alleged, and directly and indirectly depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

<center>

**Claim 6.3**

**Supervisor Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against GORE**

</center>

655. This is a Claim against GORE for failure to supervise employees within his power and duty to control.

656. All prior paragraphs are re-alleged and incorporated as if set forth in full.

657. Defendant GORE maintains supervisory powers and duties over Defendants SDSD DOES 1-15, and all members of the County of San Diego Sheriff's Department (SDSD), including those involved in the FALSE ARRESTS and FALSE IMPRISONMENTS elsewhere described.

658. On information and belief, GORE CULPABLY and UNREASONABLY failed to perform own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY over his or her subordinates, setting in motion the subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

<center>-129-</center>

**Claim 6.4**

**Supervisor Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against BATTSON, SIMI**

659. This is a Claim against BATTSON and SIMI for failure to properly supervise other employees of the Commission as well as judicial officers over whom they have the power and duty to supervise and control.

660. All prior paragraphs are re-alleged and incorporated as if set forth in full.

661. Defendants BATTSON and SIMI maintain supervisory powers and duties over all judicial officers within the State of California, including Defendants TRENTACOSTA, CANTIL-SAKAUYE, SCHALL, ALKSNE, GOLDSMITH, LOWE, MCADAM, MCKENZIE, WOHLFEIL, and GROCH.

662. These powers and duties include no discretion to exercise power inconsistent with the Constitution of the State of California.

663. SIMI maintains SUPERVISORY DUTIES over BATTSON.

664. On information and belief BATTON maintains SUPERVISORY DUTIES over a number of subordinate employees of the Commission.

665. On information and belief BATTSON and SIMI CULPABLY and UNREASONABLY failed to perform own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY over his or her subordinates, setting in motion the subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

**Claim 6.5**

**Supervisor Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against TRENTACOSTA**

666. This is a Claim against TRENTACOSTA for failure to supervise other judicial officers, employees, administrators, social workers, and psychologists over whom he

1 has the power and duty to supervise and control pursuant to 42 U.S.C. § 1983 and Cal.

2 Const. art. I, § 26.

3   667. All prior paragraphs are re-alleged and incorporated as if set forth in full.

4   668. On information and belief at all relevant times TRENTACOSTA oversaw,

5 administered, prepared, and implemented all policies, practices, procedures, and

6 operations of all SAN DIEGO SUPERIOR COURT operations, functions, and

7 facilities, including court security, judicial staff and facilities security, and all policies,

8 practices, procedures and operations of the SAN DIEGO SUPERIOR COURT

9 complained of herein.  In performing each of his duties, TRENTACOSTA "receives

10 policy advice from an Executive Committee of Judges."

11   669. TRENTACOSTA is elected by the citizens of San Diego County, receives all

12 compensation from San Diego County, oversees jurisdiction only in San Diego County,

13 and is elected to the position of Presiding Judge by other County judges. He exercises

14 direct oversight of "day-to-day oversight and administrative management" provided by

15 the SAN DIEGO SUPERIOR COURT Court Executive Officer RODDY.

16   670. TREANTACOSTA at relevant times maintained supervisory powers and duties

17 over all SAN DIEGO SUPERIOR COURT employees performing administrative

18 functions, including all functions of RODDY, and all administrative functions of each

19 judicial officer defendant including ALKSNE, SCHALL, WOHLFEIL,

20 GOLDSMITH, LOWE, MCADAM, MCKENZIE and McKENZIE.

21   671. TRENTACOSTA maintains supervisory powers and duties over DOYNE,

22 DOYNE, INC. LOVE, LOVE, INC. SIMON, when performing services in conjunction

23 with the San Diego Superior Court, Family Law Community, each Family Law

24 Attorney, including all functions relating to providing "forensic psychology,"

25 "guardian ad litem," "parent" or "custody evaluation," and mediation services

26 (FORENSIC PSYCHOLOGY SERVICES).

27   672. Such oversight includes assuring and monitoring each such entity's fitness and

28 eligibility to perform such services in San Diego County in conjunction with any

Family Court litigant, and includes assuring proper training, discipline, professional responsibility, fee disputes, and handling litigant complaints.

673. TRENTACOSTA further maintains supervisory responsibility over each STUART ASSAULT COORDINATOR and GROCH in the conduct and operation of the STUART ASSAULT, MALICIOUS PROSECUTION, and in each SD-DDICE, DDI-FICE, and DDI-IACE ENTERPRISE.  He is further a supervisor, principal conductor and participant in the DDICE ENTERPRISE, and supervisor of all San Diego affiliates and participants thereof.

674. On information and belief, TRENTACOSTA CULPABLY and UNREASONABLY failed to perform own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY over his or her subordinates, setting in motion the subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

<div align="center">

**Claim 6.6**

**Supervisory Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**Against ALKSNE**

</div>

675. This is a Claim against ALKSNE for failure to supervise other judicial officers, employees, administrators, social workers, and psychologists over whom She has the power and duty to supervise and control pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

676. All prior paragraphs are re-alleged and incorporated as if set forth in full.

677. At relevant times ALKSNE oversaw, administered, prepared, and implemented all policies, practices, procedures, and operations of all SAN DIEGO SUPERIOR COURT Family Law Division operations, including oversight and control of the operation of the family law facilitators' offices, procedures, policies, forms, and personnel.

678. She is an elected official by the citizens of San Diego County, receives all compensation from San Diego County, oversees jurisdiction only in San Diego County, and is elected or appointed to the position of Supervising Judge, Family Division by one or more other County judge.

679. Along with TRENTACOSTA, ALKSNE at all times relevant herein exercised "day-to-day oversight and administrative management" of the Family Law Facilitators Offices, operations, services, personnel, and paperwork therein.

680. ALKSNE at relevant times maintained administrative supervisory powers and duties over all Family Division judicial officers, all San Diego Superior Court employees performing administrative functions related to Family Court Services, the Family Court Facilitator Offices, and RODDY'S Family Law-related supervision of the same.  She also maintained supervisory responsibility over each judicial officer within the Family Division, including at relevant times SCHALL, WOHLFEIL, GOLDSMITH, LOWE, MCADAM, MCKENZIE and McKENZIE.

681. Along with TRENTACOSTA and RODDY, ALKSNE maintained supervisory powers and duties over the FORENSIC PSYCHOLOGY SERIVCES of DOYNE, DOYNE, INC. LOVE, LOVE, INC. SIMON, when working in conjunction with a San Diego Superior Court litigant.

682. Such oversight duties and responsibilities include assuring proper training, discipline, professional responsibility, fee disputes, and handling litigant complaints, assuring and monitoring each such entity's fitness and eligibility to perform such services in San Diego County in conjunction with any Family Court litigant, complaints, complaint policies, and responses, including "line-drawing" responsibilities described in Count 5 above.

683. ALKSNE further maintained supervisory responsibility over each STUART ASSAULT COORDINATOR, the PREPARATION AND PLANNING of the SDCBA SEMINAR, and in the conduct and operation of the SD-DDICE, DDI-FICE, DDI-IACE, and STUART-AHCE ENTERPRISES.  She is further a principal conductor and

-133-

1   participant of the DDICE, the SD-DDICE, DDI-FICE, DDI-IACE, and supervisor of

2   all San Diego affiliates and participants thereof.

3   684. On information and belief, ALKSNE CULPABLY and UNREASONABLY

4   failed to perform her own PROFESSIONAL DUTIES and one or more

5   SUPERVISORY DUTY over her subordinates, setting in motion the subordinate's acts

6   as elsewhere alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury

7   in a nature and amount to be proven at trial.

8                          **Claim 6.7**

9                       **Supervisory Liability**

10          **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

11                        **J. GOLDSMITH**

12   685. This is a Claim against J. GOLDSMITH for failure to supervise others over

13   whom he has the power and duty to supervise and control pursuant to 42 U.S.C. § 1983

14   and Cal. Const. art. I, § 26.

15   686. All prior paragraphs are re-alleged and incorporated as if set forth in full.

16   687. J. GOLDSMITH maintains supervisory powers and duties regarding all

17   employees within the City Attorney's Office including GARSON.

18   688. On information and belief, he directly oversaw, supervised, guided, and

19   approved all acts of GARSON in the MALICIOUS PROSECUTION,

20   PROSECUTORIAL MISCONDUCT, GARSON PERJURIES 1-4, and each FALSE

21   IMPRISONMENT as elsewhere alleged.

22   689. On information and belief, J. GOLDSMITH CULPABLY and

23   UNREASONABLY failed to perform his own PROFESSIONAL DUTIES and one or

24   more SUPERVISORY DUTY over his subordinates, setting in motion the

25   subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere

26   alleged, causing injury in a nature and amount to be proven at trial.

27

28

**Claim 6.8**

**Supervisory Liability**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**CANTIL-SAKAUYE**

690. This is a Claim against CANTIL-SAKAUYE for failure to supervise others over whom she has the power and duty to supervise and control pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

691. All prior paragraphs are re-alleged and incorporated as if set forth in full.

692. Defendant CANTIL-SAKAUYE maintains administrative supervisory powers and duties over many Defendants in various capacities.  She is the head executive of Defendants ADMINISTRATIVE OFFICE OF THE COURTS and JUDICIAL COUNCIL, and a "Special Master" in affiliation with the Commission on Judicial Performance, including supervisory capacity for all employees and agents therein.

693. CANTIL-SAKAUYE chairs and oversees all operations and functions of the Judicial Council, and Administrative Office of the Courts, including the preparation, administration, and implementation of all rules, policies, practices, procedures, forms, and operations of each entity.

694. Her authority includes oversight and control of the operation of the family law facilitators offices and operations, services, procedures, personnel, and paperwork therein in each County court, including the SAN DIEGO SUPERIOR COURT.  In such capacity she operates under the same charter, constitution, jurisdiction, authority, and restrictions as the JUDICIAL COUNCIL.

695. She is a direct or indirect supervisor to the San Diego Superior Court Supervising Judge, at relevant times hereto TRENTACOSTA, and Family Division judge ALKSNE, and indirectly supervises all operations under them.

696. CANTIL-SAKAUYE maintains indirect supervisory power and control over each STUART ASSAULT COORDINATOR and in the conduct and operation of the SD-DDICE.  She is a principal conductor of the DDI-FICE and DDI-IACE.  She is the

1   principal conductor of and participant in the DDICE, and supervisor to all affiliates and

2   participants thereof.

3   697. On information and belief, CANTIL-SAKAUYE CULPABLY and

4   UNREASONABLY failed to perform own PROFESSIONAL DUTIES and one or

5   more SUPERVISORY DUTY over his or her subordinates, setting in motion the

6   subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere

7   alleged, causing injury in a nature and amount to be proven at trial.

8   **Claim 6.9**

9   **Supervisory Liability**

10   **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

11   **Against JAHR**

12   698. This is a Claim against JAHR for failure to supervise others over whom he has

13   the power and duty to supervise and control pursuant to 42 U.S.C. § 1983 and Cal.

14   Const. art. I, § 26.

15   699. All prior paragraphs are re-alleged and incorporated as if set forth in full.

16   700. JAHR oversees, administers, prepares, and implements all administrative

17   policies, practices, procedures, and operations of statewide court system infrastructure,

18   data operations, and all County courthouse facilities operations, including the Family

19   Law Facilitators' Offices and paperwork, practices, and procedures therein, statewide.

20   701. He is a lead principal and participant in the DDICE, DDI-IACE, and DDI-FICE,

21   and a lead participant in the SD-DDICE.

22   702. On information and belief, JAHR CULPABLY and UNREASONABLY failed

23   to perform own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY

24   over his or her subordinates, setting in motion the subordinate's acts as elsewhere

25   alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature

26   and amount to be proven at trial.

27

28

## Claim 6.10

## 42 U.S.C. § 1983 and Cal. Const. art. I, § 26

## RODDY

703. This is a Claim against RODDY for failure to supervise others over whom he has the power and duty to supervise and control pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

704. All prior paragraphs are re-alleged and incorporated as if set forth in full.

705. Along with the SAN DIEGO SUPERIOR COURT'S Presiding Judge, RODDY oversees, administers and manages the "day to day" operation of the SAN DIEGO SUPERIOR COURT, including its family law division, SDSD security, the family law facilitators offices, operations, services, personnel, and paperwork therein.  He has no authority to perform any "judicial act" as that term is defined in *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986).

706. RODDY works under TRENTACOSTA and "an Executive Committee of Judges "

707. He is an employee of COUNTY OF SAN DIEGO, receives all compensation from COUNTY OF SAN DIEGO, oversees operations only in San Diego County.

708. RODDY at relevant times maintained supervisory powers and duties over all SAN DIEGO SUPERIOR COURT employees performing administrative functions, including administrative functions of each judicial officer defendant including ALKSNE, SCHALL, WOHLFEIL, GOLDSMITH, LOWE, MCADAM, MCKENZIE and McKENZIE.

709. Along with ALKSNE, and TRENTACOSTA, RODDY maintains supervisory powers and duties over DOYNE, DOYNE, INC. LOVE, LOVE, INC. SIMON, when said Defendants are performing FORENSIC PSYCHOLOGY SERIVCES in conjunction with the San Diego Superior Court, including all functions relating to "forensic psychology," "guardian ad litem," "custody evaluations," and Family Law

-137-

mediation services to, for, on behalf of, and with the SAN DIEGO SUPERIOR COURT.

710. Such oversight includes assuring and monitoring each such entity's fitness and eligibility to perform such services with the SAN DIEGO SUPERIOR COURT in conjunction with any Family Court litigant, and includes assuring proper training, discipline, and professional responsibility, and includes handling litigant complaints.

711. RODDY maintains supervisory responsibility and is a lead conductor and participant in the SD-DDICE, DDI-FICE, and DDI-IACE. He is further a supervisor, principal conductor and participant in the DDICE, and supervisor of all San Diego affiliates and participants thereof.

712. On information and belief, RODDY CULPABLY and UNREASONABLY failed to perform own PROFESSIONAL DUTIES and one or more SUPERVISORY DUTY over his or her subordinates, setting in motion the subordinate's acts as elsewhere alleged, depriving Plaintiffs of rights as elsewhere alleged, causing injury in a nature and amount to be proven at trial.

## COUNT 7
### 42 U.S.C. 1983 and Cal. Const. art. I, § 26
### Municipal Liability

713. This is a Count containing Claims Defendants SAN DIEGO SUPERIOR COURT, JUDICIAL COUNCIL, ADMINISTRATIVE OFFICE OF THE COURTS, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT/COUNTY OF SAN DIEGO, CITY OF SAN DIEGOfor deprivation of rights under color of law against "beneath State-level" entities under 42 U.S.C. §1983 and Cal. Const. art. I, § 26.

714. Defendants to this Count are "governments beneath the state level" within the definition of that term in *Board of Comm'rs v. Brown,* 520 U.S. 397 (1997).

715. Each municipal entity herein was at all times bound under the following PROFESSIONAL DUTIES: CONSTITUTIONAL, SUPERVISORY, MUNICIPAL,

-138-

SOCIAL WORKER, FIDUCIARY, and at times elsewhere alleged, CONTRACTUAL and THERAPEUTIC/QUASI-THERAPEUTIC.

716. Each Defendant created, maintained, and enforced maintained policies, customs, rules, procedures, traditions, practices, including "line-drawing" activities as elsewhere detailed ("policies") and permitted and directed behaviors by policymakers themselves, causing or permitting deliberate indifference and a culture  of deliberate indifference to foreseeable constitutional injury of the type caused to Plaintiffs in the DDIJO and DOYNE, INC. COMPLAINTS, STUART ASSAULT, MALICIOUS PROSECUTION, and PROSECUTORIAL MISCONDUCT, and    NESTHUS OBSTRUCTION OF JUSTICE.

717. Said policies further permitted or were deliberately indifferent to the conduct, participation in, operation, monitoring, discipline, and control of each ENTERPRISE and ENTERPRISE PERSON.

718. Each Defendant further failed to  properly train  its employees  prior to its employees acts elsewhere alleged to have caused constitutional deprivation, damage, and injury, foreseeably resulting in the injury alleged.

<div align="center">

**Claim 7.1**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**SAN DIEGO SUPERIOR COURT**

</div>

719. This is a Claim against SAN DIEGO SUPERIOR COURT pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

720. All prior paragraphs are re-alleged and incorporated as if set forth in full.

721. In conjunction with the County of San Diego, the San Diego Superior Court operates facilities and judicial services at nine San Diego County courthouses; creates and implements judicial policies, customs, and practices administered by judicial officers, administrators, and staff; and provides professional legal services and advice to the citizens of San Diego County, including services related to the practice of 'family law"—divorce and paternity, custody and visitation, child support, domestic violence,

<div align="center">-139-</div>

1  restraining orders, self-help services, frequently asked questions, form selection and

2  advice, and public information regarding court fees, rules, locations, calendars, and

3  proceedings.

4    722. SAN DIEGO SUPERIOR COURT is part of a network of County courts

5  governed by a 27-member Judicial Council led by Ms. Tani Cantil-Sakauye, Chief

6  Justice, California Supreme Court.

7    723. SAN DIEGO SUPERIOR COURT operates the infrastructure and bureaucracy

8  utilized by the DDI-FICE and DDI-IACE as elsewhere described, including design of

9  all forms, assuring qualifications and training, discipline, eligibility, certification

10  qualifications of all affiliates thereof, including Defendants DOYNE, DOYNE, INC.,

11  LOVE, LOVE, INC., and SIMON.

12    724. SAN DIEGO SUPERIOR COURT and its agents and employees in the Family

13  Law Facilitator Offices have been directly involved in the, selection, preparation,

14  advice, filing, submission, and implementation of each of the illegal DVILS ORDERS

15  under which STUART has been illegally oppressed, as elsewhere alleged.

16    725. SAN DIEGO SUPERIOR COURT is a lead facilitator and participant in the SD-

17  DICE, a lead participant in the DDICE, the lead conductor and participant of the San

18  Diego operations of the DDI-FICE, and DDI-IACE, and participant or affiliate with

19  those ENTERPRISES' statewide operations.  It is affiliated with the STUART-AHCE.

20    726. As an actual and foreseeable result of this Defendant's policies, culture of

21  deliberate indifference, and failures to train, it and its employees have caused

22  constitutional deprivation, injury and damage to Plaintiffs as elsewhere alleged in a

23  nature and amount to be proven at trial.

24  <div align="center">**Claim 7.2**</div>

25  <div align="center">**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**</div>

26  <div align="center">**JUDICIAL COUNCIL**</div>

27    727. This is a Claim against JUDICIAL COUNCIL pursuant to 42 U.S.C. § 1983 and

28  Cal. Const. art. I, § 26.

<div align="center">-140-</div>

728. All prior paragraphs are re-alleged and incorporated as if set forth in full.

729. The Judicial Council is the policy-making body of the California Courts and is responsible for ensuring the consistent, independent, impartial and accessible administration of justice. The Administrative Office of the Courts (AOC) is the support staff of the Judicial Council.

730. The Judicial Council is chartered to "survey judicial business and make recommendations to the courts, make recommendations annually to the Governor and Legislature, adopt rules for court administration, practice and procedure, and perform other functions prescribed by statute." Cal. Const. art. VI, Sec. 6(d). It is not a subcommittee of the California State Legislature and has no authority to make or enact state law. Its rulemaking jurisdiction is limited to administrative "judicial business" and "court administration, practice, and procedure." It has no jurisdiction to make rules inconsistent with state or federal law, as any "rules adopted shall not be inconsistent with statute." *Id.*; Cal. Const. art. I, § 26. Neither the JUDICIAL COUNCIL nor its employees have authority to perform any "judicial act" as that term is defined in *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986).

731. The JUDICIAL COUNCIL operates "under the leadership of the Chief Justice and in accordance with the California Constitution." Its operations arm, the Administrative Office of the Courts (ADMINISTRATIVE OFFICE OF THE COURTS) implements the Council's rules.

732. The JUDICIAL COUNCIL designs and prepares all "Judicial Council Forms" including the forms identified in the Schemes and Artifices to Defraud sections below as the DVILS ORDER forms CR-160, FL 325, 326, and "DV" forms 101 and 110. The JUDICIAL COUNCIL determines which forms will be "mandatory" or otherwise.

733. JUDICIAL COUNCIL agents in the SAN DIEGO SUPERIOR COURT and its affiliated Family Law Facilitator Offices and its employees have been involved in the, design, content, selection, preparation, advice, filing, submission, and implementation

-141-

1   of each of the DVILS ORDERS under which STUART has been illegally oppressed,
2   as elsewhere alleged.

3   734. The JUDICIAL COUNCIL and its members are lead conductors and participants
4   in the DDICE and SD-DDICE, the lead participants in the DDI-IACE, and a participant
5   in the DDI-FICE.

6   735. As an actual and foreseeable result of this Defendant's policies, culture of
7   deliberate indifference, and failures to train, it and its employees have caused
8   constitutional deprivation, injury and damage to Plaintiffs as elsewhere alleged in a
9   nature and amount to be proven at trial.

10                                  **Claim 7.3**

11              **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

12           **ADMINISTRATIVE OFFICE OF THE COURTS**

13   736. This is a Claim against SAN DIEGO SUPERIOR COURT for pursuant to 42
14   U.S.C. § 1983 and Cal. Const. art. I, § 26.

15   737. All prior paragraphs are re-alleged and incorporated as if set forth in full.

16   738. ADMINISTRATIVE OFFICE OF THE COURTS is the "staff agency" of the
17   JUDICIAL COUNCIL, from which it derives authority.  Its officers, including its
18   Administrative Director JAHR, are elected by the JUDICIAL COUNCIL.    The
19   Administrative Director of the Courts is accountable to the council and the Chief
20   Justice for the performance of the Administrative Office of the Courts. The
21   Administrative Director's authority is limited to accomplishing the council's goals and
22   priorities.   A chart depicting the relationship between the ADMINISTRATIVE
23   OFFICE OF THE COURTS, JUDICIAL COUNCIL, and other related defendants
24   herein is attached at Exhibit 36.  The JUDICIAL COUNCIL or its employees have no
25   authority to perform any "judicial act" as that term is defined in *Ashelman v. Pope,* 793
26   F.2d 1072, 1075 (9th Cir. 1986).

27   739. The ADMINISTRATIVE OFFICE OF THE COURTS operates the "Judicial
28   Branch of California", which Claims to be "Committed to providing fair and equal

                                    -142-

1  access to justice for all Californians." The Judicial Branch of California operates and

2  oversees the family law facilitator offices throughout the state of California, providing

3  services and advice for family law subject matter, including obtaining DVILS

4  ORDERS and use of all forms related thereto.

5  740. ADMINISTRATIVE OFFICE OF THE COURTS agents in the SAN DIEGO

6  SUPERIOR COURT and its affiliated Family Law Facilitator Offices and its

7  employees have been involved in the design, selection, preparation, advice, filing,

8  submission, and implementation of each of the DVILS ORDERS under which

9  STUART has been illegally oppressed, as elsewhere alleged.

10  741. ADMINISTRATIVE OFFICE OF THE COURTS and its members are lead

11  participants in the DDICE, SD-DDICE, and lead conductors and participants in the

12  DDI-IACE and DDI-FICE.

13  742. As an actual and foreseeable result of this Defendant's policies, culture of

14  deliberate indifference, and failures to train, it and its employees have caused

15  constitutional deprivation, injury and damage to Plaintiffs as elsewhere alleged in a

16  nature and amount to be proven at trial.

### Claim 7.4

### 42 U.S.C. § 1983 and Cal. Const. art. I, § 26

### COUNTY OF SAN DIEGO

20  743. This is a Claim against COUNTY OF SAN DIEGO pursuant to 42 U.S.C. § 1983

21  and Cal. Const. art. I, § 26.

22  744. All prior paragraphs are re-alleged and incorporated as if set forth in full.

23  745. The COUNTY OF SAN DIEGO operates the facilities and certain services at

24  nine San Diego County courthouses; creates and implements policies, customs, and

25  practices administered by County judicial officers, administrators, and staff; provides

26  professional legal services and advice to the citizens of San Diego County, including

27  services related to the practice of 'family law"—divorce and paternity, custody and

28  visitation, child support, domestic violence, restraining orders, self-help services,

<div align="center">-143-</div>

frequently asked questions, form selection and advice, and public information regarding court fees, rules, locations, calendars, and proceedings.

746. The COUNTY OF SAN DIEGO operates and oversees the San Diego County Sheriff's Department (SDSD) as a division of the COUNTY OF SAN DIEGO. "The San Diego County Sheriff's Department is the chief law enforcement agency in San Diego County. The department is comprised of approximately 4,000 employees, both sworn officers and professional support staff. The department provides general law enforcement, detention and court services for the people of San Diego County in a service area of approximately 4,200 square miles." The SDSD provides "court security and related services for the San Diego Superior Court at several locations throughout the County."

747. The COUNTY and/or SDSD employ and oversee Defendants GORE, SDSD DOES 1-15, including all policies and customs under which they operate. SDSD/COUNTY agents have been directly involved in the STUART ASSAULT, MALICIOUS PROSECUTION, and each FALSE IMPRISONMENT as elsewhere alleged.

748. The COUNTY OF SAN DIEGO through its agents and employees is a lead conductor and participant in the SD-DDICE, a participant in the DDICE, and a lead conductor of the DDI-IACE and conductor of the DDI-FICE.

749. As an actual and foreseeable result of this Defendant's policies, culture of deliberate indifference, and failures to train, it and its employees have caused constitutional deprivation, injury and damage to Plaintiffs as elsewhere alleged in a nature and amount to be proven at trial.

**Claim 7.5**

**42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

**CITY OF SAN DIEGO**

750. This is a Claim against CITY OF SAN DIEGO pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26.

751. All prior paragraphs are re-alleged and incorporated as if set forth in full.

752. The City of San Diego is a "beneath State level" entity chartered and operating within San Diego County and this District.  The CITY OF SAN DIEGO operates and oversees the Office of the City Attorney under which Defendants J. GOLDSMITH and GARSON are agents and employees, including all policies, training, procedures, habits, and customs therein.

753. As an actual and foreseeable result of this Defendant's policies, culture of deliberate indifference, and failures to train its CITY ATTORNEYS OFFICE employees, it and its employees have caused the MALICIOUS PROSECUTION, and PROSECUTORIAL MISCONDUCT, constituting a constitutional deprivation, injury and damage to Plaintiffs as elsewhere alleged in a nature and amount to be proven at trial.

**COUNT 8**

**Respondeat Superior Liability**

754. This is a Claim alleging respondeat superior liability against SDCBA and CHUBB for the actions of their agents and employees pursuant to common law principles of respondeat superior.

**Claim 8.1**

**Against SDCBA**

755. All prior paragraphs are re-alleged and incorporated as if set forth in full.

756. SDCBA is an association to support, facilitate, and coordinate the San Diego County legal industry.  "The SDCBA is the region's oldest and largest law-related organization. The voice for San Diego's diverse legal community, the SDCBA aims to

-145-

support and inform the County's lawyers, but also the public and the community. Programs help clients find qualified lawyers, resolve disputes and educate San Diegans on their legal rights and responsibilities. The SDCBA, which encompasses 50 unique sections, committees and divisions, strives to provide members with knowledge and tools to expand and enrich their practices.  From over 300 hours of quality continuing legal education each year, award winning publications, mentor programs and networking opportunities, to discounted pricing on insurance, office supplies and more, the SDCBA is dedicated to serving San Diego's lawyers."

757. At all times relevant hereto, Defendant SDCBA was the superior, employer, and principal of each STUART ASSAULT COORDINATOR, SDCBA DOES 1 and 2, and each ENTERPRISE PERSON of the SD-DDICE, DDI-FICE, and a conductor and participant in each ENTERPRISE.

758. Each act attributable to each STUART ASSAULT COORDINATOR, and each ENTERPRISE PERSON of the SD-DDICE, DDI-FICE, and a conductor and participant in each ENTERPRISE Defendant is attributable to SDCBA.

759. As an actual and foreseeable result of the acts of each subordinate, agent, and employee Defendant, Plaintiffs have been damaged and injured in a nature and amount to be proven at trial.

### Claim 8.2
### Against CHUBB

760. All prior paragraphs are re-alleged and incorporated as if set forth in full.

761. At all times relevant hereto, Defendant CHUBB was the superior, employer, and principal of CHUBB DOE 1, an agent of each STUART ASSAULT COORDINATOR and CITY ATTORNEY Defendant in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT, and a participant in the SD-DDICE and DDI-FICE ENTERPRISES.

762. Each act alleged against CHUBB DOE 1, each STUART ASSAULT COORDINATOR, and each CITY ATTORNEY Defendant in the MALICIOUS

-146-

PROSECUTION and PROSECUTORIAL MISCONDUCT, and each ENTERPRISE PERSON of the SD-DDICE, and each ENTERPRISE is attributable to CHUBB.

763. As an actual and foreseeable result of the acts of each subordinate, agent, and employee Defendant, Plaintiffs have been damaged and injured in a nature and amount to be proven at trial.

## COUNT 9

### Conspiracy to Interfere With Rights

### 42 U.S.C. § 1985 and Cal. Const. art. I, § 26

### Against All Defendants

764. This is a Count for conspiracy to interfere with rights under 42 U.S.C. § 1985 and Cal. Const. art. I, § 26 against STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the non-immune acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI Defendants on acts alleged in Count 5, their supervisors in Count 6, and municipalities in Count 7 (collectively COLOR OF LAW DEFENDANTS).

### Claim 9.1

### 42 U.S.C. 1985(1) and Cal. Const. art. I, § 26

### Against All COLOR OF LAW DEFENDANTS

765. This is a Claim by STUART against all COLOR OF LAW DEFENDANTS as alleged in each Claim of Counts 1, 3-7, for Preventing Officer from Performing Duties under 42 U.S.C. § 1985(1) against STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on

-147-

the OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in Count 5, and acts of supervisors and municipalities in Counts 6 and 7.

766. All prior paragraphs are re-alleged and incorporated as if set forth in full.

### STUART's Position Under the United States

767.  STUART has been admitted to practice before the United States District Courts for the Southern Northern, and Central Districts of the State of California, the District of Nevada, the District of Arizona, and the Eastern District of Texas.  He has appeared on briefs before the Ninth Circuit Court of Appeals, the Court of Appeals for the Federal Circuit, and in predecessor litigation to the United States Supreme Court.

768. STUART has represented parties in cases involving federal subject matter in federal district courts and courts of appeal, including civil rights, patent, copyright, trademark laws, antitrust, interstate commerce, racketeering, insurance, and supplemental state law Claims.  These engagements include litigation matters now or previously pending within this District as well as the Central and Northern Districts of California, the District of Arizona, District of Nevada, the Eastern District of Texas, Northern District of Virginia, District of Delaware, and Southern District of New York. As such, STUART at all relevant time was an officer of the courts, sworn to numerous oaths to "protect, uphold, and defend the Constitution and the laws of the United States."  He has been similarly so bound having been admitted to the bar of three states.

769. STUART'S practice has been focused on federal engagements, including an Internship with the United States Attorney's Office under Assistant United States Attorney Ronald Dixon (Hon. Ronald M. Dixon, Supreme Court of the District of Columbia) prosecuting felony crimes within the District of Columbia.  STUART'S private practice has been focused on federal Commerce and Trade and Intellectual Property matters under Titles 15, 17, 28, 35 United States Code and related state law. He has tried, arbitrated, or mediated dozens of cases in district and state courts in several districts, and represented clients before foreign and international bodies relating

-148-

to international intellectual property, commerce, and law.  STUART'S practice shall hereinafter be referred to as STUART'S POSITION UNDER THE U.S.

770. He is a co-founder, President, and Chief Executive Officer of Plaintiff CALIFORNIA COALITION.

771. Details of STUART'S employment history with the United States Attorney for the District of Columbia, legal engagements in federal-law matters and litigation appear on his resume at Exhibit 24.

772. In committing the acts alleged in Counts 1-5 above, COLOR OF LAW DEFENDANTS and each of them conspired as detailed in each Count:

A. To prevent, by force, intimidation, or threat, STUART (1) from accepting or holding a POSITION UNDER THE UNITED STATES; (2) from discharging his PROFESSIONAL DUTIES as a lawyer and Officer of the Courts under the United States; and

B. to induce by like means STUART to leave this District, the State of California, the City of San Diego, the County of San Diego, the SDCBA SEMINAR where STUART's PROFESSIONAL DUTIES as a lawyer and Officer of the Courts under the United States were and are required to be performed; and

C. to injure STUART in his person or property on account of his lawful discharge  of his PROFESSIONAL DUTIES as a lawyer and Officer of the Courts under the United States, while engaged in the lawful discharge thereof; and

D. to injure STUART's property so as to molest, interrupt, hinder, or impede

-149-

him in the discharge of his PROFESSIONAL DUTIES as a lawyer and an Officer of the Courts under the United States.

773. As an actual and foreseeable result, STUART has been deprived of rights, privilege, and immunities as alleged in Counts 1, 3-7, damaged or injured in a nature and amount to be proven at trial.

### Claim 9.2

### Conspiracy to Interfere with Civil Rights

### 42 U.S.C. 1985(2) and Cal. Const. art. I, § 26

### Against COLOR OF LAW DEFENDANTS

774. This is a Claim by STUART for obstructing justice; intimidating party, witness, or juror under 42 U.S.C. 1985(2) against STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in Count 5, and acts of supervisors and municipalities in Counts 6 and 7.

775. All prior paragraphs are re-alleged and incorporated as if set forth in full.

776. Defendants and each of them conspired as detailed in each Count 1, 3-7 above:

777. Plaintiffs are members of and/or advocates for each of the following three classes subject to historic de facto and de jure invidious discrimination in violation of the 5th and 14th Amendment rights to Equal Protection of the Laws (collectively "EQUAL PROTECTION CLASSES"):

### A. Parent-Child Class

778. Parents and Children have been identified as a special class entitled to unique fundamental parental constitutional rights, including special status under the rights to equal protection of the laws.  See *Troxel v. Granville*, 530 U.S. 57 (2000).

-150-

## B. Domestic Relations Class

779. Similarly, state and federal authorities in California have identified a special "domestic relations" class as entitled to heightened protection under the Equal Protection Clause.   The state of California has identified the "Domestic Relations Class" as:

. . . an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or ENGAGEMENT relationship. For purposes of this subdivision, "cohabitant" means two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship. Factors that may determine whether persons are cohabiting include, but are not limited to, (1) sexual relations between the parties while sharing the same living quarters, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) whether the parties hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship.

Cal. Fam. C. § 6211, Pen. C. § 13700.

780. Like marital status, the DOMESTIC RELATION Class is defined by a "relational" characteristic: persons in a current or former identified relationship, but only to interaction between others in the same Class. For example, a husband and wife are within the DOMESTIC RELATIONS Class with respect to one another, but not the rest of the world.

781. The DOMETIC RELATIONS CLASS is also entitled to special protection because of a lengthy history of invidious discrimination against its members.   This history and a complete explanation of the DOMESTIC RELATIONS CLASS status, jeopardy, invidious discrimination,, and rationale for special status under 42 U.S.C. § 1985(2) and (3) are discussed in detail in the July 24, 2013 letter from CALIFORNIA

-151-

1 COALITION to the City of San Diego, and the San Diego Family Justice Center and

2 the *Tadros v. Lesh* Petition for Certiorari, Exhibits 1 and 2 incorporated herein by

3 reference.

4    782. Discrimination against the DOMESTIC RELATIONS CLASS is invidious

5 social, economic, and legal discrimination similar to racial, ethnic, gender, or

6 legitimacy.   In addition to the inevitable and debilitating economic, social, and

7 psychological impact of divorce, children and parents within the DOMESTIC

8 RELATIONS CLASS are the historical targets of ridicule, prejudice, and scorn

9 amounting to invidious discrimination. Domestic Relations Class members are

10 stamped with stereotypes as "broken family," "latch-key kids", "damaged goods,"

11 "gold diggers", "divorcees", "sugar daddies", "first wives", "wife beater",

12 "histrionics", "single moms", "broken homers," etc.

### C. Gender Class

14    783. Plaintiff STUART is a male within the recognized equal protection class of

15 gender.  The invidious discrimination against males by Defendants has been described

16 in detail in a publication by Dr. Stephen Baskerville entitled *Taken Into Custody, The*

17 *War Against Fathers, Marriage, and the Family*, Cleveland House Publishing, Inc.,

18 2007 and in Exhibit 1 hereto.  The publication is available at ISBN-10: 1581825943,

19 ISBN-13: 978-1581825947, referenced and incorporated herein as if set forth in full as

20 Exhibit 13.

### D. Class of One

22    784. STUART, CALIFORNIA COALITION, LEXEVIA each comprise a class of

23 one for purposes of Plaintiffs' PUBLIC BENEFIT ACTIVITIES on behalf of

24 themselves and other equal protection classes.

25    785. No Defendant acting under color of law may legally act with discretion in the

26 absence of jurisdiction established by the Constitution of the State of California, United

27 States Constitution, statutes, laws, contract, or regulation.

28

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

786. Plaintiffs' membership in and advocacy for the EQUAL PROTECTION CLASSES was known to and targeted by Defendants prior to the SDCBA SEMINAR.

787. Defendants CULPABLY undertook each of the acts ascribed to them with the intent to cause the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE to deprive Plaintiffs, and each of them, of equal protections, privileges, and immunities, including rights related to their PUBLIC BENEFIT ACTIVITIES, DUE ADMINISTRATION OF JUSTICE, and rights as advocates for and on behalf of the EQUAL PROTECTION CLASSES.

788. In performing the acts alleged above, COLOR OF LAW DEFENDANTS conspired:

a.  to deter Plaintiffs, by the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE, from attending or testifying freely, fully, and truthfully as a party or witness in Plaintiffs' PUBLIC BENEFIT ACTIVITIES, or from testifying to any matter, freely, fully, and truthfully;

b.  to injure Plaintiffs, by the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE, in their person or property on acCount of having participated in PUBLIC BENEFIT ACTIVITIES or testified in conjunction with the PUBLIC BENEFIT ACTIVITIES and the DUE ADMINISTRATION OF JUSTICE;

c.  to influence, by the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE, the verdict, presentment, or indictment of any grand or petit juror in connection with Plaintiff's PUBLIC BENEFIT ACTIVITIES and the DUE

ADMINISTRATION OF JUSTICE;

d. committed the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE for the purpose of impeding, hindering, obstructing, or defeating, the DUE ADMINISTRATION OF JUSTICE and Plaintiffs' PUBLIC BENEFIT ACTIVITIES with intent to deny to Plaintiffs as members and advocates for the EQUAL PROTECITON CLASSES the equal protection of the laws and to;

e. by the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE, to injure Plaintiffs and each of them in their property for lawfully enforcing, or attempting to enforce, the rights of Plaintiffs, and each of them, as members of each EQUAL PROTECTION CLASS, to the equal protection of the laws.

Hereinafter collectedly referred to as the EQUAL PROTECTION CONSPIRACY.

789. As an actual and foreseeable result, Plaintiffs have been deprived of rights, privileges and immunities as set forth in Counts 1, 3-7.

<div align="center">

**Claim 9.3**

**Conspiracy to Interfere with Civil Rights**

**42 U.S.C. 1985(3)(a) and Cal. Const. art. I, § 26**

**Against all COLOR OF LAW DEFENDANTS**

</div>

790. This is a Count for Depriving persons of rights or privileges under 42 U.S.C. 1985(3)(a) against STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the

OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in Count 5, and supervisor and municipal entities in Counts 6 and 7.

791. All prior paragraphs are re-alleged and incorporated as if set forth in full.

792. In committing the acts alleged against them in each of Counts 1, 3-7, COLOR OF LAW DEFENDANTS CULPABLY acted in conspiracy for the purpose of depriving Plaintiffs individually as members of and advocates for the EQUAL PROTECTON CLASSES, of the equal protection of the laws and equal privileges and immunities under the laws, including but not limited to their PUBLIC BENEFIT ACTIVITIES, the DUE ADMINISTRATION OF JUSTICE, and retaliating for exercise thereof, causing Plaintiffs reasonably foreseeable and injury therefrom.

793. As an actual and foreseeable result, Plaintiffs have been deprived of rights, privileges and immunities, damaged and injured in an amount according to proof at trial.

## Claim 9.4

## Conspiracy to Interfere with Civil Rights

## 42 U.S.C. 1985(3)(b) and Cal. Const. art. I, § 26

794. This is a Claim for conspiracy to deprive persons of civil rights under 42 U.S.C. 1985(3)(b) against the STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in Count 5, and supervisor and municipal entities in Counts 6 and 7.

795. All prior paragraphs are re-alleged and incorporated as if set forth in full.

796. In committing the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE as set forth in detail in Counts 1-5, Defendants and each of them as indicated CULPABLY CONSPIRED to cause the STUART ASSAULT, MALICIOUS PROSECUTION,

-155-

1   PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE for the
2   purpose of preventing or hindering the FEDERAL LAW ENFORCEMENT
3   OFFICERS and color of law actors identified herein from giving or securing to all
4   persons within the state of California, including the EQUAL PROTECTION
5   CLASSES and Plaintiffs individually as members of and advocates for the EQUAL
6   PROTECTON CLASSES.

7   797. As an actual and foreseeable result, Plaintiffs have deprived of rights, privileges
8   and immunities as set forth in Counts 1, 3-7.

9                                    **Claim 9.5**
10                      **Conspiracy to Interfere with Civil Rights**
11                 **42 U.S.C. 1985(3)(c) and Cal. Const. art. I, § 26**

12   798. This is a Claim for Conspiracy to Interfere with Civil Rights under 42 U.S.C.
13   1985(3)(c) against STUART ASSAULT COORDINATOR Defendants based on the
14   STUART ASSAULT in Counts 1 and 2, CITY ATTORNEY DEFENDANTS and
15   GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and
16   PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the
17   OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in
18   Count 5, and supervisor and municipal defendants in Counts 6 and 7.

19   799. In committing the STUART ASSAULT, MALICIOSU PROSECUTION,
20   PROSECUTORIAL MISCONDUCT, and OBSTRUCTION OF JUSTICE, COLOR
21   OF LAW DEFENDANTS, and each of them, CULPABLY and UNREASONABLY
22   CONSPIRED to prevent by force, intimidation, or threat, Plaintiffs' PUBLIC
23   BENEFIT ACTIVITIES as a member or on behalf of each EQUAL PROTECTION
24   CLASS, in a legal manner, and to injure Plaintiffs in person and property on account
25   thereof.

26   800. Plaintiffs' PUBLIC BENEFIT ACTIVITIES included support and advocacy
27   toward and in favor of federal processes and institutions, including the election of

28

lawfully qualified persons as electors for President or Vice President, or as a Member of Congress of the United States.

801. As an actual and foreseeable result, Plaintiffs have deprived of rights, privileges and immunities as set forth in Counts 1, 3-7.

<div align="center">

**COUNT 10**

**Failure to Prevent or Aid in Preventing Deprivation of**

**Constitutional Rights**

**42 U.S.C. § 1986 and Cal. Const. art. I, § 26**

**Against COLOR OF LAW DEFENDANTS**

</div>

802. This is a Count for Failure to Prevent or Aid in Preventing Deprivation of Constitutional Rights under 42 U.S.C. § 1986 against STUART ASSAULT COORDINATOR Defendants based on the STUART ASSAULT in Count 1, CITY ATTORNEY DEFENDANTS and GROCH based on the **non-immune** acts in the MALICIOUS PROSECUTION and PROSECUTORIAL MISCONDUCT in Count 3, NESTHUS Defendants based on the OBSTRUCTION OF JUSTICE in Count 4, BATTSON and SIMI on acts alleged in Count 5, and supervisor and municipal Defendants as alleged in Counts 6 and 7.

803. On information and belief, Defendants to this Count had knowledge of all relevant facts alleged in this Complaint, including that the acts conspired to be done and committed as alleged in Counts 1, 3-7 were about to be committed.

804. Defendants to this Count, and each of them, by virtue of their relationships with each other defendant, their authority under law, and PROFESSIONAL DUTIES, had power to prevent or aid in preventing the commission of the same.

805. Defendants to this Count, and each of them, neglected or refused to exercise their powers to prevent or aid in preventing the commission of the same.

806. The acts as alleged herein were in fact committed as alleged.

807. As an actual and foreseeable result, Plaintiffs have been deprived, damaged, or injured in a nature and amount to be proven at trial.

<div align="center">-157-</div>

1
2
3

# COUNT 11

## DOYNE TERRORISM

## 42 U.S.C. § 1983 and Cal. Const. art. I, § 26

## Against DOYNE, DOYNE, INC., BLANCHET, ABC&K,

## WOHLFEIL, SCHALL

808. This is a Count alleging breach of contract, fraud, extortion, bribery and abuse of process centered on the actions of Defendants DOYNE (DOYNE TERRORISM) acting under color of law, and related deprivations of rights under 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 against DOYNE, DOYNE, INC., BLANCHET, ABC&K, WOHLFEIL, and SCHALL (DOYNE TERRORISM Defendants).

### Common Allegations

809. On or about April 10, 2008, Defendant WOHFEIL recommended and offered to oversee Defendant DOYNE to "mediate" custody issues in the Stuart Dissolution.

810. Concurrent with WOHLFEIL'S recommendation, BLANCHET also made representations and warranties regarding DOYNE and DOYNE INC. as set forth in Exhibit 14 and incorporated herein by reference.

811. Collectively, WOLFEIL and BLANCHET'S recommendations and referral communicated to STUART that DOYNE and DOYNE INC. DOYNE INC. was a trustworthy, competent mediator.

812. Based upon WOHLFEIL'S recommendation and agreement to oversee, and BLANCHET'S representations and warranties, STUART contacted DOYNE INC.

813. Between about April, 2008 and September 12, 2008, STUART and DOYNE, INC. conducted oral negotiations, entered agreements, and executed a written contract (STUART- DOYNE CONTRACTS).

814. During these negotiations and agreements, DOYNE and DOYNE, INC. made representations, promises, and warranties to STUART as follows:

A. That DOYNE was only authorized and would only act to "mediate", and could not perform a custody evaluation, therapy, "forensic investigation" "analysis" or "evaluation" or act as a witness in court;

B. That DOYNE would not permit ex parte contact, and would take no action or recommendation except as authorized by the court or the parties;

C. That DOYNE would base his reasoning and actions on actual evidence and law;

D. That all parties would be afforded notice and opportunity to be heard before DOYNE took any action or made any recommendations regarding the matter;

E. That DOYNE INC. was an alternative to court and governmental intervention, safer, more private, and less expensive than court, but with the same procedural safeguards;

F. That DOYNE would "quickly" work toward 50/50 custody, that it would only take "a few sessions", and that his fees and expenses would not exceed the initial $5,000 retainer;

G. That the DOYNE INC. mediation process would be completed in "a month or two";

H. That DOYNE's contact with the court would be in the form of a written report which both parties would have an opportunity to review, comment on, contest, supplement, and collaborate over before submission to the court;

I. That DOYNE'S had no authority to take actions or make judgments, but only to work toward cooperative solutions;

J. That DOYNE would not recommend any solution that would harm, burden, or obstruct any party, and that he was "honest, fair, and completely competent" to perform mediation services.

815. These representations were false when made.

816. As described more fully in Exhibits 22 and 23, DOYNE INC breached the contracts and representations by committing extortion, abuse of process, and by failing

-159-

to abide by each of the above referenced promises, his PROFESSIONAL DUTIES, including duties of disclosure, loyalty, honesty, and good faith, as well as breaching one or more provision of the written contract.

817. Specifically:

A. DOYNE extended the mediation for months, insisting on weekly sessions to address issues he had not been authorized to "mediate";

B. DOYNE was not only unable to resolve even minor issues successfully, he welcomed and encouraged both parties to bring up new issues unrelated to child custody, effectively attempting to insert himself as an arbiter for all disputes—real or imagined—between the parties; and by otherwise extended the mediation to increase his fees;

C. DOYNE refused to investigate STUART's Claims and evidence that MS. STUART was abusing their son, Croix Stuart, in violation of his professional duties to report child abuse;

D. DOYNE exceeded his authority in filing false and misleading reports with San Diego County child protective services alleging that Plaintiff had "held his son upside down over a balcony" when DOYNE in fact knew and later admitted, that claim was untrue;

E. That San Diego County Child Protective Services had performed an investigation of DOYNE's allegations against Plaintiff and found DOYNE's allegation to be false;

F. Because of DOYNE's false and misleading letters and report to San Diego Child Protective Services, DOYNE caused the removal of Plaintiff's son Croix Stuart from Plaintiff's shared custody and awarded sole custody to Petitioner Ms. Stuart;

G. That DOYNE repeatedly ignored or failed to follow up on Plaintiff's concerns that Croix Stuart was being abused, manipulated, and alienated by Petitioner Ms. Stuart;

-160-

H. That DOYNE was forcing Plaintiff to pay for services of DOYNE which Plaintiff objected to, did not request, and were wasteful and unnecessary; and

I. That DOYNE effectively held Stuart's son hostage, dangling his custody decisions between the couple, increasing adversarial hostilities, strife, and conflict, in order increase his fees in the case;

J. That DOYNE was in fact unauthorized to perform any work on the matter as he was ineligible, unqualified, and had failed to establish his eligibility by appropriate procedure; and

K. Further breaches of each representation elsewhere identified.

### DOYNE, DOYNE, INC. Terrorism

818. In response to these breaches, in February or March 1, 2009, STUART terminated DOYNE'S services.

819. In addition to complaining to and firing DOYNE, Plaintiff also filed formal complaints with DOYNE's landlord, Scripps Memorial Hospital, the State of California Board of Psychology, the FEDERAL LAW ENFORCEMENT OFFICERS in the DUE ADMINISTRATION OF JUSTICRE and FFRRESA.  On information and belief DOYNE knew of these complaints.

820. A true and correct copy letters to and concerning DOYNE relating to these allegations are referenced as Exhibits 22-23.

821. In response to STUART'S objections and reports detailed above, DOYNE INC. retaliated against STUART by committing the following acts against STUART:

A.     Committing perjury in a hearing relating to the STUART'S son, Croix Stuart;

B.     Continuing to file false reports and encourage the (false) investigation of his initial report against STUART;

C.     Continuing to demand STUART pay DOYNE and DONE INC. for services not rendered or fraudulently rendered;

-161-

1    D.    Attempting to intimidate, distress, harm, defraud, extort, and rob Stuart;

2    E.    Requesting a bribe; and

3    F.    Participating in the STUART ASSAULT.

**DOYNE'S Attempted Bribery and Extortion**

5   822. In May, 2009, DOYNE telephoned STUART at home requesting that STUART

6   pay DOYNE for services he falsely claimed to have provided.

7   823. DOYNE advised STUART that he had sent STUART several invoices which

8   STUART had not paid; STUART had advised DOYNE previously that he would no

9   longer pay DOYNE, INC.'S services or invoices.

10   824. DOYNE advised STUART that he "should come current" and that if he did so,

11   DOYNE would "work with you" to "get more time with your son."

12   825. Given DOYNE'S pattern and history of professional incompetence, fraud,

13   breach of contract, deprivation of rights, false CPS report, overbilling, and other

14   CULPABLE conduct as alleged herein, STUART was horrified at what he regarded as

15   predatory behavior and an extortive threat to commit further acts of perjury, abuse of

16   process, and manipulation regarding custody of STUART's son if STUART did not

17   "come current."

18   826. He was further extremely distressed that DOYNE then maintained a relationship

19   with his Croix Stuart and Lynn Stuart as a therapist, and would inflict further harm or

20   commit further facilitation of Ms. Stuart's child abuse if STUART did not comply with

21   DOYNE's demand for a bribe.

22   827.  STUART refused to pay DOYNE further, but was horrified, traumatized, and

23   severely distressed as a result of DOYNE'S behavior.

24   828. Understanding that DOYNE remained as a witness in STUART'S family law

25   matter, and based upon his past history of abuse of process, false testimony, and abuse

26   of process, he could easily retaliate against STUART for any action he took regarding

27   his conduct, STUART was intimidated, terrified, oppressed and under duress,

28

1  prohibiting him from taking formal action on such conduct, constituting duress, fraud,
2  and undue influence.

3  829. STUART was also defrauded by DOYNE and BLANCHET as elsewhere
4  alleged in understanding the nature and extent of the enterprise and conspiratorial
5  relationships between DOYNE, DOYNE, INC. and BLANCHET, CITY ATTORNEY
6  DEFENDANTS, and each STUART ASSAULT COORDINATOR, and their
7  successive duress and undue influence also elsewhere alleged.

8  830. As a result of such fraud, duress, undue influence, breach of fiduciary and other
9  PROFESSIONAL DUTIES, STUART has been oppressed, deterred, and unwillingly
10  delayed to initiate this Action until August 20, 2013.

11  **Claim 11.1**
12  **Deprivation of Rights Under Color of Law**
13  **42 U.S.C. 1983 and Cal. Const. art. I, § 26**
14  **Against WOHLFEIL, SCHALL**

15  831. This is a Claim by STUART against WOHLFEIL and SCHALL for deprivation
16  of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26
17  relating to the referral and oversight of DOYNE and DOYNE, INC. leading to the
18  DOYNE TERRORISM.

19  832. All prior paragraphs are re-alleged and incorporated as if set forth in full.

20  833. Based in part on WOHLFEIL'S recommendation and agreement to oversee
21  DOYNE and DOYNE, INC. STUART hired DOYNE, INC. to conduct a mediation on
22  negotiated terms.

23  834. As a foreseeable result of such recommendation, DOYNE defrauded, injured,
24  terrorized, and deprived STUART as detailed above.

25  835. WOHLFEIL retained administrative supervisory authority, oversight, and ability
26  to prevent or aid in preventing the breaches of duty, fraud, extortion, and abuse of
27  DOYNE INC. described herein.

28

-163-

836. From the date WOHFEIL recommended Defendant DOYNE until the Stuart dissolution was re-assigned to Defendant SCHALL, Defendant WOHFEIL acted, inter alia, in an administrative capacity in supervising Defendants DOYNE as a professional "Forensic Psychologist" and Defendant DOYNE INC's as commercial psychology enterprise.

837. In or about December, 2008, SCHALL took over WOHLFEIL'S courtroom, including the STUART v STUART matter.   As such, SCHALL undertook WOHLFEIL'S administrative responsibilities for supervision and oversight of DOYNE and DOYNE INC.

838. WOHLFEIL and SCHALL failed to properly oversee, supervise, discipline, and guide DOYNE and DOYNE, INC., permitting the acts alleged above, thereby foreseeably depriving STUART or causing him to be deprived of rights, privileges, and immunities relating to SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS;   SEARCH   AND   SEIZURE;   EXPRESSION,   PRIVACY,   and ASSOCIATION; ACCESS TO JUSTICE.

<div align="center">

**Claim 11.2**

**Breach of STUART-DOYNE CONTRACT,**

**Breach of Covenant of Good Faith and Fair Dealing**

</div>

839. This is a Claim by STUART for breach of contact and breach of covenant of good faith and fair dealing against Defendants DOYNE and DOYNE, INC.

840. By committing the acts as alleged in this Count 17, DOYNE and DOYNE, INC. breached the oral and written STUART-DOYNE CONTRACTS.

841. In committing the acts as alleged, DOYNE and DOYNE, INC. acted CULPABLY, with fraud, malice, and oppression, in further breach the implied covenant of good faith and fair dealing attendant to such contract.

842. As an actual and foreseeable result, STUART has been injured in a nature and amount to be proven at trial.

**Claim 11.3**

**Fraud**

**Against DOYNE, DOYNE, INC., BLANCHET, ABC&K**

843. This is a Claim for fraud and negligent misrepresentation by STUART against DOYNE, DOYNE, INC., BLANCHET, ABC&K.

844. All prior paragraphs and all paragraphs below regarding each SAD, and RICO Count 1, below, are re-alleged and incorporated as if set forth in full.

845. At all relevant times, ABC&K and BLANCHET acted as an agent and representative for DOYNE.

846. Doyne's written and oral representations described above were intentional or negligent, false when made, material, and reasonably relied upon by STUART in engaging DOYNE and DOYNE INC. as a mediator.

847. As an actual and foreseeable result, STUART has been injured in a nature and amount to be proven at trial.

**Claim 11.4**

**Intentional Infliction of Emotional Distress;**

**42 U.S.C. § 1983; Cal. Const. art. I, § 26**

**Against all DOYNE TERRORISM Defendants**

848. This is a Claim for intentional infliction of emotional distress by STUART against DOYNE and DOYNE, INC.

849. All prior paragraphs are re-alleged and incorporated as if set forth in full.

850. DOYNE and DOYNE, INC.'S TERRORISM detailed above were CULPABLE, extreme and outrageous, malicious, fraudulent, and oppressive, reasonably and foreseeably causing STUART severe emotional distress.

851. DOYNE was at all times acting as an agent, co-conspirator, collaborator, subordinate, and employee of each other DOYNE TERRORISM Defendant.

852. In committing the acts described in this Count, DOYNE and DOYNE INC. foreseeably damaged, injured, and deprived STUART or caused him to be deprived of

-165-

rights, privileges, and immunities relating to SUBSTANTIVE DUE PROCESS; PROCEDURAL DUE PROCESS; SEARCH AND SEIZURE; EXPRESSION, PRIVACY, and ASSOCIATION; ACCESS TO JUSTICE, causing deprivation, damage, and injury in a nature and amount to be proven at trial.

### Claim 11.5

### Abuse of Process; Cal. Bus. & Prof.C. § 17200

### Against DOYNE, DOYNE, INC.

853. This is a Claim for abuse of process and violation of California Business and Professions Code § 17200 by STUART against DOYNE and DOYNE, INC. for DOYNE'S TERRORISM.

854. All prior paragraphs are re-alleged and incorporated as if set forth in full.

855. DOYNE and DOYNE, INC.'S report to CPS was undertaken with the ulterior motives of retaliating for STUART'S refusal to pay DOYNE and DOYNE, INC. for services not rendered or rendered fraudulently and harmfully, and subsequent termination of DOYNE'S services and contract, and in an attempt to extort STUART to make payments to DOYNE to "get more time with your son."

856. Such actions constitute an abuse of legitimate process, harming STUART substantially more than any benefit from such activity in a nature and amount to be proven at trial.

### Claim 11.6

### Extortion; Cal. Bus. & Prof.C. § 17200

### Against DOYNE and DOYNE, INC., BLANCHET, and ABC&K

857. This is a Claim by STUART for extortion and attempted extortion in violation of Cal.B&P C. 17200 by STUART against DOYNE and DOYNE, INC., BLANCHET, and ABC&K for DOYNE'S TERRORISM.

858. All prior paragraphs are re-alleged and incorporated as if set forth in full.

859. In performance of the STUART-DOYNE contract, DOYNE TERRORISM and ATTEMPTED BRIBE DOYNE attempted, and did unlawfully use or threaten use of

force or legal process, and act under color of law, to extort STUART to make payments to DOYNE.

860. On information and belief, DOYNE attempted successfully the same solicitations to STUARTS' ex-wife, in fact successfully accomplishing one or more acts of extortion and/or bribe.

861. Such actions constitute unfair and harmful business practices, extortion, fraud, and harming STUART substantially more than any benefit from such activity.

<center>**Claim 11.7**</center>

<center>**Bribery; Cal. Bus. & Prof.C. § 17200**</center>

<center>**Against DOYNE and DOYNE, INC., BLANCHET, and ABC&K**</center>

862. This is a Claim by STUART for briber and attempted bribery in violation of Cal.B&P C. 17200 by STUART against DOYNE and DOYNE, INC. for DOYNE'S TERRORISM.

863. All prior paragraphs are re-alleged and incorporated as if set forth in full.

864. DOYNE and DOYNE, INC'S TERRORISM and acts after STUART terminated his services in February, 2009, constitute attempts and solicitation of a bribe.  In requesting STUART to "come current" to unearned, fraudulent, and services not performed, and "get with the program" to pay him past unearned bills and continue paying more in the future are numerous requests to pay a bribe.

865. On information and belief, DOYNE attempted successfully the same solicitations to STUARTS' ex-wife, in fact successfully accomplishing one or more bribes.

866. Such actions constitute unfair and harmful business practices, extortion, fraud, harming STUART substantially more than any benefit from such activity.

**Claim 11.8**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

**Against DOYNE, DOYNE, INC.**

867. This is a Claim by STUART against DOYNE and DOYNE, INC. for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 relating to DOYNE and DOYNE, INC.'S TERRORISM, abuse of process, breach of contract, fraud, extortion, and attempted bribery.

868. All prior paragraphs are re-alleged and incorporated as if set forth in full.

869. In committing each act in each Claim in this Count, DOYNE and DOYNE INC. CULPABLY and UNREASONABLY caused or committed unfair and business practices, extortion, fraud, in breach of one or more PROFESSIONAL DUTIES, and deprived STUART or caused him to be deprived of rights privileges and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT, causing STUART deprivation, injury, and damage in a nature and amount to be proven at trial.

**Claim 11.9**

**42 U.S.C. 1983 and Cal. Const. art. I, § 26**

**Against DOYNE, DOYNE, INC.**

870. This is a Claim by STUART against ABC&K and BLANCHET for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983 and Cal. Const. art. I, § 26 relating to the referral and oversight of DOYNE and DOYNE, INC.

871. In committing each act as described in this Count, BLANCHET and ABC&K CULPABLY and UNREASONABLY caused or committed unfair and business practices, extortion, fraud, in breach of one or more PROFESSIONAL DUTIES, and deprived STUART or caused him to be deprived of rights privileges and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION; EXCESSIVE FORCE; and CRUEL

-168-

1 AND/OR UNUSUSAL PUNISHMENT, causing deprivation, injury, and damage in a
2 nature and amount to be proven at trial.

### Claim 11.10

### Respondeat Superior/Agency Liability

### Against ABC&K

872. At all relevant times to this Count, Defendants ABC&K and BLANCHET acted
as the agent, supervisor, principal, and representative of DOYNE and DOYNE, INC.
in his providing of services to STUART.

### Claim 11.11

### Failure to Supervise DOYNE, DOYNE, INC.

### 42 U.S.C. 1983 and Cal. Const. art. I, § 26

873. This is a Claim against WOHLFEIL, SCHALL, ALKSNE, TRENTACOSTA,
RODDY, SAN DIEGO SUPERIOR COURT, COUNTY OF SAN DIEGO, DOYNE,
INC (DOYNE SUPERVISING DEFENDANTS) for supervisory failures causing
deprivation of STUART'S rights under color of law pursuant to 42 U.S.C. 1983 and
Cal. Const. art. I, § 26

874. All prior paragraphs are re-alleged and incorporated as if set forth in full.

875. DOYNE SUPERVISING DEFENDANTS, and each of them, at all times had
the power to oversee, supervise, train, discipline DOYNE and DOYNE INC. so as to
prevent or aid in preventing the commission of DOYNE and DOYNE INC.'s acts as
alleged herein.

876. From the date the Stuart Dissolution was re-assigned from Defendant WOHFEIL
to Defendant SCHALL, until on about November, 2009, Defendant SCHALL acted,
inter alia, in the same administrative capacity in supervising Defendants DOYNE and
DOYNE INC.

877. Defendants WOHLFEIL and SCHALL had independent and/or joint and several
Supervising Authority over Defendants DOYNE and DOYNE, INC.

-169-

878. SCHALL and WOHLFEIL CULPABLY AND UNREASONABLY permitted DOYNE to commit the fraud, abuse of process, extortion, and terror against STUART.

879. DOYNE SUPERVISING DEFENDANTS knew or should have known:

A. DOYNE'S history of fraud, abuse, and illegal conduct described herein;

B. The pattern of illegal activities of the CONSPIRACIES and CRIMINAL ENTERPRISES herein;

C. DDIJO and DOYNE COMPLAINTS; and

D. The FEDERAL ENGAGEMENT of Plaintiffs and others regarding Defendants, the DDIJO, DDIA, DDIPS, STUART ASSAULT COORDINATOR, ENTERPRISE and CRIMINAL CONSPIRACY operators and affiliates.

880. After learning of DOYNE"S history of illegal conduct, fraud, and abuse, DOYNE SUPERVISING DEFENDANTS had a duty to investigate, oversee, re-train, discipline, and/or terminate those over which they had the power to influence or control including DOYNE and DOYNE, INC.

881. Supervising Defendants failed to implement remedial measures such as reassignment, removal or other disciplinary actions to prevent further constitutional injuries to Plaintiffs and those similarly situated.

882. Having this knowledge, DOYNE SUPERVISING DEFENDANTS neglected or refused to prevent or aid in preventing the same.

883. SUPERVISING DEFENDANTS UNREASONABLY and CULPABLY failed to implement appropriate training, supervision, hiring, discipline, programs to assure persons over whom they had the ability to influence or control would not commit the acts complained of, including the acts alleged in the DDIJO and DOYNE COMPLAINTS and the STUART ASSAULT.

884. In performing their supervising authorities, DOYNE SUPERVISING DEFENDANTS implemented customs, policies, or practices that foreseeably caused the constitutional injuries complained of by Plaintiff, including:

A. Directing, rewarding, encouraging, or acting with deliberate indifference to the actions of subordinates, including DOYNE and DOYNE, INC. which led to Plaintiff's constitutional injuries; and

B. Failing to change customs and policies, or employ corrective practices for subordinates causing Plaintiffs' constitutional deprivation.

885. Each DOYNE SUPERVISING DEFENDANT played a role in forming and/or implementing the customs, policies, and/or practices, failure to implement policies, supervise, train, oversee, and discipline DOYNE and DOYNE, INC., creating a dangerous condition, and culture of deliberate indifference, in CULPABLE and UNREASONABLE breach of one or more PROFESSIONAL DUTIES.

886. Each DOYNE SUPERVISING DEFENDANT had prior knowledge of acts of their subordinates, supervises and/or trainees which cause constitutional injury similar to that complained of by Plaintiff.

887. Despite the knowledge of past/prior acts causing or likely to cause constitutional injury, DOYNE SUPERVISING DEFENDANTS took no and/or inadequate corrective action, and in fact encouraged the acts that caused or were likely to cause constitutional injury.

888. In committing each act as described in this Count, DOYNE SUPERVISING DEFENDANTS CULPABLY and UNREASONABLY breached one or more PROFESSIONAL DUTIES, depriving STUART or causing him to be deprived of rights privileges and immunities relating to SEARCH AND SEIZURE; SUBSTANTIVE DUE PROCESS; EXPRESSION, PRIVACY, and ASSOCIATION;

1  EXCESSIVE FORCE; and CRUEL AND/OR UNUSUSAL PUNISHMENT, causing

2  deprivation, injury, and damage in a nature and amount to be proven at trial.

3

4  **COUNT 12**

5  **Deprivation of SUBSTANTIVE DUE PROCESS**

6  **42 U.S.C. § 1983 and Cal. Const. art. I, § 26**

7  **Against COLOR OF LAW DEFENDANTS**

8  889. This is a Count against each COLOR OF LAW Defendant based on acts alleged

9  against each such Defendant in each Claim herein.  This Count asserts that each

10  Defendant's UNREASONABLE and CULPABLE acts under color of law in breach of

11  a duty identified below constitute a deprivation of substantive due process under both

12  the Constitution of the United States and the Constitution of the State of California to

13  all entities foreseeably injured therefrom.

14  890. At all times relevant to this Action, each COLOR OF LAW Defendant and

15  defendant acting under color of law owed one or more PROFESSIONAL DUTIES to

16  each Plaintiff as follows:

17  a. CONSTITUTIONAL:  For any Defendant acting under color of law, the

18       following non-discretionary duties:

19            i. The duty to exercise color of law powers only in the presence of legal

20            authority or jurisdiction provided under enabling legislation, rules,

21            charters, or constitutions, pursuant to Cal. Const. Art. I, § 26;

22            ii. The duty to protect, uphold, and defend the laws and the Constitutions

23            and laws of the United States and the State of California;

24            iii. The duty to act only in the public interest; provide only honest

25            government services;

26            iv. The duty to avoid all conflict, undue influence, bribery, self-dealing,

27            bias, nepotism;

28

-172-

v. The duty to commit no reasonably foreseeable deprivation of clearly established civil rights;

vi. The duty to create or inflict no harm unless specifically authorized after due process of law.

Pursuant to Article I, § 26 of the Constitution of the State of California, each Defendant's CONSTITUTIONAL duties for administrative, law enforcement, judicial, quasi-judicial, and prosecutorial functions identified in this Complaint are "mandatory" and "prohibitory."  As such, no entity, including but not limited to defendants herein, acting under color of California state law may exercise discretion to perform any act which violates any CONSTUTIONAL DUTY, and no valid law of the State of California may empower an act under color of law which violates any CONSTITUTIONAL DUTY

b. FIDUCIARY: Duties of trust and loyalty of treating pecuniary interests of named or reasonably foreseeable beneficiaries equal to own.  Such duties apply to certain functions of DDIA and Defendants acting under color of law;

c. JUDICIAL: Duties to ensure due process and protect rights of all of those within their jurisdiction; all duties enumerated in Canons and related codes of judicial ethics.  Such DUTIES apply to all functions of all judicial officers performing any administrative or judicial function;

d. ATTORNEY/ADVOCATE: Duties of professional competence, loyalty, zealous advocacy and those specifically articulated in the Model Code of Professional Conduct.  Such duties apply to all function of all attorneys (DDIA) and certain functions of social worker acting as advocates or advisors (DDISW);

e.  SOCIAL WORKER: Duties of professional competence, act only in public interest (Ex. 38);

f.  SUPERVISORIAL: Duties to oversee, supervise, train, instruct, guide, monitor, discipline, and terminate subordinates; to exercise power to prevent or aid in preventing breaches of others with power to influence or control;

g.  SPECIAL RELATIONSHIP: Duties to affirmatively act in situations not otherwise requiring action founded on the existence of a prior engagement, bond, or other relationship;

h.  CREATION OF DANGER: Duties to affirmatively act in situations not otherwise requiring action founded upon the actor's creating a danger or risk to which the duty to act in preventing harm from the risk arises;

i.  CONTRACTUAL: Specific duties under contract; duty of good faith and fair dealing;

j.  MUNICIPAL: Duties of all governments to enact and enforce only constitutional rules, laws, policies, customs, habits, behaviors or procedures; duty to act to prevent foreseeable deprivation of constitutional injury; duty to take action and/or avoid deliberate indifference to actual or likely constitutional injury within authority to act;

k.  THERAPEUTIC: For all mental health professionals, duties to observe all professional standards relevant to their respective professional licensure, best practices, and specialty standards; Duty to do no harm. Such duties apply to Domestic Dispute Industry Professional Service providers (DDIPS) (DOYNE, DOYNE, INC., SIMON, LOVE, LOVE AND ALVAREZ).  Ex. 38.

l.  QUASI-THERAPEUTIC: Duties attendant to any Defendant when acting in any "therapeutic" capacity—as a DDIJO ("therapeutic" jurisprudence), DDISW ("public service"), DDIPS (as a "facilitator" "mediator" or "forensic psychologist"), or DDIA in counseling clients, to observe the ancient rule of genuine healers: *above all else, do no harm."*

-174-

891. In performing each act alleged herein, each Defendant bound at all relevant times by one or more PROFESSIONAL DUTY as elsewhere specified.

892. Said PROFESSIONAL DUTIES under which each Defendant to each Count herein acted extended at all times to each Plaintiff named in each Count.

893. By virtue of each Defendant's PROFESSIONAL DUTIES, PLAIINTIFFS at all relevant times possessed reciprocal rights to SUBSTANTIVE DUE PROCESS in the performance of those duties under Article I, §§ 7(a) and 26 of the Constitution of the State of California and the Fifth and Fourteenth Amendments to the United States Constitution.

894. For each entity acting under color of California state law, their breach of a PROFESSIONAL DUTY by CULPABLE or UNREASONABLE conduct as elsewhere alleged, setting in motion foreseeable injury, constitutes a deprivation of SUBSTANTIVE DUE PROCESS of those injured.

895. As elsewhere alleged, each Defendant breached one or more of said PROFESSIONAL DUTIES UNREASONABLY or CULPABLY, constituting a deprivation of SUBSTANTIVE DUE PROCESS under the Fifth and Fourteenth Amendment to the United States Constitution, causing damage and injury in a nature and amount according to proof at trial.

## COUNT 13
### Trespass Under Color of Law
### 42 U.S.C. § 1983 and Cal. Const. art. I, § 26
### Against Each Defendant

896. This is a Claim for trespass under color of law for acts caused in *coram non judice* by each Defendant as elsewhere alleged.

897. All prior paragraphs are re-alleged and incorporated as if set forth in full.

898. Each Defendant acting under color of state law is empowered and restrained from acting by virtue of the respective constitutions, charters, articles of incorporation,

appointments, or other entity formation documents describing the Defendant's jurisdiction.  To the extent the powers are derived from the Constitution of the State of California, such powers and restrictions are "mandatory" and "prohibitory" (nondiscretionary) under California Constitution Article I, § 26.

899. In causing injury as described in each Count and Claim herein, Defendants acting under color of law, and each of them, acted in excess of and in the complete absence of jurisdiction, causing "off the reservation" injury in violation of Plaintiffs' rights, privileges, and immunities.

900. In exceeding the limits of their authority as elsewhere alleged in each Count and Claim herein, Defendants, and each of them, committed a trespass to the property, persons, rights, privileges, and immunities of Plaintiffs, causing a deprivation of same, and are therefore strictly liable for all injury foreseeably resulting therefrom, including each injury identified in each Claim herein, in a nature and amount to be proven at trial.

## COUNT 14

### Unjust Enrichment

### Against DOYNE, DOYNE INC. ABC&K, BLANCHET, VIVIANO

901. All prior paragraphs are re-alleged and incorporated as if set forth in full.

902. In reliance on Count 14 Defendants' acts and omissions, Plaintiff has been wrongfully induced to retain Count 14 Defendants, and as a result has paid in excess of $350,000 to Defendants.

903. As an actual and foreseeable result of Defendant Defendants' misfeasance and malfeasance described herein, Defendants have been unjustly enriched in an amount paid by Plaintiff and Ms. Stuart, the exact amount to be proven at trial.

# COUNT 15

## False designation of origin, false description

## 15 U.S.C. § 1125

## Against All Defendants

904. This is a Count for false description of services against each Defendant as indicated under 15 U.S.C. § 1125.

905. All prior paragraphs are re-alleged and incorporated as if set forth in full.

906. Defendants, in connection with their businesses, professions, PROFESSIONAL DUTIES, CONSPIRACIES and ENTERPRISE OPERATIONS, use in their advertisements, promotions, sale and offer for sale of their legal services words, terms, names, symbols, and devices, and combinations thereof, (COMMERCIAL SPEECH) which are false and misleading.

907. In their COMMERCIAL SPEECH DEFENANTS represent that their services abide by ordinary and professional standards of care, are legal, efficient, safe, and effective exercise of governmental powers and public licenses provided under law as follows per defendant:

| Entity/ies | Misrepresentation/Reference |
|---|---|
| a.  All Defendants | Each Defendant's COMMERCIAL SPEEC represents that their public and private services are legal, safe, efficient, obedient to PROFESSIONAL DUTIES and standards of care. |
| b.  DOYNE, INC | Child custody evaluations/mediations are safe, therapeutic, "caring" and effective, cause no harm to parents or children; prices for services are reasonable; services provider is authorized according to court processes and law; service provider is and will observe legal, professional, and |

-177-

1    moral restraint in his duties; will not abuse power or

2    process; In collusion with Defendant ACFEI, that

3    DOYNE'S certifications, "Diplomat/e" status,

4    resume are accurate, true, and authentic.

5

6    c. ACFEI          Ex. 43; Independently and in collusion with

7                      DOYNE, Defendant offers "Certified" "Diplomat"

8                      and "Fellow" titles and certifications as authentic

9                      reflections of common understanding of such titles;

10                     the organizations is a "College" institution of higher

11                     learning, has a "campus" on Sunshine Street in

12                     Springfield MO;

13

14   d. ALLIANCE       Exs. 1, 41

15

16   e. JUDICIAL       ALLIANCE and Family Court Facilitator Officers

17      COUNCIL,       are legal advisors authorized to provide legal

18      ADMINISTRATIVE representation and advice; DV Forms are legal;

19      OFFICE OF THE  "abuse" is a crime; Judges can legally issue DVILS

20      COURTS, SAN    Orders; the Family Federal Rights and CFR are not

21      DIEGO SUPERIOR available to California Citizens; there is no right to

22      COURT,         jury trial in liberty or property deprivation hearings;

23      ALLIANCE       the DVILS are valid and enforceable.; all

24                     Defendants exercise their authority according to

25                     constitutional authority PROFESSIONAL DUTIES

26                     and law.  Ex 42.

27

28

f.  FRITZ                          Ex. 45

g.  BIERER                      Ex. 48

h.  BLANCHET                Ex. 49

908.  ALLIANCE further advertises and promotes:

a.  The ALLIANCE legally operates the lead "technical assistance" center for
development of Family Justice Centers across the United States.  The Alliance
Claims it "has been expanding and broadening its services since its inception in
response to the increasing demand for technical assistance (consulting,
training, planning, and support services) from existing and developing Family
Justice Centers in the United States and around the world. The Alliance serves
as the clearinghouse, research center, and national membership organization
for all Family Justice Centers and similar multi-agency, multi-disciplinary
service delivery models serving victims of domestic violence and other forms
of abuse and oppression."

b.  The ALLIANCE Claims it legally "serves as the clearinghouse, research
center, and national membership organization for all Family Justice Centers
and similar multi-agency, multi-disciplinary service delivery models serving
victims of domestic violence and other forms of abuse and oppression;"
"serves as the comprehensive technical assistance and training provider for the
United States Department of Justice for federally funded Centers;" "works with
Centers outside the federal initiative in the U.S. and abroad."

c.   The ALLIANCE Claims "there are currently more than 80 operational
Centers in the United States with ten international Centers (Canada, Mexico,
England, Jordan, and Sweden). There are over 140 Centers currently
developing in the United States, Europe, the Middle East, Africa, and Central

-179-

America. The Alliance is currently partnered with the Mexican government, Management Systems International, and USAID to help open more than twenty Women's Justice Centers in Mexico."

d.  "The ALLIANCE hosts an annual international conference, provides shared learning opportunities such as staff exchange programs, internships, web-based education programs, and training in many areas related to family violence, elder abuse, child abuse, sexual assault, and human trafficking. At present, the Alliance has over 11,000 members and over 10,000 attendees per year in its online training courses. Over 60,000 unique users per year access the Alliance's online resources."

e.  "The ALLIANCE is the coordinator of the current California Family Justice Initiative, funded by the Blue Shield of California Foundation, which has helped start ten new Family Justice Centers in California in the last three years. The $2 million Blue Shield of California Foundation California Family Justice Initiative is funding development of a statewide network of Centers made up of core criminal justice system professionals and a host of community-based non-profit and government agencies. Today, the Alliance is assisting with the start up of fifteen additional Centers in California."

f.   The ALLIANCE "staffs the FJC Legal Network, the Client Services Program, Camp HOPE, and the Teen Relationship Violence Program in the San Diego Family Justice Center. The FJC Legal Network, founded in 2009, is housed at the San Diego Family Justice Center and provides civil legal assistance to domestic violence victims. The Client Services Program manages client screenings, intakes, and delivery of services to victims and their children. Camp HOPE is a specialized camping and mentoring initiative for children exposed to domestic violence, physically and sexually abused children, and at-risk youth.

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

g.   The ALLIANCE advertises and represents that it is "creating a future where: ALL the needs of victims are met; children are protected; Batterers are held acCountable; Violence fades; Economic justice increases; Families heal and thrive; Hope is realized; and we ALL work together."  The Alliance seeks "to create a network of national and international Family Justice Centers and similar co-located service models with close working relationships, shared training and technical assistance, collaborative learning processes, coordinated funding assistance, and transformational leadership." Exs. 1, 41.

909. With respect to Defendant ACFEI:

a.   ACFEI advertises and promotes itself as "the largest forensic science membership association, forensics education, credentials, courses, training and membership for forensics examiners."  ACFEI sells memberships, certifications, accreditations, training materials and products, career services, and professional referral networking.  It publishes and circulates a subscription magazine entitled "The Forensic Examiner" to members and other Subscribers.

b.   ACFEI sells certifications in areas such as "Certified Forensic Examiner," "Certified Forensic Accountant, Cr.FA®," "Certified Forensic Nurse, CFN®," "Certified Criminal Investigator, CCI®," "Certified Forensic Physician CFP®," "Certified Medical Investigator CMI®," "Certified Master Forensic Social Worker CMF SW®," "Certified Forensic Consultant CFC®," "Certified Survival Mindset CSM®," and "Certified Instructor CI."

c.   ACFEI operates no campus.  It sells its certifications nationwide online at a website located at www.ACFEI.com and at www.facebook.com/ACFEI.  At its online website it offers the "advanced" certifications of "Diplomat" and "Fellow" to consumers who want to "Become a Diplomat Now!" Ex. 43.  From its website and its Sunshine Street offices in Springfield, MO, it offers the following "Diplomate" "Board Certifications:" and "Accreditations;"

-181-

1)  Diplomate of the American Board of Forensic AcCounting—DABFA;
    Accredited bachelor's degree or higher; current and active CPA or international equivalent;

2)  Diplomate of the American Board of Forensic Counselors—DABFC;
    Minimum of an accredited master's degree; current and valid license in counseling or mental health field;

3)  Diplomate of the American Board of Forensic Dentistry—DABFD, DDS or DMD from an ADA-accredited school or equivalent non-US academic institution; current, valid license to practice dentistry;

4)  Diplomate of the American Board of Forensic Examiners—DABFE;
    Accredited bachelor's degree or higher;

5)  Diplomate of the American Board of Forensic Engineering and Technology—DABFET;
    Accredited bachelor's degree or higher in an engineering or technological discipline;

6)  Diplomate of the American Board of Forensic Medicine—DABFM;
    MD/DO degree in medicine from an accredited medical school; current, valid medical license;

7)  Diplomate of the American Board of Forensic Nursing—DABFN;
    Minimum of a BSN from an accredited nursing school; possession of a current, valid RN license;

8)  Diplomate of the American Board of Forensic Social Workers—DABFSW;
    Minimum of an MSW from an accredited university or college; current, valid social work license (if applicable);

9)  Diplomate of the American Board of Recorded Evidence—DABRE;

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

d.  The single requirement for "Fellow" advanced certifications are available to anyone who has been a "Diplomate" for three years, and pay $250.

e.   To anyone who can answer "No" to the questions "Have you been convicted of a felony?" and "Are you under investigation for fraud?", and pay $250, ACFEI also offers the following Credentials:

      10)   Certified Master Forensic Social Worker, CMFSW®

      11)   Certified Forensic AcCountant, Cr.FA

      12)   Certified Forensic Consultant, CFC®

      13)   Certified in Survival Mindset, CSM®

      14)   Certified Forensic Nurse, CFN®

      15)   Certified Forensic Physician®, CFP

      16)   Certified Medical Investigator®, CMI

      17)   Certified Criminal Investigator, CCI®

f.  ACFEI describes the "Fellow" certification as "the highest honor ACFEI can bestow upon a member. This designation is reserved for members with outstanding achievements and excellence as well as participating actively in ACFEI programs."  This Honor is achieved by filling out an online form requiring a name, address and telephone number, and answering the questions "Have you ever been convicted of a felony?*" and "Have you ever been disciplined, or are you currently under investigation, by any legal or licensing board? *"  The "Fellow" and "Diplomat" advanced certifications are available online for $250.

g.  ACFEI offers online courses for "Behavioral Science," "Forensics," "Psychotherapy," "Integrative Medicine," and "Missouri Sheriffs." The "Certifications," "Boards," "College," "school," and "classes" offered by ACFEI described in paragraphs 1)-24) do not exist.

-183-

910. The Claims of all Defendants described in this Count and elsewhere are false and misleading.

911. With respect to each Defendant:

    a.  In their activities described herein, Defendants operate CRIMINAL ENTERPRISES which defraud, abuse, oppress, and deprive Plaintiffs and the general public of their property and liberty.

    b.  In their COMMERCIAL SPEECH promotion for such ENTERPRISES, including websites, literature, public appearances, statements and representations, Defendants misrepresent theirs and others' legal and professional services as legal, fair, honest, and beneficial, when in fact they are fraudulent, harmful, inefficient, oppressive, and illegal.

    c.  Further, in their advertising and promotion Defendants fail to warn consumers of the illegality of their services, the constitutional deprivations they cause and form the basis of liability for, and the many disastrous pitfalls which occur regularly from use of such professional services.  As such, Defendants mislead as to the nature, characteristics, qualities, of their and their ENTERPRISE affiliates' services, including the nature of the ENTERPRISE and purposes of the SAD.

    d.  Defendants mislead consumers by misdirection from superior, legitimate, legal services by one or more SAD, and by advising "that's how it is" in family court, and by failing to advise of the full options consumers have toward legal, healthy, and safe alternatives to avoid the abundant harm likely to befall those who engage in such activities.

    e.  DDICE Defendants operate SAD and "black hat" operations under the guise of "white hat" legality and professional responsibility, thereby deceiving consumers of legal services into engaging such services with the expectations that such is as safe, lawful, and healthy as "standard" legal and psychological services.  They are not.

-184-

912. Plaintiffs compete with Defendants for provision of legal services and as detailed in RICO ENTERPRISE allegations below.

913. Plaintiffs, their clients, and affiliates provide safe, legal, efficient, and healthier competing professional services in compliance with law.  Defendants, by virtue of their illegal collusion, conspiracy, and coordination are competitively advantaged to overcharge for harmful, inefficient, oppressive, and unhealthy services.  To protect such inefficient, illegal, and anticompetitive activities, Defendants have and continue to mislead consumers of PLAINTIFFS' and DEFENDANTS' services in their COMMERCIAL SPEECH.  Plaintiffs reasonably believe they are likely to be mislead and damaged by such COMMERCIAL SPEECH again in the future.

914. As an actual and proximate result PLAINTIFS have been injured in a nature an amount to be proven at trial.

## VI. RICO ALLEGATIONS
### RICO DEFENDANTS

915. In addition to the allegations regarding each Defendant above, certain defendants are each engaged in activities which constitute Enterprise operations under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO).   The following entities are defined as a "person," as that term is defined pursuant to Section 1961(3) of RICO.  Such Defendants include:

   a.  SAN DIEGO COUNTY BAR ASSOCIATION, a California Corporation

   b.  SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a municipal entity

   c.  SDSD DOES 1-15, unknown individuals

   d.  WILLIAM D. GORE, an individual

   e.  COUNTY OF SAN DIEGO, a municipal entity

   f.   SUPERIOR COURT OF SAN DIEGO COUNTY, a municipal entity

   g.   ROBERT J. TRENTACOSTA, an individual

1    h.   MICHAEL RODDY, an individual

2    i.    JUDICIAL COUNCIL, a municipal entity

3    j.    ADMINISTRATIVE OFFICE OF THE COURTS, a municipal entity

4    k.   STEVEN JAHR, an individual

5    l.   TANI G. CANTIL-SAKAUYE, an individual

6    m.  LAWRENCE J. SIMI, an individual

7    n.   BRAD BATSON, an individual

8    o.   NATIONAL FAMILY JUSTICE CENTER ALLIANCE, a California

9         Corporation

10   p.  LISA SCHALL, an individual

11   q.  LORNA ALKSNE, an individual

12   r.   OFF DUTY OFFICERS, INC., a business entity of unknown form

13   s.   ODO DOES 1 and 2, unknown individuals

14   t.   CHRISTINE GOLDSMITH, an individual

15   u.   JEANNIE LOWE, an individual

16   v.   WILLIAM MCADAM, an individual

17   w.  EDLENE MCKENZIE, an individual

18   x.   JOEL WOHLFEIL, an individual

19   y.  JAN GOLDSMITH, an individual

20   z.  EMILY GARSON, an individual

21   aa. MICHAEL GROCH, an individual

22   bb. KRISTINE NESTHUS, and individual

23   cc. BRIAN WATKINS, an individual

24   dd. KEN SMITH, an individual

25   ee. MARILOU MARCQ, and individual

26   ff. CSB-INVESTIGATIONS, a business entity of unknown form

27   gg. CAROLE BALDWIN, an individual

28   hh. LAURY BALDWIN, an individual

-186-

ii.  BALDWIN AND BALDIWN, a California professional corporation

jj.  LARRY CORRIGAN, an individual

kk. WILLIAM HARGRAEVES, an individual

ll.  HARGRAEVES & TAYLOR, PC, a California Professional Corporation

mm.      TERRY CHUCAS, an individual

nn. MERIDITH LEVIN, an individual

oo. ALLEN SLATTERY, INC., a California Corporation, a Corporation

pp. JANIS STOCKS, an individual

qq. STOCKS & COLBURN, a California professional corporation

rr.  DR. STEPHEN DOYNE, an individual

ss.  DR. STEPHEN DOYNE, INC., a professional corporation

tt.  SUSAN GRIFFIN, an individual

uu. DR. LORI LOVE, an individual

vv. LOVE AND ALVAREZ PSYCHOLOGY, INC., a California corporation

ww.      ROBERT A. SIMON, PH.D, an individual

xx. AMERICAN COLLEGE OF FORENSIC EXAMINERS INSTITUTE, a
     business entity of unknown form

yy. ROBERT O'BLOCK, an individual

zz.  LORI CLARK VIVIANO, an individual

aaa.      LAW OFFICES OF LORI CLARK VIVIANO, a business entity of
     unknown form

bbb.      SHARON BLANCHET, an individual

ccc.      ASHWORTH, BLANCHET, KRISTENSEN, & KALEMENKARIAN,
     a California Professional Corporation

ddd.      MARILYN BIERER, an individual

eee.      BIERER AND ASSOCIATES, a California Professional Corporation

fff. JEFFREY FRITZ, an individual

ggg.      BASIE AND FRITZ, a professional corporation

-187-

**DOE Defendants:**

916. DOE Defendants' identities are unknown to Plaintiffs and are named by fictitious names as follows.

917. Enterprise DOES: Plaintiffs assert civil racketeering Counts under 18 U.S.C. § 1962 (c), (d) based upon Defendants conduct of, participation in, ownership, or affiliation with one or more criminal enterprises as that term is defined under 18 U.S.C. § 1964(c). Plaintiffs have identified five enterprises, which together are referred to as the "Domestic Dispute Industry Criminal Enterprise" ("DDICE").

918. Defendants, including DOES, shall be identified according to the enterprise or segment of the enterprise to which they are related.

919. *DDIJO DOES*: Judges, Commissioners, and other appointed or elected judicial officials of the Family Law Division of the Superior Court of the State of California, in and for the respective Counties of which they are members, are herein denominated Domestic Dispute Industry Judicial Officers ("DDIJO"). Unknown DOES which fall into the DDIJO category shall be denominated DDIJO DOES.

920. *DDIA DOES*: Attorneys at law licensed by the California Bar confining substantially or all of their practice to Family Law shall be denominated as "Domestic Dispute Industry Advocates" ("DDIA").

921. *DDIPS DOES*: Professional service providers, including psychologists, psychiatrists, family-law oriented social workers, "advocates', child care professionals, and other professional-level industry workers not falling into the category of a licensed attorney shall be denominated as "Domestic Dispute Industry Professional Services" ("DDIPS").

922. *DDISO DOES*: Professional law enforcement, police, sheriff's, sheriff's deputies, security, or other law enforcement professionals shall be denominated "Domestic Dispute Industry Security Officers" or ("DDISO").

923. *DDISW DOES*: Professional social workers engaged in the practice of family law shall be denominated the "Domestic Dispute Industry Social Workers" and

-188-

1  includes employees and agents of Defendants ALLIANCE, ADMINISTRATIVE
2  OFFICE OF THE COURTS, JUDICIAL COUNCIL, and SAN DIEGO SUPERIOR
3  COURT ("DDISW").

4  924. Upon learning the true names and capacities of the DOE defendants, Plaintiffs
5  will amend this Complaint as appropriate.

6  925. By virtue of their affiliations, associations, and collaboration as alleged herein,
7  RICO Defendants function collectively as alter ego vehicles of one another facilitate
8  and further the commercial purposes of the ENTERPRISES alleged herein.

9  926. Specifically, in addition to the conspiracy allegations detailed above, each
10 defendant is liable as a principal pursuant to 18 U.S.C. § 2(a)-(b), and that each RICO
11 person that is a RICO defendant is liable as a co-conspirator pursuant to 18 U.S.C. §
12 371.

13 927. Defendants, and each of them, while affiliated with one or more
14 ENTERPRISES, have operated, affiliated with, and participated directly and indirectly
15 in the conduct of ENTERPRISE affairs through a pattern of racketeering activity, in
16 violation of 18 U.S.C. § 1964 (b), (c), and (d) as follows:

17                                  **RICO ENTERPRISES**

18 928. Each of the following configurations, for purposes of plaintiff RICO §1962(c)
19 Claims for relief, constitute an enterprise engaged in, or the activities of which affect,
20 interstate or international commerce as those term is defined pursuant to Title 18 United
21 States Code §1961(4) of the Racketeer Influenced and Corrupt Organizations Act of
22 1970 ("RICO"), *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) and *Boyle v.*
23 *United States*, 129 S. Ct. 2237 (2009) (collectively "RICO ENTERPRISES")

24                                  **RICO Enterprise 1**

25   **The California Domestic Dispute Industry Criminal Enterprise (DDICE)**

26 929. The California Domestic Dispute Industry Criminal Enterprise (DDICE)
27 consists of individual private and public professionals, professional corporations,
28 professional membership organizations, and governmental entities engaged in that

-189-

portion of "family law" practice in which two or more parties have competing interests, or compete with the government for such interests, and is described herein as "Domestic Dispute Law."   Domestic Dispute Law includes marital dissolution, parentage, child custody, child support, domestic violence, and related areas.

930. All RICO Defendants including DDICE DOES 1-500 and the entities with which they are associated, including every other ENTERRISE, civil and criminal CONSPIRACY constitute the DDICE.  These entities, acting concert with one another, are organized and maintained by and through a consensual hierarchy of agents, partners, managers, directors, officers, supervisors, agents, deputies, and/or representatives that formulate and implement policies, practices, relationships, rules, and procedures related to Domestic Dispute Law.

## RICO Enterprise 2

### San Diego Family Law Community Domestic Dispute Industry Criminal Enterprise (SD-DDICE)

931. In San Diego, the relationships among DDICE operators and affiliates are created and supported through what has been denominated by members of the DDICE as the San Diego "family law community"  Ex. 2.  The SD-DDICE is comprised of individual family law attorneys and law firms, professional "service providers", Domestic Dispute Industry judicial officials and staff, the Family Law Subsection of the San Diego County Bar Association, related law enforcement, and SDCBA staff, officers, and employees, specifically including:

> SDCBA, SDCBA DOES 1 and 2, SDSD DOES 1-15, GORE, SAN DIEGO
> SUPERIOR COURT, COUNTY OF SAN DIEGO DOE 1, TRENTACOSTA,
> RODDY, JAHR, CANTIL-SAKAUYE, ALLIANCE, SCHALL, ALKSNE,
> WOHLFEIL, C. GOLDSMITH, J. GOLDSMITH, GARSON, CHUBB,
> CHUBB DOE 1, GROCH, NESTHUS, WATKINS, SMITH, MARCQ, CCS—
> INVESTIGATIONS, LOWE, McADAM, McKENZIE, C. BALDWIN, L.
> BALDWIN, CORRIGAN, HARGRAEVES, CHUCAS, LEVIN, STOCKS,

-190-

ALLEN, SLATTERY, INC., STOCKS & COLBURN, ACFEI, O'BLOCK, DOYNE, DOYNE, INC., GRIFFIN, LOVE, LOVE, INC., SIMON, VIVIANO, BLANCHET, ABC&K, BIERER, BIERER & ASSOCIATES, FRITZ, BASIE & FRITZ, DDICE DOES 501-1000.

932. SD-DDICE utilize and share private and SDCBA, SAN DIEGO SUPERIOR COURT, STUART ASSAULT COORDINATOR, DDIPS and others' communications systems, offices, fixtures and equipment, professional and personal networks, "certification" mills, campaign and lobbying vehicles and personnel, and political organizations and networks. The DDICE and SD-DDICE also conspires to promote Defendants' CIVIL CONSPIRACIES, HARRASSMENT AND ABUSE, agenda detailed above for the benefit of the enterprise and detriment of the DDIL.

933. The DDICE and SD-DDICE have been in existence for as long as the Family Law Community has been organized—dating back far longer than ten years. The DDICE and SD-DDICE have gained influence in recent years since the passage of the Domestic Dispute Intervention Legislative Scheme (DVILS) in 1993-1997.  Since passage of the DVILS, DDICE members have been empowered and increasingly skilled at utilizing one or more of the schemes and artifices to defraud (SAD) described below to further the purposes of the ENTERPRISES and commit racketeering activity.

934. These entities, acting in concert with one another, are organized and maintained by and through a consensual hierarchy of agents, partners, managers, directors, officers, supervisors, agents, deputies, and/or representatives that formulate and implement policies relative to business development coordination, education, social networking, informational services to the public about various areas and practices of lawyers, including, but not restricted to, aspects of family law, child custody, and domestic relations in the San Diego area.

935. The SD-DDICE acting in concert with San Diego DDIJO, SAN DIEGO SUPERIOR COURT, SDCBA, DDISO, and the STUART ASSAULT COORDINATOR engage in a course of conduct and a pattern of practice to illegally

-191-

1  compete in the DDIL marketplace by illegal antitrust affiliations, barriers to entry,

2  fraudulent certification mills, and predatory tactics such as the STUART ASSAULT

3  and ongoing HARRASSMENT AND ABUSE.

4   936. Through mutual anticompetitive pacts, fraudulent licensing, certification,

5  specialization, excluding or deterring fair competition from the market, the DDICE

6  compete illegally in the DDIL marketplace, sharing access only those attorneys and

7  law firms that share and promote the interests of the ENTERPRISES, and committing

8  HARRASSMENT AND ABUSE against entities such as Plaintiffs which they view as

9  competition in the DDIL marketplace.

### RICO  Enterprise 3

### Domestic Dispute Industry Intervention Advocate

### Criminal Enterprise (DDI-IACE)

13   937. The DDI-IACE consists of Defendants ADMINISTRATIVE OFFICE OF THE

14  COURTS, JUDICIAL COUNCIL, CANTIL-SAKAUYE, ALLIANCE,

15  TRENTACOSTA, RODDY, ALKSNE, SAN DIEGO SUPERIOR COURT, SDSD,

16  and DDICE DOES 1001-1500.  DDI-IACE constitutes a RICO criminal enterprise,

17  organized and maintained by and through a consensual hierarchy of, managers,

18  directors, officers, supervisors, agents, deputies, and/or representatives that formulate

19  and implement policies relative to family law, child custody, and domestic relations.

20   938. The DDI-IACE ENTERPRISE, acting in concert with ADMINISTRATIVE

21  OFFICE OF THE COURTS, JUDICIAL COUNCIL, DDISW, judicial officer, and

22  DDISO Defendants engage in a course of conduct designed and intended to deprive

23  and conspire to commit one or more SAD, deprive DDIL of Family Federal Rights and

24  CFR, and commit HARASSEMENT AND ABUSE as described herein through the

25  illegal practice of law, abuse of process, illegal advice, guidance, form selection,

26  individual litigant support, advocacy, and services through the ALLIANCE and County

27  court locations across the state and nation.  The DDI-IACE's activities focus on topics

28  such as divorce, restraining orders, constitutional law, child custody, parents' and

-192-

children's rights, guardianship, adoption, domestic violence, "abuse" and "harassment."

939. The DDI-IACE commercial purpose is to generate revenue and income within this District by expanding the ENTERPRISE and the criminal activities of the judicial officer, DDISW, DDISO, and others associated with it, by committing fraud on the United States, and state and local charities.  Funding for statewide DDI-IACE entities is obtained from billions of dollars in Violence Against Women Act grants and awards, and private foundations.  Ex. 1.

<div align="center">

**RICO Enterprise 4**

**The Domestic Dispute Industry Forensic Investigator**

**Criminal Enterprise (DDI-FICE)**

</div>

940. The DDI-FICE consists of behavioral science "professional custody evaluators," mediators, and the organizations which certify, oversee, discipline, appoint, refer, conspire, associate, or affiliate with them, and includes Defendants ACFEI, DOYNE, DOYNE, INC., LOVE, LOVE INC., SIMON,  SAN DIEGO SUPERIOR COURT COUNTY OF SAN DIEGO DOE 1, RODDY, TRENTACOSTA, ALKSNE, BLANCHET, BIERER, FRITZ, and DDICE DOES 1501-2000.   These RICO Defendants constitute a criminal enterprise, organized and maintained by and through a consensual hierarchy of, managers, directors, officers, supervisors, agents, deputies, and/or representatives that formulate and implement policies relative to providing the rendition of "forensic psychology" services to the public, including, but not restricted to, DDIL, their lawyers, judges, and others in the field of family law, child custody, and domestic relations.

941. The DDI-FICE ENTERPRISE Defendants engage in a course of conduct designed and intended to conspire to commit one or more SAD, deprive of Family Federal Rights and CFR, and commit HARASSEMENT AND ABUSE as described herein through the rendition of fraudulent, illegal, and harmful "forensic psychology" services, including custody evaluation, mediation, and parent coordination by use of

one or more SAD, fraud, extortion, abuse of process, kidnapping, unfair competition, and obstruction of justice.

942. The DDI-FICE commercial purpose is to generate revenue and income within this District committing one or more SAD, false COMMERCIAL SPEECH, and HARASSMENT AND ABUSE of DDIL, including Plaintiffs.

### RICO Enterprise 5

### The DDIA/DDIPS Ad Hoc Criminal Enterprise (AHCE)

943. The DDICE's AHCE is a well-established enterprise formation which is formed when two or more DDIL enter the DDIL marketplace and hire one or more DDIA. The enterprise affiliates—ordinarily one DDIA attorney for a Petitioner, and one for Respondent—engage with their clients, make fraudulent COMMERCIAL SPEECH misrepresentations to them regarding their FFR, the family court laws and processes, and begin exploiting them by use of one or more SAD. Depending on how malicious the DDIA conduct their fraud, DDIL may be induced into engaging in "Poser Advocacy" and one or more SAD, either as initiator or forced responder, thereby generating revenue for both DDIA. The process by which the AHCE enterprise is ordinarily formed is described in detail in a publication entitled *A Promise To Ourselves: A Promise to Ourselves: A Journey Through Fatherhood and Divorce*, Baldwin, A., ISBN-10: 0312586019. Plaintiffs have not received permission to reproduce this publication and therefore reference it as Exhibit 32 as if set forth herein in full.

944. In the present matter, the STUART AHCE consists of Defendants BLANCHET, BIERER, FRITZ, VIVIANO, DOYNE INC., and DDICE DOES 2001-2010 (collectively STUART AHCE). By execution of various frauds and SAD, the STUART AHCE introduced additional Defendants DOYNE, INC. WOHLFEIL, and eventually SCHALL, BATSON, SDCBA, STUART ASSAULT COORDINATORS, CHUBB, CHUBB DOE 1, CITY ATTORNEY DEFENDANTS, GORE, and GROCH

-194-

1  to commit one or more CIVIL and CRIMINAL CONSPIRACIES and each predicate

2  crime as detailed below.

3  945. The STUART AHCE is organized and maintained by and through a consensual

4  hierarchy of, managers, directors, officers, supervisors, agents, deputies, and/or

5  representatives that formulate and implement policies relative to the dispensing and

6  providing the rendition of judicial services to the public , including, but not restricted

7  to, lawyers  practicing before, networking with, funding, and collaborating with this

8  enterprise, including, but not restricted to, aspects of family law, child custody, and

9  domestic relations.   The STUART AHCE, acting in concert with one and others

10  unknown to Plaintiffs, engaged in a course of conduct and a pattern of practice

11  formulated, designed, intended, implemented, and executed to as part of one or more

12  SAD.

### GENERAL ENTERPRISE ALLEGATIONS

14  With respect to each ENTERPRISE:

### Commercial Purpose

16  946. The constituent members comprising each ENTERPRISE are engaged in a

17  concerted campaign to extort, defraud, trick, deceive, corruptly persuade, victims,

18  including primarily family court litigants and their children and extended families

19  (Domestic Dispute Industry Litigants "DDIL") to exercise proprietary control over,

20  and extract maximum value from, the target community estate ("TCE") in much the

21  same way a bankruptcy trustee operates to control a bankruptcy estate.  The TCE

22  includes all assets of the DDIL, the labor value of the DDIL going forward, and the

23  "custody award" value of any children of the DDIL.  DDICE operatives have developed

24  numerous pernicious tools, including the SAD, to maximize TCE extraction.

25  947. Further, in unfairly protecting their commercial purposes, each ENTERPRISE

26  harasses, threatens, assaults, abuses, denigrates, impugn, and/or otherwise harms,

27  threatens, and attempts to harm, competitors, critics, reformers, and others.

28

-195-

948. The ENTERPRISES operate as a "cabal," a semi private, sometimes secret, informal affiliation of entities with public presence and identity that is wholly or partially inaccurate and misleading as to the true goals, affiliations, and processes of the cabal.   The ENTERPRISES achieve their respective purposes by fraudulent collusion among DDICE operators and affiliates, who in their COMMERCIAL SPEECH represent to their DDIL clients that the relationships among the DDICE members are in compliance with legal and ethical PROFESSIONAL DUTIES when they in fact are not.   See "False Flag" and "Poser Advocacy" SAD below. (COMMERCIAL PURPOSES).

949. The ENTERPRISES also compete unfairly through their COMMERCIAL SPEECH by misrepresenting the legitimacy of the ENTERPRISES, by representing to DDIL that their illegal behavior is "how it is" in a "take it or leave it" breach of one or more PROFESSIONAL DUTIES.

950. The ENTERPRISES also compete unfairly within the DDI marketplace by creating the impression that non-ENTERPRISE entities are incapable of representing the interests of family law clients.  In the present case, the ENTERPRISES operated as alleged to suppress and retaliate for Plaintiffs FFRRESA and PUBLIC BENEFIT ACTIVITIES by HARRASSMENT AND ABUSE to restrict the family law marketplace access, knowledge, and awareness to only ENTERPRISE operators and affiliates.

951. Funded by fraudulent exploitation of the DDIL TCE, ENTERPRISE operators and affiliates engage in bribery, exchanging value, emoluments, patronage, nepotism, and/or kickback schemes within their networks to assure system-wide "cash flow" and continued viability and vitality of the ENTERPRISES.  ENTERPRISES refuse such cooperation with non-affiliates, thereby baring potential competitors. These bars include fraudulently manipulated referrals, representations, certifications, nepotism, illegal antitrust tactics, and manufactured pitfalls to support the pervasive "who you know" cabal in defiance of the rule of law.

952. When necessary, illegal marketplace protections are perpetrated by illegal criminal justice system sanctions by judicial officer and DDISO, direct attacks such as the STUART ASSAULT and HARASSMENT AND ABUSE. This predatory competitive behavior targets any entity, association, or organization that supports and advocates for DDIL that appears as a potential or probable threat to these DDICE purposes, including Plaintiffs (ENTERPRISE UNFAIR COMPETITION).

### Domestic Dispute Industry Legal Services Marketplace

953. The ENTERPRISES are successful due to manipulation of unique factors characterizing the marketplace for Domestic Dispute Industry legal services.  DDIL are ordinarily families in crisis seeking to resolve their personal difficulties by altering relationships.  In doing so they must often seek the involvement of the state. For contested or unusually complex matters, DDIL enlist experts to help navigate the market. Hence, a market for family law experts to assist in navigating the complexity and/or maximizing outcome exists.  (DDI MARKET).

954. The DDL view the DDI either as a necessary evil to be treated as a toll, or in some cases a nefarious tool of oppression to illegally obtain wealth, power, and control at the expense of a former loved one.  The DDI can deal with either.  However, for purposes of the civil and criminal enterprises alleged herein, the later represent an exploitation opportunity for DDICE operatives, and as such special attention is paid to them.

955. ENTERPRISE affiliates who serve or cultivate the illegal purposes of the enterprise—"black hat" operatives—view DDIL as a "raw material:" a resource from which to extract net profit.  While each case may present different circumstances, and while DDICE associates market their services as "specialized", in fact the DDICE operate in conspiracy with common SAD applied to each DDIL in the DDI MARKET; providing "white hat" services to those seeking simple, healthy solutions, while still preserving, promoting, misrepresenting, and protecting the ability to deliver illegal, unhealthy, yet far more profitable "black hat" services.

956. However, to maintain long-term vitality, DDICE operatives must govern themselves to avoid exposure of their illegal SAD, or "overfising"—extracting so much value from one or more DDIL that they "sour" to the DDIL marketplace or reveal the ENTERPRISE and SAD, thereby inducing reform such as FFRRESA, and DUE ADMINISTRATION OF JUSTICE.

957. Yet the balance necessary to achieve maximum TCE extraction without fair competition, revelation, or overfishing cannot be achieved without cooperation between the petitioner's and respondent's counsel—hence "False Flag" and other fraudulent SAD by which DDIA, judicial officer, and DDIPS exercise "client control" by refraining from zealous advocacy or honest services in hopes of lowering extraction costs for Petitioner's counsel, maximizing TCE extraction, and leaving at least one "unburned" DDIL to perpetuate future SAD on future DDIL market entrants.

958. Petitioner and Respondent counsel (seeking to maximize wealth transfer) evaluate each case early through compelled disclosures known as "Income and Expense Declarations." These forced sworn statements require both parties to reveal extensive details regarding income, assets, and expenses. The putative goal is for the determination of support levels. However ENTERPRISE operators and affiliates also use the declarations to plan how to maximize extraction of value from the TCE. This collaboration is evidenced by the common observation that DDICE operators and affiliate follow the business rule to "bill until the client runs out of money or patience, then quit." (or, in the case of even "white hat" operatives, finish for free). DDIJO fully comply by allowing DDIA withdrawals for nonpayment with unusual ease, in further violation of the equal protection of the laws.

959. Unfortunately, unlike commercial legal markets populated by business clients and in-house counsel, many DDIL lack the sophistication, intelligence, market awareness, or general psychological stability in a time of crisis to recognize the SAD until it is too late—if then. As such, educating the DDIL marketplace to improve awareness and thereby eliminate the competitive advantage of illegal "black hat"

-198-

operators has been a central theme both in Plaintiffs FFRRESA and BUSINESS DEVELOPMENT.

960. For the DDICE operatives, the market for perpetrating the SAD on unwary DDIL has become almost too easy—the main goal is no longer to facilitate the illegal extraction but to avoid "overfishing."  DDICE operatives must seek to maximize the value extracted from the TCE in the short term without achieving a "burned DDIL" rate that deters potential future market entrants from seeking services, or becoming "too aware" of the market dynamics enabling crime.  This balance can only be achieved through coordination among DDIA, DDIPS, and DDIJO Enterprise operatives who must defy their PROFESSIONAL DUTIES to coordinate the cabal.

961. They do so by the False Flag SAD described below, including "Poser Advocacy" "paperwads" and "kite bombs" to achieve maximum TCE extraction with as little risk for deterrence and exposure.  Hence the tendency of the DDICE to utilize irrational motivating tactics such as The PIT "fear or anger" or DDI-FICE (selfishness, greed), with "balancing" tactics such as illegal conspiracy through SAD, drives illegal market collusion.

**Interstate and International Commerce of the ENTERPRISES**

962. The activities of the DDICE affect interstate and international commerce as follows:

    a. The DVILS are authorized and enforceable under federal law and entitled to full faith and credit under the multiple state laws (18 U.S.C. § 2261(a)(1), 2265);

    b. Child Support awards may be enforced in foreign Countries through bilateral international treaty including by revoking passports of U.S. citizens;

    c. State child support awards are enforceable in all U.S. Military Courts;

    d. The affairs of families is a worldwide industry generating tens of billions of dollars acquired by the DDICE ENTERPRISES each year.

**Longevity**

963. In conducting the affairs of the ENTERPRISES, and in committing the acts, omissions, misrepresentations, and breaches referred to herein beginning as far back as 1997 and continuing up through initiation of these proceedings, RICO Defendants engaged in a pattern of racketeering activity in contravention of Title 18 United States Code § 1962(c) inasmuch as the defendant was employed by, or associated with, one or more ENTERPRISE engaged in activities that affect federal interstate and/or foreign commerce, and conducted such multiple criminal enterprise affairs by and through a pattern of racketeering activity.

**ENTERPRISE Schemes and Artifice to Defraud**

**Scheme and Artifice to Defraud 1**

**Illegal Invocation of DVILS ORDERS: Abuse of Process:**

**The Pit**

964. The central tool of the DDICE is the widespread illegal exercise of the enormous equitable powers of state DDI courts.  DDI courts exercise such powers putatively under a set of laws enacted to extend state police powers to "intervene" in intense domestic interpersonal conflict to address domestic violence.  These laws are ensconced in Family Code §§ 6211 et seq, including §§ 6200-6219, 6389, 3031, 4325, 6301, 6228, 6300-6306, 6404, 6380, 6384, 3044, 4320, 4007.5, 3190, 6203, 6209, 6205, 2040, 6253, 6306 et seq.; Civil Code §§ 3295 et seq., and Penal Code §§ 13700 et seq.. §§ 136.2, 273.6, 273.75, 166, 836, 11161, 679.05, 273.83, 868.8, 1203.3, 273.75, 1203.097, 646.91, et seq.  These laws shall hereafter be collectively referred to as the "DOMESTIC VIOLENCE INTERVENTION LEGISTLATIVE SCHEME" or "DVILS".

### DVILS Orders

965. Collectively, the DVILS create a set of practices and procedures whereby a party asserting that another within the DOMESTIC RELATIONS CLASS may quickly obtain an injunction imposing severe and onerous deprivations, restrictions, penalties, pains, and expense on another suspected of undesirable activity.  A party seeking a protective order using a state form DV 110 is requested only to "describe the abuse." (Ex. 35)   Though committing "Abuse" can form the basis of highly invasive property and liberty deprivations, it is nowhere defined in the form, and under California law, *is not a crime*.

966. Upon overcoming the procedural safeguard of "showing of good cause" for the existence of "abuse", a DDI court may grant an order imposing the following "Personal Conduct," "Move Out," "Stay Away," "Property Control" and "Child Custody and Visitation." Cal. Pen. Code §§ 136.2, 1203.097(a), 273.5(i), 646.9(k); forms DV-110, CR-160 (collectively "DVILS ORDERS") (Ex. 35).

967. The DVILS, DVIL ORDERS, and jeopardy of the "imposed disability" they represent will be referred to as "THE PIT."

968. Together, the DVILS, DVILS ORDERS constitute the central foundation of conspiracy to violate civil rights actionable under at least 18 U.S.C. 241, 242, 42 U.S.C. Plaintiffs shall borrow the term used by the DDICE itself to refer to the device hereafter as "THE PIT."   By threatening, offering, or processing its (illegal) invocation, Defendants defraud the DDIL, perpetrating one or more frauds and swindles, abuse of process, or deprivations of Family Federal Rights and CFR described herein.

969. In December, 2007 STUART confronted Defendant ABC&K about the legality of the DVILS ORDERS which he had been illegally and without notice subjected to. AC&K's BLANCHET explained the scheme: "Of course they're unconstitutional—they're illegal as Hell, but they know it's expensive to fight it, so they strike first, throw you in The Pit and make you pay or work to climb your way out."

970. BLANCHET advised: "You can either pay her to get out of it or jump through the hoops and pray you make it."

971. BLANCHET was quite accurate.  She kindly offered her firm's assistance toward either end.

972. THE PIT is the embodiment of the pervasive disregard for the rule of law pervading the DDI ENTERPRISES.  The DVILS are illegal, unconstitutional, and criminal to seek and enforce, yet their use in practice has become unremarkable—largely because those who use them benefit, and those against whom they are used are unaware of their illegality because they are mislead.

973. The DVILS ORDERS and all acts relating to soliciting, advising, obtaining, adjudicating, issuing, and enforcing are an illegal abuse of process. First, the laws on which they are based are unconstitutional.  See Ex. 1, 2.  In addition, the "DV" and "CR" "mandatory use" Forms on which the orders are inconsistent with extend beyond the statutory authorization articulated in the DVILS.  Third, the terms used, even if statutorily enabled, are fatally and unconstitutionally vague and overbroad.  Ex. 35.

974. DDICE operators and affiliates, in soliciting, threatening, offering, advertising, directing, granting, issuing, and enforcing DVILS ORDERS are violating at least sections 241 and 242 of Title 18.  The construction of a nonprofit or public enterprise funded by United States grants and fraudulent grant applications is a violation of section 371 of that Title.

<div align="center">

**Scheme and Artifice to Defraud 2**

**Abuse of Process: Conspiracy to Obtain DVILS Orders through illegal formwork, "technical assistance" and unauthorized practice of law**

</div>

975. The process of obtaining DVILS ORDERS is further illegal.  In most Counties, "domestic violence" courts have established "family law facilitator" offices, websites, forms libraries, and "self-help" workers to guide and assist citizens in obtaining orders operated by Defendants ALLIANCE, ADMINISTRATIVE OFFICE OF THE COURTS, SAN DIEGO SUPERIOR COURT, TRENTACOSTA and RODDY.  These

<div align="center">-202-</div>

1   materials and workers provide detailed, case specific advice, instructions, guidance,

2   direction, advocacy, oversight, and monitoring of the process by which the DVILS

3   ORDERS are issued.  Exs. 1, 36.  Such practice constitutes the illegal practice of law

4   under California state and federal law. *People v. Landlords Professional Services, Inc.*,

5   178 Cal.App.3d 68 (1986); *People v. Sipper*, 61 Cal.App.Supp.844, 846 (1943); *In re*

6   *Glad*. 98 B.R. 976, 977 (9th Cir.BAP 1989); *In re Anderson*, 79 B.R. 482, 484

7   (Bkrtcy.S.D.Cal.1987).  Ex. 1.

8    976. The  solicitation,  enablement,  facilitation,  advocacy  for,  issuance,  and

9   enforcement is also illegal—a violation of numerous constitutional rights and criminal

10   laws.  Plaintiff CALIFORNIA COALITION'S July 24, 2013 Cease and Desist/Notice

11   to the City of San Diego describes the illegality of this practice.  It is referenced at

12   Exhibit 1 and incorporated herein as if set forth in full.

<div align="center">

**Scheme or Artifice To Defraud 3**

**Forensic Child Custody Evaluations**

</div>

15    977. DDICE members' recommendation, appointment, use, and payment of private

16   child custody constitutes a scheme to defraud and extort DDIL.  Denominated by

17   DDICE as "Forensic Psychologists", child custody evaluators in family law disputes

18   have been a longstanding concern for hundreds of thousands of southern California

19   state courts, political representatives, and the Family Law Community, including

20   Plaintiffs.  Hotly-contested, or "high conflict" family law cases frequently center on

21   disputes over child custody.  Unfortunately, the experience of thousands of Southern

22   California parents and children suggests that the professionals recommended by DDIA,

23   appointed, endorsed, and overseen by DDIJO, and paid for by DDIL and their children

24   are a sham.  Ex. 3.

25    978. A publication by Dr. Margaret Hagen entitled "Whores of the Court: The Fraud

26   of Psychiatric Testimony and the Rape of American Justice" is available free online at

27   www.whoresofthecourt.com, referenced as Ex. 37 and incorporated herein as if set

28   forth in full.

<div align="center">-203-</div>

979. Plaintiffs have identified the existence and practice of this scheme among the ENTERPRISES, reported the same to Defendants SDCBA, brought suit to enjoin the fraud, and are presently pursuing the matter on appeal to the United States Supreme Court. *Tadros v. Lesh, et al.,* Exhibit 2, incorporated herein as if set forth in full.  A complete analysis of the numerous schemes, devices, schemes, and artifices used by Child Custody Evaluators is described in a publication entitled *Equivocal Child Abuse* by Sandra B. McPherson and Farshid Afsarifard, ISBN No. ISBN-10: 1439847762 | ISBN-13: 978-1439847763 (CRC Press, 2011) (Ex. 38).  The publication is referenced and incorporated herein as if set forth in full.

<div align="center">

**Scheme or Artifice To Defraud 4**

**Custody Evaluator Abuse of Process**

</div>

980. Petitioners have identified a pattern of deception among DDIPS and DDIA to avoid detection and oversight by refusing to obtain required authorization to operate as court-appointed agents.  Without necessary paperwork, DDIPS are susceptible to little or no judicial, professional, governmental, or parental oversight.  This practice of unauthorized "Dark Appointment" creates an environment in which the racketeering activity can exist "under the radar" of DDIJO, DDIA, and even unsuspecting DDIL. Exhibit, 2, 3, and 4 include Plaintiff CALIFORNIA COALITION'S Amicus Curie Brief *Tadros v. Doyne*, matter, explaining this matter are incorporated herein by reference as if set forth in full.

981. Perpetrating one or more of the SAD disclosed herein, evaluators defraud parents and children of millions of dollars fraudulently claiming that they can determine the "best interests of the child" by scientific means.  The Claim is a demonstrable fraud. Ex. 37.

982. The custody evaluator fraud generates tens of millions of dollars per year from families and children similarly situated.  Based on DDICE operative's misrepresentations, DDIL are lulled into a false sense of security by the DDIA, the DDIJO, and other DDIPS who "cross-refer" one another, and impose threats of severe

<div align="center">-204-</div>

1    repercussions for a DDIL failure to obey the professional referral.  See, STUART

2    ASSAULT, HARASSMENT AND ABUSE, Ex. 2 (*Tadros v. Lesh* Petition,

3    Statement of the Case, Section B, pp. 8-12, incorporated herein by reference as if set

4    forth in full).

5      983. DDIA and DDIJO participate in the SAD by recommending retaining

6    professionals like DOYNE, INC, failing to warn parents and children for the dangers,

7    expense, and jeopardy of the dangers thereof.

8                          **Scheme and Artifice to Defraud 5**

9                      **False Flag breach of PROFESSIONAL DUTIES**

10     *984.* DDICE operators regularly breach one or more of their PROFESSIONAL

11   DUTIES of loyalty, zealous advocacy, fiduciary responsibility, and professional

12   competence through one or more "false flag" frauds to induce, deprive, or deceive

13   DDIL.  These "False Flag" maneuvers involve one or more COMMERCIAL SPEECH

14   misrepresentations to unsophisticated DDIL, thereby depriving them of the benefits of

15   legal professional services, and perpetrating fraud.  "False Flag" schemes and artifices

16   include:

17     985. *Poser Advocacy:* "Poser Advocacy" is the practice and sale of what appears to

18   be the practice of law to unsophisticated DDIL.  Attorneys engaging in poser advocacy

19   act to appeal to their client's emotions, greed, or other untoward ends to generate fees

20   with no beneficial legal work performed.  Poser advocates write angry letters

21   ("paperwads"), exchange worthless formwork discovery, or repeatedly file baseless

22   motions with no hope of success ("kite bombs"), to generate what looks like legitimate

23   legal work to an unsophisticated DDIL acclimated to a daytime TV diet of Judge Judy

24   drama and CSI suspense.

25     986. In the more sophisticated commercial legal marketplace, poser advocacy is not

26   tolerated as clients insist, and attorneys abide by, legitimate practice and ethical

27   standards.  Because of the unique nature of the clients and market, DDICE members

28   are able to pass off Poser Advocacy as real legal work.  It is not.

-205-

987. Yet given the nature of the marketplace and absence of DDIL awareness of the fraud, there is little incentive to eradicate its existence.  Because it is highly profitable, even if illegal, it is therefore quietly encouraged.  Because it can only exist in a market place where all players—the attorneys, professional service providers, and even judges—play along, it requires a "cabal" enterprise to be successful.  Outsiders such as Plaintiffs who offer legal, safe, and far more efficient services are market spoilers, and as such are illegally targeted as described herein.

988. *False Flag Collusion*: DDICE Operatives regularly collude with erstwhile opponents—opposing counsel or entities representing the state, or at appropriate times DDIPS working with or on behalf of the client or jointly with the client.  Such collusion is a violation of one or more PROFESSIONAL DUTIES of loyalty, zealous advocacy to assert DDIL client rights adverse to other entites, and fiduciary responsibility.

989. *False Flag Abstention*: DDIA and DDIPS fail to observe of assert DDIL client rights when under one or more PROFESSOINAL DUTIES to do so, such as DDIPS' failure to observe constitutional restrictions on use of color of law authority.  Such failures in general include:

990. Failure to object to impermissible procedure, inadmissible evidence, and move to strike scandalous or impertinent matter;

991. Failure to insist on procedure consistent with the California Code of Civil Procedure for motions;

992. Failure to seek sanctions for improper procedure;

993. Failure to object to unconstitutional laws, DVILS ORDERS, or processes harmful to their client;

994. Permitting or cooperating with Family Court or opposing counsel to misrepresent the DDIL's rights and duties adverse to the client;

995. Otherwise failing to zealously represent the client's interests.

## Scheme and Artifice To Defraud 6

## FFR/CFR Abstention

996. DDIAs for both petitioners and respondents conspire to ignore their oaths to protect, uphold and defend the U.S. Constitution and laws of the United States, and zealously represent their clients' interests adverse to adversary litigants and the State of California in asserting the Family Federal Rights and other rights during poser advocacy in Family Court.  In doing so they breach one or more PROFESSIONAL DUTIES, thereby providing ineffective, fraudulent, incompetent, and harmful advice to their clients and community.  Both petitioner and respondent counsels ignore the illegality of the DVILs and withhold objections to increase job security and the "billable activity" provided by The Pit—either seeking to throw a litigant in it, or working to dig one out.  They fail to advise their clients' rights to object to the constitutionality of such orders as doing so would deprive the DDI of a highly profitable tool. Their failure to do so establishes an industry standard of private abstention from exercise of constitutional rights, suiting DDIA, DDISW, DDISO, and DDIJO alike.

997. In abstention, DDIAs violate their PROFESSIONAL DUTIES, oaths of office, as well as their duties to individual clients, and in so doing also commit invidious discrimination against the EQUAL PROTECTON CLASSES.

998. To the extent that DDILs raise objections or observations relating to the illegal acts, DDIA and DDISW CULPABLY advise that the U.S. Constitution does not prohibit such acts, and that there is "nothing you can do" to prevent judges from issuing illegal orders, or otherwise WRONGFULLY DISSUADE DDILs from their own FFRRESA.  The representation is false.

## DDIJO Acquiescence

999. These SAD cannot go unnoticed by any competent legal professional, or unacted upon by any ethical one.  And yet they are prolific among Defendants, indicating that the DDIJO themselves are at best deliberately indifferent to the SAD and

1 ENTERPRISES that run them, further facilitating this pernicious fraud on DDIL in

2 violation of Judicial Canon 2 to "ensure rights", PROFESSIONAL DUTIES, of all

3 parties, and in defiance of the rule of law.

4

5 **RICO §1961(5) PATTERN OF RACKETEERING ACTIVITY**

6 **ALLEGATIONS**

7 **18 U.S.C. § 1961(5)**

8 **COMMISSION OF RICO §1961(1)(B) RACKETEERING ACTIVITY:**

9 1000.        RICO Defendants engage in the following "racketeering activity," as that

10 term is defined pursuant to 18 U.S.C. § 1961(5) ("RACKETEERING ACTIVITY").

11 RICO Defendants' RACKETEERING ACTIVITY as committing, aiding and abetting,

12 or conspiring to commit, tens of thousands of violations of the following laws within

13 the past ten years, including:

14   A. Fraud and related activity in connection with identification documents,

15   authentication features, and information: 18 U.S.C. § 1028;

16   B. Mail Fraud: 18 U.S.C. § 1341

17   C. Wire Fraud: 18 U.S.C. § 1343

18   D. Bank Fraud: 18 U.S.C. § 1344

19   E. Intangible Personal Property Right Deprivation: Title 18 U.S.C. § 1346.

20   F. Influencing or injuring officer or juror generally: 18 U.S.C. § 1503;

21   G. Obstruction of proceedings before departments, agencies, and committees: 18

22   USC § 1505;

23   H. Obstruction of Criminal Investigations: 18 U.S.C. § 1510;

24   I. Tampering with a witness, victim, or an informant: 18 U.S.C. § 1512;

25   K. Retaliating against a witness, victim, or an informant: 18 U.S.C. § 1513;

26   L, Peonage; obstructing enforcement: 18 U.S.C. § 1581,

27   M. Enticement into slavery; 18 U.S.C. § 1583;

28   N. Sale into involuntary servitude: 18 U.S.C. § 1584;

O. Seizure, detention, transportation or sale of slaves: 18 U.S.C. § 1585;

P. Service on vessels in slave trade: 18 U.S.C. § 1586;

Q. Possession of slaves aboard vessel: 18 U.S.C. § 1587;

R. Forced labor: 18 U.S.C. § 1589;

S. Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor: 18 U.S.C. § 1590;

T. Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor: 18 U.S.C. 1592;

U. Benefitting financially from peonage, slavery, and trafficking in persons: 18 U.S.C. § 1593A;

V. Conspiracy, attempt to commit acts of peonage, slavery, proscribed: 18 U.S.C. § 1594;

W. Interference with commerce by threats or violence: 18 USC § 1951;

X. Interstate and foreign travel or transportation in aid of racketeering enterprises: 18 U.S.C. § 1952;

Y. Violent crimes in aid of racketeering activity: 18 U.S.C. § 1959

Z. Principal and Aider and Abettor, Attempt, Conspiracy Liability: Title 18 U.S.C. § 2(a) and (b).


**RACKETEERING COUNT 1**

**18 U.S.C. §§ 1962(c), (d)**

**Frauds and Swindles**

**18 U.S.C. §§ 1341, 1343, 1344**

**Against Defendants DOYNE INC, BLANCHET, VIVIANO, FRITZ**

1001.     This is a Count asserting numerous Claims for relief under RICO section 1962 (c) and (d), based upon predicate crimes actionable under 18 U.S.C. § 1341, 1343, and 1346 for Mail, Wire, and Bank Fraud, against defendants as identified per Claim in this Count.

-209-

1002.      All prior paragraphs are re-alleged and incorporated as if set forth in full.

**General Allegations to Racketeering Count 1**

1003.      Defendants, having affiliated with one or more ENTERPRISE and devising or intending to devise one or more SAD for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, delivered invoices, accountings, billing statements, letters, reports, and other correspondence into the U.S. mails, email, telephone facsimile to STUART.

1004.      Such use of U.S. mails, emails, facsimile, and wire occurred as follows:

**A. VIVIANO:**

1005.      Beginning on about July, 2007 and every month thereafter through an including December, 2007 having committed or while committing one or more SAD, fraudulently communicated with STUART regarding, SAD misrepresentations, billing, accountings, filings, and other false statements in furtherance thereof, requesting to be paid therefore in the approximate amount of $45,000.

1006.      VIVIANO committed the follow SAD during this time frame:

1007.      June - August, 2007: False Flag by affiliation with BIERER in violation of one or more PROFESSOINAL DUTIES.  Viviano collaborated with BIERER and failed to take any action to prohibit or remedy the abduction of STUART'S child from his home by his ex-wife, theft of STUART'S personal property, and stalking by his ex-wife.

1008.      July, 2007: False Flag affiliation with BIERER in engagement of a social worker to "assess" STUART.  The "assessment" was demanded by BIERER with cooperation by VIVIANO.  The "assessment" was fraudulent, and the "assessor" himself admitted his work was useless, unnecessary, and ordinarily used as a tool to manipulate divorce clients.  When STUART advised VIVIANO of the same, she executed False Flag SAD and extortion to prevent STUART from asserting is rights to avoid the same. STUART nevertheless endured substantial monetary loss due to unnecessary assessment fees, attorneys fees, and lost custody time with his son.

## B. BLANCHETS and ABC&K

1009.      Beginning in about December, 2007 and every month thereafter through and including November, 2008 having committed or while committing one or more SAD, fraudulently communicated with STUART regarding, SAD misrepresentations, billing, acCountings, filings, and other false statements in furtherance thereof, requesting to be paid therefore in the approximate amount of $250,000.

1010.      BLANCHET and ABC&K'S False Flag deception was specifically directed to concealing the criminal and conspiratorial nature of each ENTERPRISE to deceive STUART.

1011.      In or about October, 2008, STUART approached BLANCHET for legal advice concerning his interactions with DOYNE INC.  STUART had detected a number of irregular practices of DOYNE INC in his mediation sessions with DOYNE, including certain of those breaches of contract set forth above.

1012.      STUART asked BLANCHET if such behavior was irregular—as DOYNE INC'S behavior as a mediator was inconsistent with his years of experience and dozens of mediators.  BLANCHET advised STUART to the effect that "that's the way it's done in Family Court" and that such practices were ordinary, safe, and legal. BLANCHET advised that DOYNE always worked toward 50/50 custody, but that sometimes he was "just slow to get there."

1013.      Based upon BLANCHET'S assurances, STUART continued in mediation sessions with DOYNE INC through September and October, 2008.  In October, DOYNE INC'S behavior became more alarming, as it became apparent that DOYNE was not abiding by his representations.

1014.      STUART again alerted BLANCHET, this time asking BLANCHET to take action on his behalf to intervene and correct DOYNE INC'S malingering direction.

1015.      BLANCHET reacted to assure and deceive STUART that "this is just the way it's always done" and that DOYNE INC makes up his mind first and then fits facts

suit his conclusion.  BLANCHETS also advised to the effect that "if you make a big deal about it he will yank custody from you and you'll have to start all over again."

1016.   STUART was persuaded by BLANCHET'S assurances that DOYNES' practices were permitted in Family Law matters, justified under some body of law or precedent, and otherwise advisable, and that there was "nothing you can do."  He was also frightened that if he did assert his concerns to DOYNE or insist that BLANCHET take the matter with DOYNE, that DOYNE INC. would retaliate in making arbitrary decisions in his ongoing custody mediation sessions.

1017.   STUART approached BLANCHET several times thereafter with similar concerns.  BLANCHET continued to advise STUART "that's just the way it's done" and "if you make a big deal you'll lose custody of your son."  Based on what he believed to be independent professional counsel and fear induced by BLANCHET'S warning, STUART took no adverse action to interfere with the custody evaluation process.

1018.   In truth, BLANCHET was a co-conspirator and agent of DOYNE INC. In the above representations and counsel to STUART, BLANCHET was assisting DOYNE INC in perpetration of DOYNE'S own SAD in order to deceive, delay, and deter STUART from learning the true facts of her and her firm's relationship with DOYNE INC., and the ENTERPRISES.

## C. FRITZ

1019.   FRITZ, while engaged by STUART'S ex-wife, collaborated with BLANCHET, ABC&K and DOYNE to cause engagement of DOYNE and DOYNE, INC. knowing his services to be fraudulent, thereby defrauding his own client, Ms. Stuart.

1020.   Beginning in about May, 2008 and every month thereafter through and including March, 2011, FRITZ delivered invoices for activities in extorting Ms. Stuart, and in furtherance of one or more SAD, requesting to be paid by STUART therefore in the approximate amount of $190,000.

## D. DOYNE INC.

1021.    Beginning in about May, 2008, and every month thereafter through and including March, 2010, having committed or while committing one or more SAD, ABUSE    OF    PROCESS,    BREACH    OF    CONTRACT,    FRAUD, EXTORTION,ROBBERY,  and  INTENTIONAL  INFLICTION  OF  EMOITNAL DISTRESS, fraudulently communicated with STUART regarding the same, including delivering SAD misrepresentations, billing, acCountings, filings, and other false statements in furtherance thereof, requesting to be paid therefore in the approximate amount of $17,500.

1022.    After STUART'S February letter to DOYNE INC., his approach to STUART became hostile and threatening.  He telephoned STUART several times demanding that STUART "get with the program."  DOYNE INC'S "get with the program" demand came in the context of STUART'S refusing to pay DOYNE, INC'S bills in response to DOYNE'S several demands that STUART "come current." STUART advised he would continue participating in mediation, but that based on DOYNE'S misrepresentations, he no longer felt obligated to pay DOYNE for his past unauthorized work or any future work going forward. DOYNE responded in very unprofessional tones "that's not how it works," and "if you son is important to you, you'll come current."

1023.    DOYNE repeated the "get with the program" and "if your son is important to you" threats to STUART and his counsel Sondra Southerland before a hearing in about April, 2009.  Defendants' records or recorded testimony will reflect that DOYNE INC repeated the "get with the program" threat again at the April 2009 hearing while under oath.

1024.    STUART perceived DOYNE'S get with the program threats to constitute a scheme whereby DOYNE would induce his clients to engage him for unnecessary— indeed    harmful—"services,"    generate    conflict    by    dangling    custody

-213-

"recommendations" between STUART and his ex-wife, and create a cycle of extortion, fraud, and invitations to bribe to sway capricious decisions.

1025.    When STUART identified this scheme to DOYNE refused to engage, refused to pay past bills, and advised he was seeking to fire DOYNE, DOYNE responded with threats to extort, abuse process, commit perjury, and vilify STUART in Family Court proceedings.

1026.    Because BLANCHET refused to reign in DOYNE INC. and STUART'S efforts to fire him did not deter DOYNE from continuing to terrorize STUART in court, with CPS, and by independent threatening telephone calls, STUART was deterred, terrorized, frightened, and oppressed from undertaking any action against DOYNE for fear he would, indeed, never see your son again.

1027.    Based upon DOYNE'S incontrovertibly false report of child abuse to CPS, SCHALL'S "emergency" custody order shifting custody to Ms. Stuart thereby, and the ensuring relentless pattern of obscenely illegal HARASSMENT and ABUSE, STUART has—as threatened—not seen his son since April, 2009, after DOYNE's initial false report to CPS.

1028.    Defendants and each of them further committed fraud by use of the Internet, describing, advocating, and supporting their SAD and ENTERPRISES as legitimate and healthy practices, and failing to advise Plaintiffs and the general public of the true nature of their ENTERPRISES and SAD.

1029.    The entirety of COUNT 11 and each Claim therein is incorporated herein by reference as if set forth in full.

1030.    As an actual and proximate result, STUART has been damaged or injured in a nature and amount to be proven at trial.

## RACKETEERING COUNT 2

### 18 U.S.C. §§ 1962(c), (d)

### Honest Services Fraud

### 18 U.S.C. § 1346

### Against All RICO Defendants

1031.     This is a Count asserting numerous Claims for relief under RICO section 1962 (c) and (d), based upon predicate crimes actionable under 18 U.S.C. § 1346 for Honest Services Fraud, against defendants as identified per Claim in this Count.

1032.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

### General Allegations to Count 2

1033.     Defendants engaged in one or more SAD by and in conjunction with the ENTERPRISES to deprive Plaintiffs of the intangible right of honest services.

1034.     On information and belief, Defendants, and each of them, support and promote one another in perpetrating each SAD actionable fraud, bribery and/or kickbacks, wherein a quid pro quo (monetary, preferential referral, business referral, and/or some other form of benefit) is provided by the RICO defendants to persons unknown to plaintiffs to assure that Plaintiffs in their PUBLIC BENEFIT ACTIVITIES would be effectively punished, silenced, discredited, and rendered ineffective as an effectively competing alternative vehicle offering reasonable and realistic forms of professional quality services to counsel and advise individual parents and guardians addressing family law, child custody, and domestic relations issues.

1035.     In the case of DOYNE and BLANCHET, these quid-pro-quo exchanges are backed up with use of one or another SAD, such as "that's just how it is" or extortion such as "if you ever want to see your son again …." which are enabled by the abuse of process tools of The Pit and DDIJO abstention/enforcement of illegal DVILS ORDERS.  In STUART'S case, additional muscle was provided by SDCBA'S security guards, and ultimately the familial relationships between divorce judges and CITY ATTORNEY prosecutors.

1036.    The   fraudulent   quid-pro-quo   ignores   ethical   duties   of   loyalty   and zealous   advocacy   among   putative   opponent   lawyers,   and   judicial   officials   who disregard their ethically-required adversarial obligations and duties to enforce law to re-define their opponents as their own clients, take their opponents interests above their clients' collaborating with opposing counsel and state interests under color of law to extort, defraud, and abuse their own client base, whom they refer to as "Litigants Behaving Badly" in a grotesque and reprehensible criminal enterprise conducted with full knowledge, consent, and contribution from public and private servants alike.

1037.    Such   conduct   constitutes   the   deprivation   of   the   intangible   personal property right to receive 'honest-services' for purposes of 18 U.S.C.  §§ 1341, 1343, and 1346.

1038.    As an actual and proximate result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

## RACKETEERING COUNT 3

### 18 U.S.C. 1962(c), (d)

### Kidnapping

### (Cal. Pen. C. §§ 207(a), (c), 209(a), 236)

1039.    This is a Count asserting Claims for Relief under 18 U.S.C. § 1962 (c) and (d) based upon commission of the predicate crimes of Cal. Pen.C. § 207(a) and (c), Aggravated Kidnapping under Cal. Pen.C. § 209(a), and Felony Unlawful Use of Force under Cal. Pen. C. § 236 against Defendants as identified in each Claim for Relief in this Count.

1040.    Each Claim for Relief in this Count is actionable as a predicate crime under 18 U.S.C. § 1961(1)(A) as "any act or threat involving … kidnapping, … robbery, bribery, extortion … which is chargeable under State law and punishable by imprisonment for more than one year."

1041.    Each act of each Defendant in each Claim in this Count was committed in conducting, participating in, conspiracy with, or aiding and abetting in furtherance of the purposes of each ENTERPRISE with which the Defendants is affiliated.

1042.    At all times relevant to this Count, each Defendant hereto acted CULPABLY with knowledge of the illegal nature of the STUART ASSAULT and Defendants' and each of their, intent to interfere illegally with Plaintiffs' PUBLIC BENEFIT ACTIVITIES and DUE ADMINISTRATION OF JUSTICE.

1043.    At no time relevant to this Count did STUART act on his free will or consent.

1044.    At no time relevant to this Count did any Defendant act with probable cause, good faith, or pursuant to lawful authority.

<div align="center">

**Racketeering Claim for Relief 3.1**

**Kidnapping**

**Cal. Pen. C. § 207(a)**

**Against STUART ASSAULT COORDINATORS**

</div>

1045.    This is a Claim for kidnapping under Cal.Pen.C. §207(a) against each STUART ASSAULT COORDINATOR Defendant based upon their activities in the STUART ASSAULT as detailed above and incorporated herein by reference.

1046.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1047.    By the acts attributed to each STUART ASSAULT COORDINATOR Defendant detailed in the STUART ASSAULT and Count 1, STUART ASSAULT COORDINATOR Defendants, and each of them, forcibly, or by any other means of instilling fear, stole, took, held, detained, and arrested, attempted to do so, and aided and abetted others in doing so, STUART, and carried STUART a substantial distance and into another part of the County of San Diego.

1048.    As an actual and foreseeable result, Plaintiffs have been injured in a nature and amount to be proven at trial.

## Racketeering Claim for Relief 3.2

### Kidnapping

### Cal. Pen. C. § 207(a)

### Against CITY ATTORNEY DEFENDANTS, GROCH, GORE

1049.     This is a Claim for kidnapping under Cal.Pen.C. §207(a) against each CITY ATTORNEY Defendant, SDCBA, SDCBA DOE 2, CHUBB, CHUBB DOE 1, GROCH, and GORE based upon their activities in the MALICIOUS PROSECUTION, PROSECUTORIAL   MISCONDUCT,   and   each   of   the   six   FALSE IMPRISONMENTS,

1050.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1051.     At all relevant times GORE was or should have been aware of the true facts as alleged with regard to the STUART ASSAULT, PUBLIC BENEFIT ACTIVITIES,   DUE   ADMINISTRATION   OF   JUSTICE,   MALICIOUS PROSECUTION, and PROSECUTORIAL MISCOUNDUCT.

1052.     By the acts attributed CITY ATTORNEY DEFENDANTS, GORE, and each of them, forcibly, or by any other means of instilling fear, stole, took, held, detained, and arrested, attempted to do so, and aided and abetted one another in doing so, STUART, and carried STUART a substantial distance and into another part of the County of San Diego.

1053.     As an actual and foreseeable result, Plaintiffs have been injured in a nature and amount to be proven at trial.

### Racketeering Claim for Relief 3.3

### Kidnapping

### Cal. Pen. C. § 207(c)

### Against CITY ATTORNEY DEFENDANTS, GROCH, GORE

1054.    This is a Claim for kidnapping under Cal.Pen.C. § 207(c) against CITY ATTORNEY DEFENDANTS, SDCBA, SDCBA DOE 2, CHUBB, CHUBB DOE 1, GROCH, and GORE

1055.    Plaintiffs re-allege all prior paragraphs as if set forth in full.

1056.    By committing the acts attributed to them in the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, including each of the three FALSE ARRESTS, the CITY ATTORNEY DEFENDANTS, SDCBA, SDCBA DOE 2, CHUBB, CHUBB DOE 1,GROCH, and GORE, and each of them forcibly, and by the acts ascribed to them in the MALICIOUS PROSECUTION, instilled fear, took, held, detained, and arrested STUART, with a design to force STUART to leave the State of California.

1057.    As an actual and foreseeable result, Plaintiffs have been injured in a nature and amount to be proven at trial.

### Racketeering Claim for Relief 3.4

### Kidnapping

### Cal. Pen. C. § 209(a)

### Against each CITY ATTORNEY Defendant, GROCH, SDCBA, SDCBA DOE 2, CHUBB, CHUBB DOE 1, and GORE

1058.    This is a Claim for kidnapping under Cal.Pen.C. §209(a) based upon Defendants' activities in the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and each of the six FALSE IMPRISONMENTS.

1059.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1060.    By committing the acts attributed to each of them, CITY ATTORNEY DEFENDANTS, GORE, and each of them, seized, confined, inveigled, enticed,

-219-

1  abducted, concealed, kidnapped and carried away STUART by the means detailed in

2  the MALICIOUS PROSECUTION, and PROSECUTORIAL MISCONDUCT with

3  intent to hold and detain STUART.

4  1061.     As an actual and foreseeable result, Plaintiffs have been injured in a nature

5  and amount to be proven at trial.

6  <center>**Racketeering Claim for Relief 3.5**</center>

7  <center>**Kidnapping**</center>

8  <center>**Cal. Pen. C. § 209(a)**</center>

9  <center>**Against each CITY ATTORNEY Defendant, DOYNE TERRORISM**</center>

10  <center>**Defendants, GROCH, SDCBA, SDCBA DOE 2, CHUBB, CHUBB DOE 1, and**</center>

11  <center>**GORE**</center>

12  1062.     This is a Claim for kidnapping under Cal.Pen.C. §209(a) based on

13  Defendants' activities in the MALICIOUS PROSECUTION, PROSECUTORIAL

14  MISCONDUCT, and each of the six FALSE IMPRISONMENTS.

15  1063.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

16  1064.     By the acts attributed to CITY ATTORNEY DEFENDANTS, DOYNE

17  TERRORISM Defendants, GROCH, CHUBB, CHUBB DOE 1, SDCBA, SDCBA

18  DOE 2, and GORE, and each of them, Defendants held, detained, STUART extort and

19  exacted, and attempted, aided and abetted, and conspired with others to do so, from

20  STUART money and valuable things consisting of, inter alia, (1) money payments to

21  DOYNE and DOYNE, INC., (2) abandonment of money Claims against BLANCHET

22  and VIVIANO, (3) payment of money Claims by FRITZ, (4) abandonment of the

23  $10,000,000 CLAIM AND DEMAND, (5) abandonment of the competitive PUBLIC

24  BENEFIT ACTIVITES, (6) abandonment of the DUE ADMINISTRATION OF

25  JUSTICE.

26  1065.     As an actual and foreseeable result, Plaintiffs have been injured in a nature

27  and amount to be proven at trial.

28

<center>-220-</center>

**Racketeering Claim for Relief 3.6**

**Kidnapping**

**Cal. Pen. C. § 236**

**Against STUART ASSAULT COORDINATOR, SDCBA DOE 1, CHUBB, and CHUBB DOE 1**

1066.     This is a Claim for felony False Imprisonment under Cal. Pen.C. §236 in connection with kidnapping Defendant based on their activities in the STUART ASSAULT.

1067.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1068.     By the acts attributed to STUART ASSAULT COORDINATOR detailed in the STUART ASSAULT, Count 1, Defendants, and each of them unlawfully threatened, attempted, and aided and abetting others in violating the personal liberty of STUART in such a way as to place him in serious jeopardy of grave personal injury and property loss, causing serious bodily injury, and mental distress.

1069.     As an actual and foreseeable result, Plaintiffs have been injured in a nature and amount to be proven at trial.

**Racketeering Claim for Relief 3.7**

**Kidnapping**

**Cal. Pen. C. § 236**

**Against each CITY ATTORNEY DEFENDANTS, CHUBB, CHUBB DOE 1, SDCBA, SDCBA DOE 2, GROCH, and GORE**

1070.     This is a Claim for felony False Imprisonment under Cal. Pen.C. § 236 in connection with kidnapping based on their activities in the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and each of the six FALSE IMPRISONMENTS.

1071.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1072.     By the acts attributed to each CITY ATTORNEY Defendant, CHUBB, CHUBB DOE 1, SDCBA, SDCBA DOE 2, GROCH, and GORE based upon their

activities in the MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and each of the six FALSE IMPRISONMENTS, Defendants, and each of them, unlawfully threatened, attempted, and aided and abetting others in violating the personal liberty of STUART in such a way as to place him in serious jeopardy of grave personal injury and property loss, causing serious bodily injury, and mental distress.

1073.　　As an actual and foreseeable result, Plaintiffs have been injured in a nature and amount to be proven at trial.

## RACKETEERING COUNT 4

### Extortion

### 18 U.S.C. § 1951 and Cal Pen.C. § 518

### DOYNE TERRORISM DEFENDANTS, BLANCHET/DOYNE FRAUD, CITY ATTORNEY DEFENANTS, CHUBB Defendants

1074.　　This is a Count against Defendants under 18 U.S.C. § 1962 (c) and (d), based upon predicate crimes of extortion under 18 U.S.C. § 1951 and Cal. Pen.C. § 518 under 18 U.S.C. § 1961(1) (A) as "any act or threat involving … kidnapping, … robbery, bribery, extortion … which is chargeable under State law and punishable by imprisonment for more than one year."

### Racketeering Claim For Relief 4.1

### Extortion, Robbery

### 18 U.S.C. § 1951

### Against Defendants DOYNE, DOYNE, INC., BLANCHET, ABC&K, VIVANO, VIVIANO, INC., FRITZ, BASIE & FRITZ, SCHALL, CHUBB, CHUBB DOE 1, J. GOLDSMITH, GARSON, GROCH

1075.　　This is a Claim against Defendants for extortion and robbery pursuant to 18 U.S.C. § 1951.

1076.　　All prior paragraphs are re-alleged and incorporated as if set forth in full.

-222-

1077.    Defendants, in committing each act described in the (a) DOYNE TERRORISM, (b) BLANCHET/DOYNE FRAUD, (c) the response to the CLAIM AND DEMAND, (d) MALICIOUS PROSECUTION and (e) PROSECUTORIAL MISCONDUCT, attempted, conspired, aided and abetted, and did obstruct, delay, and affect commerce or the movement of any article or commodity in commerce, namely, money and valuable things consisting of, inter alia, (1) money payments to DOYNE and DOYNE, INC., (2) abandonment of money Claims against BLANCHET and VIVIANO, (3) payment of money Claims by FRITZ, (4) abandonment of the $10,000,000 CLAIM AND DEMAND, (5) abandonment of the competitive PUBLIC BENEFIT ACTIVITES, and (6) abandonment of the DUE ADMINISTRATION OF JUSTICE by robbery and extortion, committed and threatened physical violence to STUART, his son Croix Stuart, and his PROPERTY in furtherance of a plan or purpose to extort and rob STUART.

1078.    As an actual and foreseeable result, STUART has been damaged and injured in a nature and amount to be proven at trial.

<div align="center">

**Racketeering Claim For Relief 4.2**

**Cal. Pen.C. § 518**

**Against Defendants DOYNE, DOYNE, INC., BLANCHET, ABC&K, VIVANO, VIVIANO, INC., FRITZ, BASIE & FRITZ, SCHALL, CHUBB, J. GOLDSMITH, GARSON, GROCH**

</div>

1079.    This is a Claim against Defendants for extortion pursuant to Cal. Pen.C § 518 as a crime under 18 U.S.C. § 1961(1)(A) as "any act or threat involving … kidnapping, … robbery, bribery, extortion … which is chargeable under State law and punishable by imprisonment for more than one year."

1080.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1081.    Defendants, and each of them, in committing each act alleged above, attempted, conspired, aided and abetted, and did obtain property, namely (1) payment of money and abandonment of money Claims relating to DOYNE and DOYNE, INC.,

<div align="center">-223-</div>

(2) payment of money and abandonment of money Claims money Claims relating to BLANCHET and VIVIANO, (3) payment of money Claims by FRITZ, (4) abandonment of the $10,000,000 CLAIM AND DEMAND, (5) abandonment of the competitive PUBLIC BENEFIT ACTIVITES, and (6) abandonment of the DUE ADMINISTRATION OF JUSTICE from STUART with his consent (1) induced by a wrongful use of force or fear (2) under color of official right in the (a) DOYNE TERRORISM, (b) BLANCHET/DOYNE FRAUD, (c) the response to the CLAIM AND DEMAND, (d) MALICIOUS PROSECUTION and (e) PROSECUTORIAL MISCONDUCT.

1082.     As an actual and foreseeable result, STUART has been damaged and injured in a nature and amount to be proven at trial.

## RACKETEERING COUNT 5
### Obstruction of Justice
### 18 U.S.C. §§ 1962(c), (d)

1083.     This is a Count asserting Claims for relief under RICO section 1962 (c) and (d), based upon predicate crimes actionable against Defendants identified in each Claim of this Count.

### Racketeering Claim for Relief 5.1
### Obstruction of Justice
### 18 U.S.C. §§ 1962(c), (d)
### 18 U.S.C. § 1503

This is a Claim against Defendants SDCBA, ODO, ODO DOES 1 and 2, each STUART ASSAULT COORDINATOR, CHUBB, CHUBB DOE 1, CITY ATTORNEY DEFENDANTS, GROCH, GORE, NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL SMITH, MARCQ, CSB-INVESTIGATIONS, and WATKINS for Influencing Or Injuring Officer Or Juror Generally pursuant to 18 U.S.C. § 1503.

-224-

1084.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1085.     Defendants, by the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE corruptly, by threats and force,  by threatening letter or communication, endeavored to influence, intimidate, and impede STUART in performance of his PROFESSIONAL DUTIES, and corruptly or by threats or force, and by threatening letter or communication, influenced, obstructed, and impeded, and endeavors to influence, obstruct, and impede, Plaintiffs from continuing in their cooperation with the FEDERAL LAW ENFORCEMENT OFFICERS in pursuing the DUE ADMINISTRATION OF JUSTICE.

1086.     As an actual and proximate result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**Racketeering Claim for Relief 5.2**

**Obstruction of Justice**

**18 U.S.C. §§ 1962(c), (d)**

**18 U.S.C. § 1505**

1087.     This is a Claim against Defendants SDCBA, ODO, STUART ASSAULT COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH, GORE, SIMI, BATTSON, NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL SMITH, MARCQ, CSB-INVESTIGATIONS, WATKINS for Obstruction of proceedings before departments, agencies, and committees pursuant to 18 U.S.C. § 1505.

1088.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1089.     Defendants corruptly and by force or threat of force in the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE endeavored to and did influence, obstruct, or impede Plaintiffs PUBLIC BENEFIT ACTIVITES and

1  the DUE ADMINISTRATION OF JUSTICE before FEDERAL LAW
2  ENFORCEMENT OFFICERS, and the due and proper exercise of the power of inquiry
3  under which any inquiry or investigation is being had by either House, or any
4  committee of either House or any joint committee of the Congress of the United States
5  pursuant to PLAINIFFS' PUBLIC BENEFIT ACTIVITIES before the Representatives
6  of the United States.

7  1090.      As an actual and proximate result, Plaintiffs have been damaged or injured
8  in a nature and amount to be proven at trial.

9

10                          **Racketeering Claim for Relief 5.3**
11                              **18 U.S.C. §§ 1962(c), (d)**
12                     **Tampering with a witness, victim, or informant**
13                            **18 U.S.C. § 1512(a)(2)(A)**

14  1091.      This is a Claim against Defendants SDCBA, ODO, STUART ASSAULT
15  COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH, GORE,
16  SIMI, BATTSON, NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL,
17  SCHALL SMITH, MARCQ, CSB-INVESTIGATIONS, and WATKINS for
18  Tampering with a witness, victim, or informant pursuant to 18 U.S.C. § 1512(a)(2)(A).

19  1092.      All prior paragraphs are re-alleged and incorporated as if set forth in full.

20  1093.      Defendants, by the (1) STUART ASSAULT, (2) MALICIOUS
21  PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS
22  OBSTRUCTION OF JUSTICE CULPABLY used and threatened use of physical
23  force, including confinement, against STUART, and the threat of physical force against
24  Plaintiffs and their affiliates, at the SDCBA SEMINAR, and attempted to do so, with
25  intent to influence, delay, or prevent the testimony of Plaintiffs and their affiliates, in
26  their FFRRESA and THE DUE ADMINISTRATION OF JUSTICE.

27  1094.      As an actual and proximate result, Plaintiffs have been damaged or injured
28  in a nature and amount to be proven at trial.

1

2

**Racketeering Claim for Relief 5.4**

3

**18 U.S.C. §§ 1962(c), (d)**

4

**Tampering with a witness, victim, or informant**

5

**18 U.S.C. § 1512(a)(2)(B), (C)**

6   1095.      This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO,

7   STUART   ASSAULT   COORDINATORS,   CHUBB,   CITY   ATTORNEY

8   DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE,

9   WOHLFEIL,  SCHALL,  SMITH,  MARCQ,  CSB-INVESTIGATIONS,   and

10  WATKINS for Tampering with a witness, victim, or informant pursuant to 18 U.S.C.

11  § 1512(a)(2)(B) and (C).

12  1096.      All prior paragraphs are re-alleged and incorporated as if set forth in full.

13  1097.      Defendants,  by  the  (1)  STUART  ASSAULT,  (2)  MALICIOUS

14  PROSECUTION,  (3)  PROSECUTORIAL  MISCONDUCT,  and  (4)  NESTHUS

15  OBSTRUCTION OF JUSTICE CULPABLY caused or induced Plaintiffs and their

16  affiliates to CHILL, and hindered, delayed, and prevent Plaintiffs' and their affiliates'

17  PUBLIC BENEFIT ACTIVITIES and DUE ADMINISTRATION OF JUSTICE to a

18  FEDERAL LAW ENFORCEMENT OFFICER.

19  1098.      As an actual and proximate result, Plaintiffs have been damaged or injured

20  in a nature and amount to be proven at trial.

21  **Racketeering Claim for Relief 5.5**

22  **18 U.S.C. §§ 1962(c), (d)**

23  **Tampering with a witness, victim, or informant**

24  **18 U.S.C. § 1512(b)**

25  1099.      This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO,

26  STUART   ASSAULT   COORDINATORS,   CHUBB,   CITY   ATTORNEY

27  DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE,

28  WOHLFEIL,  SCHALL,  SMITH,  MARCQ,  CSB-INVESTIGATIONS,   and

-227-

WATKINS for Tampering with a witness, victim, or informant pursuant to 18 U.S.C. § 1512(b).

1100.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1101.    Defendants, by the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE CULPABLY used and attempted to use intimidation, threatened, and corruptly persuaded Plaintiffs and their affiliates, to

(1) influence, delay, or prevent Plaintiffs' PUBLIC BENEFIT ACTIVITIES in the DUE ADMINISTRATION OF JUSTICE;

(2) cause or induce Plaintiffs and their affiliates to CHIILL, and

(3) hinder, delay, or prevent Plaintiffs PUBLIC BENEFIT ACTIVITY communications to FEDERAL LAW ENFORCEMENT OFFICERS, the Grand Jury, or a Judge of the United States District Court for the Southern District of California the DDIJO COMPLAINTS, DOYNE COMPLAINTS, and other violations of the Civil Rights Criminal and Civil Statutes.

1102.    As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

## Racketeering Claim For Relief 5.6

## Tampering with a witness, victim, or informant

## 18 U.S.C. § 1512(c)

1103.    This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO, STUART ASSAULT COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, SMITH, MARCQ, CSB-INVESTIGATIONS, and WATKINS for Tampering with a witness, victim, or informant pursuant to 18 U.S.C. § 1512(c).

1104.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1105.    Defendants, by the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE, CULPABLY corruptly obstructed, influenced, or impeded the DUE ADMINISTRATION OF JUSTICE and attempted to do so.

1106.    As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

<div align="center">

**Racketeering Claim for Relief 5.7**

**18 U.S.C. §§ 1962(c), (d)**

**Tampering with a witness, victim, or informant**

**18 U.S.C. § 1512(c)**

</div>

1107.    This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO, STUART ASSAULT COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, SMITH, MARCQ, CSB-INVESTIGATIONS, WATKINS for Tampering with a witness, victim, or informant Pursuant to 18 U.S.C. § 1512(c).

1108.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1109.    Defendants by the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE corruptly and CULPABLY obstructed, influenced, or impeded the DUE ADMINISTRATION OF JUSTICE and attempted to do so.

1110.    Defendants acted corruptly in making the fraudulent and coercive statements attributed to them in each section above, thereby acting with an improper purpose to obstruct, thwart or mislead STUART and CALIFORNIA COALITION, its members and associates, into diverting their contacts with the U.S. Attorney's Office, F.B.I, and others in the DUE ADMINISTRATION OF JUSTICE and PUBLIC BENEFIT ACTIVITIES.

1111.    BATTSON stated that the DDIJO COMPLAINT I would be handled appropriately, fully, and competently by the Commission on Judicial Performance,

<div align="center">-229-</div>

thereby causing STUART to continue ENGAGEMENT primarily with the Commission on Judicial Performance rather than primarily pursuing the matter in federal district court, thereby obstructing, influencing, or impeding the DUE ADMINISTRATION OF JUSTICE, including this Action, and attempting to do so.

1112.     Defendants' false, misleading, deceptive, concealing, or destroying behavior included;

A.   That the DDIJO COMPLAINT allegations, including Claims relating to violations of the United States Constitution and federal criminal law, would be fully and fairly investigated;

B.   That the Commission on Judicial Performance has no jurisdiction over Defendant DOYNE INC. because he is not an elected or appointed judicial official;

C. That the DDIJO COMPLAINTS would be maintained in confidence and not disclosed to DDIJO Defendants;

D. That STUART should not pursue DDIJO COMPLAINT I in federal court as the Commission on Judicial Performance process was a necessary "first step" in the chain of obtaining relief from a federal court;

E. The coercion, fraud, and illegal imprisonment, HARASSMENT AND ASBUSE described in the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and NESTHUS OBSTRUCIOTN OF JUSTICE.

1113.     Defendants, and each of them, have coordinated activity  through fraud, deceit, coercion, undue influence, duress, and other illegal means to impede, deter, and obstruct Plaintiffs as elsewhere detailed.

1114.     As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**Racketeering Claim for Relief 5.8**

**18 U.S.C. §§ 1962(c), (d)**

**Tampering with a witness, victim, or informant**

**18 U.S.C. § 1512(d)**

1115.     This is a Claim against Defendants SIMI, BATTSON, SDCBA, SDCBA DOE 2, ODO, ODO DOES 1 and 2, STUART ASSAULT COORDINATORS, CHUBB, CHUBB DOE 1, CITY ATTORNEY DEFENDANTS, GROCH, GORE, NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL SMITH, MARCQ, CSB-INVESTIGATIONS, and WATKINS for Tampering with a witness, victim, or informant pursuant to 18 U.S.C. § 1512(d).

1116.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1117.     Defendants CULPABLY by the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE harassed Plaintiffs and members, clients, affiliates, and advocates thereby hindering, delaying, preventing, dissuading Plaintiffs, their members, affiliates, clients, and advocates from the PUBLIC BENEFIT ACTIVITIES, and THE DUE ADMINISTRATION OF JUSTICE, seeking further FFRRESA with the intent to arrest or seek the arrest of DOYNE, ALKSNE, SCHALL, WOHLFEIL, GROCH, and other DDIJO entities identified herein.

1118.     As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**Racketeering Claim for Relief 5.9**

**18 U.S.C. §§ 1962(c), (d)**

**Retaliating against a witness, victim, or an informant**

**18 U.S.C. § 1513(b)**

1119.     This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO, STUART ASSAULT COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, SMITH, MARCQ, CSB-INVESTIGATIONS, WATKINS for Retaliating against a witness, victim, or an informant pursuant to 18 U.S.C. § 1513(b).

1120.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1121.     Defendants in the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE CULPABLY threatened, attempted to, aided and abetted, and engaged in the STUART ASSAULT, and thereby causing bodily injury with intent to retaliate against Plaintiffs for Plainitff's role in PUBLIC BENEFIT ACTIVITIES and the DUE ADMINISTRATION OF JUSTICE.

1122.     As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**Racketeering Claim for Relief 5.10**

**18 U.S.C. §§ 1962(c), (d)**

**Retaliating against a witness, victim, or an informant—other harm**

**18 U.S.C. § 1513(e)**

1123.     This is a Claim against Defendants SIMI, BATTSON, SDCBA, ODO, STUART ASSAULT COORDINATORS, CHUBB, CITY ATTORNEY DEFENDANTS, GROCH NESTHUS, RODDY, TRENTACOSTA, ALKSNE, WOHLFEIL, SCHALL, SMITH, MARCQ, CSB-INVESTIGATIONS, and

WATKINS for Retaliating against a witness, victim, or an informant—other harm pursuant to 18 U.S.C. § 1513(e).

1124.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1125.    Defendants in the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, (3) PROSECUTORIAL MISCONDUCT, and (4) NESTHUS OBSTRUCTION OF JUSTICE CULPABLY, with the intent to retaliate, committed the acts ascribed to them in the STUART ASSAULT and NESTHUS OBSTRUCTION OF JUSTICE, thereby causing DAMAGES to Plaintiffs and their affiliates, their lawful employment, PUBLIC BENEFIT ACTIVITIES, and the DUE ADMINISTRATION OF JUSTICE.

1126.    As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

### Racketeering Claim for Relief 5.11

### 18 U.S.C. §§ 1962(c), (d)

### Conspiracy to Retaliate against a witness, victim, or an informant

### 18 U.S.C. § 1513(f)

1127.    This is a Claim against all RICO Defendants for Conspiracy to Retaliate against a witness, victim, or an informant to 18 U.S.C. § 1513(f).

1128.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1129.    Defendants, and each of them, CULPABLY conspired with each other DEFENANT to commit each act described above.

1130.    As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**RACKETEERING COUNT 6**

**18 U.S.C. §§ 1962(c), (d)**

**Violent Crime in Aid of Racketeering**

**18 U.S.C. § 1959**

1131.    This is a Claim against Defendants STUART ASSAULT COORDINATORS, CHUBB, CHUBB DOE 1, CITY ATTORNEY DEFENDANTS, GROCH, and GORE for Violent Crime in Aid of Racketeering pursuant to 18 US.C. § 1959.

1132.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

1133.    Defendants in the (1) STUART ASSAULT, (2) MALICIOUS PROSECUTION, and (3) PROSECUTORIAL MISCONDUCT attempted, threatened, conspired, aided and abetted, and did kidnap, assaulted with a dangerous weapon, assaulted resulting in serious bodily injury upon, and threatened to commit a crime of violence to STUART in violation of the laws of the State of California and the United States, in exchange for (i) consideration, a promise or agreement to pay, pecuniary value, from each of the ENTERPRISES, or (ii) the purpose of gaining entrance to or maintaining or increasing position in each of the ENTERPRISES.

1134.    As an actual and proximate result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

**RACKETEERING COUNT 7**

**RICO Aiding and Abetting**

**18 U.S.C. §§ 2(a)-(b) and §1962(c))]**

**Against All RICO Defendants**

1135.    This is a Claim against all RICO Defendants for aiding and abetting primary contravention of 18 U.S.C. § 1962(c) under 18 U.S.C. § 2(a)-(b) and § 1962(c).

1136.    All prior paragraphs are re-alleged and incorporated as if set forth in full.

-234-

1137.     Defendants employed the U.S. mails and/or federal interstate wires, as well as engaged in racketeering activity as alleged herein, to aid and abet the primary RICO § 1962(c)) contraventions committed by Defendants as alleged herein above.

1138.     Defendants were knowledgeable and aware of the commission of the primary RICO contraventions committed.

1139.     Defendants substantially assisted in the commission of the primary RICO contraventions by said defendants, thereby deriving a monetary benefit as a result thereof to the detriment of Plaintiffs.

<div align="center">

**RICO Recovery**

</div>

1140.     Plaintiffs pray, pursuant to Title 18 United States Code §1964(c)), treble damages in the amount to be determined by offer of proof at time of trial.  Plaintiffs are also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities attributable to the activities engaged in by defendants committed in furtherance of each RICO ENTERPRISE.

<div align="center">

**RACKETEERING COUNT 8**

**Aiding and Abetting a RICO Section 1962(d) Conspiracy**

**18 U.S.C. §§ 2(a)-(b) and §§1962(c)-1962(d)**

**Against All RICO Defendants**

</div>

1141.     This is a Claim against all RICO Defendants for aiding and abetting a RICO Section 1962(d) conspiracy in contravention of 18 U.S.C. § 1962(c), pursuant to 18 U.S.C. §§ 2(a)-(b) and 1962(c)-1962(d).

1142.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1143.     Defendants employed the United States mails and/or interstate wires, as well as engaged in racketeering activity as alleged herein, to aid and abet the primary RICO § 1962(c)) contraventions committed by Defendants and other RICO Defendants and persons unknown to plaintiffs as alleged herein above.

<div align="center">

-235-

</div>

1144.    Defendants' actions constitute mediate causation resulting in exertion of some causal effect upon other Defendants' conduct by virtue of the affiliating with one another for criminal purposes.

1145.    Such criminal affiliation constitutes a voluntary act committed with a culpable mens rea that causes a societal harm and concomitant social harm.

1146.    Defendants' conduct constitutes aiding and abetting a RICO §1962(d) conspiracy inasmuch as defendants:

    a.  were associated with a criminal venture as alleged herein;

    b.  participated in the criminal venture as something the defendants wished to bring about; and

    c.  sought by their actions to make it succeed.

1147.    Defendants  were knowledgeable and  aware of the  commission  of the primary RICO contraventions committed by others.

1148.    Defendants substantially assisted in the commission of the primary RICO contraventions, thereby deriving a monetary benefit as a result to the detriment of Plaintiffs.

1149.    Defendants aided and abetted a RICO Section 1962(d) conspiracy between said defendants to contravene RICO Section 1962(c)) to injure and/or damage Plaintiffs' interests in business and/or property.

1150.    Plaintiffs allege that Defendants are conspiratorially liable under *Pinkerton, v. U.S.*, 328 U.S. 640 (1946) and *Salinas v. U.S.*, 522 U.S. 52 (1997) for the substantive RICO Section 1962(c)) contraventions committed by defendant inasmuch as Defendants:

    A. engaged in the fraudulent activities that constitute the RICO §1961(5) pattern of racketeering activity;

    B. are members of the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

C. engaged in activities in furtherance of advancing and promoting the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

D. are members of the RICO §1962(d) conspiracy at and during the time frame the fraudulent activities were committed that constitute the RICO §1961(5) pattern of racketeering activity; and,

E. The offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

<div align="center">

**RICO Recovery**

</div>

1151.      Plaintiffs are entitled to recover, pursuant to Title 18 United States Code §1964(c)), treble damages in the amount to be determined by offer of proof at time of trial. Plaintiffs are also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities attributable to the activities engaged in by defendants committed in furtherance of each RICO ENTERPRISE.

<div align="center">

**RACKETEERING COUNT 9**

**Conspiracy to violate 18 U.S.C. 1962(c)**

**Pursuant to 18 U.S.C. § 1962(d)\ *Pinkerton v. U.S.*, 328 U.S. 640 (1946) and *Salinas v. U.S.*, 522 U.S. 52 (1997)**

**Against All RICO Defendants**

</div>

1152.      This is a Claim against all RICO Defendants for commission of conspiratorial contravention of 18 U.S.C. § 1962(c) based on a conspiracy as defined under 18 U.S.C. § 1962(d), *Pinkerton v. U.S.*, 328 U.S. 640 (1946) and *Salinas v. U.S.*, 522 U.S. 52 (1997).

1153.      All prior paragraphs are re-alleged and incorporated as if set forth in full.

<div align="center">

-237-

</div>

**RICO Conspiratorial Liability– Mediate Causation Contentions**

1154.    In committing each act alleged, Defendants mutually agreed to engage in the aforementioned racketeering activities and/or other wrongful conduct giving rise to the RICO Section 1962(c) contraventions.

1155.    The objective of that mutual agreement was to destroy Plaintiffs' interests in business and/or property.

1156.    Such conduct constitutes contravention of 18 U.S.C. § 1962(d).

1157.    Further, Defendants' actions are deemed to constitute mediate causation resulting with the exertion of some causal effect upon other Defendants' conduct by virtue of the affiliating with one another for criminal purposes.

1158.    Such criminal affiliation constitutes a voluntary act committed with a culpable mens rea that causes a societal harm and concomitant social harm.

1159.    Defendants employed the U.S. mails and/or interstate wires, as well as engaged in racketeering activity as alleged herein, to aid and abet the primary RICO § 1962(c)) contraventions committed by Defendants and other RICO persons unknown to plaintiff as alleged herein above.

1160.    Defendants were aware of the commission of the primary RICO contraventions.

1161.    Defendants substantially assisted in the commission of the primary RICO contraventions, thereby deriving a monetary benefit as a result to the detriment of Plaintiffs.

1162.    Defendants aided and abetted a RICO Section 1962(d) conspiracy between said defendants to contravene RICO Section 1962(c)) to injure and/or damage plaintiffs' interests in business and/or property.

1163.    Defendants are liable as conspirators as defined under *Pinkerton, v. U.S.*, 328 *U.S.* 640 (1946)  and  *Salinas v.  U.S.*, 522 U.S. 52 (1997)] for the substantive RICO Section 1962(c)) contraventions committed by other Defendants inasmuch as Defendants:

-238-

A. engaged in the fraudulent activities that constitute the RICO §1961(5) pattern of racketeering activity;

B. are members of the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

C. engaged in activities in furtherance of advancing and promoting the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

D. are members of the RICO §1962(d) conspiracy at and during the time frame the fraudulent activities were committed that constitute the RICO § 1961(5) pattern of racketeering activity; and,

E.   The offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

### RICO Recovery

1164.      Plaintiffs are entitled to recover, pursuant to 18 U.S.C. §1964(c)), treble damages in the amount to be determined by offer of proof at time of trial.  Plaintiffs are also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities attributable to the activities engaged in by defendants committed in furtherance of each RICO ENTERPRISE.


### RACKETEERING COUNT 10
**Aiding and Abetting a Conspiracy to Contravene 18 U.S.C. § 1962(c)**
**18 U.S.C. § 1962(d)/*Pinkerton v. U. S.*, 328 U.S. 640 (1946) and**
***Salinas  v.  U. S.*, 522 U.S. 52 (1997)**
**Against All RICO Defendants**

1165.      This is a Claim for conspiracy to contravene 18 U.S.C. § 1962(c) by a conspiracy to commit aiding and abetting under 18 U.S.C. § 1962(c) and *Pinkerton v. U.S.*, 328 U.S. 640 (1946) and *Salinas  v.  U.S.*, 522 U.S. 52 (1997)

-239-

1166.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

**RICO Conspiratorial Liability– Mediate Causation Contentions**

1167.     At relevant times Defendants mutually agreed to engage in the aforementioned racketeering activities and/or wrongful conduct giving rise to the RICO § 1962(c) contraventions.

1168.     The objective of that mutual agreement was to destroy Plaintiffs' interests in business and/or property.

1169.     Such conspiratorial conduct constitutes contravention of RICO § 1962(d).

1170.     Defendants' actions constitute mediate causation resulting with the exertion of some causal effect upon other Defendants' conduct by virtue of the affiliating with one another for criminal purposes.

1171.     Such criminal affiliation constitutes a voluntary act committed with a culpable mens rea that causes a societal harm and concomitant social harm.

1172.     Defendants employed the U.S. mails and/or interstate wires, as well as engaged in racketeering activity as alleged herein, to aid and abet the primary RICO § 1962(c)) contraventions committed by other Defendants as alleged herein above.

1173.     Each Defendant was aware of the commission of the primary RICO contraventions committed.

1174.     Each Defendant substantially assisted in the commission of the primary RICO contraventions by defendants, thereby deriving a monetary benefit as a result to the detriment of plaintiffs.

1175.     Plaintiffs allege that defendants are conspiratorially liable under *Pinkerton, v. U.S.*, 328 U.S. 640 (1946) and *Salinas v. U.S.*, 522 U.S. 52 (1997) for the substantive Section 1962(c)) contraventions committed by Defendants inasmuch as Defendants:

   A. engaged in the fraudulent activities that constitute the RICO §1961(5) pattern of racketeering activity;

B. are members of the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

C. engaged in activities in furtherance of advancing and promoting the RICO §1962(d) conspiracy designed and intended to contravene RICO § 1962(c));

D. are members of the RICO §1962(d) conspiracy at and during the time frame the fraudulent activities were committed that constitute the RICO §1961(5) pattern of racketeering activity; and,

E. The offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

## RICO Recovery

1176.     Plaintiffs are entitled to recover, pursuant to 18 U.S.C. § 1964(c)), treble damages in the amount to be determined by offer of proof at time of trial.  Plaintiffs are    also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities attributable to the activities engaged in by defendants committed in furtherance of the ENTERPRISES

## RACKETEERING COUNT 11

### Petition for Orders Dissolving  RICO Enterprises

### 18 U.S.C. § 1964 §§ (a)-(b)

### Against All RICO Enterprises Only

1177.     This is a Claim Against All RICO Enterprises for Orders of this Court dissolving each RICO Enterprise pursuant to 18 U.S.C. §§ 1964(a)-(b)

1178.     All prior paragraphs are re-alleged and incorporated as if set forth in full.

1179.     Plaintiffs respectfully petition  the Court, pursuant to 18 U.S.C. §§ 1964(a)-(b) to issue an order immediately dissolving each identified  RICO  §1961(4) ENTERPRISE herein inasmuch as said RICO ENTERPRISES are each a   mere

-241-

subterfuge  and/or  alter ego vehicle for the afore mentioned RICO defendants to engage in felonious, fraudulent, corrupt, violent, and illegal conduct, as alleged herein.

### RICO Recovery

1180.     PLAINITFFS are entitled to recover, pursuant to 18 U.S.C. § 1964(c) treble damages in the amount to be determined by offer of proof at time of trial. PLAINITFFS are similarly entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities attributable to the activities engaged in by Defendants committed in furtherance of the ENTERPRISES.

## VII. PROSPECTIVE RELIEF

1181.     For each Count seeking prospective relief below, Plaintiffs allege:

### FICRO COUNTS 1-22:

### Fraud; Deprivation of Rights, Privileges and Immunities Pursuant to

### 42 U.S.C. Sections 241, 242, 371

### Against Defendants acting under color of law

1182.     This is an allegation that Defendants in committing the acts alleged in COUNTS 1-11 and RICO COUNTS 1-11, above, concurrently committed one ore move deprivations of Plaintiffs' rights, privileges, and immunities in violation of 18 U.S.C. §§ 242, 241, and 371.   These allegations are relevant to Defendants' ENTERPRISE, conspiracy, and racketeering activity, and are the basis for Plaintiffs' Claims for prospective relief under 28 U.S.C. § 2201.  As such violations are indictable federal offenses, and shall hereinafter be referred to as FEDERAL INDICTABLE CIVIL RIGHTS OFFENSES (FICRO).

1183.     As part of their ongoing CIVIL and CRIMINAL CONSPIRACIES to deprive Plaintiffs and others similarly situated of FFR, CFC, FFRRESA, and other civil rights, Defendants have CULPABLY committed each Count and Claim for relief

alleged herein in furtherance of the conspiracies alleged hereinabove, establishing the existence of the crimes, conspiracies, and enterprises alleged herein.

1184.        Defendants' activities described herein constitute a conspiracy to commit one or more violations of the Family Federal Rights, actionable under the Civil Rights Criminal and Civil Statutes (FICRO CONSPIRACY).  The purpose of the FICRO CONSPIRACIES is to deprive Plaintiffs and those similarly situated of their rights, privilege, and immunities under the Constitution of United States by committing, causing, or contributing to, or ratifying each of the acts alleged against each DEFENANT.

1185.        Defendants, and each of them, acted with specific knowledge of Plaintiffs FFRRESA and PUBLIC BENEFIT ACTIVITIES.

1186.        On information and belief, upon learning of each fact relating to Plaintiffs' PUBLIC BENEFIT ACTIVITIES, Defendants coordinated efforts, shared knowledge, and shared a common purpose with one or more of the other Defendants so as to be the agents of on another in FICRO CONSPIRACY to retaliate against, disparage, harm, injure, Plaintiffs because of the same.

1187.        In carrying out the FICRO CONSPIRACY, DEFENANTS committed, were aware of, acquiesced to, intended, and ratified each act and/or the acts and/or omissions of each other Defendant.

1188.        Defendants are or were co-workers, collaborators, co-owners, co-operators, affiliates, colleagues, members of one another's personal and professional networks of one or more other of Defendants.

1189.        Defendants C. GOLDSMITH and unnamed entity Mr. Jan Goldsmith all times identified herein, were husband and wife, common parents of children, former co-workers / Judges of the Superior Court of the State of California, cohabitants, friends, collaborators, and formerly common parties to a martial dissolution proceeding.

1190.     Defendants, and each of them, in committing or conspiring to commit the acts ascribed to them CULPABLY acted in furtherance of the CRIMINAL CONSPIRACY, including the ENTERPRISES, entities, color of law, misfeasance and malfeasance ascribed to them herein.

1191.     As an actual and foreseeable result, Plaintiffs have been damaged or injured in a nature and amount to be proven at trial.

## PROSPECTIVE RELIEF COUNT 1

### Motion for Harassment Protective Order

### 18 U.S.C. § 1514(b)

1192.     Plaintiffs hereby move and request that the Court issue "temporary restraining order prohibiting harassment of a victim or witness in a Federal criminal case" pursuant to 18 U.S.C. § 1514(b).

1193.     Plaintiffs are victims and witness to FICRO Counts 1-22, each Racketeering Count, and numerous civil rights offenses committed by Defendants as described herein.   Plaintiffs continue to interact with FEDERAL LAW ENFORCEMENT AGENTS in the DUE ADMINISTRATON OF JUSTICE, including in ongoing criminal investigations involving Defendants herein and exercise FFRRESA.

1194.     Defendants have undertaken a course of conduct to harass, interfere with, intimidate, harm, and retaliate for Plaintiffs protected activities as detailed in the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and NESTHUS OBSTRUCITON OF JUSTICE (HARASSMENT AND ABUSE), and continue to do so.

1195.     Plaintiffs have experienced and are in fear of further harassment, threats, and intimidation, and submit that from the allegations set forth in this ORIGINAL COMPLAINT.

1196.        Pursuant to 18 U.S.C. § 1514(b), Plaintiffs respectfully submit that there are reasonable grounds for the court, on its own motion, to (1) believe that such harassment exists, and (2) an Order is necessary to prevent and restrain Defendants from further and ongoing offenses under section 1512 of this title, other than an offense consisting of misleading conduct, or under section 1513 of this title.

1197.        Plaintiffs respectfully request that the Court issue, on its own motion, an Order:

A. Restraining and enjoining DEFEDANTS and each of them from further acts of HARRASSMENT AND ABUSE in connection with this matter and any ongoing DUE ADMINISTRATION OF JUSTICE and FFRRESA in which Plaintiffs are involved;

B. That the Order shall be in effect when made;

C. That Plaintiffs shall give notice to Defendants within three business days;

D. That the Order shall expire within 14 days from issuance

E. That Plaintiffs may Petition the Court that good cause exists to extend the Order as provided in subsection (c) of this section (18 U.S.C. § 1514(c));

F. That a motion for a protective order shall be set down for hearing at the earliest possible time;

G. That the temporary restraining Order is based on:

i. The Defendants' past harassment, obstruction, tampering, and retaliation as set forth herein;

ii. The HARRASSMENT AND ABUSE; and

iii. Plaintiffs' ongoing FFRRESA and the DUE ADMINISTRATION OF JUSTICE,

**PROSPECTIVE RELIEF COUNT 2**

**Declaratory Judgment Pursuant to 28 U.S.C. § 2201**

**Against All Defendants**

1198.     A case of actual controversy between Defendants and Plaintiffs exists with regard to Plaintiffs' free exercise, reform and support and advocacy of Family Federal Rights, laws, and Constitution of the Unites States, and the validity of state law conflicting therewith.

1199.     Specifically, Plaintiffs, by virtue of their FFRRESA detailed herein, have asserted, and Defendants, by virtue of the STUART ASSAULT, MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, and the operation of the ENTERPRISES with which they are affiliated, including their obstructive behavior described herein, have contested and denied, the following rights:

A. Family Federal Rights detailed at Table 1.0;

B. Rights to SUBSTANTIVE DUE PROCESS by CULPABLE and UNREASONBLE breach of PROFESSIONAL DUTY under color of law detailed above.

1200.     Further, by similar means, DEFENANTS have asserted, and Plaintiffs have denied the legality of certain laws, practices, procedures, rules, and forms in Family Law matters as follows:

A. The DVILS;

B. The DVILS ORDERS;

C. The processes, procedures, rules, customs, and practices of the DDI-IACE and their offices statewide;

D. The processes, procedures, rules, customs, and practices of Child Custody Evaluations and Evaluators and the DDI-FICE.

-246-

1201.    Plaintiffs respectfully request an Order declaring Plaintiffs' rights and other legal relations vis-à-vis Defendants' HARRASSMENT AND ABUSE and other deprivation of Family Federal Rights as follows:

a. That the Family Federal Rights are

    i.   valid and enforceable rights of U.S. Citizens residing or located in the State of California;

    ii.  superior to any state laws which conflict, hinder, or deprive PLAINTFFS of the same.

b. That no Defendant acting under color of law is may to deprive any U.S. Citizen residing or present in the State of California of Family Federal Rights by reliance on conflicting state law, even in good faith;

c. That Defendants acting under color of law are not entitled to immunity under federal law for acts not specifically authorized by their constitutions, charters, or other foundational documents;

d. That all laws, rules, policies, regulations, and forms based thereon which conflict, hinder, or deprive Plaintiffs of their Family Federal Rights, including those specified herein, are unconstitutional, invalid, and unenforceable;

e. That the EQUAL PROTECTION CLASSES are valid classes of persons entitled to heightened protection under the 5th and 14th Amendments to the United States Constitution with regard to all Defendants;

f. That Defendants have violated each of the FICRO COUNTS as alleged against each of them herein; and

g. That SUPERVISING DEFENANTS and MUNICIPAL ENTITIES behaviors, policies, and procedures depriving of or infringing on Family Federal Rights are illegal, unconstitutional, and deliberately indifferent to the likelihood of Constitutional injury to Plaintiffs;

1202.      Plaintiffs further request that the Court exercise its equitable powers pursuant to the Civil Rights Criminal and Civil Statutes and F.R.C.P. Rules 57 and 65 to enjoin defendants from:

A. Further deprivation of the Federal Family Rights;

B. Further HARRASSMENT AND ABUSE;

C. Further actions to solicit, prepare, file, petition for, issue, grant, or enforce the DVILS an DVILS ORDERS, forms, rules, advice, practices related thereto; and

E. Further interference with any Plaintiffs' and any United States Citizen's exercise and enjoyment of FFRRESA.

1203.      Plaintiff STUART further requests the Court to exercise its equitable powers pursuant to the Civil Rights Criminal and Civil Statutes and F.R.C.P. Rules 57 and 65 to enjoin all CITY ATTORNEY DEFENDANTS, SUPERIOR COURT DEFENDANTS, and GROCH from enforcement of any DVILS order now or at any time in effect relating to STUART.

WHEREFORE Plaintiffs pray for judgment as follows:

1. An award of compensatory, punitive, exemplary, and enhanced damages and interest thereon according to proof at trial;

2. An award of reasonable costs and expenses incurred in this action, including counsel fees and expert fees as allowable under the Title 18, 28, and 42 sections asserted;

-248-

3. Declaratory, Injunctive, and Prospective Relief as requested including injunctive remedies provided under 42 U.S.C. §§ 1983, 1985, 1986, 1988; and 18 U.S.C. §§ 1964 (a), (c), and (d); 28 USC 2201-2202; 15 U.S.C. § 1125, and related federal statutes;

4. That The Court issue a preliminary and permanent restraining order against Defendants as requested in Prospective Relief Count 1 forthwith, and set hearing for extending such order during the pendency of this litigation;

5. That a preliminary and permanent injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from making any further misrepresentations in COMMERCIAL SPEECH as described above; and

6. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.


DATED: January 9, 2014                    By: /s/ _Colbern C. Stuart, III_
                                          Colbern C. Stuart, III, President,
                                          California Coalition for Families and
                                          Children, PBC
                                          in Pro Se


DATED: January 9, 2014                    By: /s/ _Dean Browning Webb_
                                          Dean Browning Webb, Esq.
                                          Attorney for Plaintiffs California
                                          Coalition for Families and Children,
                                          PBC

FIRST AMENDED COMPLAINT
3:13cv1944 CAB BLM

1   DATED: January 9, 2014

2

3

By: /s/ _____

Eric Ching, Esq.
Attorney for Plaintiffs California
Coalition for Families and Children,
PBC. and Lexevia, PC

-255-

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the court's CM-ECF system per Federal Rule of Civil Procedure 5(b )(2)(E). Any other counsel of record will be served by facsimile transmission and/or first class mail this 9th day of January, 2014.

By: /s/ _Colbern C. Stuart, III_

Colbern C. Stuart, III, President,
California Coalition for Families and
Children
in Pro Se

-1-

FIRST AMD COMPL.
13-CV-1944 CAB BLM